1   Robert J. Nelson (State Bar No.  132797)
    Lexi J. Hazam (State Bar No.  224457)
2   Andrew S. Kingsdale (State Bar No.  255669)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3   275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
4   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
5
    Michael D. Thamer (State Bar No.  101440)
6   LAW OFFICES OF MICHAEL D.  THAMER
    Old Callahan School House
7   12444 South Highway 3
    Post Office Box 1568
8   Callahan, CA 96014-1568
    Telephone:  (530) 467-5307
9   Facsimile:  (530) 467-5437

10  Kathryn A. Stebner (State Bar No. 121088)
    Sarah Colby (State Bar No. 194475)
11  STEBNER & ASSOCIATES
    870 Market Street, Suite 1212
12  San Francisco, CA 94102-2907
    Telephone:  (415) 362-9800
13  Facsimile:  (415) 362-9801

14  *Attorneys for Plaintiffs Arlene Bettencourt, and Harry Harrison*
15  [Additional Counsel Appear on Signature Page]

16                  UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18                    SAN FRANCISCO DIVISION

19

| | |
|---|---|
| 20  LISA EDWARDS as guardian ad litem of ARLENE BETTENCOURT, and ROXANNE HARRISON as guardian ad litem of HARRY HARRISON, | No. 3:11-CV-00050-JSW |
| 21 | |
| 22                  Plaintiffs, | **FIRST AMENDED COMPLAINT FOR:** |
| 23         v. | 1.      VIOLATION OF HEALTH & SAFETY CODE SECTION 1430(b) |
| 24  KINDRED HEALTHCARE, INC.; KINDRED HEALTHCARE | 2.      UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES (Bus. & Prof. Code § 17200 *et seq.*) |
| 25  OPERATING, INC.; CALIFORNIA NURSING CENTERS, LLC; KINDRED NURSING CENTERS WEST, LLC; | 3.      VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT (Civ. Code 1750 *et seq.*) |
| 26  HILLHAVEN-MSC PARTNERSHIP; ALTA VISTA HEALTHCARE & | **CLASS ACTION** |
| 27  WELLNESS CENTRE (A/K/A ALTA VISTA HEALTHCARE); BAY VIEW | **DEMAND FOR JURY TRIAL** |
| 28 | |

914152.2

1   NURSING AND REHABILITATION
    CENTER; CANYONWOOD NURSING
2   AND REHAB CENTER; CARE CENTER
    OF ROSSMOOR, LLC; CARE CENTER
3   OF ROSSMOOR  (F/K/A GUARDIAN OF
    ROSSMOOR); FIFTH AVENUE
4   HEALTH CARE CENTER; GOLDEN
    GATE HEALTHCARE CENTER;
5   HACIENDA CARE CENTER;
    NINETEENTH AVENUE
6   HEALTHCARE CENTER; KINDRED
    HEALTHCARE CENTER OF ORANGE;
7   SANTA CRUZ HEALTHCARE
    CENTER; SMITH RANCH CARE
8   CENTER, LLC; SMITH RANCH CARE
    CENTER(F/K/A GUARDIAN AT SMITH
9   RANCH CARE CENTER); VALLEY
    GARDENS HEALTHCARE &
10  REHABILITATION CENTER;
    VICTORIAN HEALTHCARE CENTER
11  (F/K/A HILLHAVEN VICTORIAN); and
    DOES 1 through 100, inclusive,
12
                    Defendants.
13

14          Plaintiffs Arlene Bettencourt and Harry Harrison ("Named Plaintiffs" or "Plaintiffs"), on

15   behalf of themselves and a class of similarly situated persons, and based on information and

16   belief and the investigation of counsel, except for information based on personal knowledge,

17   hereby allege as follows:

18                                **NATURE OF ACTION**

19          1.      Plaintiffs bring this class action lawsuit under California Health and Safety Code

20   section 1430(b), Business & Professions Code sections 17200 *et seq.*, and the Consumers Legal

21   Remedies Act, Civil Code sections 1750 *et seq.* ("CLRA") to redress the pervasive and

22   intentional failure to provide sufficient direct nursing care staffing for elderly and disabled

23   residents at skilled nursing facilities owned, leased, licensed, operated, administered, managed,

24   directed, and/or controlled by defendants within the State of California.

25          2.      Understaffing is one of the primary causes of inadequate care and often unsafe

26   conditions in skilled nursing facilities.  Numerous studies have shown a direct correlation

27

28

1    between inadequate staffing and serious care problems including, but not limited to, a greater

2    likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.

3          3.    In response to such studies linking inadequate staffing and serious care problems,

4    all skilled nursing facilities in California since January 1, 2000 have been required to provide at

5    least 3.2 hours of direct nursing hours per patient day ("NHPPD") for each facility resident,

6    pursuant to Health & Safety Code section 1276.5. The 3.2 NHPPD requirement under

7    Section 1276.5 represents the minimum staffing required for patients at skilled nursing facilities.

8    Depending on patient needs and other factors, higher levels of direct nursing hours may be

9    warranted. Significantly, after extensive research into the staffing levels required to meet patient

10   needs, the federal government has increased the minimum recommended level for skilled nursing

11   staffing to 4.1 NHPPD.

12         4.    As alleged in more detail below, defendants' California skilled nursing facilities

13   have failed to meet the 3.2 NHPPD minimum requirements on numerous days during the Class

14   Period (November 23, 2006 to present). Not surprisingly, many of these facilities have a

15   relatively high number of reported complaints, deficiencies, and citations arising from inadequate

16   care of their elderly and disabled residents, as reflected in records maintained by the California

17   Department of Health Services ("DHS").

18         5.    Defendants have misrepresented to the consuming public—in particular, the

19   elderly and disabled residents and their family members—that defendants operate their nursing

20   facilities in compliance with applicable laws, including laws such as Health & Safety Code

21   section 1276.5. They have failed to disclose that, in fact, their facilities do not provide sufficient

22   nursing staff to comply with minimum staffing requirements. Defendants' representations and

23   omissions are deceptive, misleading, and made with the intent to induce elderly and disabled

24   citizens to become residents, and remain residents, at defendants' facilities under a false pretense,

25   namely, that defendants will provide the direct nursing staffing required by law. Defendants'

26   misleading and deceptive conduct is particularly egregious given that the targeted persons are

27   among the most vulnerable members of our society.

