MANATT, PHELPS & PHILLIPS, LLP
BARRY S. LANDSBERG (Bar No. CA 117284)
E-mail:  blandsberg@manatt.com
BRAD W. SEILING (Bar No. CA 143515)
E-mail:  bseiling@manatt.com
ANDREW H. STRUVE (Bar No. CA 200803)
E-mail:  astruve@manatt.com
JESSICA J. SLUSSER (Bar No. CA 217307)
E-mail:  jslusser@manatt.com
JUSTIN C. JOHNSON (Bar No. CA 252175)
E-mail:  jjohnson@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

DAVID L. SHAPIRO (*Pro Hac Vice*)
E-mail:  dshapiro@law.harvard.edu
1563 Mass. Ave.
Cambridge, MA  02138
Telephone:  (617) 495-4618
Facsimile:  (617) 495-1950

*Attorneys for Defendants* Kindred Healthcare, Inc., Kindred Healthcare
Operating, Inc., California Nursing Centers, L.L.C., Kindred Nursing
Centers West, L.L.C., Hillhaven-MSC Partnership, Alta Vista Healthcare
& Wellness Centre (a/k/a Alta Vista Healthcare), Bay View Nursing and
Rehabilitation Center, Canyonwood Nursing and Rehab Center, Fifth
Avenue Health Care Center, Golden Gate Healthcare Center, Hacienda
Care Center, Nineteenth Avenue Healthcare Center, Orange Healthcare
and Wellness Centre, L.L.C. (f/k/a Kindred Healthcare Center of Orange
a/k/a La Veta Health Care Center), Santa Cruz Healthcare Center, Smith
Ranch Care Center, L.L.C. (f/k/a Guardian at Smith Ranch Care Center),
Valley Gardens Healthcare & Rehabilitation Center and Victorian
Healthcare Center (f/k/a Hillhaven Victorian)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hazel Walsh,<br><br>    Plaintiff,<br><br>   vs.<br><br>Kindred Healthcare, Inc.; Kindred Healthcare Operating, Inc.; California Nursing Centers, LLC; Kindred Nursing Centers West, LLC; Riverside Healthcare & Wellness Centre, LLC; Hillhaven-MSC Partnership; Alta Vista Healthcare & | No.  3:11-cv-00050-JSW<br><br>**DEFENDANTS KINDRED HEALTHCARE, INC., ET AL.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  June 10, 2011<br>Time:    9:00 a.m<br>Judge:   Hon. Jeffrey S. White |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1    Wellness Centre (a/k/a Alta Vista
     Healthcare); Bay View Nursing and
2    Rehabilitation Center; Canyonwood
     Nursing and Rehab Center; Care Center of
3    Rossmoor, LLC (f/k/a Guardian of
     Rossmoor); Fifth Avenue Health Care
4    Center; Golden Gate Healthcare Center;
     Hacienda Care Center; Nineteenth Avenue
5    Healthcare Center; Orange Healthcare and
     Wellness Centre, LLC (f/k/a Kindred
6    Healthcare Center of Orange a/k/a La Veta
     Health Care Center); Santa Cruz
7    Healthcare Center; Smith Ranch Care
     Center, LLC (f/k/a Guardian at Smith
8    Ranch Care Center); Valley Gardens
     Healthcare & Rehabilitation Center;
9    Victorian Healthcare Center (f/k/a
     Hillhaven Victorian); and DOES 1 through
10   100, inclusive,

11                   Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

2

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

**TO THE COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE** that, on June 10, 2011, at 9:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Jeffrey S. White, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 11, defendants Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., California Nursing Centers, L.L.C., Kindred Nursing Centers West, L.L.C., Hillhaven-MSC Partnership, Alta Vista Healthcare & Wellness Centre (a/k/a Alta Vista Healthcare), Bay View Nursing and Rehabilitation Center, Canyonwood Nursing and Rehab Center, Fifth Avenue Health Care Center, Golden Gate Healthcare Center, Hacienda Care Center, Nineteenth Avenue Healthcare Center, Orange Healthcare and Wellness Centre, L.L.C. (f/k/a Kindred Healthcare Center of Orange a/k/a La Veta Health Care Center), Santa Cruz Healthcare Center, Smith Ranch Care Center, L.L.C. (f/k/a Guardian at Smith Ranch Care Center), Valley Gardens Healthcare & Rehabilitation Center and Victorian Healthcare Center (f/k/a Hillhaven Victorian) (collectively, "Defendants") will and hereby do move the Court for an order dismissing the First Amended Complaint ("FAC") filed by plaintiffs Lisa Edwards and Roxanne Harrison ("Plaintiffs")[1] with prejudice.

Specifically, this Motion seeks dismissal of the FAC with prejudice pursuant to Federal Rule of Civil Procedure Section 12(b)(6), on the ground that it fails to state a claim as a matter of law for alleged violations of: (1) California Health & Safety Code Section 1430(b); (2) California Business & Professions Code Sections 17200 *et seq*.; and (3) Civil Code Sections 1750 *et seq*.

Defendants also provisionally move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the FAC for failure to state a claim by joining the motion to dismiss concurrently filed by defendant Care Center of Rossmoor, L.L.C.

This motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all

---

[1] Defendant Kindred Healthcare, Inc. ("KHI") is specially appearing in this motion.  KHI also filed a motion to dismiss for lack of personal jurisdiction.  Despite the special appearance of KHI to contest personal jurisdiction, the Court sometimes has deferred ruling on a Rule 12(b)(2) motion pending a ruling on a potentially case-dispositive Rule 12(b)(6) motion.  *See Kema, Inc. v. Koperwhats*, 2010 WL 3464737, *12 (N.D.Cal. Sept. 1, 2010) (holding that granting of Rule 12(b)(6) motion mooted consideration of Rule 12(b)(2) motion).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1   other pleadings and papers filed in this action, and any argument that may be presented to the

2   Court prior to or at the hearing on this Motion.

3

4

5   Dated:    April 15, 2011              Respectfully submitted,

6

7                                        MANATT, PHELPS & PHILLIPS

8

9                                        By:  /s/ Barry S. Landsberg

10                                            Barry S. Landsberg
                                              *Attorneys for Defendants* Kindred Healthcare,
11                                            Inc., Kindred Healthcare Operating, Inc.,
                                              California Nursing Centers, L.L.C., Kindred
12                                            Nursing Centers West, L.L.C., Hillhaven-MSC
                                              Partnership, Alta Vista Healthcare & Wellness
13                                            Centre (a/k/a Alta Vista Healthcare), Bay View
                                              Nursing and Rehabilitation Center, Canyonwood
14                                            Nursing and Rehab Center, Fifth Avenue Health
                                              Care Center, Golden Gate Healthcare Center,
15                                            Hacienda Care Center, Nineteenth Avenue
                                              Healthcare Center, Orange Healthcare and
16                                            Wellness Centre, L.L.C. (f/k/a Kindred Healthcare
                                              Center of Orange a/k/a La Veta Health Care
17                                            Center), Santa Cruz Healthcare Center, Smith
                                              Ranch Care Center, L.L.C. (f/k/a Guardian at
18                                            Smith Ranch Care Center), Valley Gardens
                                              Healthcare & Rehabilitation Center and Victorian
19                                            Healthcare Center (f/k/a Hillhaven Victorian)

20

21

22

23

24

25

26

27

28

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................... 1

II.    PLAINTIFFS' ALLEGATIONS ..................................................................... 2

III.   LEGAL ARGUMENT ................................................................................... 3

    A.    Plaintiffs Cannot State a Section 1430(b) Claim Against Facilities Where They Never Resided or Against Entities That Were Not Licensees of any Skilled Nursing Facility ............................................................................. 3

    B.    Plaintiffs' UCL Claim Fails Against Defendants Because They Do Not and Cannot Allege an Injury in Fact and Loss of Money or Property Based on Alleged Inadequate Staffing at Facilities Where They Never Resided.................. 4

    C.    The CLRA Claim Similarly Fails as Plaintiffs Were Not Residents ..................... 6

    D.    Plaintiffs' Alter Ego Allegations Do Not Save Their Claims Against the Facility Defendants and the Non-Licensee Defendants ........................................ 7

          1.    Plaintiffs' Alter Ego Allegations Are Insufficient Under California Law to Establish Liability Against the Facility and Non-Licensee Defendants ................................................................................. 8

               a.    Plaintiffs' Allegations Do Not Establish That There Was a Unity of Interest and Ownership Between the Defendants ............. 9

               b.    Plaintiffs Allege No Facts Demonstrating that the Failure to Disregard the Corporation Would Result in Fraud or Injustice ..................................................................................... 11

          2.    Plaintiffs' Alter Ego Allegations Are Insufficient Under Delaware Law to Establish Liability Against the Facility and Non-Licensee Defendants ................................................................................. 12

    E.    Plaintiffs' Agency Allegations Also Fail to Establish Liability Against the Facility and Non-Licensee Defendants as a Matter of Law ................................ 13

IV.   CONCLUSION ........................................................................................... 14

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alvarado v. Selma Convalescent Hospital,*
153 Cal.App.4th 1292 (2007) ................................................................ 1

*Ashcroft v. Iqbal,*
556 U.S. __, 129 S.Ct. 1937 (2009) ...................................................... 3

*Associated Vendors, Inc. v. Oakland Meat Co.,*
210 Cal.App.2d 825 (1962) .................................................................. 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955 (2007). .................................................. 3

*Butler v. Adoption Media, L.L.C.,*
486 F.Supp.2d 1022 (N.D. Cal. 2007) .................................................. 8

*Californians for Disability Rights v. Mervyn's, L.L.C.,*
39 Cal.4th 223 (2006). .......................................................................... 5

*Crosbie v. Endeavors, et al.,*
2009 U.S. Dist. LEXIS 100244 (C.D. Cal. Oct. 22, 2009) .................... 8

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001).............................................................. 10

*Epstein v. Wash. Energy Co.,*
83 F.3d 1136 (9th Cir. 1996)................................................................ 3

*Flynt Distributing Co., Inc. v. Harvey,*
734 F.2d 1389 (9th Cir. 1984)............................................................. 8

*In re Tobacco II Cases,*
46 Cal.4th 298 (2009) .......................................................................... 6

*Kema, Inc. v Koperwhats,*
2010 WL 3464737, *12 (N.D.Cal. Sept. 1, 2010) ....................... 3, 8, 9, 10

*Kwikset Corporation v. Superior Court,*
51 Cal.4th 310 (2011). ......................................................................... 5

*Maganallez v. Hilltop Lending Corp.,*
505 F.Supp.2d 594 (N.D. Cal. 2007) .................................................. 8

*Massachusetts Mutual Life Ins. Co. v. Superior Court,*
97 Cal.App.4th 1282 (2003). ................................................................ 7

*Meadows v. Emett & Chandler,*
99 Cal.App.2d 496 (1950)................................................................... 10

*Meyer v. Sprint Spectrum LP,*
45 Cal.4th 634 (2009) .......................................................................... 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

