1    Robert J. Nelson (State Bar No. 132797)
     Lexi J. Hazam (State Bar No. 224457)
2    LIEFF, CABRASER, HEIMANN &
     BERNSTEIN, LLP
3    Embarcadero Center West
     275 Battery Street, 29th Floor
4    San Francisco, CA  94111-3339
     Telephone:  (415) 956-1000
5    Facsimile:  (415) 956-1008

6    Michael D. Thamer (State Bar No. 101440)        Kathryn A. Stebner (State Bar No. 121088)
     LAW OFFICES OF MICHAEL D. THAMER              Sarah Colby (State Bar No. 194475)
7    Old Callahan School House                     STEBNER & ASSOCIATES
     12444 South Highway 3                         870 Market Street, Suite 1212
8    Post Office Box 1568                          San Francisco, CA 94102-2907
     Callahan, CA 96014-1568                       Telephone:  (415) 362-9800
9    Telephone:  (530) 467-5307                    Facsimile:  (415) 362-9801
     Facsimile:  (530) 467-5437

10

11   [Additional Counsel Appear on Signature Page]

     *Attorneys for Plaintiffs ARLENE BETTENCOURT*
12   *and HARRY HARRISON*

13

14                        UNITED STATES DISTRICT COURT

15                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                           SAN FRANCISCO DIVISION

17

18

19   HAZEL WALSH,                              CASE NO. 11-00050 JSW

20              Plaintiffs,                    **CLASS ACTION**

21        v.                                   **PLAINTIFFS' OPPOSITION TO
                                               DEFENDANTS KINDRED HEALTHCARE
22   KINDRED HEALTHCARE, INC. et al.,          INC., ET AL.'S MOTION TO DISMISS
                                               FIRST AMENDED COMPLAINT
23              Defendants.                    PURSUANT TO FED. R. CIV. P. 12(b)(6)**

24                                             Hearing Date:  June 10, 2011
                                               Time:          9:00 a.m.
25                                             Courtroom:     11, 19th Floor

26                                             The Honorable Jeffrey S. White

27

28

**TABLE OF CONTENTS**

**Page**

I.  SUMMARY OF ARGUMENT ............................................................. 1

II.  SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ........................................................................ 2

III.  LEGAL STANDARD ..................................................................... 2

IV.  ARGUMENT ................................................................................ 3

A.  Plaintiffs Have Adequately Alleged Standing Under Alter Ego, Single Enterprise, and Agency Principles. ................................. 3

1.  Limited Liability Corporations Are Treated the Same as Corporations for Alter Ego Analysis. .......................... 3

2.  Alter Ego Analysis Applies to "Sister" Companies. ...... 4

3.  Plaintiffs Have Sufficiently Pled Unity of Interest. ....... 5

4.  Plaintiffs Have Sufficiently Pled Inequitable Results. ... 7

B.  Vicarious Liability Principles Apply Under Section 1430(b), the UCL, and the CLRA. ................................................................ 10

C.  Plaintiffs Also Have Standing Based on Claims Asserted Directly Against Kindred. ....................................................................... 11

D.  Plaintiffs in Civil Rights Class Actions Have Broad Standing ........ 12

E.  Plaintiffs Have Standing Against All Defendants Under the UCL, Even After Proposition 64. ....................................................... 12

F.  Plaintiffs Have Standing Under the CLRA Because Defendants Failed to Disclose their Inadequate Staffing to All Putative Class Members. ................................................................................. 15

G.  If the Court Dismisses Plaintiffs' Claims on Standing Grounds, It Should Grant Leave to Amend. .............................................. 16

V.  CONCLUSION .............................................................................. 16

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alta Bates Summit Medical Center v. United of Omaha Life Insur. Co.,*
   No. 07-04224 JSW, 2009 WL 57108 (N.D. Cal. Jan. 8, 2009) ............................................ 16

*Alves v. Harvard Pilgrim Health Care, Inc.,*
   204 F. Supp. 2d 198 (D. Mass. 2002) .................................................................. 7

*Angel Music, Inc. v. ABC Sports, Inc.,*
   112 F.R.D. 70 (S.D.N.Y. 1986) ............................................................................ 7

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ...................................................................................... 2

*Associated Vendors, Inc. v. Oakland Meat Co.,*
   210 Cal. App. 2d 825 (Cal. App. 1st Dist. 1962) ............................................ 5, 7, 8

*Cady v. Anthem Blue Cross Life and Health Ins. Co.,*
   583 F. Supp. 2d 1102 (N.D. Cal. 2008) ............................................................ 6

*Californians for Disability Rights v. Mervyn's, LLC,*
   39 Cal. 4th 223 (Cal. 2006) ........................................................................ 13, 14

*Chamberlan v. Ford Motor Co.,*
   369 F. Supp. 2d 1138 (N.D. Cal. 2005) .......................................................... 15

*Clayworth v. Pfizer, Inc.,*
   49 Cal. 4th 789 .............................................................................................. 13

*Crosbie v. Endeavors Techs., Inc.,*
   F. Supp. 2d, No. SA CV 08-1345 AHS, 2009 WL 3464135 (C.D. Cal. 2009) ...................... 9

*Estate of Canavan v. National Healthcare Corp.,*
   889 So. 2d 825 (Fla. App. 2 Dist. 2004) .......................................................... 11

*Falk v. GMC,*
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................................... 15

*Flores v. Greyhound Lines, Inc.,*
   No. B174243, 2005 WL 237331 (Cal. App. 2d Dist. 2005) .................................... 4

*Friedman v. 24 Hour Fitness USA, Inc.,*
   580 F. Supp. 2d 985 (C.D. Cal. 2008) .............................................................. 16

*Gottlieb v. Kest,*
   141 Cal. App. 4th 110 (Cal. App. 2d Dist. 2006) ................................................ 3

*Greenspan v. LADT, LLC,*
   191 Cal. App. 4th 486 (Cal. App. 2d Dist. 2010) ............................................ 4, 5

*Hart v. County of Alameda,*
   76 Cal. App. 4th 766 (Cal. App. 4th Dist. 1999) ................................................ 7

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ......................................................................... 1, 13, 14

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC,*
   No. C 07-3983 JSW, 2007 WL 4532214 (N.D.Cal. 2007) ...................................... 9

*Kema, Inc. v. Koperwhats,*
   No. C09-1587 MMC, 2010 WL 3464737 (N.D. Cal. Sept. 1, 2010)................................ 5, 10

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Kuei-I Wu v. Mamsi Life & Health Ins. Co.*,
    256 F.R.D. 158 (D. Md. 2008) ............................................................. 7

4

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011) ............................................................. 13

