1 | MANATT, PHELPS & PHILLIPS, LLP
BARRY S. LANDSBERG (Bar No. CA 117284)
2 | E-mail: blandsberg@manatt.com
BRAD W. SEILING (Bar No. CA 143515)
3 | E-mail: bseiling@manatt.com
ANDREW H. STRUVE (Bar No. CA 200803)
4 | E-mail: astruve@manatt.com
JESSICA J. SLUSSER (Bar No. CA 217307)
5 | E-mail: jslusser@manatt.com
JUSTIN C. JOHNSON (Bar No. CA 252175)
6 | E-mail: jjohnson@manatt.com
11355 West Olympic Boulevard
7 | Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
8 | Facsimile: (310) 312-4224

9 | DAVID L. SHAPIRO (*Pro Hac Vice*)
E-mail: dshapiro@law.harvard.edu
10 | 1563 Mass. Ave.
Cambridge, MA 02138
11 | Telephone: (617) 495-4618
Facsimile: (617) 495-1950

12

13 | *Attorneys for Defendants* Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., California Nursing Centers, L.L.C., Kindred Nursing
14 | Centers West, L.L.C., Hillhaven-MSC Partnership, Alta Vista Healthcare & Wellness Centre (a/k/a Alta Vista Healthcare), Bay View
15 | Nursing And Rehabilitation Center, Canyonwood Nursing And Rehab Center, Fifth Avenue Health Care Center, Hacienda Care Center,
16 | Nineteenth Avenue Healthcare Center, Orange Healthcare and Wellness Centre, L.L.C. (f/k/a Kindred Healthcare Center of Orange a/k/a La
17 | Veta Health Care Center), Santa Cruz Healthcare Center, Smith Ranch Care Center, L.L.C. (f/k/a Guardian at Smith Ranch Care Center),
18 | Valley Gardens Healthcare & Rehabilitation Center and Victorian Healthcare Center (f/k/a Hillhaven Victorian)

19 | UNITED STATES DISTRICT COURT

20 | NORTHERN DISTRICT OF CALIFORNIA

21

22 | Hazel Walsh,                          No. 3:11-cv-00050-JSW

23 | Plaintiff,                 **DEFENDANTS KINDRED HEALTHCARE, INC., ET AL'S REPLY IN SUPPORT OF**
24 | vs.                        **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

25 | Kindred Healthcare, Inc.; Kindred
Healthcare Operating, Inc.; California        Hearing Date: June 10, 2011
26 | Nursing Centers, LLC; Kindred Nursing       Time:         9:00 a.m.
Centers West, LLC; Riverside Healthcare       Judge:        Hon. Jeffrey S. White
27 | & Wellness Centre, LLC; Hillhaven-MSC
Partnership; Alta Vista Healthcare &
28 | Wellness Centre (a/k/a Alta Vista

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Healthcare); Bay View Nursing and
    Rehabilitation Center; Canyonwood
2   Nursing and Rehab Center; Care Center of
    Rossmoor, LLC (f/k/a Guardian of
3   Rossmoor); Fifth Avenue Health Care
    Center; Golden Gate Healthcare Center;
4   Hacienda Care Center; Nineteenth Avenue
    Healthcare Center; Orange Healthcare and
5   Wellness Centre, LLC (f/k/a Kindred
    Healthcare Center of Orange a/k/a La Veta
6   Health Care Center); Santa Cruz
    Healthcare Center; Smith Ranch Care
7   Center, LLC (f/k/a Guardian at Smith
    Ranch Care Center); Valley Gardens
8   Healthcare & Rehabilitation Center;
    Victorian Healthcare Center (f/k/a
9   Hillhaven Victorian); and DOES 1 through
    100, inclusive,

10              Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF ARGUMENT ...................................................................... 1

II.    LEGAL ARGUMENT ............................................................................. 2

    A.   Plaintiffs Do Not Allege Any Direct Injury as a Result of Defendants' Allegedly Wrongful Conduct .................................................................... 2

         1.   Only Residents of Facilities That Caused a Violation of Those Residents' Rights Can Assert Claims Under Section 1430(b), and Plaintiffs Never Resided in Any of Defendants' Facilities or Suffered a Violation of Their Rights Caused by These Defendants .......... 2

         2.   Plaintiffs' UCL and CLRA Claims Fail Because They Have Not Alleged That Defendants' Conduct Caused Them Harm ......................... 3

         3.   Plaintiffs' Inability to Allege That Any of the Defendants' Conduct Caused Them Harm Is a Fatal Jurisdictional Standing Defect .................. 4

    B.   Plaintiffs' Conclusory Alter Ego Allegations Do Not Establish Claims Against Facilities in Which They Never Resided or Against Defendants With Which They Had No Dealings .................................................... 6

         1.   Plaintiffs Have Not Alleged Sufficient Facts to Allege a Claim for Alter Ego Liability Against the Sister Entities ............................................ 7

              a.   Plaintiffs Have Not Sufficiently Alleged Unity of Interest and Ownership ................................................................... 7

              b.   Plaintiffs Have Not Sufficiently Alleged an Inequitable Result. .................................................................................. 9

         2.   Plaintiffs Have Not Alleged Sufficient Facts to Allege a Claim for Alter Ego Liability Against the Parent Entities ......................................... 9

              a.   Plaintiffs Have Not Sufficiently Alleged Unity of Interest and Ownership ................................................................... 9

              b.   Plaintiffs Have Not Sufficiently Alleged an Inequitable Result. .................................................................................. 10