28

**PARTIES**

6.      Plaintiff Arlene Bettencourt, represented by her guardian ad litem and daughter Lisa Edwards, is a resident of Antioch, California, and is an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f). During the Class Period, Arlene Bettencourt was a resident at Care Center of Rossmoor, f/k/a Guardian of Rossmoor, a skilled nursing care facility located in Walnut Creek, California.

7.      Plaintiff Harry Harrison, represented by his guardian ad litem and daughter Roxanne Harrison, is a resident of Pittsburg, California, and is an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).  During the Class Period, Harry Harrison was a resident at Care Center of Rossmoor, f/k/a Guardian of Rossmoor, a skilled nursing care facility located in Walnut Creek, California.

8.      Defendant Kindred Healthcare, Inc. ("Kindred Inc.") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant Kindred Inc. regularly conducted business in the State of California and— either directly or through its wholly-owned subsidiaries (including defendants Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, LLC, and California Nursing Centers, LLC) and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.

9.      Defendant Kindred Healthcare Operating, Inc.  ("KHOI") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant KHOI regularly conducted business in the State of California and— either directly or through its wholly-owned subsidiaries (including defendants Kindred Nursing Centers West, LLC and California Nursing Centers, LLC) and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.

10. Defendant Kindred Nursing Centers West, LLC ("Kindred West") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the Class Period defendant Kindred West regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries (including defendant California Nursing Centers, LLC) and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.

11. Defendant California Nursing Centers, LLC ("California Nursing Centers") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the Class Period defendant California Nursing Centers regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries (including defendants Care Center of Rossmoor, LLC and Smith Ranch Care Center, LLC) and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.

12. Defendants Kindred Inc., KHOI, Kindred West, and California Nursing Centers collectively are referred to as "Kindred."

13. Defendant Hillhaven-MSC Partnership ("Hillhaven") is on information and belief a general partnership with Defendant Kindred Inc. formed and existing under the laws of the State of California, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the Class Period defendant Hillhaven regularly conducted business in the State of California, and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred, including defendant Nineteenth Avenue Healthcare Center.

14. Defendant Care Center of Rossmoor LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 680

South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant Care Center of Rossmoor LLC regularly conducted business in the State of California, and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred, including defendant Rossmoor.

15.     Defendant Smith Ranch Care Center, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period Smith Ranch Care Center, LLC regularly conducted business in the State of California, and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred, including defendant Smith Ranch.

16.     Defendant Alta Vista Healthcare & Wellness Centre a/k/a Alta Vista Healthcare ("Alta Vista") during the Class Period up to September 30, 2009, was a skilled nursing care facility located in Riverside, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period up to September 30, 2009 defendant Alta Vista was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with Kindred.

17.     Defendant Bay View Nursing and Rehabilitation Center ("Bay View") is a skilled nursing care facility located in Alameda, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Bay View was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

18.     Defendant Canyonwood Nursing and Rehab Center ("Canyonwood") is a skilled nursing care facility located in Redding, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief,

1   during the Class Period defendant Canyonwood was leased, licensed, operated, administered,

2   managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

3          19.    Defendant Fifth Avenue Health Care Center ("Fifth Avenue") is a skilled nursing

4   care facility located in San Rafael, California and operating there under a license granted to

5   Kindred West by the State of California Department of Public Health. On information and belief,

6   during the Class Period defendant Fifth Avenue was leased, licensed, operated, administered,

7   managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

8          20.    Defendant Golden Gate Healthcare Center ("Golden Gate") is a skilled nursing

9   care facility located in San Francisco, California and operating there under a license granted to

10  Kindred West by the State of California Department of Public Health. On information and belief,

11  during the Class Period defendant Golden Gate was owned, leased, licensed, operated,

12  administered, managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

13         21.    Defendant Hacienda Care Center ("Hacienda") is a skilled nursing care facility

14  located in Livermore, California and operating there under a license granted to Kindred West by

15  the State of California Department of Public Health. On information and belief, during the Class

16  Period defendant Hacienda was owned, leased, licensed, operated, administered, managed,

17  directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

18         22.    Defendant Nineteenth Avenue Healthcare Center ("Nineteenth Avenue") is a

19  skilled nursing care facility located in San Francisco, California and operating there under a

20  license granted to Hillhaven by the State of California Department of Public Health. On

21  information and belief, during the Class Period defendant Nineteenth Avenue was owned, leased,

22  licensed, operated, administered, managed, directed, and/or controlled by, and/or otherwise

23  affiliated with, Kindred.

24         23.    Defendant Kindred Healthcare Center of Orange ("Orange"), during the Class

25  Period until September 30, 2009, was a skilled nursing care facility located in Orange, California

26  and operating there under a license granted to Kindred West by the State of California

27  Department of Public Health. On information and belief, during the Class Period up to September

28

1    30, 2009 defendant Orange was leased, licensed, operated, administered, managed, directed,

2    and/or controlled by, or otherwise affiliated with, Kindred.

3       24.     Defendant Care Center of Rossmoor f/k/a Guardian of Rossmoor ("Rossmoor") is

4    a skilled nursing care facility located in Walnut Creek, California and operating there under a

5    license granted to Care Center of Rossmoor LLC by the State of California Department of Public

6    Health. On information and belief, during the Class Period defendant Rossmoor was leased,

7    licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated

8    with, Kindred.

9       25.     Defendant Santa Cruz Healthcare Center ("Santa Cruz") is a skilled nursing care

10    facility located in Santa Cruz, California and operating there under a license granted to Kindred

11    West by the State of California Department of Public Health.  On information and belief, during

12    the Class Period defendant Santa Cruz was owned, leased, licensed, operated, administered,

13    managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

14       26.     Defendant Smith Ranch Care Center f/k/a Guardian at Smith Ranch Care Center

15    ("Smith Ranch") is a skilled nursing care facility located in San Rafael, California, and operating

16    there under a license granted to Smith Ranch Care Center LLC by the State of California

17    Department of Public Health. On information and belief, during the Class Period defendant Smith

18    Ranch was owned, leased, licensed, operated, administered, managed, directed, and/or controlled

19    by, and/or otherwise affiliated with, Kindred.