**TABLE OF AUTHORITIES**
(continued)

Page

*Mid-Century Ins. Co. v. Gardner*,
  9 Cal.App.4th 1205 (1992) ...................................................................... 11

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989)............................................................... 13

*Moore v. Regents of University – of California*,
  51 Cal. 3d 120, 134 fn. 12 (1990) ........................................................... 13

*Neilson v. Union Bank of California*,
  290 F.Supp.2d 1101 (C.D. Cal. 2003) ....................................................... 8

*People v. Pacific Landmark, L.L.C.*,
  129 Cal.App.4th 1203 (2005) .................................................................... 8

*Princess Cruise Lines, Ltd. v. Superior Court*,
  179 Cal.App.4th 36 (2009) ........................................................................ 6

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984)...................................................................... 3

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal.App.4th 523 (2000). ................................................................. 9, 11

*Trevino v. Merscorp, Inc.*,
  583 F.Supp.2d 521 (D. Del. 2008) ........................................................... 13

*Trustees of the Nat'l Elevator Indus. Pension, Health*
  *Benefit & Educ. Funds v. Lutyk*,
  332 F.3d 188 (3d Cir. 2003)..................................................................... 13

*United States v. Golden Acres, Inc.*,
  702 F. Supp. 1097 (D. Del. 1988))........................................................... 13

*United States v. Pisani*,
  646 F.2d 83 (3d Cir. 1981);...................................................................... 13

*VirtualMagic Asia, Inc.*,
  99 Cal.App.4th 228, 245 (2002) .............................................................. 11

*Wilens v. TD Waterhouse Group, Inc.*,
  120 Cal.App.4th 746 (2003) ...................................................................... 7

**STATUTES**

22 Cal. Code of Regs. § 72061 ..................................................................... 4

Cal. Bus. & Prof. Code § 17200 ............................................................... 1, 3

Cal. Bus. & Prof. Code § 17204 ................................................................... 5

Cal. Civil Code § 1750................................................................................ 1, 3

Cal. Civil Code § 1780(a) ............................................................................. 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Health & Safety Code § 1276.5 .......................................................................... 1, 2, 12

Cal. Health & Safety Code § 1430(b) ....................................................................... 1, 2, 3, 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

## I.    SUMMARY OF ARGUMENT

Plaintiffs Lisa Edwards' and Roxanne Harrison's respective wards, Arlene Bettencourt and Harry Harrison ("Plaintiffs"), resided briefly in Care Center of Rossmoor, a skilled nursing facility ("SNF") located in Walnut Creek, California.  This putative class action alleges that the average daily nurse staffing at certain SNFs was "inadequate" on some days during a four-year putative class period.  All of Plaintiffs' claims depend on a supposed right to enforce a purely regulatory nurse staffing law, Health & Safety Code Section 1276.5, which neither creates nor implies a private right of action by any nursing home resident.  Rather, Section 1276.5 expressly commands only agency enforcement, as the California Court of Appeal held in the only appellate decision on the subject, *Alvarado v. Selma Convalescent Hospital*, 153 Cal.App.4th 1292, 1295 (2007).  *See* Motion to Dismiss filed by Care Center of Rossmoor and joined by all Defendants.

This alternative motion to dismiss rests on a simple legal premise – Plaintiffs may not sue Defendants with which they have never done business, have no connection, and have no factual basis to allege they suffered an injury as a result of each Defendant's conduct.  The Defendants that have brought this motion are the fourteen SNFs that Bettencourt and Harrison never lived in, and the four management or parent companies of the SNFs.

California Health and Safety Code Section 1430(b) ("Section 1430(b)"), the basis of Plaintiffs' first claim, allows a civil action only by a "*current or former resident or patient* of a skilled nursing facility," and against the "*licensee* of a facility who violates any rights of the resident or patient."  Section 1430(b).  Plaintiffs cannot state a Section 1430(b) claim against any facility in which they never resided, or against Defendants with which they had no contact.

Plaintiffs' claims under the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, "UCL"), and Consumer Legal Remedies Act (Cal. Civil Code §§ 1750 *et seq.*, "CLRA") fail for the same reason.  Because they never resided in these facilities or did business with the other company entities, Plaintiffs have no viable claim under either statute.

///

///

///

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

## II.  PLAINTIFFS' ALLEGATIONS

Plaintiffs filed their First Amended Complaint ("FAC") after Defendants moved to dismiss the original complaint.  The FAC substitutes two new class representatives in place of original plaintiff Hazel Walsh, but advances the same core legal theories and factual allegations.

Plaintiffs allege that Defendants failed "to provide sufficient direct nursing care staffing for elderly and disabled residents and skilled nursing facilities" by failing to meet "the minimum staffing required for patients and skilled nursing facilities" under California Health & Safety Code § 1276.5 ("Section 1276.5").[2]  (FAC, ¶¶ 1-3.)  Plaintiffs attempt to state claims for violations of:  (1) Section 1430(b);[3] (2) the UCL; and (3) the CLRA.  The FAC alleges that Plaintiffs resided only in Care Center of Rossmoor.  (FAC, ¶¶ 6-7.)  Despite this, Plaintiffs have sued fourteen other companies that are the licensed operators of facilities where Plaintiffs never resided or were patients,[4] and four corporate entities that are not licensees of any SNF.[5]

Ms. Bettencourt and Mr. Harrison never resided in any of the Facility Defendants or did business with any of the Non-Licensee Defendants, or had contacts or any dealings with these entities.  Plaintiffs have not alleged that they suffered any harm purportedly attributable to these entities.  While the FAC alleges that Plaintiffs suffered mental and physical harms purportedly attributable to the nurse staffing levels at Care Center of Rossmoor (FAC, ¶¶ 60-61), there are no similar allegations relating to the other Defendants.  Plaintiffs even forsake any claim for relief for any "personal injuries or resident-specific harm" to themselves or any putative class member,

---

[2] Section 1276.5 sets forth the minimum number of nursing hours per patient day ("NHPPD") as an aggregate of 3.2 hours.