5

*LaMar v. H&B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ........................................................ 1, 12

6

*Las Palmas Associates v. Las Palmas Center Associates*,
    235 Cal. App. 3d 1220 (Cal. App. 2d Dist. 1991) ................................. 4

7

*Maganallez v. Hilltop Lending Corp.*,
    505 F. Supp. 2d 594 (N.C. Cal. 2007) ................................................. 9

8

*Massachusetts Mut. Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (Cal. App. 4th Dist. 2002) ............................... 15

9

*Mesler v. Bragg Management Company*,
    39 Cal. 3d 290 (1985) .................................................................... 7

10

*Meyer v. Holly*,
    537 U.S. 280 (2003) ..................................................................... 10

11

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) .................................................................. 15

12

*Monaco v. Liberty Life Assur. Co.*,
    No. C06-07021 MJJ, 2007 U.S. Dist. LEXIS 31298 (N.D. Cal. 2007) ................ 16

13

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................... 2

14

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................... 9

15

*Pan Pac. Sash & Door Co. v. Greendale Park, Inc.*,
    333 P.2d 802 (Cal. App. 2d Dist. 1958) ............................................ 4, 5

16

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) ........................................................... 3

17

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) .......................................................... 12

18

*People v. Ceja*,
    49 Cal. 4th 1 (2010) .................................................................. 1, 10

19

*People v. Pacific Landmark, LLC*,
    129 Cal. App. 4th 1203 (Cal. App. 2d Dist. 2005) ................................. 3

20

*Princess Cruise Lines, Ltd. v. Superior Court*,
    179 Cal. App. 4th 36 (Cal. App. 2d Dist. 2009) .............................. 13, 14

21

*State of Wash. v. American Pipe & Const. Co.*,
    280 F. Supp. 802 (D. Or. 1968) ........................................................ 7

22

*Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (Cal. App. 2d Dist. 2010) ................................. 15

23

*Tran v. Farmers Grp., Inc.*,
    104 Cal. App. 4th 1202 (Cal. App. 1st Dist. 2002) ............................. 3, 4

24

25

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Trevino v. Merscorp.,*
  583 F. Supp. 2d 521.  (D. Del. 2008) ................................. 10

4

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (Cal. App. 4th Dist. 2009) ...................... 1, 4, 5

5

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) .................................................. 12

6

*United States v. City of Redwood City*,
  640 F.2d 963 (9th Cir. 1981)......................................... 3

7

8

*Vasquez v. Superior Court*,
  4 Cal. 3d 800 (1971) ............................................... 15

9

*Webber v. Inland Empire Invs., Inc.,*
  74 Cal. App. 4th 884 (Cal. App. 4th Dist. 1999) ..................... 7

10

*Wilder v. Bernstein,*
  499 F. Supp. 980 (D.C.N.Y. 1980) .................................. 12

11

12

*Zoran Corp. v. Chen,*
  185 Cal. App. 4th 799 (Cal. App. 6th Dist. 2010) ..................... 5

13

**STATUTES**

14

Cal. Civ. Code § 1781 ................................................. 16

California Health & Safety Code section 1430(b) ......................... 1

15

California Health and Safety Code section 1276.5 ........................ 2

16

California Health and Safety Code section 1599.1 ..................... 1, 2

17

Proposition 64, § 1, subd. (e) ......................................... 13

18

**OTHER AUTHORITIES**

May 15, 2008 testimony of Thomas DeBruin, President of SEIU Healthcare
  Pennsylvania, before the U.S. House of Representatives, The Subcommittee on
  Oversight and Investigations, available at
  http://archives.energycommerce.house.gov/cmte_mtgs/110-oi-
  hrg.051508.Debruin-Testimony.pdf ................................... 9

19

20

New York Times, "More Profit and Less Nursing at Many Nursing Homes,"
  September 23, 2007..................................................... 8

21

22

SB 1930, Statement by Author, Senate Committee on Judiciary ............... 12

23

**RULES**

24

Fed R. Civ. Proc. 15(a) .............................................. 16

25

26

27

28

1   **I.       SUMMARY OF ARGUMENT**

2          In this class action, Plaintiffs—current and former residents of one of Defendants'

3   skilled nursing facilities—allege that Defendants failed to comply with California's minimum

4   nurse staffing requirements and failed to disclose their inadequate staffing.  As a result of this

5   deliberate understaffing scheme, Defendants wrongfully obtained millions of dollars from elderly

6   nursing home residents, and violated their rights to adequate nurse staffing, often with horrific

7   consequences.  Plaintiffs assert claims under Health & Safety Code section 1430(b)[1], which

8   allows current and former residents of skilled nursing facilities to enforce the Patient's Bill of

9   Rights (§ 1599.1) and any other right guaranteed to them by federal or state laws or regulations.

10  Plaintiffs also state claims for violations of California's Consumers Legal Remedies Act (CLRA)

11  and the Unfair Competition Law (UCL).

12         All Defendants other than Care Center of Rossmoor and Care Center of Rossmoor

13  LLC move to dismiss on the grounds that the named Plaintiffs—who resided in the Rossmoor

14  facility—have no standing to sue on behalf of residents of other Kindred facilities in California

15  harmed by the same understaffing scheme, or to sue the parent entities responsible for it.

16  Plaintiffs' detailed factual allegations, however, show that Defendants purposely used

17  overlapping shell companies to mask their unity of interest, and to avoid responsibility for their

18  scheme.  As such, Defendants are subject to liability as alter egos and/or a single enterprise.

19  *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1341-1342 (Cal. App. 4th Dist. 2009).

20  Section 1430(b) allows for vicarious liability.  *People v. Ceja*, 49 Cal. 4th 1, 10 (2010).  Plaintiffs

21  also bring direct claims against the parent entities under the UCL and CLRA.  Proposition 64

22  does not alter the rule that only class representatives must meet the standing requirement under

23  the UCL.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009).  Moreover, courts have

24  traditionally applied a broad concept of standing in cases based on violations of the rights of

25  vulnerable populations.  *LaMar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 469 (9th Cir. 1973).

26  For all these reasons, Plaintiffs have standing to bring their claims, and Defendants' motion

27  should be denied.

28
---
[1] Unless otherwise stated, all statutory references are to the California Health & Safety Code.

## II.  SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Defendants own and operate skilled nursing facilities ("Facilities") in California.  First Amended Complaint (FAC), Docket No. 28, ¶¶ 8-28.  Named Plaintiffs, Arlene Bettencourt and Harry Harrison, are former residents of Kindred's Rossmoor facility in Walnut Creek, California.  FAC, ¶¶ 6-7.