    C.   There is No "Sympathetic Plaintiff" Exception to Article III Standing ............... 13

    D.   Plaintiffs' Conspiracy and Agency Allegations Also Fail ..................................... 13

    E.   The Court Should Deny Plaintiffs' Request for Leave to Conduct Discovery to Search for Facts to Support a Claim Against These Defendants ...................................................................................... 13

III.   CONCLUSION ........................................................................................... 15

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Allee v. Medrano,*
  416 U.S. 802 (1974) ......................................................................................................... 4, 5

5

*Alta Bates Summit Medical Center v. United Omaha Life Ins. Co.,*
  2009 WL 57108 (N.D. Cal. Jan. 8, 2009) ....................................................................... 6, 14

6

7

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
  7 Cal. 4th 503 (1994) ............................................................................................................ 13

8

*Associated Vendors, Inc. v. Oakland Meat Co.,*
  210 Cal. App. 2d 825 (1962) ........................................................................................... 11, 12

9

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ............................................................................................... 14

10

*Cady v. Anthem Blue Cross Life and Health Insurance Co.,*
  583 F. Supp. 2d 1102 (N.D. Cal. 2008) .......................................................................... 6, 14

11

12

*Calvert v. Huckins,*
  875 F. Supp. 674 (E.D.Cal. 1995) ........................................................................................ 10

13

*Copperweld Corp. v. Independent Tube Corp.,*
  467 U.S. 752 (1984) ............................................................................................................... 13

14

*Doe v. Unocal Corp.,*
  248 F.3d 915 (9th Cir. 2001) ................................................................................................. 10

15

16

*Estate of Canavan v. Nat'l Healthcare Corp.,*
  889 So. 2d 825 (Fl. App. D. 2004) .......................................................................................... 6

17

*Feitelberg v. Credit Suisse First Boston, LLC,*
  134 Cal. App. 4th 997 (2005) .................................................................................................. 4

18

19

*Freeman v. San Diego Ass'n of Realtors,*
  77 Cal. App. 4th 171 (1999) ................................................................................................... 13

20

*Greenspan v. LADT, LLC,*
  191 Cal. App. 4th 486 (2010) ................................................................................................... 8

21

*Hart v. County of Alameda,*
  76 Cal. App. 4th 766 (1999) ..................................................................................................... 5

22

23

*Hennessey's Tavern, Inc. v. American Air Filter Co., Inc.,*
  204 Cal. App. 3d 1351 (1988) .................................................................................................. 9

24

*Henry v. Circus Circus Casinos, Inc.,*
  223 F.R.D. 541 (D. Nev. 2004) ................................................................................................ 5

25

26

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) .......................................................................................................... 3, 4

27

28

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Jonathan Browning, Inc. v. Venetian Casino Resort,*
    LLC, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) .......................................................... 11

*Kazir's Floor & Home Design, Inc. v. M-MLS.COM,*
    394 F.3d 1143 (9th Cir. 2004)............................................................................................. 10

*Kema, Inc. v. Koperwhats,*
    2010 WL 3464737 (N.D. Cal. Sept. 1, 2010) ......................................................................... 6

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ........................................................................................................... 3

*LaMar v. H&B Novelty & Loan Co.,*
    489 F.2d 461 (9th Cir. 1973).............................................................................................. 13

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.,*
    235 Cal. App. 3d 1220 ........................................................................................................... 8

*Lee v. State of Oregon,*
    107 F.3d 1382 (9th Cir. 1997)............................................................................................... 4

*Leek v. Cooper,*
    194 Cal. App. 4th 399 (Apr. 15, 2011) ............................................................................... 10

*Local 159 v. Nor-Cal Plumbing, Inc.,*
    185 F.3d 978 (9th Cir. 1999)................................................................................................. 9

*Lovesey v. Armed Forces Benefit Association,*
    2008 WL 4856350 (N.D. Cal. Nov. 7, 2008)....................................................................... 10

*Madrid v. Perot Systems Corp.,*
    130 Cal. App. 4th 440 (2005) ............................................................................................... 4

*Maganallez v. Hilltop Lending Corp.,*
    505 F. Supp. 2d 594 (N.D. Cal. 2007) ............................................................................... 11

*Martinez v. Manheim Central California,*
    2011 WL 1466684 (E.D. Cal. April 18, 2011) .................................................................... 14

*Massachusetts Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002) ............................................................................................... 4

*Meyer v. Holley,*
    537 U.S. 280 (2003)................................................................................................................ 2

*Mid-Century Ins. Co. v. Gardner,*
    9 Cal. App. 4th 1205 (1992) ............................................................................................... 11

*Miller v. Pac. Shore Funding, Inc.,*
    224 F. Supp. 2d 977 (D. Md. 2002) ...................................................................................... 4

*Monaco v. Liberty Life Assur. Co.,*
    2007 U.S. Dist. LEXIS 31298 (N.D. Cal. April 17, 2007) .................................................. 14

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Moore v. Regents of the University of California*,
    51 Cal. 3d 120 (1990) ............................................................................... 13

4

*Neilson v. Union Bank of California*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................... 6, 10, 11

5

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)............................................................................... 4, 5

6

7

*Pac. Sash & Door Co. v. Greendale Park, Inc.*,
    166 Cal. App. 2d 652 (1958)...................................................................... 8

8

*People v. Ceja*,
    49 Cal. 4th 1 (2010) .................................................................................... 3

9

*Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Services, Inc.*,
    206 Cal. App. 3d 1 (1988) ........................................................................ 10

10

11

*Simons v. Horowitz*,
    151 Cal. App. 3d 834 (1984)....................................................................... 5

12

*Smith v. Simmons*,
    638 F. Supp. 2d 1180 (E.D. Cal. 2009).................................................... 9