20       27.     Defendant Valley Gardens Healthcare & Rehabilitation Center ("Valley Gardens")

21    is a skilled nursing care facility located in Stockton, California and operating there under a license

22    granted to Kindred West by the State of California Department of Public Health.  On information

23    and belief, during the Class Period defendant Valley Gardens was leased, licensed, operated,

24    administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

25       28.     Defendant Victorian Healthcare Center f/k/a Hillhaven Victorian ("Victorian") is a

26    skilled nursing care facility located in San Francisco, California and operating there under a

27    license granted to Kindred West by the State of California Department of Public Health.  On

28    information and belief, during the Class Period defendant Victorian was owned, leased, licensed,

1   operated, administered, managed, directed, and/or controlled by, and/or otherwise affiliated with,

2   Kindred.

3           29.     Each of the entities referenced in paragraphs 16 through 28 above is a "skilled

4   nursing facility" as defined in Health & Safety Code section 1250.  For purposes of this

5   Complaint, each such entity is referred to as a "Facility" and, collectively, the "Facilities."

6           30.     At all times herein mentioned, defendants have all regularly conducted business

7   throughout the State of California, including, but not limited to, the ownership, leasing, licensing,

8   administration, operation, management, and/or supervision, and organization of the Facilities.

9           31.     In response to frustration regarding identifying the entities responsible for nursing

10  homes, the federal government recently enacted the Nursing Home Transparency Act (42 U.S.C.

11  Sect 1320a-3) to help untangle the organizational structure of nursing home chains. The

12  information required to be disclosed under the Act will not be available to the public until March

13  of 2013.  *See also* New York Times, September 23, 2007, "More Profit and Less Nursing at Many

14  Nursing Homes" (describing how for-profit nursing home corporations are dividing themselves

15  into many separate shell companies in order to avoid being held accountable to both the public

16  regulatory system and residents). www.nytimes.com/2007/09/23/business/23nursing.html.

17          32.     The Facilities named here have no corporate headquarters, governing bodies, or

18  traditional management hierarchy.  Instead, Kindred Inc. manages, controls, and operates the

19  Facilities.  All the Facilities reside in Kindred Inc.'s health services division, which is managed

20  by Kindred's president and chief financial officer.  Kindred Inc.'s nursing center operations are

21  divided into three geographic regions, each of which is headed by an operational senior vice

22  president who reports directly to the division president.  Kindred Inc. oversees clinical issues and

23  quality concerns of the Facilities with management consisting of physicians, chief medical

24  officers, medical directors, senior vice presidents of clinical and nursing operations, and regional

25  and district teams.

26          33.     Kindred Inc. provides the Facilities with centralized management, information

27  systems, state licensing and certification maintenance, legal, finance, accounting, risk

28  management, clinical, HR, training, IT, compliance, purchasing, and other functions.  While the

1  Facilities have lower level managers on site, the senior management and operational decisions at

2  each are conducted by Kindred Inc. in accordance with a common business model.

3           34.      In filings with the SEC, Kindred Inc. describes how it monitors and oversees the

4  Facilities.  For example, Kindred Inc.:

5                    Monitor[s] and enhance[s] the quality of care and customer service
                     at our nursing and rehabilitation centers through the use of
6                    performance improvement committees as well as family satisfaction
                     surveys.  Our performance improvement committees oversee
7                    resident healthcare needs and resident and staff safety.  Physician
                     medical directors serve on these committees and advise on
8                    healthcare policies and practices.  We regularly conduct surveys of
                     residents and their families, and these surveys are reviewed by our
9                    performance improvement committees at each center to promote
                     quality care and customer service.
10

11  Kindred Healthcare, Inc., Annual Report Pursuant to Section 13 or 15(d) of the Securities

12  Exchange Act of 1934, for the fiscal year ended Dec. 31, 2009 ("Kindred 2009 Form 10-K") at

13  13.

14           35.      There is a sufficient unity of interest and ownership between Kindred Inc.,

15  Kindred West, California Nursing Centers, KHOI and the Facilities, and each of them, such that

16  the acts of one are for the benefit of all and can be imputed to the acts of the others.  Without

17  limitation, the unity of interest and relationship between these defendants is evidenced by:  (a)

18  Kindred's key decisions or approval of such decisions concerning each Facility's day-to-day

19  operations, such as staffing levels, employee hiring and firing, budgets and related issues, which

20  decisions and directives, on information and belief, were made at the direction of and/or the

21  benefit of Kindred; (b) communications by Kindred with the Department of Health Services with

22  respect to licensing and certification issues affecting the Facilities, which communications, on

23  information and belief, were undertaken at the direction of and/or for the benefit of Kindred; and

24  (c) overlapping officers, directors and employees between the various entities.  Actions taken by

25  these defendants were undertaken within the course and scope of their agency and employment,

26  with the knowledge, consent, authorization, approval, and/or ratification of their co-defendants.

27           36.      Kindred is a common agent of each of the Facilities, and/or Kindred is a common

28  alter-ego of each of the Facilities, and/or Kindred and the Facilities are part of a single enterprise

formed for a common purpose with a unity of interest.  The viability of each of the Facilities is intertwined with their dependence on Kindred.  As described further within, consistent with this unity of interest and interdependence, the senior management and control of each of the Facilities is delegated to and/or otherwise conducted by Kindred.  Kindred actively participates in and manipulates the business activities of the Facilities, including the conduct challenged in this complaint.  The control and manipulation of the Facilities by Kindred is so pervasive that each of them is but an agent, instrumentality, conduit and/or alter-ego of Kindred in the prosecution of a single venture, namely, the provision of nursing home services to California consumers, including members of the Class.  There is such unity of interest, ownership and management that the separateness of the defendant corporations have in effect ceased and an adherence to the fiction of a separate existence of the multiple corporations or entities would, under the circumstances here present, promote injustice and make it inequitable for Kindred Inc., Kindred West, California Nursing Centers, and KHOI to escape liability for obligations incurred as much for their benefit as the Facilities.