[3] All further statutory reference are to the Health & Safety Code unless otherwise stated.

[4] These facilities include including Hillhaven-MSC Partnership, Alta Vista Healthcare & Wellness Centre (a/k/a Alta Vista Healthcare), Bay View Nursing and Rehabilitation Center, Canyonwood Nursing and Rehab Center, Fifth Avenue Health Care Center, Golden Gate Healthcare Center, Hacienda Care Center, Nineteenth Avenue Healthcare Center, Orange Healthcare and Wellness Centre, L.L.C. (f/k/a Kindred Healthcare Center of Orange a/k/a La Veta Health Care Center), Santa Cruz Healthcare Center, Smith Ranch Care Center, L.L.C. (f/k/a Guardian at Smith Ranch Care Center), Valley Gardens Healthcare & Rehabilitation Center and Victorian Healthcare Center (f/k/a Hillhaven Victorian) (collectively, the "Facility Defendants"). (FAC, ¶¶ 13-29.)

[5] Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., California Nursing Centers, L.L.C. and Kindred Nursing Centers West, L.L.C. (FAC, ¶¶ 8-11; collectively, the "Non-Licensee Defendants").

1    hoping to sidestep the problems this would pose for their pursuit of class relief.  (FAC, ¶ 63.)

2    **III.    LEGAL ARGUMENT**

3           Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper if a

4    complaint cannot plead a cognizable legal theory or is unable to allege sufficient facts to support

5    a cognizable legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

6    Cir. 1984).  To survive a motion to dismiss for failure to state a claim, a pleading must contain

7    sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

8    FRCP 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial

9    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

10   inference that the defendant is liable for the misconduct alleged."  *Id.*  However, the court need

11   not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere

12   conclusory statements."  *Iqbal*, 129 S.Ct. at 1949.  While a court "must take all of the factual

13   allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched

14   as a factual allegation."  *Id.* at 1949–50.  Mere "labels and conclusions" or "a formulaic recitation

15   of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

16   127 S.Ct. 1955 (2007).  Indeed, "conclusory allegations of law and unwarranted inferences are

17   insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy*

18   *Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

19   **A.    Plaintiffs Cannot State a Section 1430(b) Claim Against Facilities Where**
         **They Never Resided or Against Entities That Were Not Licensees of any**
20       **Skilled Nursing Facility.**

21          Section 1430(b) is both resident specific and facility/licensee specific.  Its focus is alleged

22   violations of patient rights at a particular nursing facility.  A plaintiff cannot assert a claim based

23   on an alleged violation of rights against a facility in which she never resided, and there can be no

24   claim against an entity that was not a licensee of a skilled nursing facility that allegedly violated

25   the plaintiff's rights.  Plaintiffs' Section 1430(b) claims fail as a matter of law for these

26   fundamental reasons.

27          Section 1430(b) provides, in pertinent part, that "a *current or former resident or patient* of

28   a skilled nursing facility . . . may bring a civil action *against the licensee* of a facility who violates

3    DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1    any rights of the resident or patient . . . ." Health & Saf. Code § 1430(b) (emphasis added). To

2    assert a claim under Section 1430(b), an individual must have been a "current or former resident

3    or patient of a skilled nursing facility," and the defendant must be the "licensee" of the facility

4    that violated the resident's rights. *Id*. Because Section 1430(b) plainly applies only to "a current

5    or former resident or patient of a skilled nursing facility," non-residents have no right to sue.

6        The second clause of Section 1430(b) drives the point home, as it creates a private cause

7    of action against the licensee of a facility that allegedly violated a right "*of the resident or*

8    *patient*." The language of the statute is clear that suit will only lie against skilled nursing

9    facilities that supposedly violated "resident or patient" [Plaintiffs'] rights.

10       Plaintiffs were residents only of Care Center of Rossmoor, and never resided in any of the

11   other facilities they have sued. Plaintiffs do not allege, nor could they ever allege, that any entity

12   in which they did not reside violated ***their*** rights. Plaintiffs' 1430(b) claim against the Facility

13   Defendants fails as a matter of law.

14       Plaintiffs also cannot state a Section 1430(b) claim against the Non-Licensee Defendants.

15   By its own terms, Section 1430(b) authorizes a claim only "against the *licensee* of a facility" that

16   violated the resident's rights. In California, a "[l]icensee means the person ... to whom a license

17   has been issued." 22 Cal. Code Regs. § 72061.

18       Care Center of Rossmoor is licensed with California's Office of Statewide Health

19   Planning and Development ("OSHPD"), a department overseen by the California Health and

20   Human Services Agency ("CHHS").[6] But the Non-Licensee Defendants are not licensees of any

21   facility that purportedly violated Plaintiffs' rights. These Defendants could not have violated

22   Plaintiffs' rights. Thus, Plaintiffs cannot state a Section 1430(b) claim against these Defendants

23   as a matter of law.