On behalf of themselves and others who resided in Defendants' understaffed Facilities named in the Complaint, Plaintiffs allege claims under section 1430(b) based on the violation of two rights: (1) the right to reside in a facility that is adequately staffed as required under section 1599.1(a), and (2) the right to reside in a facility that provides at least 3.2 NHPPD as required under section 1276.5.  FAC, ¶¶75-80.  Plaintiffs also allege claims under the CLRA and UCL based on Defendants' failures to disclose inadequate staffing levels, despite their uniform representations that the Facilities comply with applicable law, including staffing requirements.  FAC, ¶¶81-96.  Additional claims under the UCL are predicated on Defendants' violations of various laws, including sections 1599.1(a) and 1276.5.  FAC, ¶83.[2]

## III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, a complaint must state a facially plausible claim for relief, which means the allegations are sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  When making this determination, the court must accept as true all material allegations in the complaint, as well as all reasonable

---

[2] As defined in the FAC, "Kindred" consists of the four overlapping Kentucky-based companies that own, license, and centrally-manage each of the Facility Defendants: Kindred Healthcare, Inc. ("Kindred, Inc."), Kindred Healthcare Operating, Inc. ("KHOI"), Kindred Nursing Centers West, LLC ("Kindred West"), and California Nursing Centers, LLC ("California Nursing Centers"). FAC, ¶¶8-12.  "Facility Defendants" are the skilled nursing facilities where Plaintiffs and class members resided.  FAC ¶¶16-29.  Although Defendants refer to Kindred West as a "Non-Licensee Defendant," in fact Kindred West has been the DPH licensee for ten of the Facility Defendants where Plaintiffs resided. FAC, ¶¶16-29.  Furthermore, Kindred West wholly owns Care Center of Rossmoor LLC, licensee for the Facility Defendant Care Center of Rossmoor, where named plaintiffs Arlene Bettencourt and Harry Harrison resided.  FAC, ¶¶14. The other licensee defendants—Hillhaven-MSC Partnership and Smith Ranch Care Center LLC—also are headquartered at the same address as the Kindred entities and have been wholly-owned and managed by Kindred.  FAC ¶¶13, 15.

1   inferences to be drawn from them.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  For all

2   of these reasons, it is only under extraordinary circumstances that dismissal is proper under

3   Rule 12(b)(6).  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

4   **IV.   ARGUMENT**

5         **A.   Plaintiffs Have Adequately Alleged Standing Under Alter Ego, Single**
          **Enterprise, and Agency Principles.**
6

7         Defendants do not dispute the legal principle that if Defendants are alter egos of

8   one another, standing exists as to all of them.  Defendants argue, however, that Plaintiffs'

9   allegations are not sufficient to state to a claim for alter ego.  Defendants' arguments

10  mischaracterize both the law and Plaintiffs' allegations.

11        To adequately plead alter ego, Plaintiffs must allege:  "(1) such a unity of interest

12  and ownership that the separate corporate personalities are merged, so that one corporation is a

13  mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable

14  result [will occur] if the acts in question are treated as those of one corporation alone."  *Tran v.*

15  *Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1219 (Cal. App. 1st Dist. 2002).

16        **1.   Limited Liability Corporations Are Treated the Same as Corporations**
          **for Alter Ego Analysis.**
17

18        Although Defendants suggest that their legal status as LLCs itself evidences that

19  they are separate and independent entities, *see* Defs.' MPA at 10, the law is clear that LLCs are

20  treated the same as corporations for purposes of alter ego analysis.  "While generally members of

21  a limited liability company are not personally liable for judgments, debts, obligations, or

22  liabilities of the company 'solely by reason of being a member', they are subject to liability under

23  the same circumstances and to the same extent as corporate shareholders under common law

24  principles governing alter ego liability and are personally liable under the same circumstances and

25  extent as corporate shareholders."  *People v. Pacific Landmark, LLC*, 129 Cal. App. 4th 1203,

26  1212 (Cal. App. 2d Dist. 2005) (citations omitted*). See also Gottlieb v. Kest*, 141 Cal. App. 4th

27  110, 152 (Cal. App. 2d Dist. 2006).

28

921646.6                        - 3 -                OPPOSITION TO KINDRED HEALTHCARE INC.,
                                                     ET AL.'S MOTION TO DISMISS
                                                     CASE NO. 11-00050 JSW

### 2.     <u>Alter Ego Analysis Applies to "Sister" Companies.</u>

Defendants also claim they could find no California cases applying alter ego analysis to "sister" entities that are related horizontally rather than vertically. Defs.' MPA at 11. If so, their hunt was far from diligent, as a number of California courts have discussed and applied this theory, known as the single enterprise rule. For example, in *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 513 (Cal. App. 2d Dist. 2010), the court stated: "Generally, alter ego liability is reserved for the parent subsidiary relationship. However, under the single enterprise rule, liability can be found between sister companies." *See also Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1341-1342 (Cal. App. 4th Dist. 2009); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs,* 235 Cal. App. 3d 1220, 1249-1250 (Cal. App. 2d Dist. 1991); *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th at 1219. In *Troyk*, the plaintiffs brought a class action under the UCL against Farmers Group, Inc. (FGI), Farmers Insurance Exchange (FIE), and FIE's wholly-owned subsidiary Prematic Service Corporation (Prematic) over an undisclosed fee on auto insurance policies. The plaintiffs purchased auto insurance directly from FIE (a reciprocal or interinsurance exchange), but Prematic collected the payments. FGI served as FEI's attorney-in fact and performed administrative duties for FIE. *Troyk*, 171 Cal. App. 4th at 1315. Deeming the entities "sister [or affiliated] companies" under *Las Palmas*, the court held that all three Defendants could be liable under the single enterprise rule for the same transactions. *Id.* at 1342.