13

*Sonora Diamond Corp. v. Superior Court (Sonora Union High Sch. Dist.)*,
    83 Cal. App. 4th 523 (2000) ........................................................ 6, 10, 11

14

15

*Tran v. Farmers Grp., Inc.*,
    104 Cal. App. 4th 1202 (2002) .................................................................. 8

16

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App.4th 1305 (2009) .................................................................... 8

17

18

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
    99 Cal. App. 4th 228 (2002) .................................................................... 11

19

*Watanabe v. California Physicians' Service*,
    169 Cal. App. 4th 56 (2008) ...................................................................... 3

20

21

**STATUTES AND RULES**

22

Fed. R. Civ. P. 23 .............................................................................................. 4, 5, 6

23

Cal. Health & Saf. Code § 1267.5...................................................................... 12

24

Cal. Health & Saf. Code § 1430(b) ................................................................. 2, 3

25

26

27

300257692.1

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   SUMMARY OF ARGUMENT

Plaintiffs' opposition confirms that they are trying to act as self-appointed private attorneys general, by suing facilities in which they never resided, and companies with which they had no dealings.  In Plaintiffs' world view, a resident of one nursing home could sue some *other facility* in which she never resided, based on alleged conduct that only impacted *other* residents at the *other* facilities.  This theory represents an extreme departure from accepted pleading standards and basic Article III standing principles.  Plaintiffs must allege individual harm caused by the alleged wrongful conduct of *each* Defendant.  Their amended complaint fails to state any facts that would establish direct liability against these Defendants.

Plaintiffs' conclusory alter ego allegations and the single enterprise doctrine do not revive their claims.  The FAC fails to allege facts to support either required prong to establish alter ego liability – both as to the sister entities and the parent entities.

But more fundamentally, Plaintiffs stretch these limited concepts of derivative liability far beyond the breaking point.  The alter ego and single enterprise doctrines allow a plaintiff to hold one corporate entity *financially* responsible for harm that another corporate entity caused to the plaintiff.  But that is not what Plaintiffs are trying to do here.  Their theory directly challenges a public company's legitimate corporate structure for operating nursing homes in California.  They condemn and seek to collapse that legitimate structure and assert claims based on *any* alleged harm to *any* resident at *any* of the multiple and separately licensed facilities sued in this action.  No authority supports that extreme extension of alter ego or single enterprise liability.

Plaintiffs have already amended their complaint once, and they do not explain what additional facts they could allege to support their novel theories of liability.  Instead, Plaintiffs want discovery to try to ferret out some basis to establish standing where none exists.  The Court should not allow Plaintiffs to sue first and ask questions later.  The Court instead should dismiss the complaint as to these Defendants without further leave to amend.[1]

---

[1] Defendants joined in Care Center of Rossmoor, L.L.C's motion to dismiss.  This Motion need not be reached if the Court agrees there is no actionable claim.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

1

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1

## II.    LEGAL ARGUMENT

2

### A.    Plaintiffs Do Not Allege Any Direct Injury as a Result of Defendants' Allegedly Wrongful Conduct.

3

4

#### 1.    Only Residents of Facilities That Caused a Violation of Those Residents' Rights Can Assert Claims Under Section 1430(b), and Plaintiffs Never Resided in Any of Defendants' Facilities or Suffered a Violation of Their Rights Caused by These Defendants.

5

6        Defendants do not concede that Plaintiffs' alter ego allegations, if properly pled, cure their

7    standing defects, as Plaintiffs argue.  (Opp. at 3:7-8.)  Alter ego cannot be the basis of liability

8    under California Health & Safety Code Section 1430(b) ("Section 1430(b)") as a matter of law,

9    because that statute expressly and narrowly confers standing only to *a resident* of a facility, and

10   the only proper defendant is the *licensee* of the facility that allegedly violated the resident's

11   rights.

12        *Meyer v. Holley,* 537 U.S. 280 (2003), does not support extending Section 1430(b)

13   liability to facilities in which Plaintiffs never resided, or to corporate parents with which Plaintiffs

14   had no dealings.  The statute at issue in *Meyer* generally prohibited "any person or other entity

15   whose business includes engaging in residential real estate-related transactions to discriminate,"

16   and that section broadly defined the "persons" covered by the act.  *Id.*  As the Supreme Court

17   noted, it was well established that the act "provides for vicarious liability."

18        In contrast, Section 1430(b) specifically limits both the class of persons who can sue

19   (current or former residents) *and* the types of entities that can be sued (licensees of the facility

20   that violated the resident's rights).  The law provides that "a *current or former resident or patient*

21   of a skilled nursing facility . . . may bring a civil action against the *licensee of a facility* who

22   violates any rights of the resident or patient . . . ." *Id.* (emphasis added).  These limitations on

23   Section 1430(b) liability make perfect sense, because Section 1430(b) protects *resident* rights.  A

24   resident cannot have rights in a facility in which she never resided, and a facility in which a

25   resident never resided cannot have violated her rights.  It's that simple.  No court has extended

26   Section 1430(b) liability to independently licensed facilities in which the plaintiff never resided,

27   or to corporate parents that had no involvement in resident care.

28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

2

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1    *People v. Ceja*, 49 Cal. 4th 1, 10 (2010), cited by Plaintiffs, merely holds generally that a

2    statute should be harmonized with common law principles when the two conflict.  That general

3    principle is irrelevant because Section 1430(b) expressly defines who can sue, and what entities

4    they can sue.  *See Watanabe v. California Physicians' Service*, 169 Cal. App. 4th 56, 63-64

5    (2008) (no vicarious liability for statutory violation where statute clearly defines liable parties).