37.      Kindred conducts, manages, and controls the material compliance functions for the Facilities, including those associated with compliance with the legal and regulatory issues challenged in this lawsuit, namely the failure of each of the Facilities to comply with laws and regulations mandating adequate nurse staffing.  Additionally, each of the Facilities delegated such compliance functions to Kindred to conduct on their behalf. Among other things, with respect to the Facilities, Kindred:  (1) oversees all compliance program operations; (2) conducts and oversees regular and targeted training on compliance programs, policies and procedures, as well as federal and state laws and regulations affecting the skilled nursing, home health, and hospice industries; (3) leads and coordinates the efforts of all compliance personnel; (4) develops and implements systems to assist clients in detecting, preventing and reporting potential fraud, waste, and abuse in business operations; (5) creates, reviews, revises, and updates, at a minimum annually, core elements of the compliance program, including but not limited to compliance-related policies and procedures; (6) develops and executes a compliance work plan that is based on industry and government activities, results of internal and external audits and surveys, trended

hotline data and other identified areas of prioritized compliance risk; (7) oversees the compliance

hotline and maintains systems to respond to calls in a timely manner; (8) tracks data related to

compliance issues; (9) initiates, directs, and participates in investigations related to compliance

concerns and issues, and works with management to bring such issues to resolution; (10) works

collaboratively with each of the Facilities; (11) provides reports of relevant compliance program

activities to the Kindred Board of Directors on at least a quarterly basis; (12) develops,

implements, and evaluates a system of enterprise-wide compliance communication to all

employees; (13) identifies, monitors, and responds to potential areas of compliance vulnerability,

including minimum nursing hour requirements; (14) conducts formal compliance risk

assessments that drive the development of an annual compliance work plan; (15) oversees the

development, and monitors implementation, of corrective action plans in response to internal or

external regulatory audit/survey findings; and (16) manages all other aspects of the Facilities'

compliance efforts.  The failure of the aforementioned compliance functions caused Plaintiffs and

the Class loss and injury, as described more fully below.

      38.     Each of the Facilities is wholly owned, leased, operated, managed, and/or

controlled by Kindred, and Kindred fails to recognize the uniqueness and independence of the

Facilities, even when Kindred does not own the Facility.  At all times relevant hereto there was

such a unity of interest and ownership between Kindred and the Facilities such that the individual

distinctions between them have ceased and that the facts as alleged herein are such that an

adherence to the fiction of the separate existence of Kindred from that of the Facilities would,

under the particular circumstances alleged herein, sanction a fraud and/or promote injustice.  On

information and belief, Kindred deliberately set up empty shells and agents so that it could

deceive the public and the residents as to who was actually responsible for the decisions made at

the Facilities, while also siphoning funds out of the Facilities.  Kindred is the alter-ego of each of

the Facilities and any corporate veil should be pierced.

      39.     Plaintiffs allege on information and belief the following facts demonstrating

defendants' unity of interest:

a.      Kindred Inc. provides letters to the California Department of Health on behalf of its subsidiaries, including the Facilities named herein, as evidence that the subsidiaries have sufficient resources to operate the Facilities for a period of at least 45 days, based upon multiple Facilities having access to the same multimillion dollar line of credit at the same bank. These letters show commingling of funds and that Kindred Inc. exercises budgetary control over its subsidiaries.

b.      Kindred Inc. retains excess professional liability funds from the Facilities and uses them to create equity or pay down debt, rather than these funds being returned to the Facilities or credited to the Facilities' reserves, again showing commingling of funds.

c.      Kindred Inc. indicates in its SEC filings that it manages labor costs by adjusting nurse staffing, showing Kindred Inc.'s oversight of employment matters at the Facility-level (where nursing care is provided) and centralized budgetary control. Kindred Healthcare, Inc., Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, for the fiscal year ended Dec.  31, 2007 at 37, 59; and for the fiscal year ended Dec. 31, 2008 at 6, 14.

d.      According to documents submitted by defendants to the California Department of Public Health, the same persons serve as the Vice Presidents, Senior Vice Presidents, Executive Vice Presidents, and Presidents at both Kindred Inc. and KHOI, at the same address.

e.      Kindred Inc. Facilities do not negotiate or execute their own master leases but do have obligations under them, reflecting the lack of an arms-length transaction. Also, the master leases cross-collateralize lease payments among Facilities, such that if a particular Facility cannot pay the rent, other Facilities or Kindred subsidiaries would cover the debt. Defendants thus have agreed to be liable for each other's debts.

f.      The  Facilities freely use the trademarks of Kindred with no consideration or royalty fee. All defendants use the Kindred logo, and their written materials describe Kindred as if it were a single entity.

40.      On information and belief, at all times herein mentioned, defendants, and each of them, was the agent, partner, joint venturer, representative, and/or employee of the remaining

1   defendants, and was acting within the course and scope of such agency, partnership, joint venture,

2   and/or employment.  Furthermore, in engaging in the conduct described below, defendants were

3   all acting with the express or implied knowledge, consent, authorization, approval, and/or

4   ratification of their co-defendants.

5                                    **JURISDICTION AND VENUE**

6          41.     This Court has jurisdiction over all causes of action asserted herein.  Defendants

7   are subject to the personal jurisdiction of this Court because each defendant has sufficient

8   minimum contacts in California, or otherwise intentionally avails itself of the California market

9   through participation in skilled nursing facilities located in California, derivation of substantial

10  revenues from California, and other activities, so as to render the exercise of jurisdiction over it

11  by the California courts consistent with traditional notions of fair play and substantial justice.

12         42.     This court has subject matter jurisdiction pursuant to the Class Action Fairness

13  Act, 28 U.S.C. § 1446.

14         43.     Venue is proper in this District under 28 U.S.C. § 1391(a), based on the facts,

15  without limitation, that:  this Court is a court of competent jurisdiction; defendants were subject

16  to personal jurisdiction in the District at the time this action commenced based on conducting

17  substantial business in this District, including without limitation, the ownership, administration,

18  management, and/or operation of the Golden Gate, Nineteenth Avenue, and Victorian Facilities; a

19  substantial part of the events or omission giving rise to the Plaintiffs' claims arose in this District;

20  Plaintiffs reside in this District; a portion of defendants' liability arose in this District; and certain

21  acts upon which this action is based occurred in part in this District.

22                                    **GENERAL ALLEGATIONS**

23         44.     Defendants were and are in the business of providing long-term care and are

24  subject to the requirements of federal law, and California statutory and regulatory law, governing

25  the operation of skilled nursing facilities.  At all relevant times, Defendants owned, leased,

26  licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing

27  facilities in California.

28

914152.2                                   - 13 -                    FIRST AMENDED CLASS ACTION COMPLAINT
                                                                     NO. 3:11-CV-00050-JSW

45.     Kindred Inc. classifies itself as the "largest publicly held operator of nursing and rehabilitation centers in the United States."  Kindred 2009 Form 10-K at 13.