24   **B.    Plaintiffs' UCL Claim Fails Against Defendants Because They Do Not and**
         **Cannot Allege an Injury in Fact and Loss of Money or Property Based on**
25       **Alleged Inadequate Staffing at Facilities Where They Never Resided.**

26       Plaintiffs also cannot state a claim under the UCL against the licensed operators of

27   _____

28   [6] A self-authenticating link to the license for Care Center of Rossmoor with the OSHPD is as
     follows: https://www.alirts.oshpd.ca.gov/LFIS/FacilityDetail.aspx?FacilityId=677.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1   facilities in which they never resided.  California's Proposition 64 (enacted in 2004) abolished the

2   formerly broad standing requirements under the UCL.  Now, in order to state a sufficient UCL

3   claim, a plaintiff must plead and prove that she suffered an injury in fact and a loss of money or

4   property as a result of the alleged unfair competition committed by the defendant.  In the post-

5   Proposition 64 world, UCL plaintiffs cannot act as self-appointed private attorneys general

6   seeking to vindicate the rights of third parties allegedly impacted by UCL violations.  *See*

7   *Californians for Disability Rights v. Mervyn's, L.L.C.*, 39 Cal.4th 223 (2006).  Where once

8   private suits could be brought by "any person acting for the interests of itself, its members or the

9   general public" (former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198), now private

10   plaintiff standing is limited to any "person who has suffered injury in fact and has lost money or

11   property" as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by

12   voters, Gen. Elec. (Nov. 2, 2004) § 3).  The intent of this change was to *confine standing to those*

13   *actually injured by a defendant's business practices* and to curtail the prior practice of filing suits

14   on behalf of  "clients who have not used the defendant's product or service, viewed the

15   defendant's advertising, or had any other business dealing with the defendant . . . ."  *Californians*

16   *for Disability Rights*, 39 Cal.4th at 228, quoting Prop. 64, § 1, subd. (b)(3) (emphasis added).

17         The California Supreme Court recently reconfirmed that Proposition 64 restricted UCL

18   standing and eliminated private attorney general lawsuits: "[w]e conclude Proposition 64 should

19   be read in light of its apparent purposes, i.e., to *eliminate standing for those who have not*

20   *engaged in any business dealings with would-be defendants* and thereby strip such unaffected

21   parties of the ability to file "shakedown lawsuits," while preserving for actual victims of

22   deception and other acts of unfair competition the ability to sue and enjoin such practices.  (Voter

23   Information Guide, Gen. Elec. (Nov. 2, 2004) argument in favor of Prop. 64, p. 40; see also Prop.

24   64, § 1.)"  *Kwikset Corporation v. Superior Court*, 54 Cal.4th 310, 317 (2011).

25         Plaintiffs cannot state a UCL claim against the moving Defendants, with which they

26   concededly "have not engaged in any business dealings."  *Kwikset, supra,* 51 Cal.4th at 317,

27   *citing Californians for Disability Rights*, 39 Cal.4th at 228.  Under Plaintiffs' theory, their alleged

28   injury is that they lived in a nursing home that purportedly had inadequate levels of staffing, and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

that they paid money based on the expectation that the facility would be adequately staffed. (FAC, ¶ 57.)  Plaintiffs' UCL claim seeks restitution of money paid to the facilities that allegedly failed to provide adequate staffing or care.  (FAC, ¶ 90.)  But Plaintiffs never paid any money to the facilities where they never resided, and they could not have suffered any injury as a result of conduct in a facility they never even visited.  What possible injury could Ms. Bettencourt and Mr. Harrison, who lived in Walnut Creek, have suffered if the facility in Orange had inadequate staffing?  None.  Plaintiffs are seeking to act as private attorneys general enforcing a purely regulatory statute.  They simply cannot do so.

The FAC does not, and cannot, allege that Defendants provided any care *to Plaintiffs*. Plaintiffs imply that they (or members of the general public) have been or are likely to be deceived by Defendants' statements, representations and omissions (FAC, ¶ 77) and that the same persons have sustained economic harm (FAC, ¶ 80).  That is precisely the sort of claim that Proposition 64 eliminated.  Plaintiffs simply cannot meet the requirement that they plead facts showing that they suffered injury in fact and lost money or property as a result of Defendants' alleged unlawful or unfair conduct.

Furthermore, "[a] class representative proceeding on a claim of misrepresentation as the basis of his or her UCL claim must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."  *In re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009).  But Plaintiffs cannot, and do not, allege that Bettencourt or Harrison relied on any misrepresentations made by Defendants, since Bettencourt or Harrison never agreed to reside in any of the Facility Defendants and never entered any agreement with any of the Non-Licensee Defendants.  Because Plaintiffs do not allege the requisite reliance, they cannot state claims under the UCL as a matter of law.  *See Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal.App.4th 36, 39 (2009).

## C.   The CLRA Claim Similarly Fails as Plaintiffs Were Not Residents.

The FAC focuses exclusively on injuries allegedly caused by, and suffered at, Care Center of Rossmoor.  Plaintiffs never describe the nature of the purported deficiencies caused by Defendants, or allege that they suffered any harm as a result of Defendants' actions.  The absence

1   of any causal connection between any injury they allegedly suffered and the alleged acts of a

2   facility where they never resided is fatal to Plaintiffs' CLRA claim.