Indeed, the single enterprise theory was applied more than 50 years ago in *Pan Pac. Sash & Door Co. v. Greendale Park, Inc.*, 333 P.2d 802, 805 (Cal. App. 2d Dist. 1958). In that case, a home fixtures supplier sued two customer companies that were owned and managed by the same persons, but neither company owned the other—they were horizontally-related. One company (Greendale) purchased real property, and the other (Ralmor) developed houses on it. The defendants loaned money back and forth to each other, and guaranteed each other's bank loans. The court held that the two companies were instrumentalities of each other and both could be held liable as a single venture. *Id.* at 806.[3]

---

[3] *See also Flores v. Greyhound Lines, Inc*., No. B174243, 2005 WL 237331, *4 (Cal. App. 2d Dist. 2005) ("Under the 'single-enterprise' theory, courts have applied the alter ego doctrine to

OPPOSITION TO KINDRED HEALTHCARE INC.,
ET AL.'S MOTION TO DISMISS
CASE NO. 11-00050 JSW

### 3.    **Plaintiffs Have Sufficiently Pled Unity of Interest.**

Among the factors courts consider in analyzing the first element of alter ego/single enterprise—whether there is a "unity of interest"—are:  (1) comingling of funds; (2) the holding out by one entity that it is liable for the debts of the other; (3) use of the same office or business location; (4) appointment of identical directors and officers; (5) failure to adequately capitalize the corporation; (6) use of the corporation as a mere shell or conduit for the affairs of another entity; (7) disregard of legal formalities; (8) use of the corporate entity to procure labor, services, or merchandise for another person or entity; and (9) use of the same employees and/or attorneys. *See, e.g. Kema, Inc. v. Koperwhats*, No. C09-1587 MMC, 2010 WL 3464737, *8 (N.D. Cal. Sept. 1, 2010); *Zoran Corp. v. Chen,* 185 Cal. App. 4th 799, 811-812 (Cal. App. 6th Dist. 2010); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-840 (Cal. App. 1st Dist. 1962).  "No single factor is determinative, instead a court must examine all the circumstances to determine whether to apply the doctrine."  *Greenspan v. LADT, LLC*, 191 Cal. App. 4th at 513 (quoting *Zoran Corp. v. Chin,* 185 Cal. App. 4th at 811-812).[4]

Plaintiffs here have adequately pled unity of interest.  The FAC contains eight paragraphs (FAC, ¶¶32-39) with detailed alter ego allegations, including one (FAC, ¶39) with six subparagraphs, each of which contains a specific and distinct factual allegation showing unity of interest.  Defendants do not reference all of these paragraphs in their MPA and selectively cite or mischaracterize the allegations in them in an attempt to paint them as a "miscellaneous smattering."  Defs.' MPA at 10.  In fact, Plaintiffs have pled a comprehensive set of facts to support a finding that all of the relevant factors are present.  *See* Defs.' MPA at 10.

As to commingling of funds and debts, Plaintiffs allege that multiple Facilities have access to the same multimillion dollar line of credit at the same bank, as stated in letters provided by Kindred, Inc. to the California Department of Public Health (DPH) vouching that the Facilities have sufficient resources.  FAC, ¶ 39(a).  Plaintiffs also allege that Kindred, Inc. retains

---

hold related entities liable where a single business enterprise has been divided into artificial segments in order to manipulate the assets and liabilities of the enterprise.").
[4] The same types of factors are considered when analyzing sister companies under the single enterprise rule.  *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th at 1342; *Pan Pac. Sash & Door Co. v. Greendale Park*, 333 P.2d at 805.

excess professional liability funds from the Facilities and uses these funds to create equity or pay down debt, rather than returning the funds to the Facilities or crediting them to their reserves. FAC, ¶ 39(b).  Plaintiffs further allege that the master leases of the Facilities cross-collateralize lease payments among Facilities, such that if a particular Facility cannot pay the rent, other Facilities or Kindred subsidiaries cover the debt.  FAC, ¶ 39(e).

As to overlapping officers and offices, Plaintiffs allege that the same persons serve as the Vice Presidents, Senior Vice Presidents, Executive Vice Presidents, and Presidents at both Kindred, Inc. and KHOI, and at the same address.  FAC, ¶ 39(d).  As to use of the corporate entity to procure labor for another entity, Plaintiffs allege that Kindred, Inc. manages labor costs by adjusting nurse staffing, thereby showing its oversight of employment matters at the Facility-level (where nursing care is provided) as well as centralized budgetary control.  FAC, ¶ 39(c). Plaintiffs also allege that Kindred makes or approves hiring and firing decisions for the Facilities. FAC, ¶¶ 33, 35.  As to the disregard of legal formalities, Plaintiffs allege that the Facilities have no corporate headquarters, governing bodies, or traditional management hierarchy, and that they freely use the Kindred trademarks and logo with no royalty fee.  FAC, ¶¶ 32, 39(f).

These allegations demonstrate use of the corporation as a mere shell or conduit for the affairs of another entity, as do Plaintiffs' other allegations that Kindred controls the Facilities' compliance (or lack thereof) with laws and regulations regarding staffing; provides the Facilities with centralized information systems, training, human resources, risk management, and accounting; and oversees clinical and quality of care issues for the Facilities.  FAC, ¶¶ 32-35. Finally, all Defendants are represented by the same legal counsel, as evidenced by their pleadings.

In *Cady v. Anthem Blue Cross Life and Health Ins. Co.*, 583 F. Supp. 2d 1102 (N.D. Cal. 2008), Judge Wilken recognized that such a unity of interest could confer standing on class representatives against defendants they did not interact with directly.  Standing against all defendants may lie when "defendants shared some relationship such that they should be treated as a single entity," i.e., if the alleged tortious conduct resulted from "a centralized process involving all defendants" which injured all class members the same way.  *Id.* at 1107. (citing *Alves v.*

- 6 -

1   *Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002)).[5]  Here, Defendants are

2   not only related, but effectively constitute a single company.  FAC, ¶¶32-40.  Defendants'

3   staffing decisions are made by a centralized process and disseminated to a series of wholly-owned

4   licensees with the same headquarters.  FAC, ¶¶8-15, 36-37, 53-55.  These staffing decisions result

5   in the same chronic understaffing conditions at each Facility where class members reside.  FAC,

6   ¶¶4, 47, 60-61.  In light of these allegations, Plaintiffs have standing to represent all absent class

7   members.[6]

8                    **4.      Plaintiffs Have Sufficiently Pled Inequitable Results.**

9                    Plaintiffs have also adequately pled the injustice prong of alter ego analysis: "With

10   respect to the second requirement, it is sufficient that it appear that recognition of the acts as those

11   of a corporation only will lead to inequitable results."  *Associated Vendors, Inc.*, 210 Cal. App. 2d

12   at 837.  The test is thus whether justice or equity can be accomplished, and fraud and unfairness

13   defeated, by disregarding the corporate form.  *Webber v. Inland Empire Invs., Inc.,* 74 Cal. App.

14   4th 884, 900 (Cal. App. 4th Dist. 1999).  "The essence of the alter ego doctrine is that justice be

15   done."  *Mesler v. Bragg Management Company,* 39 Cal. 3d 290, 301 (1985).  "The law of this

16   state is that the separate corporate entity will not be honored when to do so would defeat the

17   rights and equities of third persons."  *Id.* at 301.