6    Plaintiffs simply cannot state a Section 1430(b) claim against these Defendants as a matter

7    of law.  Defendants' motion to dismiss should be granted without leave to amend.

8                    **2.       Plaintiffs' UCL and CLRA Claims Fail Because They Have Not
                               Alleged That Defendants' Conduct Caused Them Harm.**
9

10   Plaintiffs also fail to address the unassailable point that both the UCL and the CLRA

11   require actual injury *caused by each Defendant* they are suing.  Plaintiffs' lengthy discussion of

12   standing fails to address the operative question:  *whom* do they have standing to sue?  (Opp. at 12-

13   16.)  Plaintiffs simply assume that they can sue all Defendants by alleging they did business with

14   one Defendant (Rossmoor, where they resided).  That Plaintiffs did business with Rossmoor,

15   however, does not confer standing to sue these other Defendants.

16   Plaintiffs cite no authority to support their expansive interpretation of UCL and CLRA

17   standing.  That is because there is none, and their argument directly contradicts well-settled

18   authority.  The cases Plaintiffs cite only confirm that UCL and CLRA plaintiffs lack standing to

19   sue defendants with which they have had no dealings.  *See* Opp. at 13:17-20 (citing *In re Tobacco

20   II Cases*, 46 Cal. 4th 298, 316 (2009) (acknowledging intent of Proposition 64 to prevent lawsuits

21   filed "for clients who have not used the defendant's product or service, viewed the defendant's

22   advertising, or had any other business dealing with the defendant"); *Kwikset Corp. v. Superior

23   Court*, 51 Cal. 4th 310, 342 n.21 (2011) ("No corresponding concern was expressed about suits

24   by those *who had had business dealings with a given defendant*, and nothing suggests the voters

25   contemplated eliminating statutory standing for consumers *actually deceived by a defendant's

26   representations*.") (emphasis added)).

27   Plaintiffs do not allege or argue that they had any business dealings with these

28   Defendants.  It is now clear that UCL claims cannot be asserted against defendants with which the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1    plaintiff "has not engaged in business dealings."  *Kwikset*, 51 Cal. 4th at 342.  A plaintiff likewise

2    cannot assert private attorney general claims under the CLRA, and instead must "show not only

3    that a defendant's conduct was deceptive but that the deception caused them harm."

4    *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002).

5    Plaintiffs clearly lack standing to assert UCL and CLRA claims against these Defendants.  The

6    Court should dismiss the UCL and CLRA claims with prejudice.

### 3.    Plaintiffs' Inability to Allege That Any of the Defendants' Conduct Caused Them Harm Is a Fatal Jurisdictional Standing Defect.

8            Defendants are not raising class certification issues, as Plaintiffs argue.  (Opp. at 14:8-

9    17.)  At this stage, the Court is evaluating only Plaintiffs' individual allegations and individual

10   rights.  "[T]he trial court initially must address whether the named plaintiffs have standing under

11   Article III to assert their individual claims."  *In re Tobacco II Cases*, 46 Cal. 4th at 319.  Only "*if

12   that initial test is met*" will the Court analyze whether Plaintiffs satisfy Rule 23.  *Id*. (emphasis

13   added).

14           "Standing is a jurisdictional element that must be satisfied prior to class certification."

15   *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997).  The absence of specific allegations

16   of injury or dealings with the Defendants is fatal to Plaintiffs' ability to pursue independent

17   claims.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs

18   purporting to represent a class establishes the requisite of a case or controversy with the

19   defendants, none may seek relief on behalf of himself or any other member of the class"); *Allee v.

20   Medrano*, 416 U.S. 802, 828-29 (1974) ("a named plaintiff cannot acquire standing to sue by

21   bringing his action on behalf of others who suffered injury which would have afforded them

22   standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing

23   on injury which he does not share.  Standing cannot be acquired through the back door of a class

24   action"); *Miller v. Pac. Shore Funding, Inc.*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) ("In a

25   multi-defendant action or class action, the named plaintiffs must establish that they have been

26   harmed by each of the defendants.").[2]

---

[2] *See also Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1018 (2005) ("If a specific form of relief is foreclosed to the claimants as individuals, it remains unavailable to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

Chief Judge Pro of the United States District Court, District of Nevada, in *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541 (D. Nev. 2004) ("*Circus Circus*"), succinctly crystallized the jurisdictional defects underlying Plaintiffs' claims.  In *Circus Circus,* a security guard asserted purported class wage claims against his employer.  *Id*. at 542.  Like Plaintiffs here, the plaintiff also sued his employer's parent corporation, and additional subsidiaries that purportedly applied the same challenged wage policies as his employer.  *Id*.  The parent and subsidiary corporations all moved to dismiss for lack of standing, arguing that they never could have harmed plaintiff.  *Id*. at 543.  In response, like Plaintiffs here, the *Circus Circus* plaintiff argued that "once they had standing against one defendant, the standing issue is resolved, and the inquiry shifts to a Federal Rule of Civil Procedure 23 analysis . . . ."  *Id*.

The court rejected that argument and dismissed the claims against the parent and subsidiaries, which never had caused the plaintiff harm:

> The Court concludes that to establish Article III standing in a class action, at least one named plaintiff must have standing in his own right to assert a claim against *each named defendant* before he may purport to represent a class claim against that defendant. . . . [W]hat is required is that *for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant*.  At that point, Article III standing is satisfied and only then will the inquiry shift to a Rule 23 analysis.

*Id*. at 544 (emphasis added).