46.     The General Accountability Office has found that most poorly performing nursing homes in the U.S.  are owned by for-profit chains.  GAO, *CMS's Specific Focus Facility Methodology Should Better Target the Poorly Performing Facilities Which Tend To Be Chain Affiliated and For-Profit*, GAO-09-689 (2009).  Many studies have shown that for-profit nursing homes have poorer quality, operate with lower costs, and have lower staff-patient ratios than nonprofit facilities.  *See, e.g.*, V.R. Commondore et al., *Quality of Care on For-Profit and Not-for-Profit Nursing Homes:  Systemic Review and Meta-Analysis*, 339 Brit. Med. J. 2732 (2009).  Other studies have found that poor nursing home quality is directly related to inadequate staffing levels.  *See, e.g.*, U.S. Centers for Medicare and Medicaid Services, *Report to Congress:  Appropriateness of Minimum Nurse Staffing Ratios in Nursing Home*s (2001).

47.     Kindred Inc. has a long history of compliance issues.  Kindred Inc.'s corporate predecessor, Vencor, Inc., and Ventas, Inc., a related real estate investment trust, faced a $1.3 billion fraud claim from the United States government alleging that Vencor knowingly submitted false claims to Medicare, Medicaid, and Tricare, the military's health care program.  In 2001, this suit and related civil claims settled for $219 million.  After reorganization following Vencor's Chapter 11 bankruptcy in 1999, from 2001 to 2008, Kindred Inc. entered into a corporate compliance agreement (CIA) with the U.S. Office of the Inspector General (OIG) because of poor quality of care.  In 2009, Kindred Healthcare agreed to pay $1.3 million to settle allegations in a qui tam complaint that Kindred billed Medicaid for a higher number of drugs than were actually administered.

48.     In 1999, in response to growing concern over the low levels of direct patient staffing and quality of care in nursing homes, the California Legislature amended Health & Safety Code section 1276.5 to increase the minimum nursing staff requirement to 3.2 hours of direct patient care per day, effective January 2000.

49.     Section 1276.5, as amended, states in pertinent part:

[C]ommencing January 1, 2000, the minimum number of actual nursing hours per patient required in a skilled nursing facility shall be 3.2 hours, except as provided in Section 1276.9.

For purposes of this section, "nursing hours" means the number of hours of work performed per patient day by aids, nursing assistants, or orderlies plus two times the number of hours worked per patient day by registered nurses and licensed vocational nurses (except directors of nursing in facilities of 60 or larger capacity) ... except that nursing hours for skilled nursing facilities mean the actual hours of work, without doubling the hours performed per patient day by registered nurses and licensed vocational nurses.

Health & Safety Code § 1276.5 (a) and (b)(1).  The California skilled nursing facilities that are at issue in this action are not exempt under Health & Safety Code section 1276.9.

50.     Generally, only the hours of certified nurses assistants, licensed vocational nurses, and registered nurses are considered to determine whether staffing ratios at skilled nursing facilities are in compliance with the requirement of Section 1276.5.  The 3.2 NHPPD requirement is calculated on a facility-wide basis over a 24-hour period.

51.     Consistent with Section 1276.5, Health & Safety Code section 1559.1 establishes a "Patient's Bill of Rights" for residents in skilled nursing facilities that requires, among other things, that the skilled nursing facilities "employ an adequate number of qualified personnel to carry out all functions of the facility."  An essential function of a skilled nursing facility is the provision of nursing services.

52.     At all relevant times, defendants have been required to staff the Facilities with sufficient levels of qualified personnel so as to comply with the 3.2 NHPPD requirement of Section 1276.5 and the requirements of Section 1599.1.

53.     Defendants portray and promote their facilities as meeting or exceeding all statutory and regulatory requirements, including minimum staffing requirements.  In their standard Resident Rights and in postings at their facilities, defendants uniformly and systematically claim to adhere to "the resident rights afforded under State law, [which] may be obtained from the [Kindred] business office," including the Patient's Bill of Rights, as set forth in Section 72527 of the California Administrative Code, which in part requires defendants to provide an "adequate number of qualified personnel."

54.     Kindred's standard Code of Conduct provided to new residents states in pertinent part: "Kindred strives to sustain the highest quality of services." The Code of Conduct further states that Kindred's "[o]fficers, employees and contractors are expected to adhere to practices that promote these measures," including a "commitment to excellence" requiring Kindred "to be responsive to patient, resident and family concerns" and "maintain patient/residents' rights and dignity at all times while under our care." Kindred's yearly Quality and Social Responsibility Reports likewise tout Kindred's purportedly high quality standards.

55.     In addition, defendants have also promised the State of California that they meet all state and federal requirements regarding the operation, management, administration, and/or ownership of a skilled nursing facility. In particular, as part of the initial licensing and annual renewal process for each Facility, defendants promise to comply with the Health and Safety Code and applicable regulations, which include minimum staffing requirements. The California Department of Public Health lacks the resources, however, to monitor daily staffing levels at the Facilities. At best, it samples only a few days per year.

56.     Defendants' representations track their duty under California law to provide sufficient nursing staff and related services. Unfortunately, the actual nurse staffing provided falls well short of defendants' representations and their legal duty. Defendants have systematically and continuously failed to comply with the 3.2 hour NHPPD requirement under Section 1276.5 on 20% or more days during the Class Period.

57.     Despite their failure to adequately staff their skilled nursing facilities in California and provide the quality of care they claimed to provide, defendants wrongly received in the aggregate millions of dollars in payments from residents and/or their family members. These monies were solicited and collected under the false and misleading pretense that defendants complied with California staffing laws and would remain in compliance.

58.     Plaintiffs Arlene Bettencourt and Harry Harrison have resided in the Care Center of Rossmoor facility on days during the Class Period when direct nursing staff levels were below the minimum levels required under California law.

- 16 -

59.     Defendants did not disclose to Plaintiffs that they did not intend to comply with the 3.2 hour NHPPD minimum staffing requirements of Section 1276.5 or employ an adequate number of qualified nursing personnel to carry out all of the functions of their facilities in compliance with Section 1599.1.  Plaintiffs reasonably expected that staffing would comply with the legal requirements and paid money to defendants from their own funds to remain at the Golden Gate facility.  However, defendants failed to provide the nursing staffing levels that Plaintiffs reasonably expected to receive.  As such, Plaintiffs lost money and was injured in fact as a result of defendants' failure to comply with the legal minimum staffing requirements. Plaintiffs were also deprived of their rights under Sections 1276.5 and 1599.1 to reside in a skilled nursing facility that provided sufficient skilling nursing personnel to comply with California law.