3       CLRA actions may be brought only by a consumer "who suffers any damage *as a result of*

4   the use or employment "of a proscribed method, act, or practice."  Cal. Civ. Code § 1780(a)

5   (emphasis added).  "This language does not create an automatic award of statutory damages upon

6   proof of an unlawful act . . . .  Relief under the CLRA is specifically limited to those who suffer

7   damage, making causation a necessary element of proof."  *Wilens v. TD Waterhouse Group, Inc.*,

8   120 Cal.App.4th 746, 754 (2003).  Under the CLRA, a plaintiff cannot act as a private attorney

9   general, but instead "[must] show not only that a defendant's conduct was deceptive but that the

10  deception caused them harm."  *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97

11  Cal.App.4th 1282, 1292 (2003).  The California Supreme Court has stated unequivocally that the

12  CLRA "provides that in order to bring a CLRA action, not only must a consumer be exposed to

13  an unlawful practice, but *some kind of damage must result*."  *Meyer v. Sprint Spectrum LP*, 45

14  Cal.4th 634, 641 (2009) (emphasis added).  In summary, causation and actual damage are

15  essential elements to any CLRA claim.  See *Wilens*, 120 Cal.App.4th at 754-55.

16      Plaintiffs do not allege that they were residents of any facility other than Care Center of

17  Rossmoor.  Furthermore, the Non-Licensee  Defendants never operated any health care facility.

18  Plaintiffs resided only at Care Center of Rossmoor (FAC, ¶ 6), so they cannot claim that they

19  were misled by other Defendants, or that any such alleged deception caused them any harm, or

20  that they even had a contract with another Defendant.  The FAC fails to point to any facts

21  showing causation or actual damages as required by the CLRA.  Plaintiffs simply suffered no

22  damage as a result of any purported false advertising by Defendants and they could never allege

23  otherwise.

24      **D.    Plaintiffs' Alter Ego Allegations Do Not Save Their Claims Against the**
            **Facility Defendants and the Non-Licensee Defendants.**

25      Recognizing that they have no valid basis to assert a direct claim against the Facility

26  Defendants or the Non-Licensee Defendants, Plaintiffs seek to hold these Defendants liable under

27  an alter ego theory.  Plaintiffs' alter ego allegations fail as a matter of law to establish liability

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

7

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1    against entities with which they never had contact or did business.

2         The Non-Licensee Defendants are alleged to be citizens of the State of Delaware,

3    organized under Delaware law.  (FAC, ¶¶ 8-11.)  The Facility Defendants are alleged to be

4    citizens of the State of California, organized under California law.  (FAC, ¶¶ 13-29.)  Federal

5    courts sitting in diversity look to the law of the forum state when making a choice of law

6    determination.  *See Butler v. Adoption Media, L.L.C.*, 486 F.Supp.2d 1022, 1036 (N.D. Cal.

7    2007).  But under either Delaware or California law, Plaintiffs' allegations fail to state a legally

8    sufficient alter ego claim.

9              1.      Plaintiffs' Alter Ego Allegations Are Insufficient Under California Law to
                       Establish Liability Against the Facility and Non-Licensee Defendants.
10

11        California respects the corporate form as a legitimate way to set up and run businesses.

12   Under California law, a plaintiff seeking to hold a defendant liable under the alter ego doctrine

13   must show:  (1) such a unity of interest and ownership between the corporation and its equitable

14   owner that the separate personalities of the corporation and shareholder do not actually exist; and

15   (2) that failure to disregard the corporation would result in fraud or injustice.  *See Kema*, 2010

16   WL 3464737, * 8, *citing Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir.

17   1984).  The same alter ego principles applicable to corporations apply to limited liability

18   companies (LLCs)  *See People v. Pacific Landmark, L.L.C.*, 129 Cal.App.4th 1203, 1212 (2005).

19        Here, the FAC fails to allege *facts* establishing either prong.  Plaintiffs' conclusory

20   allegations of some elements of alter ego are insufficient to state a claim upon which relief can be

21   granted.  *See Crosbie v. Endeavors, et al*., 2009 U.S. Dist. LEXIS 100244, *8 (C.D. Cal. Oct. 22,

22   2009).  *See also Neilson v. Union Bank of California,* 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003)

23   ("Conclusory allegations of 'alter ego' status are insufficient to state a claim[;] [r]ather, a plaintiff

24   must allege specifically both elements of alter ego liability, as well as facts supporting each");

25   *Kema,* 2010 WL 3464737 at *9 (same, dismissing insufficiently-pled alter ego allegations on this

26   basis); *Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594, 607 (N.D. Cal. 2007)

27   ("conclusory allegations of alter ego status will not survive a motion to dismiss").  The FAC's

28   alter ego allegations suffer from identical insufficiencies.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles                        8                DEFENDANTS KINDRED HEALTHCARE,
                                                    INC., ET AL.'S MOTION TO DISMISS
                                                    (CASE NO. 3:11-CV-00050-JSW)

1

          a.        Plaintiffs' Allegations Do Not Establish That There Was a Unity of Interest and Ownership Between the Defendants.

2

3        Factors relevant to a determination of the first prong of the alter ego analysis include

4  (1) commingling of funds and other assets of the two entities, (2) the holding out by one entity

5  that it is liable for the debts of the other, (3) identical equitable ownership in the two entities,

6  (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs

7  of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of

8  segregation of corporate records, and (9) appointment of identical directors and officers. *See*

9  *Kema*, 2010 WL 3464737, *8, *citing Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th

10  523, 538-39 (2000).

11        Plaintiffs allege that there is a sufficient unity of interest and ownership among

12  Defendants such that the acts of one are for the benefit of, and can be imputed to, the others.

13  (FAC, ¶ 36.)  Furthermore, the FAC alleges:

14            Kindred[7] conducts, manages, and controls the material compliance functions for the Facilities, including those associated with

15            compliance with the legal and regulatory issues challenged in this lawsuit, namely the failure of each of the Facilities to comply with

16            laws and regulations mandating adequate nurse staffing.

17  (FAC, ¶ 36.)