18                    Here, Plaintiffs have alleged that Defendants "deliberately set up empty shells and

19

20   [5] *See also Kuei-I Wu v. Mamsi Life & Health Ins. Co.*, 256 F.R.D. 158, 167 (D. Md. 2008)
     (finding that plaintiff had standing to represent a class of individuals who were members of
21   different ERISA plans because the plans were administered by the same defendant and the same
     wrongful policy was executed through each plan); *Angel Music, Inc. v. ABC Sports, Inc.*, 112
22   F.R.D. 70, 77 (S.D.N.Y. 1986) (standing may exist against "defendant classes whose conduct…
     acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses
23   common to the class").
     [6]  Should the Court find that Plaintiffs' alter ego, single enterprise, or agency allegations fail to
24   state a claim against all Defendants, Plaintiffs also allege, in the alternative, that Defendants are
     jointly liable for each others' actions as members of a concerted scheme.  FAC, ¶40.  It is well-
25   established that a class representative has standing against all entities that conspire with each
     other for unlawful purposes, even though the class representative had direct contact with only one
26   of those entities.  *See Hart v. County of Alameda*, 76 Cal. App. 4th 766, 776 (Cal. App. 4th Dist.
     1999) (explaining that a class representative has standing "where the plaintiff alleges the
27   defendants acted under a conspiracy or the defendants are jointly responsible for the plaintiffs'
     injuries"); *State of Wash. v. American Pipe & Const. Co.*,  280 F. Supp. 802, 804 (D. Or. 1968)
28   ("It is equally well established that co-conspirator, joint tort-feasors are jointly and severally
     liable for their acts.").

agents" in order to "deceive the public and the residents as to who was actually responsible for decisions made at the Facilities, while also siphoning funds out of the Facilities," FAC, ¶ 38, and to "escape liability for obligations incurred as much for [the parent entities'] benefit as the Facilities," FAC, ¶ 37.[7]  Defendants ignore these and other allegations, and suggest that Plaintiffs have only pled that a creditor will remain unsatisfied, in an attempt to shoehorn Plaintiffs' allegations into a mere "unhappy circumstance"—such as bankruptcy during an economic downturn—deemed insufficient by *Associated Vendors* at 842.  Defs.' MPA at 11.

In fact, as stated above, Plaintiffs have alleged that Defendants engaged in shell games and diverted funds *for the purpose of* avoiding responsibility.  FAC, ¶¶ 37-38.  Such "manipulation of assets and liabilities so as to concentrate the assets in one and the liabilities in the other" was found by *Associated Vendors* to be evidence of the injustice prong.  *Associated Vendors*, 210 Cal. App. 2d at 840.  It is precisely the kind of "conduct amounting to bad faith" that *Associated Vendors* held "makes it inequitable … for the equitable owner of a corporation to hide behind its corporate veil."  *Id.* at 825.

Defendants also make the specious argument that the injustice prong cannot be met because Kindred makes certain corporate disclosures to the DPH and the SEC, suggesting that if Plaintiffs' allegations were true these regulators would have noticed and taken action against Defendants.  Defs.' MPA at 12.  Defendants' argument would require an evidentiary showing not appropriate to a motion to dismiss, and, in any event, is misguided given that Congress recently enacted the Nursing Home Transparency Act, 42 U.S.C. §1320.3, precisely to combat the hide-and-seek tactics nursing home chains have employed to obfuscate responsibility.[8]  FAC, ¶31.  The detailed disclosures the Act requires will not become publicly

---

[7] *See* New York Times, "More Profit and Less Nursing at Many Nursing Homes," September 23, 2007 (reporting that for-profit nursing home corporations commonly create shell companies for the purpose of avoiding accountability to both the public regulatory system and residents), FAC, ¶31; Request for Judicial Notice ("RJN"), Exh. 3.

[8] One veteran nursing facility employee described it best in his Congressional testimony on the topic, "In the Hands of Strangers: Are Nursing Home Safeguards Working?"  He noted: "Nursing homes today employ ownership structures that obscure who is actually responsible for decisions that impact the quality of care in the facility.  These buyout firms set up layered entities—sometimes there are hundreds of entities involved—to run their nursing homes and avoid liability, often separating the real estate asset holdings from the operations.  A typical model may include one special purpose LLCs to hold a facility's license, another LLC to hold the

1   available until March 2013.  *Id.*

2         Notably, Defendants do not attempt to compare or contrast Plaintiffs' alter

3   ego/single enterprise allegations to those analyzed in any decisions from relevant jurisdictions.

4   Instead they merely recite generic admonitions from the case law against "conclusory

5   allegations."  Defs.' MPA at 8.  Defendants attack a straw horse, as Plaintiffs' allegations

6   substantially exceed those in the decisions Defendants cite for this admonition and other cases.

7   For example, in *Maganallez v. Hilltop Lending Corp.*, the court found sufficient the following

8   alter ego allegations:

9           [Hilltop Lending] was inadequately capitalized, failed to maintain
            corporate formalities and was designed to limit the liability of
10          Nguyen. There was such a unity of interest and ownership between
            Nguyen and [Hilltop Lending] that the individuality and
11          separateness of Nguyen and [Hilltop Lending] has ceased to exist
            and adherence to the fiction of the separate existence of [Hilltop
12          Lending] would sanction fraud and promote injustice.

13   505 F. Supp. 2d 594, 607 (N.C. Cal. 2007).  These allegations are clearly less detailed than those

14   in the present case.[9]

15         In *Crosbie v. Endeavors Techs., Inc.*, F. Supp. 2d, No. SA CV 08-1345 AHS, 2009

16   WL 3464135, *8 (C.D. Cal. 2009), in which the court held that alter ego was not sufficiently pled,

17   the plaintiffs alleged merely that the defendants were officers of each of the companies of which

18   they were alleged to be alter egos, and failed to plead the injustice prong altogether.  In *Neilson v.*

19   *Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1117-18 (C.D. Cal. 2003), the plaintiffs alleged

20   injustice solely on the basis that there would be insufficient assets to pay liabilities if alter ego

21   were not applied, failing to allege any bad faith. Similarly, the plaintiffs in *KEMA, Inc. v.*

22   ─────────────────────────────────────

23   real estate and tangible assets, and contracts with management companies to run the facility's day
     to day operations." RJN, Exh. 2 (May 15, 2008 testimony of Thomas DeBruin, President of SEIU
24   Healthcare Pennsylvania, before the U.S. House of Representatives, The Subcommittee on
     Oversight and Investigations, available at
25   http://archives.energycommerce.house.gov/cmte_mtgs/110-oi-hrg.051508.Debruin-
     Testimony.pdf).
     [9] The same can be said of the allegations in *Jonathan Browning, Inc. v. Venetian Casino Resort,*
26   *LLC*, No. C 07-3983 JSW, 2007 WL 4532214 (N.D.Cal. 2007) (White, J.) "Here, Browning
     alleges that Las Vegas Sands, LLC and Las Vegas Corporation are agents and alter egos of each
27   other. (Compl.¶ 9.) Browning further alleges that this conduct will continue at other Venetian
     properties that are under construction or renovation, which may promote injustice. (Compl.¶ 37.)
28   Thus, the Venetian's motion to dismiss Las Vegas Sands LLC and Las Vegas Corporation is
     denied." *Id.*, at *10.