Plaintiffs have not alleged, nor can they allege, that any of the moving Defendants caused them harm.  This Article III standing defect warrants dismissal.  *See O'Shea*, 414 U.S. at 494; *Allee*, 416 U.S. at 828-29; *Hart v. County of Alameda*, 76 Cal. App. 4th 766, 775-76 (1999) (sustaining demurrer without leave to amend where plaintiff lacked standing to bring class claims against 22 of 26 entities with which he never had dealings); *Simons v. Horowitz*, 151 Cal. App. 3d 834, 845 (1984) ("A plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by each of the defendants in the class.  Although a plaintiff may represent a group of individuals all of whom

---

them even if they congregate into a class."); *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 461 (2005) (holding that class allegations do not expand a party's substantive rights or allow for recovery where the plaintiff otherwise has no claim).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

have causes of action similar to his own against the same defendant or defendants, he cannot represent a class having causes of action against other defendants as to whom the plaintiff himself has no cause of action.").

Plaintiffs have not asserted direct claims against the "Kindred Defendants" (Kindred, Inc., KHOI, Kindred West, and California Nursing Centers), as they erroneously argue. *Estate of Canavan v. Nat'l Healthcare Corp.*, 889 So. 2d 825 (Fl. App. D. 2004), does not support Plaintiffs' direct liability argument. That case involved liability against an individual who was directly involved in the decisions and actions that caused harm, not a suit against a parent corporation. *Id*. at 826. The court also relied on Florida law holding that corporate officers could be liable for their own tort under a common law negligence theory. *Id*. at 827. Plaintiffs' emphasis on the alleged corporate control is really just a slight spin on their deficient alter ego allegations, which are discussed in detail below.

**B.** **Plaintiffs' Conclusory Alter Ego Allegations Do Not Establish Claims Against Facilities in Which They Never Resided or Against Defendants With Which They Had No Dealings.**

Recognizing that they have no direct claims against these Defendants, Plaintiffs focus much of their attention on their derivative theories of liability – alter ego and single enterprise. Although Plaintiffs use these terms interchangeably, they focus primarily on alter ego.[3]

There is a strong presumption against alter ego liability. "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court (Sonora Union High Sch. Dist.)*, 83 Cal. App. 4th 523, 539 (2000). Plaintiffs must specifically plead *facts* to support their alter ego allegations. *See Kema, Inc. v. Koperwhats*, 2010 WL 3464737, at *9 (N.D. Cal. Sept. 1, 2010) (granting defendant's motion to dismiss as to alter ego claim because plaintiff failed to allege facts to support its alter ego claim); *Alta Bates Summit Medical Center v. United Omaha Life Ins. Co.*, 2009 WL 57108 at *5 (N.D. Cal. Jan. 8, 2009) (White, J.) (same). "Conclusory allegations of 'alter ego' status are insufficient to state a claim[;] [r]ather, a plaintiff must allege specifically

---

[3] In the Ninth Circuit, the single enterprise doctrine and the related "juridical link" doctrine have been mentioned (not adopted) in the context of Rule 23 motions for class certification, not to confer Article III standing at the outset of the case. *See Cady v. Anthem Blue Cross Life and Health Insurance Co.*, 583 F. Supp. 2d 1102, 1107 (N.D. Cal. 2008).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

both elements of alter ego liability, *as well as facts supporting each*."   *Neilson v. Union Bank of California,* 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (emphasis added).

Plaintiffs' alter ego allegations and opposition arguments are intentionally blurry.  In essence, Plaintiffs are attacking the basic corporate structure that a public company has adopted to operate separate independently licensed facilities.  Plaintiffs are seeking to collapse all corporate distinctions and hold each Defendant responsible for every alleged wrongful act that occurred in every facility.  Plaintiffs' theory of alter ego liability finds no support in California law, and their allegations do not state facts sufficient to establish alter ego liability against either the Sister Entities or the Parent Entities.[4]

### 1.   Plaintiffs Have Not Alleged Sufficient Facts to Allege a Claim for Alter Ego Liability Against the Sister Entities.

#### a.   Plaintiffs Have Not Sufficiently Alleged Unity of Interest and Ownership.

The FAC contains zero allegations to establish the first alter ego prong – unity of interest and ownership or control – as between the Sister Entities and Rossmoor.  Neither the FAC nor Plaintiffs' opposition begins to explain how these independently licensed "sister" facilities purportedly control each other's day-to-day staffing practices.  To the contrary, the allegations Plaintiffs highlight in their opposition only allege how the Parent Entities interact with the Sister Entities.  (FAC ¶ 32 ("Kindred, Inc. manages, controls, and operates the Facilities."); FAC ¶ 37 ("Kindred conducts, manages, and controls the material . . . functions for the Facilities . . ."[5]); *see also* FAC ¶ 39.)

The handful of cases Plaintiffs cite to stretch alter ego principles horizontally to "sister" companies involved unique circumstances in which the "sister" company both: (1) was involved in the alleged wrongdoing; and (2) did not serve in a purely horizontal relationship with the other

---

[4] The Facility Defendants consist of the 14 separate companies that are independently licensed operators of facilities where Plaintiffs never resided (hereinafter the "Sister Entities").  The Parent Entities are the four additional independent companies alleged to be vertically situated to Rossmoor in the corporate hierarchy (hereinafter the "Parent Entities").  Because the issues related to these distinct groupings of Defendants differ, Defendants will address them separately.  Defendants have adopted Plaintiffs' designation of these entities as "Sister Entities" and "Parent Entities" for convenience only.

[5] The FAC defines "Kindred" as the Parent Entities.  (FAC ¶ 12.)