60.     During her stay at the Rossmoor facility, Plaintiff Arlene Bettencourt was subjected to indignities and other harms that directly resulted from inadequate nurse staffing levels at the facility, including without limitation: inappropriate chemical and physical restraints; no response or long response times to her call light; failure to provide showers; lack of assistance with grooming and bathing; lack of assistance with eating; lack of assistance with dressing, including being left without clothing in the hallway; and falls.

61.     During his stay at the Rossmoor facility, Plaintiff Harry Harrison was subjected to indignities and other harms that directly resulted from inadequate nurse staffing levels at the facility, including without limitation: infrequent and inadequate turning and repositioning; inadequate attention to toileting needs; no response or long response times to her call light; lack of assistance with grooming and bathing; lack of assistance with eating, resulting in empty or clogged feeding tubes; lack of assistance with dressing; and failure to provide fluids as needed. Plaintiff Harrison's family often could find no staff at the Facility. There would be no nurses present on the floor for hours at a time.

**CLASS ACTION ALLEGATIONS**

62.     This action is brought on behalf of the Named Plaintiffs identified above and all similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  The class is defined as:

a.     **Facility Resident Class**.  All persons who, from November 23, 2006 through the present (the "Class Period"), resided at a Facility on at least one day during which the Facility did not provide at least 3.2 hours of direct nursing care per patient day.  The claims alleged in the First Cause of Action under Health & Safety Code section 1430(b) are asserted on behalf of the Facility Resident Class.

i.     **Private Pay Subclass**.  All persons who are members of the Facility Resident Class and who made payments to the defendants, or any of them, through their own funds during the Class Period.  In addition to claims under Health & Safety Code section 1430(b), the claims alleged in the Second Cause of Action (Business & Professions Code section 17200 *et seq.*), and Third Cause of Action (Civil Code section 1770 *et seq.*) are asserted on behalf of the Facility Resident – Private Pay Subclass.

b.     Excluded from the above-referenced class and subclass are:  (i) persons who resided at the Alta Vista and Orange Facilities after they were sold on September 30, 2009; (ii) the defendants, any entity in which the defendants have a controlling interest, the officers, directors, and employees of any defendant, and the legal representatives, heirs, successors, and assigns of defendants; (iii) any judge assigned to hear this case (or any spouse or family member of any assigned judge); (iv) any juror selected to hear this case, (v) claims for personal injury and wrongful death; and (vi) any and all legal representatives of the parties and their employees.

63.     This action seeks to enjoin defendants from understaffing, failing to disclose their understaffing, and making misleading promises about staffing.  In addition, this action seeks recovery for economic damages or restitution arising from defendants' understaffing, such as recovery of statutory damages and/or monies paid by Plaintiffs and the class as a result of defendants' failure to disclose and misleading promises.  This action does not seek recovery for

1  personal injuries, wrongful death or other resident-specific harm that may have been caused by

2  inadequate staff at defendants' facilities.

3      64.   **Numerosity of the Class.**  Members of the class are so numerous that their

4  individual joinder herein is impracticable.  The precise number of members of the class and their

5  addresses are presently unknown to Plaintiffs.  The precise number of persons in the class and

6  their identities and addresses may be ascertained from defendants' records.  If deemed necessary

7  by the Court, members of the class may be notified of the pendency of this action by mail,

8  supplemented by published notice.

9      65.   **Common Questions of Fact and Law.**  Common questions of law and fact exist

10  as to all members of the class.  These common legal and factual questions include, without

11  limitation:

12      a.   whether all or some of the Facilities failed to comply with the 3.2 hour

13  NHPPD minimum staffing requirements of Health & Safety Code section 1276.5 during the Class

14  Period;

15      b.   whether defendants failed to employ an adequate number of qualified

16  nursing personnel to carry out all of the functions of their Facilities in violation of Health &

17  Safety Code section 1599.1;

18      c.   whether defendants' understaffing their Facilities violates any right(s) of

19  residents as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California

20  Administrative Code;

21      d.   whether defendants' conduct violates Health & Safety Code

22  section 1430(b);

23      e.   whether defendants' conduct violates Business & Professions Code

24  section 17200 *et seq.*

25      f.   whether defendants' conduct violates the Consumer Legal Remedies Act,

26  Civ. Code § 1770 *et seq.*; and

27

28

1    g. whether defendants engaged in a pattern and practice of unfair and

2    deceptive conduct in connection with their management, administration and operation of the

3    Facilities.

4    66. **Typicality.** The claims of the Named Plaintiffs are typical of the claims of the

5    Facility Resident Class. On information and belief, Plaintiffs and Facility Resident Class

6    Members resided at one or more of the Facilities during the Class Period on days when that

7    Facility failed to (a) meet the 3.2 hour NHPPD minimum staffing requirements of Health &

8    Safety Code section 1276.5; and/or (b) failed to employ an adequate number of qualified nursing

9    personnel to carry out all of the functions of the Facility in violation of Health & Safety Code

10   section 1599.1.

11   67. In addition, the Named Plaintiffs made payments to one or more of the defendants

12   for skilled nursing services rendered at a Facility through private pay funds during the Class

13   Period.

14   68. **Adequacy.** The Named Plaintiffs will fairly and adequately represent the class

15   and subclass on whose behalf this action is prosecuted. Their interests do not conflict with the

16   interests of the Class. Also, they have retained competent counsel who have experience in class

17   action litigation and will prosecute this action vigorously.

18   69. **Defendants' Actions Apply Generally to the Class.** The above-referenced class

19   may be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted

20   or refused to act on grounds generally applicable to the Class, thereby making appropriate final

21   and injunctive relief with respect to the Class.

22   70. **Predominance of Common Questions of Law and Fact.** The above-referenced

23   class may be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law

24   and fact common to Class members, such as those listed above, predominate over the questions

25   affecting only individual members of the Class.