18            Among other things, with respect to the Facilities, Kindred: (1) oversees all compliance program operations; (2) conducts and

19            oversees regular and targeted training on compliance programs, policies and procedures, as well as federal and state laws and

20            regulations affecting the skilled nursing, home health, and hospice industries; (3) leads and coordinates the efforts of all compliance

21            personnel; (4) develops and implements systems to assist clients in detecting, preventing and reporting potential fraud, waste, and

22            abuse in business operations; (5) creates, reviews, revises, and updates, at a minimum annually, core elements of the compliance

23            program, including but not limited to compliance-related policies and procedures; (6) develops and executes a compliance work plan

24            that is based on industry and government activities, results of internal and external audits and surveys, trended hotline data and

25            other identified areas of prioritized compliance risk; (7) oversees the compliance hotline and maintains systems to respond to calls in

26            a timely manner; (8) tracks data related to compliance concerns and

27

28

---

[7] In the FAC, "Kindred" is defined as Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, L.L.C., and California Nursing Centers, L.L.C.  (FAC, ¶ 11.)

9

DEFENDANTS KINDRED HEALTHCARE, INC., ET AL.'S MOTION TO DISMISS (CASE NO. 3:11-CV-00050-JSW)

issues; (9) initiates, directs, and participates in investigations and
related compliance concerns and issues, and works with
management to bring such issues to resolution; (10) works
collaboratively with each of the Facilities; (11) provides reports of
relevant compliance program activities to the Kindred Board of
Directors on at least a quarterly basis; (12) develops, implements,
and evaluates a system of enterprise-wide compliance
communication to all employees; (13) identifies, monitors, and
responds to potential areas of compliance vulnerability, including
minimum nursing hour requirements; (14) conducts formal
compliance risk assessments that drive the development of an
annual compliance work plan; (15) oversees the development, and
monitors implementation, of corrective action plans in response to
internal or external regulatory audit/survey findings; and
(16) manages all other aspects of the Facilities' compliance efforts.

(FAC, ¶ 37.)  These allegations simply show management and a level of operational control,

which are insufficient to pierce the corporate veil.  *See Kema*, 2010 WL 3464737, *8 ("Mere

ownership of all the stock and control and management of a corporation ... is not of itself

sufficient to cause the courts to disregard the corporate entity"), *citing Meadows v. Emett &*

*Chandler,* 99 Cal.App.2d 496, 498-99 (1950).  Plaintiffs make generic references to the "unity of

interest and ownership" (FAC, ¶ 36), with inadequate factual allegations to support an assertion

that the Non-Licensee Defendants are anything other than separately organized limited liability

companies or corporate entities.  Indeed, all of the Defendants making this motion are each

independent general partnerships, L.L.C.'s, or separate corporations.  Each SNF named in the

Complaint is separately licensed and regulated.[8]

The FAC likewise fails to properly allege alter ego based upon parent-subsidiary status.

For alter ego liability to exist against a parent company, facts must be alleged which, if true,

would establish absolute control by the parent over the subsidiary's day-to-day business conduct.

*See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (noting the general rule that a

subsidiary and parent are separate entities.)  The FAC merely contains a smattering of

miscellaneous allegations, such as that Kindred Healthcare, Inc. provides letters of credit for

certain of its subsidiaries, helps manage the Facilities' labor costs, has certain common officers,

and allows its wholly-owned subsidiaries to use its trademark free of charge.  (FAC, ¶ 39.)  These

---

[8] A link to the OSHPD's self-authenticating website, where license information regarding every
entity named in the FAC is as follows:  https://www.alirts.oshpd.ca.gov/default.aspx.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

10

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1   allegations not only fail to illustrate the type of absolute control that the case law requires, but

2   further, they demonstrate that, having had a chance to amend their complaint with Defendants'

3   prior motions to dismiss in front of them, Plaintiffs have no sufficient facts of alter ego to allege.

4       The FAC also relies on a novel approach to alter ego liability.  Alter ego liability typically

5   runs vertically – from parent to subsidiary or corporation to shareholder.  Plaintiffs are also

6   seeking to apply the alter ego doctrine "horizontally" – to facilities with no direct ownership

7   interest in each other.  Defendants' research has revealed no California case that would support

8   such a novel application of alter ego liability.

9             b.     Plaintiffs Allege No Facts Demonstrating that the Failure to

10                  Disregard the Corporation Would Result in Fraud or Injustice.

11      Plaintiffs utterly fail to allege *any* facts to establish the second required prong for alter ego

12  liability – that a failure to disregard the corporate form would result in an injustice.  "Alter ego

13  will not be applied absent evidence that an injustice would result from the recognition of separate

14  corporate identities, and 'difficulty in enforcing a judgment or collecting a debt does not satisfy

15  this standard.'"  *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal.App.4th 228, 245 (2002)

16  (*quoting Sonora Diamond Corp.*, *supra*, 83 Cal.App.4th at 539); *Mid-Century Ins. Co. v.

17  Gardner*, 9 Cal.App.4th 1205, 1213 (1992) ("Certainly, it is not sufficient to merely show that a

18  creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an

19  unhappy circumstance as proof of an 'inequitable result'.  In almost every instance where a

20  plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor.") (*quoting Associated

21  Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 842 (1962)).

22      California courts require pleading and proof of bad faith conduct by defendants before

23  concluding that an inequitable result justifies an alter ego finding.  *See Mid-Century Ins. Co.*, 9

24  Cal.App.4th at 1213 (purpose of doctrine "is not to protect every unsatisfied creditor, but rather to

25  afford him protection, where some conduct amounting to bad faith makes it inequitable, under the

26  applicable rule above cited, for the equitable owner of a corporation to hide behind its corporate

27  veil") (*quoting Associated Vendors, supra*, 210 Cal.App.2d 825.)