921646.6                          - 9 -                    OPPOSITION TO KINDRED HEALTHCARE INC.,
                                                           ET AL.'S MOTION TO DISMISS
                                                           CASE NO. 11-00050 JSW

1   *Koperwhats*, 2010 WL 3464737 at *8-9, made only a "conclusory recitation of the elements" of

2   alter ego, without any supporting facts, and failed to allege any bad faith.  As described above, the

3   allegations of Plaintiffs here are far more detailed than such allegations.

4          In sum, with regards to alter ego/single enterprise, it is Defendants who resort to

5   "conclusory recitations," citing generic language on legal principles from the case law while

6   disregarding or mischaracterizing Plaintiffs' actual allegations.  Plaintiffs have made extensive

7   and specific allegations of unity of interest and injustice that more than suffice to state a claim of

8   standing against all Defendants under California or Delaware law.[10]

9       **B.**    **<u>Vicarious Liability Principles Apply Under Section 1430(b), the UCL, and the</u>**

10           **<u>CLRA.</u>**

11          Defendants attempt to segregate Plaintiffs' vicarious liability allegations (alter ego,

12   single enterprise, and agency) from Plaintiffs' standing under section 1430(b), the UCL, and the

13   CLRA.  These issues are not mutually exclusive and cannot be analyzed separately.  Without

14   citing any authority, Defendants propose an exceedingly narrow interpretation of section 1430(b)

15   that would permit only one resident to assert a claim against one facility at a time—regardless of

16   whether that facility is a member of a centrally-operated chain functioning as a single enterprise.

17          Nothing in section 1430(b) abrogates the common law principle that entities that

18   are part of a single enterprise (or alter ego entities, or agents) may be held liable for each other's

19   actions.  "A statute will be construed in light of common law decisions, unless its language

20   clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-

21   law rule concerning the particular subject matter....  Accordingly, [t]here is a presumption that a

22   statute does not, by implication, repeal the common law."  *People v. Ceja*, 49 Cal. 4th at 10

23   (citations omitted).  *See also Meyer v. Holly,* 537 U.S. 280, 285 (2003) ("when Congress creates a

24   _____

[10] As Defendants' MPA indicates, the first prong of the "single entity test" under Delaware law

25   takes into account largely the same list of factors as the "unity of interest" prong of California
    law.  Defs.' MPA at 13.  For the second prong, Delaware law requires "an overall element of

26   injustice or unfairness."  *Trevino v. Merscorp.,* 583 F. Supp. 2d 521, 529.  (D. Del. 2008).
    Defendants attempt to cast the latter prong as requiring a degree of intentionality not required by

27   California law, but regardless, Plaintiffs here have satisfied it with their allegations that
    Defendants take unfair advantage of vulnerable elders and reap unlawful profits from their

28   misrepresentations, FAC, ¶¶5, 57; and that  Defendants "deliberately set up empty shells and
    agents" with the "intent" to deceive the public, FAC, ¶¶5, 37.

    OPPOSITION TO KINDRED HEALTHCARE INC.,
    ET AL.'S MOTION TO DISMISS
    CASE NO. 11-00050 JSW

tort action, it legislates against a legal background of ordinary tort related vicarious liability rules and consequently intends its legislation to incorporate those rules.").  Neither section 1430(b) nor the UCL or CLRA prohibit suits against multiple defendants under vicarious liability principles, regardless of whether the defendants are "licensees."[11]  Thus, each Defendant may be vicariously liable for each other's actions, as alleged by Plaintiffs, and Plaintiffs have standing against each.

**C.      Plaintiffs Also Have Standing Based on Claims Asserted Directly Against Kindred.**

Consistent with Defendants' single enterprise status and centrally-coordinated structure, Plaintiffs' Complaint states that every Kentucky-based Kindred Defendant is directly liable for the understaffing and misrepresentations alleged by Plaintiffs.  *See, e.g.*, FAC, ¶¶82-85 (asserting claims against "Defendants, and each of them").  Such *direct* claims provide an additional basis (beyond vicarious liability) for standing against the Kindred Defendants (Kindred, Inc., KHOI, Kindred West, and California Nursing Centers).

Plaintiffs allege that Kindred controls the Facility Defendants not merely through ownership of shares, but also by directly participating in the day-to-day operations of the Facilities.  *See*, e.g., FAC, ¶ 32 (providing examples of how "Kindred Inc. manages, controls, and operates the Facilities.").  In *Estate of Canavan v. National Healthcare Corp.*, 889 So. 2d 825 (Fla. App. 2 Dist. 2004), the court reversed a directed verdict for one defendant—the sole shareholder of a corporation that managed the nursing home—alleged to have negligently caused the plaintiff's premature death by ignoring complaints of understaffing that lead to pressure sores, infections, poor hygiene, malnutrition, and dehydration.  The defendant was responsible for "establishing and implementing policies regarding the management and operation of the facility" as well as "appointing the administrator who is responsible for the management of the facility." *Id.* at 826.  Because the defendant contributed to the decedent's death by ignoring the documented problems at the facility, the plaintiff was not required to pierce the corporate veil.  *Id.* at 827.  The same principle holds true here:  Plaintiffs need not pierce the corporate veil to assert claims

---

[11] As noted, at least one "Non-Licensee Defendant"—Kindred West—is a licensee.  In fact, it is the licensee for ten of the Facility Defendants.  That moots Kindred's Section 1430(b) argument at least as to Kindred West.

- 11 -

1   against Kindred because Kindred controls the Facilities' understaffing and representations.  Since

2   these Defendants are directly liable for causing injury to Plaintiffs, Plaintiffs have direct standing

3   against them.[12]

4       **D.      Plaintiffs in Civil Rights Class Actions Have Broad Standing**

5           The California legislature enacted Section 1430(b) to protect the "fundamental

6   human rights to which all patients in skilled or intermediate care facilities are entitled."  RJN,

7   Exh. 1 (SB 1930, Statement by Author, Senate Committee on Judiciary); *see also* Section 1599

8   (intending to "set forth [the] fundamental human rights" of residents in skilled nursing facilities).