"sister" company, but rather exercised control over the "sister" company.  In addition, as with all other alter ego cases cited by both parties, the courts in these cases merely held one sister entity derivatively liable for acts that impacted the plaintiff directly but were committed by a separate entity.  Plaintiffs' cases are readily distinguishable:

- *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1250-51 ((1) allowing plaintiff to pierce Devco's corporate veil to recover from Hahn, where Hahn "actively participated" in the conduct giving rise to liability; (2) while at the time of judgment Hahn did not own Devco, it did wholly own Devco for a period in which the wrongful conduct occurred);

- *Troyk v. Farmers Group*, *Inc.*, 171 Cal. App. 4th 1305, 1341-42 (2009) ((1) plaintiff could recover restitution under single enterprise liability against parent of Prematic (FGI) and principal of Prematic (FIE), where both FGI and FIE participated in the wrongful conduct toward plaintiff; (2) while the court at times referred to Prematic and FIE as "sister" companies, it also held that Prematic was the agent of FIE and that FIE exercised certain control over Prematic);

- *Pac. Sash & Door Co. v. Greendale Park, Inc.*, 166 Cal. App. 2d 652, 656 (1958) ((1) plaintiff could recover against both builder (Ralmor) and developer (Greendale) of housing development for failure to pay for materials, where Ralmor and Greendale elsewhere agreed to be jointly and severally liable for all labor and materials used for the development; (2) Greendale contracted with Ralmor to build the houses on the development giving Greendale certain control over Ralmor);

- *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202, 1216-19 (2002) (attorneys-in-fact for reciprocal insurers/interinsurance exchanges could be liable for bad faith breach of insurance contract on alter ego theory, where they were involved as a matter of law in the execution of the insurance contract at issue; Attorneys-in-fact exercise control over insurers, as "insurers can issue contracts only through the agency of the attorney-in-fact");

- *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 513 (2010) (allowing the plaintiff, post-judgment, to add third parties to collect on a judgment under an alter ego theory of liability, where the original parties to the judgment effectively diverted $47 million in assets during the proceedings in an attempt to render themselves judgment proof.  Notably, while the opinion purports to address the viability of adding three separate categories of defendants under an alter ego theory, the opinion lacks discussion or analysis regarding whether the "sister" companies (Harpo and 6th St. Loft) were appropriately added).

In contrast, Plaintiffs here do not allege that any of the Sister Entities engaged in any conduct causing them harm, or any facts to suggest anything other than a purely horizontal

1    relationship between the Sister Entities and Rossmoor.  Instead, Plaintiffs seek to collapse the

2    Kindred corporate structure and sue for alleged actions and conduct that occurred in other

3    facilities but had no impact on them personally.  No authority supports the use of alter ego or

4    single enterprise liability to accomplish that result.

5         "A request to pierce the corporate veil is only a means of imposing liability for an

6    underlying cause of action and is not a cause of action in and of itself."  *Local 159 v. Nor-Cal*

7    *Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999).  In that sense, it is entirely "derivative of the

8    substantive cause of action against the corporate defendant."  *Smith v. Simmons*, 638 F. Supp. 2d

9    1180, 1190, fn. 14 (E.D. Cal. 2009) (citing *Hennessey's Tavern, Inc. v. American Air Filter Co.,*

10   *Inc.*, 204 Cal. App. 3d 1351, 1359 (1988)).  Plaintiffs cannot assert claims against every entity in

11   the extended Kindred corporate family for alleged harm that impacted other residents in other

12   facilities.

13                    **b.      Plaintiffs Have Not Sufficiently Alleged an Inequitable Result.**

14        Plaintiffs have likewise alleged no facts to establish that an inequitable result would

15   result if the Sister Entities were not held liable on an alter ego theory.  Plaintiffs' allegations

16   focus solely on the Parent Entities.  (*See* FAC ¶ 38.)  Plaintiffs nowhere allege in the FAC how

17   recognizing the separate existence of the Sister Entities from Rossmoor would sanction a fraud

18   and/or promote injustice.

19        Plaintiffs' allegations actually undermine their argument that recognizing the Sister

20   Entities as putative alter egos would help avoid an inequitable result.  If, as Plaintiffs allege, the

21   Parent Entities are siphoning funds out of all of the Facilities (FAC ¶ 38), how would adding the

22   Sister Entities, whose funds are allegedly being siphoned, help avoid an inequitable result?

23   Plaintiffs' alter ego theory against the Sister Entities simply does not make sense, and the Sister

24   Entities should be dismissed with prejudice.

25              **2.      Plaintiffs Have Not Alleged Sufficient Facts to Allege a Claim for Alter
                         Ego Liability Against the Parent Entities.**

26

27                    **a.      Plaintiffs Have Not Sufficiently Alleged Unity of Interest and
                              Ownership.**

28   Plaintiffs also fail to plead sufficient facts to establish the first element of alter ego

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1   liability against the Parent Entities.  For alter ego liability to exist against a parent company, facts

2   must be alleged which, if true, would establish absolute control over the subsidiary's day-to-day

3   business conduct.  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).  Some amount of

4   control and overlap is "to be expected as an incident of the parent's ownership of the subsidiary."

5   *Sonora Diamond Corp.,* 83 Cal. App. 4th at 542.  "The parent's general executive control over

6   the subsidiary is not enough; rather there must be a strong showing beyond simply facts

7   evidencing 'the broad oversight typically indicated by [the] common ownership and common

8   directorship' present in a normal parent-subsidiary relationship."  *Id*. at 542 (quoting *Calvert v.*

9   *Huckins*, 875 F. Supp. 674, 679 (E.D.Cal. 1995)).