26   71. **Superiority of Class Action.** A class action is superior to other available means

27   for the fair and efficient adjudication of the claims asserted herein. The statutory damages,

28   restitution and other potential recovery for each individual member of the Class are modest,

1    relative to the substantial burden and expense of individual prosecution of these claims.  Given

2    the amount of the individual Class members' claims, few, if any, class members could afford to

3    seek legal redress individually for the wrongs complained of herein.  Thus, few, if any, Class

4    members have any interest in individually controlling the prosecution of separate actions based on

5    the claims in this action.

6         72.    Upon information and belief, no other litigation by a class member concerning the

7    controversy in this case is proceeding.

8         73.    It is desirable to concentrate actions based on Plaintiffs' claims in this forum.

9    Even if the members of the class themselves could afford individual litigation, the court system

10   could not.  Individualized litigation increases the delay and expense to all parties and the court

11   system given the complex legal and factual issues of the case.  By contrast, the class action device

12   presents far fewer management difficulties, and provides the benefits of single adjudication,

13   economy of scale, and comprehensive supervision by a single court.

14        74.    There are few, if any, likely difficulties in managing this action as a class action.

15   **FIRST CAUSE OF ACTION FOR VIOLATION OF HEALTH & SAFETY CODE
     SECTION 1430(b) AGAINST ALL DEFENDANTS**

16

17        75.    Plaintiffs refer to, and incorporate herein by this reference, paragraphs 1 through

18   74 above.

19        76.    Health & Safety Code section 1430(b) provides that "a current or former resident

20   or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 . . . may bring

21   a civil action against the licensee of a facility who violates any rights of the resident or patient as

22   set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Code of

23   Regulations [which incorporates Health & Safety Code section 1599.1], or any other right

24   provided for by federal or state law or regulation."

25        77.    Section 1430(b) provides for a remedy of statutory damages "up to $500" per

26   violation, together with a right to injunctive relief, attorneys' fees and costs.  Health & Safety

27   Code § 1430(b).  The remedies in Section 1430(b) are cumulative to any other remedies provided

28

914152.2                            - 21 -              FIRST AMENDED CLASS ACTION COMPLAINT
                                                        NO. 3:11-CV-00050-JSW

1  by law. *Id.* § 1430(c). Given that the violation involves elderly and/or disabled residents, the

2  statutory damage award is subject to trebling under Civil Code section 3345.

3    78.    Defendants have violated and continue to violate Section 1430(b) by, among other

4  things:

5        a.    failing to comply with the 3.2 hour NHPPD requirement of Health &

6  Safety Code section 1276.5;

7        b.    failing to provide "an adequate number of qualified nursing personnel" to

8  carry out all functions at the Facilities, in violation of Health & Safety Code section 1599.1.

9    79.    As a result of defendants' conduct, Plaintiffs and class members have suffered

10  injury and are entitled to statutory damages in an amount to be determined at trial, as well as

11  injunctive relief, attorneys' fees and costs.

12    80.    For purposes of California Health & Safety Code section 1430(b), on information

13  and belief, the California Department of Public Health ("DPH") lists defendant Kindred West as

14  the licensee for defendants Alta Vista, Bay View, Canyonwood, Fifth Avenue, Golden Gate,

15  Hacienda, Orange, Santa Cruz, Valley Gardens, and Victorian; defendant Hillhaven as the

16  licensee for defendant Nineteenth Avenue; defendant Care Center of Rossmoor LLC as the

17  licensee for defendant Rossmoor; and defendant Smith Ranch Care Center LLC as the licensee

18  for defendant Smith Ranch.

19        **SECOND CAUSE OF ACTION FOR UNLAWFUL, UNFAIR AND DECEPTIVE
        BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

20

21    81.    Plaintiffs refer to, and incorporate herein by this reference, paragraphs 1 through

22  80 above.

23    82.    Defendants, and each of them, have engaged in unlawful and unfair business acts

24  and practices in violation of Business and Professions Code section 17200 *et seq.*

25    83.    In particular, defendants, and each of them, have engaged in unlawful business

26  acts and practices in violation of Business and Professions Code section 17200 *et seq.* by

27  violating numerous laws, statutes and regulations including, without limitation:

28

a.      Failing to maintain adequate levels of nursing staff necessary to meet the 3.2 NHPPD requirement in violation of Health & Safety Code section 1276.5;

b.      Failing to employ an adequate number of nursing qualified personnel violation of Health & Safety Code section 1599.1;

c.      Systematically and uniformly failing to disclose and/or misrepresenting the true level of nurse staffing provided at their California skilled nursing facilities in violation of Business & Professions Code section 17500, *et seq.*

84.     By virtue of the conduct alleged herein, defendants, and each of them, have also engaged in fraudulent business practices in connection with the representations, promises, omissions, and other statements made concerning the level of nurse staffing offered to residents admitted to their California skilled nursing facilities.

85.     By virtue of the conduct alleged herein, defendants, and each of them, have also engaged in deceptive and misleading advertising through representations, promises, omissions, and other statements made concerning the level of nurse staffing offered to residents admitted to their California skilled nursing facilities.

86.     Members of the general public (including without limitation persons admitted to and/or residing in the Facilities during the Class Period, and their family members and/or representatives) have been and are likely to be deceived by the statements, representations, omissions, and other conduct by defendants as alleged herein.

87.     The acts and practices of defendants, and each of them, also constitute unfair business acts and practices within the meaning of Business & Professions Code section 17200, *et seq.*, in that the conduct alleged herein is immoral, unscrupulous and contrary to public policy, and the detriment and gravity of that conduct outweighs any benefits attributable to such conduct. Further, defendants' conduct threatens actual and incipient violations of numerous laws and regulations intended to protect elderly and/or disabled residents, and in addition, defendants' conduct violates the policy or spirit of these laws and otherwise results in a significant harm or threat of harm to elderly and/or disabled residents.

88. Defendants' conduct presents a continuing threat of harm to the public in that, among other things, defendants continue to mislead elderly and/or disabled persons (and their family members and/or representatives) into agreeing to be admitted to their skilled nursing facilities based on the false and misleading representations and failure to disclose the true facts concerning inadequate staffing and understaffing at the Facilities.

89. As a direct and proximate result of the defendants' unlawful business practices, Plaintiffs and members of the Class have been injured in fact, lost money and sustained substantial economic harm as alleged herein. Likewise, as a direct and proximate result of the defendants' unlawful business practices, members of the general public (including Class members) have been harmed and continue to be harmed by defendants' conduct.