28      Here, Plaintiffs fail to make a single allegation regarding any bad faith on the part of the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

11

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1  eight Defendants or any potential injustice which may result if they are not held to be alter egos.

2  There is no allegation that Defendants used the corporate form to perpetrate a fraud, circumvent a

3  statute, or accomplish some other inequitable purpose.

4  Further, the California Department of Public Health ("the CDPH") strictly regulates the

5  licensing and corporate structure of skilled nursing facilities.  Each skilled nursing facility must

6  disclose to the public its corporate structure and ownership information, including, among other

7  things, the names and addresses of the parent organizations of the management company, an

8  officer or director of the parent organizations, and any person or organization having an

9  ownership or control interest of 5 percent or more in the management company.  Cal. Health &

10  Safety Code § 1267.5.  This open disclosure of corporate structure, coupled with the presumption

11  of corporate separateness, raises a very high bar for Plaintiffs.  Their conclusory alter ego

12  allegations do not come close to manufacturing a claim against these Defendants.

13  In addition, Kindred Healthcare, Inc. is a publicly traded company listed on the New York

14  Stock Exchange.  As a public company, Kindred Healthcare, Inc. must comply with various

15  additional disclosure obligations, make regular filings with the Securities and Exchange

16  Commission, and prepare audited financial statements.  Plaintiffs' alter ego allegations require the

17  Court to believe that Defendants are pulling the wool over the eyes of yet another group of

18  regulators.  Plaintiffs' conclusory allegations would not support such a conclusion.

19  Plaintiffs plainly are unable to state facts sufficient to constitute a cause of action against

20  the Facility Defendants or the Non-Licensee Defendants where they never resided, were never

21  treated and with which they had no contractual relationship.  The FAC's alter ego allegations are

22  insufficient.  For these reasons, Defendants' Motion to dismiss should be granted without leave to

23  amend.

24  2.  Plaintiffs' Alter Ego Allegations Are Insufficient Under Delaware Law to Establish Liability Against the Facility and Non-Licensee Defendants.

25

26  Delaware applies the "single entity test," requiring that the corporation and its

27  subsidiaries operated as a single economic entity, along with an additional element of fraudulent

28  intent.  *See Trevino v. Merscorp, Inc*., 583 F.Supp.2d 521, 528 (D. Del. 2008).  Under the single

1  entity test, the Third Circuit considers seven factors in determining whether a corporation

2  operated as a single economic entity:  (1) gross undercapitalization; (2) failure to observe

3  corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at

4  the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of

5  corporate records; and (7) whether the corporation is merely a facade.  *See United States v.*

6  *Pisani*, 646 F.2d 83, 88 (3d Cir. 1981); *see also Trustees of the Nat'l Elevator Indus. Pension,*

7  *Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).  While the list of

8  factors is not exhaustive and no single factor is dispositive, some combination is required, and an

9  overall element of fraud, injustice, or unfairness must always be present.  *See Trevino*, 583

10  F.Supp.2d at 529 (*citing United States v. Golden Acres, Inc*., 702 F.Supp. 1097, 1104 (D. Del.

11  1988)); *see also*, *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 267-68 (D. Del. 1989).

12      Because Delaware law requires the additional element of *fraudulent intent* by the

13  corporation to disregard the corporate form (*see, Trevino*, 583 F.Supp.2d at 528), alter ego simply

14  has not been sufficiently alleged under Delaware law where, as here, there has been no showing

15  of alter ego under California law.  The FAC contains no allegations of fraudulent intent by

16  Defendants to do anything to Plaintiffs (who did not reside in any facility, or do business with any

17  entity bringing this Motion).  The original Complaint suffered from this same defect, and

18  Plaintiffs have not attempted to correct it in their FAC.

19      **E.    Plaintiffs' Agency Allegations Also Fail to Establish Liability Against the**
       **Facility and Non-Licensee Defendants as a Matter of Law.**

20

21      Plaintiffs also apparently attempt to plead agency, alternatively alleging that "defendants,

22  and each of them, was the agent, partner, joint venturer, representative, and/or employee of the

23  remaining defendants, and was acting within the course and scope of such agency, partnership,

24  joint venture, and/or employment."  (FAC, ¶ 40.)  But these allegations are nothing more than

25  "egregious examples of generic boilerplate" agency allegations that have no legal effect.  *Moore*

26  *v. Regents of University of California*, 51 Cal.3d 120, 134 fn. 12 (1990).

27  ///

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

13

DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)

1    **IV.**    <u>**CONCLUSION**</u>

2          Plaintiffs have no individual claims against any of the Defendants.  Instead, they put the

3  cart before the horse and seek and try to plead aggregate rights under a regulatory law that neither

4  creates nor implies any right of action.  Claims for class relief cannot mask the substantive

5  absence of any individual claims against any Defendant, and certainly not against the Facility

6  Defendants where Plaintiffs never resided or against the Non-Licensee Defendants with which

7  Plaintiffs had no interactions.  No legal authority permits them to do so.  The Court should grant

8  this motion to dismiss without leave to amend.

9

10  Dated:   April 15, 2011           Respectfully submitted,

11                               MANATT, PHELPS & PHILLIPS

12

13                           By:  <u>/s/ Barry S. Landsberg</u>

14                               Barry S. Landsberg
                             *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

                        14            DEFENDANTS KINDRED HEALTHCARE,
INC., ET AL.'S MOTION TO DISMISS
(CASE NO. 3:11-CV-00050-JSW)