9   Courts have traditionally applied a "broad and accommodating concept of standing in civil rights

10  cases." *LaMar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 469 (9th Cir. 1973).[13]  Named

11  Plaintiffs here seek to protect the dignity and safety of a vulnerable population that too often is

12  neglected without consequence.  They should be given the opportunity to prosecute this case

13  together with others who have been similarly injured.

14      **E.      Plaintiffs Have Standing Against All Defendants Under the UCL, Even After
15              Proposition 64.**

16          Proposition 64 does not vitiate standing in this case.  As alleged in the Complaint,

17  Mrs. Bettencourt and Mr. Harrison lived at one of Defendants' Facilities and personally suffered

18  injuries as a result of Defendants' uniform and systematic violations of the law. FAC, ¶¶58-61.

19  Under the UCL's broad standing principles, and because Kindred centrally controlled staffing

20  decisions at each of the Facilities, the named Plaintiffs' injuries are sufficient to establish standing

21  under the UCL on behalf of all absent class members, even after Proposition 64.

22          As an initial matter, Defendants' arguments proceed from the wrong premise that

23  each Facility Defendant and "Non-Licensee Defendant" is separate and distinct.  As alleged,

24  Defendants are in fact a single enterprise acting in a uniform and systematic manner that caused

25

26  [12] *See also U.S. v. Bestfoods*, 524 U.S. 51, 68 (1998) (explaining that a parent company is directly liable when it operates a subsidiary's facility, which "is evidenced by participation in the

27  activities of the facility").
    [13] *See also Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (action challenging bail

28  fee); *Wilder v. Bernstein*, 499 F. Supp. 980 (D.C.N.Y. 1980) (action challenging the New York statutory scheme for child-care services).

1   all class members to suffer the same harms.  FAC, ¶¶83, 89.  Defendants also ignore that

2   Plaintiffs' assert claims directly against Kindred, including those Kindred Defendants that were

3   licensees. FAC, ¶¶82-85.

4        Furthermore, Defendants' arguments would contravene the UCL's long-standing

5   rule that class representatives who personally suffered the alleged harm at issue have standing on

6   behalf of absent class members, "without individualized proof of deception, reliance and injury."

7   *In re Tobacco II Cases*, 46 Cal. 4th at 320.  UCL standing is broad because its principal focus is

8   "on the defendant's conduct, rather than the plaintiff's damages."  *Id.* at 312 (Cal. 2009) (citations

9   omitted).

10       Nothing in Proposition 64 or the cases cited by Defendants alters this fundamental

11  rule.  Proposition 64's express purpose is to curb lawsuits by private attorneys "where they have

12  no client who has been injured in fact."  Prop. 64, § 1, subd. (e).[14]  As the California Supreme

13  Court recently explained, Proposition 64 "focused on curbing shakedown suits by parties who had

14  never engaged in *any* transactions with would-be defendants."  *Kwikset Corp. v. Superior Court*,

15  51 Cal. 4th 310, 335 n.21 (Cal. 2011) (emphasis in original; citing *In re Tobacco II Cases*, 46 Cal.

16  4th 316–17).

17       No corresponding concern was expressed about suits by those who
18       had had business dealings with a given defendant, and nothing
         suggests the voters contemplated eliminating statutory standing for
19       consumers actually deceived by a defendant's representations.

20  *Id.* (citing *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th at 789 n.25).  For plaintiffs who in fact were

21  injured by the alleged unlawful activity, Proposition 64 "was not intended to make [the UCL's]

22  standing requirements comparatively *more* onerous."  *Id.* at 335 (emphasis in original); *see also*

23  *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 42 (Cal. App. 2d Dist. 2009)

24  ("The court in *Tobacco II* first concluded that only the class representatives must meet the

25  standing requirement under California's UCL.").[15]

26  [14] *See also Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232 (Cal. 2006)
    (explaining that Proposition 64 prevents "*uninjured* private persons from suing for restitution on
27  behalf of others) (emphasis in original).
    [15] None of the decisions cited by Defendants actually endorse their novel argument here, despite
28  Defendants' selective emphasis of certain phrases in those decisions.  In *Kwikset Corp. v.
    Superior Court*, 51 Cal. 4th 310 (Cal. 2011), the issue was how much injury a plaintiff must

OPPOSITION TO KINDRED HEALTHCARE INC.,
ET AL.'S MOTION TO DISMISS
CASE NO. 11-00050 JSW

1          Mrs. Bettencourt and Mr. Harrison are not "self-appointed private attorney

2   generals." Defs.' MPA at 5. They allege personal injuries caused by understaffing at a facility

3   where they lived. FAC, ¶¶59-61. Defendants failed to disclose to them Defendants' non-

4   compliance with staffing laws. As a result of these misrepresentations, the named Plaintiffs paid

5   money to Defendants, sustaining economic harm. FAC, ¶¶57, 59, 86. Because Kindred

6   controlled all of the Facilities' actions with regards to staffing from the central office in

7   Louisville, Kentucky, other class members suffered the same harms.

8          Defendants attempt to prematurely argue Rule 23 class certification issues in a

9   Rule 12 motion. Defendants will have an opportunity to make the arguments they make here at

10  the class certification stage, regarding typicality and adequacy. But these issues are not relevant

11  to standing. "Representative parties who have a direct and substantial interest have standing; the

12  question of whether they may be allowed to present claims on behalf of others who have similar,

13  but not identical, interests depends not on standing, but on an assessment of typicality and

14  adequacy of representation." *In re Tobacco II Cases*, 46 Cal. 4th at 319 (internal citations

15  omitted). Mrs. Bettencourt and Mr. Harrison have demonstrated their direct and substantial

16  interest in asserting their individual claims. Whether and to what extent they can assert these

17  claims on behalf of other class members is a matter for class certification.

18          This case is not a "shakedown" suit.[16] Plaintiffs are vulnerable elders who were

19  actually and directly injured by Defendants' actions, and so have standing under the broad UCL

20  principles to bring their case against a single enterprise on behalf of all absent class members.

21

22

23  allege to satisfy Proposition 64's "lost money or property" requirement. The Court held that
    plaintiffs have UCL standing if they "can truthfully allege they were deceived by a product's

24  label into spending money to purchase the product, and would not have purchased it otherwise."
    *Id.* at 317. In *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (Cal.

25  2006) the Court decided whether Proposition 64 applied retroactively to cases already pending
    when Proposition 64 took effect. In *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App.

26  4th 36, 44 (Cal. App. 2d Dist. 2009), the court held that summary judgment should have been
    granted because there was no material question of fact as to whether the named Plaintiffs relied

27  on any of defendants' misrepresentations. In this case, named Plaintiffs allege they were
    deceived; retroactivity is not at issue; and Plaintiffs have adequately alleged reliance.