10       Plaintiffs fail to allege that the Parent Entities have "moved beyond the establishment of

11  general policy and direction for the subsidiary and in effect taken over performance of the

12  subsidiary's day-to-day operations in carrying out that policy."  *Calvert*, 875 F. Supp. at 679; *see*

13  *also Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Services, Inc*., 206 Cal.

14  App. 3d 1, 9 (1988).  Courts routinely find conclusory allegations like Plaintiffs' insufficient to

15  allege alter ego.  *See Neilson*, 290 F. Supp. 2d 1101; *Lovesey v. Armed Forces Benefit Ass'n*,

16  2008 WL 4856350 (N.D. Cal. Nov. 7, 2008); *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (Apr.

17  15, 2011) (allegations that individual was sole owner of corporation who personally made all

18  business decisions of corporation insufficient).

19           **b.**     **Plaintiffs Have Not Sufficiently Alleged an Inequitable Result.**

20       Plaintiffs' allegations do not establish the second required alter ego prong as to the Parent

21  Entities.  "The injustice that allows a corporate veil to be pierced is not a general notion of

22  injustice; rather, it is the injustice that results only when corporate separateness is illusory."

23  *Kazir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004)

24  (district court erred in finding alter ego liability where no finding of inequitable result).

25       All Plaintiffs allege is that the Parent Entities "set up shells" and "siphon[ed] funds" from

26  the Sister Entities.  Based on these sweeping generalities, and in a leap of logic, Plaintiffs

27  conclude that recognizing the separate existence of the Parent Entities "would, under the

28  particular circumstances alleged herein, sanction a fraud and/or promote injustice."  (FAC ¶ 38.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1   Missing, however, is any explanation or allegation of *how* this alleged conduct would sanction a

2   fraud and/or promote injustice, or *what* the resulting fraud and/or injustice would be.  Plaintiffs

3   argue that they have alleged that Defendants engaged in such conduct "for the purpose of

4   avoiding responsibility" (Opp. at 8:8-9), but no such allegation against the Defendants appears in

5   the cited paragraph 37, or elsewhere in the FAC.  Plaintiffs' inflated rhetoric, without any factual

6   support or explanation, does not sufficiently plead a claim.[6]

7          In any event, Plaintiffs' opposition argument (which does not appear in the FAC), that the

8   Defendants could avoid responsibility for their liabilities, is insufficient to establish the second

9   element of alter ego liability as a matter of law.  Indeed, "California courts have rejected the view

10  that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that

11  warrants application of the alter ego doctrine."  *Neilson*, 290 F. Supp. 2d at 1117.  "Alter ego will

12  not be applied absent evidence that an injustice would result from the recognition of separate

13  corporate identities, and 'difficulty in enforcing a judgment or collecting a debt does not satisfy

14  this standard.'"  *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002)

15  (quoting *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539); *Mid-Century Ins. Co. v. Gardner*, 9

16  Cal. App. 4th 1205, 1213 (1992) ("Certainly, it is not sufficient to merely show that a creditor

17  will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy

18  circumstance as proof of an 'inequitable result.'  In almost every instance where a plaintiff has

19  attempted to invoke the doctrine he is an unsatisfied creditor") (quoting *Associated Vendors, Inc.*

20  *v. Oakland Meat Co.,* 210 Cal. App. 2d 825, 842 (1962)).

21         California courts also require pleading and proof of bad faith conduct by defendants

22  before concluding that an inequitable result justifies an alter ego finding.  *See Mid-Century Ins.*

23  *Co.*, 9 Cal. App. 4th at 1213 (purpose of doctrine "is not to protect every unsatisfied creditor, but

24  rather to afford him protection, where some conduct amounting to bad faith makes it inequitable,

25

26  _____

    [6] Even the cases cited by Plaintiffs confirm that such allegations are required.  *See Jonathan*
    *Browning, Inc. v. Venetian Casino Resort, LLC*, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007)
27  (White, J.) (complaint sufficiently pled second element of alter ego theory by alleging *how*
    adhering to the separate corporate existence would result in an injustice); *see also Maganallez v.*
28  *Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607 (N.D. Cal. 2007) (same).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1   under the applicable rule above cited, for the equitable owner of a corporation to hide behind its

2   corporate veil") (quoting *Associated Vendors, Inc*, 210 Cal. App. 2d at 842).

3        Here, Plaintiffs fail to make a single allegation regarding any bad faith on the part of the

4   Parent Entities.  Kindred, Inc., is a public company subject to extensive federal oversight,

5   enforcement and reporting to the Securities and Exchange Commission ("SEC") and other

6   regulators.  Specifically, the SEC requires public companies to disclose meaningful information

7   about their finances, business practices and corporate management structure to the public in order

8   to ensure that companies do not engage in the type of corporate fallacy that alter ego liability

9   seeks to expose.  All of this information is publicly available on-line.[7]  None of the alter ego cases

10  cited by either party involved a public company.  To the contrary, the cases Plaintiffs cite

11  typically involved closely held companies owned and controlled by a single individual, who had

12  the ability to manipulate the corporate structure to perpetuate a fraud or injustice.

13       In addition, the California Department of Public Health (the "CDPH") strictly regulates

14  the licensing and corporate structure of skilled nursing facilities.  The skilled nursing facilities

15  must disclose their corporate structure and ownership information publicly and to the CDPH,

16  including, among other things, the names and addresses of the parent organizations of the

17  management company, any officer or director of the parent organizations, and any person or

18  organization having an ownership or control interest of 5 percent or more in the management

19  company.  Cal. Health & Saf. Code § 1267.5.  This open disclosure of corporate structure,

20  coupled with the presumption of corporate separateness, raises a very high bar for Plaintiffs.