90. Plaintiffs seek an injunction that requires that defendants immediately cease acts of unfair and fraudulent business acts or practices as alleged herein, and to enjoin defendants from continuing to engage in any such acts or practices in the future. Plaintiffs also seek restitution, attorneys' fees, and all other remedies permitted by law.

**THIRD CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT AGAINST ALL DEFENDANTS**

91. Plaintiffs refer to, and incorporate herein by this reference, paragraphs 1 through 90 above.

92. Defendants have represented and continue to represent to the public that they provide sufficient nurse staffing to comply with state law through various uniform means of communication, including without limitation, defendants' promotional materials, admission agreements, submissions made to DPH and other materials disseminated to the public in connection with defendants' services.

93. Notwithstanding these representations, defendants have failed to disclose the true facts that their Facilities do not and will not provide sufficient nurse staffing to comply with state law.

94. These acts and practices by defendants were intended to induce and lure elderly and/or disabled residents into agreeing to be admitted to the Facilities based on false and

1   misleading representations without disclosing the true facts concerning inadequate staffing and

2   understaffing at the Facilities.

3         95.     As a result, defendants have violated and continue to violate the Consumer Legal

4   Remedies Act, Civil Code §§ 1770 *et seq.*  ("CLRA") in at least the following respects:

5              a.     In violation of section 1770(a)(5), the defendants' acts and practices

6   constitute misrepresentations and/or omissions that the skilled nursing care that they purport to

7   provide had characteristics, standards, and performance which it did not have; and

8              b.     In violation of section 1770(a)(7), the defendants have misrepresented that

9   the skilled nursing care that they purport to provide is of a particular standard, quality and/or

10   grade, when it is not.

11        96.     Accordingly, Plaintiffs seek appropriate injunctive relief to address defendants'

12   ongoing violations of the CLRA.

13

14                            **PRAYER**

15        WHEREFORE, Plaintiffs pray for judgment as follows:

16        1.     For a Court order certifying that the action may be maintained as a class action;

17        2.     For a Court order requiring that defendants immediately cease acts that constitute

18   unlawful, unfair, and fraudulent business practices, and violations of the CLRA as alleged herein,

19   and to enjoin defendants from continuing to engage in any such acts or practices in the future;

20        3.     For injunctive relief prohibiting defendants' violations of the Health & Safety

21   Code § 1430(b) in the future;

22        4.     For restitution and any other monetary relief permitted by law;

23        97.     For statutory damages in an amount to be proven at trial, including $500.00 in

24   statutory damages for each understaffed Facility day in violation of each Class Members' rights

25   pursuant to Health & Safety Code § 1430(b);

26        98.     For treble damages pursuant to Civil Code section 3345;

27        99.     For pre-judgment interest, according to law;

28        100.    For attorneys' fees and costs; and

1        101.    For such other and further relief as the Court may deem just and proper.

2

3    Dated: March 18, 2011                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                              Robert J. Nelson
                                              Lexi J. Hazam
4                                             Andrew S. Kingsdale
                                              275 Battery Street, 29th Floor
5                                             San Francisco, CA  94111-3339

6

7                                             By:  _____ /s/ Lexi J. Hazam _____
                                                        Lexi J. Hazam

8                                             Christopher J. Healey (State Bar No. 105798)
                                              LUCE, FORWARD, HAMILTON & SCRIPPS LLP
9                                             600 West Broadway, Suite 2600
                                              San Diego, CA 92101
10

11                                            Michael D. Thamer (State Bar No. 101440)
                                              LAW OFFICES OF MICHAEL D. THAMER
                                              Old Callahan School House
12                                            12444 South Highway 3
                                              Post Office Box 1568
13                                            Callahan, CA 96014-5307

14                                            W. Timothy Needham (State Bar No. 96542)
                                              Michael J. Crowley (State Bar No. 102343)
15                                            JANSSEN, MALLOY, NEEDHAM, MORRISON,
                                              REINHOLTSEN & CROWLEY, LLP
16                                            730 Fifth Street
                                              Eureka, CA 95501
17

18                                            Kathryn A. Stebner (State Bar No. 121088)
                                              Sarah Colby (State Bar No. 194475)
                                              STEBNER & ASSOCIATES
19                                            870 Market Street, Suite 1212
                                              San Francisco, CA 94102-2907
20

21                                            Robert S. Arns (State Bar No. 65071)
                                              Steven R. Weinmann (State Bar No. 190956)
22                                            THE ARNS LAW FIRM
                                              515 Folsom Street, 3rd Floor
                                              San Francisco, CA  94105
23

24                                            Attorneys for Plaintiffs

25

26

27

28

914152.2                                        - 26 -                  FIRST AMENDED CLASS ACTION COMPLAINT
                                                                        NO. 3:11-CV-00050-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues stated.

Dated: March 18, 2011                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                         Robert J. Nelson
                                         Lexi J. Hazam
                                         Andrew S. Kingsdale
                                         275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339


                                         By:  _____ */s/ Lexi J. Hazam*_____
                                                         Lexi J. Hazam

                                         Christopher J. Healey (State Bar No. 105798)
                                         LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                                         600 West Broadway, Suite 2600
                                         San Diego, CA 92101

                                         Michael D. Thamer (State Bar No. 101440)
                                         LAW OFFICES OF MICHAEL D. THAMER
                                         Old Callahan School House
                                         12444 South Highway 3
                                         Post Office Box 1568
                                         Callahan, CA 96014-5307

                                         W. Timothy Needham (State Bar No. 96542)
                                         Michael J. Crowley (State Bar No. 102343)
                                         JANSSEN, MALLOY, NEEDHAM, MORRISON,
                                         REINHOLTSEN & CROWLEY, LLP
                                         730 Fifth Street
                                         Eureka, CA 95501

                                         Kathryn A. Stebner (State Bar No. 121088)
                                         Sarah Colby (State Bar No. 194475)
                                         STEBNER & ASSOCIATES
                                         870 Market Street, Suite 1212
                                         San Francisco, CA 94102-2907

                                         Robert S. Arns (State Bar No. 65071)
                                         Steven R. Weinmann (State Bar No. 190956)
                                         THE ARNS LAW FIRM
                                         515 Folsom Street, 3rd Floor
                                         San Francisco, CA  94105

                                         Attorneys for Plaintiffs