28  [16] Defs' MPA at 5:21; *Cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 316 (Cal. 2009) (providing
    examples of the types of extortionary suits that Proposition 64 was designed to prohibit).

1

**F.** **Plaintiffs Have Standing Under the CLRA Because Defendants Failed to Disclose their Inadequate Staffing to All Putative Class Members.**

2

3      Employing similar arguments, Defendants also contend that named Plaintiffs lack

4  standing to assert claims under the CLRA.  Defs' MPA at 6-7.  Defendants again ignore

5  allegations that named Plaintiffs personally suffered injuries[17], and that these injuries resulted

6  from Defendants' "systematic and continuous" staffing policies and procedures.  FAC, ¶56.

7  Plaintiffs also have standing because Defendants consistently failed to disclose a material fact to

8  class members:  the fact that Defendants regularly and persistently failed to adequately staff the

9  Facilities.  Defendants "uniformly and systematically" informed each resident that the facility

10  would adhere to "the resident rights afforded under State law" by, for example, posting Residents

11  Rights in each Facility.  FAC, ¶53.  Under the UCL, if a defendant fails to disclose such a

12  material fact to the class members, then causation generally will be satisfied for the entire class.

13  *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-1293 (Cal. App.

14  4th Dist. 2002) (citing *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971) and other cases);

15  *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (Cal. App. 2d Dist. 2010) (accord).

16  Here, Defendants have a duty to disclose their true staffing ratios because staffing levels were not

17  known by Plaintiffs, and because understaffing poses a great safety risk to residents.  *See Falk v.*

18  *GMC*, 496 F. Supp. 2d 1088, 1094-1095 (N.D. Cal. 2007) (finding the plaintiff stated a CLRA

19  claim because GMC did not disclose the material fact not known to plaintiff that speedometers

20  were defective).

21      Staffing levels at the Facilities are indisputably material.  Information is "material"

22  if, "had the omitted information been disclosed, one would have been aware of it and behaved

23  differently."  *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005).

24  Plaintiffs would not have resided in the Facilities had they known the true staffing levels.

25  "Plaintiffs reasonably expected that staffing would comply with legal requirements," and paid

26  money based on that understanding.  FAC, ¶59.  Indeed, Kindred would not have been licensed to

27

28

---

[17] Defendants cite *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009).  That case is inapposite because the plaintiffs failed to alleged *any* actual damages.  *Id*. at 639 (describing the case as a "preemptive lawsuit").

OPPOSITION TO KINDRED HEALTHCARE INC., ET AL.'S MOTION TO DISMISS CASE NO. 11-00050 JSW

1   operate the Facilities if Defendants properly disclosed their staffing ratios.  FAC, ¶55

2   (compliance with health and Safety Code is prerequisite for DPH license.  Because no reasonable

3   person would reside in an inadequately-staffed facility, Defendants misrepresentations satisfy the

4   CLRA's causation requirement as to all class members.[18]

5          **G.      If the Court Dismisses Plaintiffs' Claims on Standing Grounds, It Should
                 Grant Leave to Amend.**

6

7          Because Plaintiffs have adequately alleged agency and single enterprise, Plaintiffs

8   have standing to sue all Defendants.  If the Court determines that Plaintiffs lack standing against

9   some of the Defendants, Plaintiffs respectfully request leave to amend, and leave to conduct

10  discovery.  *See* Fed R. Civ. Proc. 15(a) ("leave [to amend] shall be freely given when justice so

11  requires."); *Alta Bates Summit Medical Center v. United of Omaha Life Insur. Co.*, No. 07-04224

12  JSW, 2009 WL 57108, at *5 (N.D. Cal. Jan. 8, 2009) (granting leave to amend to adequately

13  plead alter ego); *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 U.S. Dist. LEXIS

14  31298, *17 (N.D. Cal. 2007) ("it would be inappropriate for the Court to grant Defendants'

15  motion without allowing Plaintiff an opportunity to obtain discovery as to those [alter ego]

16  factors").

17  **V.     CONCLUSION**

18         For all the foregoing reasons, Plaintiffs respectfully request that the Court deny

19  Defendants' Motion to Dismiss.

20

21

22

23

24

25  _____

26  [18] Notably, the CLRA's own class action provision permits suits on behalf of "other consumers
    similarly situated" who were injured by the same "unlawful method, act, or practice."  Cal. Civ.
    Code § 1781 (CLRA class action statute).  Furthermore, in actions for injunctive relief, as here,

27  standing is even broader.  For example, in *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp.
    2d 985, 994-995 (C.D. Cal. 2008), a few named plaintiffs were found to have standing against a

28  chain with hundreds of franchisees for charging additional dues after cancellation of monthly
    membership.

921646.6                           - 16 -                OPPOSITION TO KINDRED HEALTHCARE INC.,
                                                            ET AL.'S MOTION TO DISMISS
                                                            CASE NO. 11-00050 JSW

Dated:  May 13, 2011                    Respectfully submitted,

                                        LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

                                        By:  _____/s/ Robert J. Nelson_____
                                                    Robert J. Nelson

                                        Robert J. Nelson (State Bar No. 132797)
                                        Lexi J. Hazam (State Bar No. 224457)
                                        Andrew S. Kingsdale (State Bar No. 255669)
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA  94111-3339

                                        Michael D. Thamer (State Bar No. 101440)
                                        LAW OFFICES OF MICHAEL D. THAMER
                                        Old Callahan School House
                                        12444 South Highway 3
                                        Post Office Box 1568
                                        Callahan, CA 96014-5307

                                        Kathryn A. Stebner (State Bar No. 121088)
                                        Sarah Colby (State Bar No. 194475)
                                        STEBNER & ASSOCIATES
                                        870 Market Street, Suite 1212
                                        San Francisco, CA 94102-2907

                                        Christopher J. Healey (State Bar No. 105798)
                                        LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                                        600 West Broadway, Suite 2600
                                        San Diego, CA 92101

                                        W. Timothy Needham (State Bar No. 96542)
                                        Michael J. Crowley (State Bar No. 102343)
                                        JANSSEN, MALLOY, NEEDHAM, MORRISON,
                                        REINHOLTSEN & CROWLEY, LLP
                                        730 Fifth Street
                                        Eureka, CA 95501

                                        Robert S. Arns (State Bar No. 65071)
                                        Steven R. Weinmann (State Bar No. 190956)
                                        THE ARNS LAW FIRM
                                        515 Folsom Street, 3rd Floor
                                        San Francisco, CA  94105

                                        *Attorneys for Plaintiffs ARLENE BETTENCOURT and
                                        HARRY HARRISON*