21       Plaintiffs' discussion of the Nursing Home Transparency Act and congressional testimony

22  related to that proposed legislation only highlights the absence of sufficient alter ego factual

23  allegations.  (Opp. at 8:20-9.)  That Congress chose to impose additional disclosure obligations on

24  the SNF industry generally does not mean that these Defendants adopted a certain corporate

25  structure to evade liability or otherwise to engage in fraud.  This motion focuses only on

26  Plaintiffs' allegations as to these Defendants, and those allegations fail to establish either prong

27

28  _____
    [7] http://www.sec.gov/edgar/searchedgar/companysearch.html.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

12

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1    required to impose alter ego liability.

2            **C.      There is No "Sympathetic Plaintiff" Exception to Article III Standing.**

3            That Plaintiffs "seek to protect the dignity and safety of a vulnerable population" does not

4    establish standing where it otherwise would not exist.  (*See* Opp. at 12:5-13.)  The only case

5    Plaintiffs cite to support this argument actually shows why the Court should grant this Motion.  In

6    *LaMar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 469 (9th Cir. 1973), the court held that the

7    plaintiffs could not "bring a class action against defendants with whom they had no dealing."  *Id*.

8    at 464.  The same result should apply here.

9            **D.      Plaintiffs' Conspiracy and Agency Allegations Also Fail.**

10           Plaintiffs also cryptically argue in a footnote that they properly stated claims against

11   Defendants based on conclusory conspiracy and agency allegations.  (Opp. at 7 n.6.)  But the

12   word "conspiracy" appears nowhere in the FAC.  In any event, parent and subsidiary corporations

13   cannot conspire with one another as a matter of law.  *See Applied Equipment Corp. v. Litton*

14   *Saudi Arabia Ltd*., 7 Cal. 4th 503, 510-11 (1994); *see also Freeman v. San Diego Ass'n of*

15   *Realtors*, 77 Cal. App. 4th 171, 189 (1999) ("the mere existence of separate incorporated entities

16   does not automatically suffice to show that these entities are capable of combining; instead the

17   entities must have separate and independent interests that are combined by the unlawful

18   conspiracy.  Under *Copperweld*, legally distinct entities do not conspire if they 'pursue[] the

19   common interests of the whole rather than interests separate from those of the [group] itself . . .

20   .'") (quoting *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752 (1984)).  For the same

21   reason, Plaintiffs' agency claim also fails.  The mere allegation of agency is insufficient to plead

22   agency, is circular and is of no legal effect.  *Moore v. Regents of the University of California*, 51

23   Cal. 3d 120, 134 n.12 (1990).

24           **E.      The Court Should Deny Plaintiffs' Request for Leave to Conduct Discovery to
25                    Search for Facts to Support a Claim Against These Defendants.**

26           Plaintiffs cannot state any valid claim against Defendants with which they had no

27   dealings, and which never caused them harm.  End of story.  Plaintiffs filed their FAC after

28   having had the opportunity to review Defendants' prior motion to dismiss, which raised the very

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES                                13          KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
                                                        SUPPORT OF MTN TO DISMISS
                                                        (CASE NO. 3:11-cv-00050-JSW)

1   same arguments set forth in this motion.  The FAC clearly represents Plaintiffs' best shot at

2   alleging viable claims against these Defendants.  But their allegations still fall short.  And they

3   don't identify any facts in their opposition that, if pled, would be sufficient.  No amount of

4   pleading artistry will allow Plaintiffs to manufacture standing where none exists.

5           Plaintiffs' request for discovery to find additional facts confirms this.  The Court should

6   rebuke their "sue first and ask questions later" approach.  *See Cady,* 583 F. Supp. 2d at 1107 ("the

7   Court cannot assume 'hypothetical jurisdiction' to order discovery when Plaintiff's lack of

8   standing is apparent from the face of the complaint"); *Martinez v. Manheim Central California,*

9   2011 WL 1466684, at *5 (E.D. Cal. April 18, 2011) (no discovery allowed "in the absence of a

10  minimal factual showing supporting personal jurisdiction and, moreover, where no theory has

11  been posited about what facts would be discovered and what they would show if Plaintiffs were

12  permitted to fish on a hunch that something might be caught in a widely-cast net") (citing

13  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (denial of discovery request not an

14  abuse of discretion where request "was based on little more than a hunch that it might yield

15  jurisdictionally relevant facts")).  The Court should dismiss Plaintiffs' FAC with prejudice.[8]

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25

26  [8] The cases cited by Plaintiffs on this point do not compel a contrary result.  *See Alta Bates*, 2009
    WL 57108 at *5 (White, J.) (leave to amend only granted where plaintiff "argues facts in its

27  opposition brief that, if plead, would likely be sufficient"); *Monaco v. Liberty Life Assur. Co.*,
    2007 U.S. Dist. LEXIS 31298, at *17 (N.D. Cal. April 17, 2007) (complaint sufficiently alleged

28  alter ego allegations, therefore no discovery permitted).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

14

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)

1

**III.     <u>CONCLUSION</u>**

2

Plaintiffs cannot state any valid claim against any Sister Entities where they never

3

resided, or against any Parent Entities with which they had no business.  If the Court does not

4

grant the Motion to Dismiss concurrently filed by all Defendants, without leave to amend, then

5

the Court should grant this Motion, without leave to amend.

6

Dated:    May 20, 2011                    Respectfully submitted,

7

MANATT, PHELPS & PHILLIPS

8

By:  /s/ Barry S. Landsberg

9

Barry S. Landsberg
*Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

KINDRED HEALTHCARE INC., ET AL.'S REPLY IN
SUPPORT OF MTN TO DISMISS
(CASE NO. 3:11-cv-00050-JSW)