IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAZEL WALSH, | |
| Plaintiff, | No. C 11-00050 JSW |
| v. | |
| KINDRED HEALTHCARE, | **ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS** |
| Defendant. | |

Now before the Court are the motions to dismiss filed by Kindred Healthcare, Inc. ("Kindred, Inc."), Kindred Healthcare Operating, Inc. ("KHOI"), California Nursing Centers, L.L.C. ("California Nursing Centers"), Kindred Nursing Centers West, L.L.C. ("Kindred West"), Hillhaven-MSC Partnership, Alta Vista Healthcare & Wellness Center a/k/a Alta Vista Healthcare, Bay View Nursing and Rehabilitation Center, Canyonwood Nursing Rehab Center, Fifth Avenue Health Care Center, Golden Gate Healthcare Center, Hacienda Care Center, Nineteenth Avenue Health Care Center, Orange Healthcare and Wellness Center, L.L.C. f/n/a Kindred Healthcare Center of Orange a/k/a/ La Veta Health Care Center, Santa Cruz Healthcare Center, Smith Ranch Care Center, L.L.C. f/n/a Guardian at Smith Ranch Care Center, Valley Gardens Healthcare & Rehabilitation Center and Victorian Healthcare Center f/n/a Hillhaven Victorian (collectively "Defendants") and by defendant Care Center of Rossmoor, L.L.C., f.k.a. Guardian of Rossmoor ("Rossmoor, LLC").[1]  Having carefully considered the parties'

---

[1] Defendants join in Rossmoor, LLC's motion to dismiss.
 In a footnote, defendant Kindred, Inc. states that it is specially appearing in the motion to dismiss and that it also filed a motion to dismiss for lack of personal jurisdiction. However, after Kindred, Inc. filed its motion regarding jurisdiction, Plaintiffs filed an amended complaint.  Although Defendants filed another motion to dismiss for failure to state

arguments and relevant legal authority, the Court hereby grants Defendants' motion to dismiss and grants in part and denies in part Rossmoor, LLC's motion to dismiss.[2]

**BACKGROUND**

Plaintiffs Arlene Bettencourt ("Bettencourt") and Harry Harrison ("Harrison") (collectively, "Plaintiffs") allege that Rossmoor, LLC and Defendants have not provided sufficient staffing of nurses at skilled nursing facilities ("SNFs") in California. During the purported class period, Plaintiffs resided at Care Center of Rossmoor f/n/a Guardian of Rossmoor ("Rossmoor"), a facility operating under a license granted to Rossmoor, LLC. (First Amended Complaint ("FAC"), ¶¶ 6, 7, 24.) According to Plaintiffs, Defendants failed to maintain the statutorily-mandated nursing staff levels at Rossmoor and the other SNFs. As a result, Plaintiffs suffered several "indignities and other harms" as a result of inadequate nurse staffing, including inappropriate chemical and physical restraints, delayed responses to call lights, lack of assistance with grooming, bathing, dressing, eating and showers, and failure to provide fluids. (FAC, ¶¶ 60, 61.) In the postings in the facilities (Rossmoor, Alta Vista Healthcare & Wellness Center a/k/a Alta Vista Healthcare, Bay View Nursing and Rehabilitation Center, Canyonwood Nursing and Rehab Center, Fifth Avenue Health Care Center, Golden Gate Healthcare Center, Hacienda Care Center, Nineteenth Avenue Health Care Center, Orange Healthcare and Wellness Center, L.L.C. f/n/a Kindred Healthcare Center of Orange a/k/a/ La Veta Health Care Center, Santa Cruz Healthcare Center, Smith Ranch Care Center f/n/a Guardian at Smith Ranch Care Center, Valley Gardens Healthcare & Rehabilitation Center, and Victorian Healthcare Center f/n/a Hillhaven Victorian (collectively referred to as "Facilities")), Defendants and Rossmoor, LLC claimed to adhere to the resident rights afforded under state law, which includes the obligation to provide an adequate number of qualified

---

a claim after Plaintiffs filed their amended complaint, Kindred, Inc. did not file another motion to dismiss for lack of personal jurisdiction. Therefore, there is no motion to dismiss for lack of personal jurisdiction currently pending.

[2] Both Rossmoor, LLC and Plaintiffs filed requests for judicial notice ("RJNs"). To the extent neither party filed objections, the Court GRANTS their requests pursuant to Federal Rule of Evidence 201. The Court SUSTAINS Rossmoor, LLC's objections to Exhibits 2, 3, 11, 12 and 14 of Plaintiffs' RJN and Plaintiffs' objection to Exhibit 1 to Rossmoor, LLC's Supplemental RJN.

2

1  personnel. (*Id.*, ¶ 53.) Moreover, Defendants and Rossmoor, LLC failed to disclose to

2  Plaintiffs that they did not intend to comply with the minimum nurse staffing requirements.

3  (*Id.*, ¶ 59.) As a result, Plaintiffs lost money and were injured by Defendants' conduct. (*Id.*)

4  Plaintiffs' claims rest in part on California Health and Safety Code section 1276.5(a)

5  ("Section 1276.5(a)"), which provides that "the minimum number of actual nursing hours per

6  patient required in a skilled nursing facility shall be 3.2 hours." Nursing hours, as used in

7  Section 1276.5(a), is defined to mean "the number of hours of work performed per patient day

8  by aides, nursing assistants, or orderlies plus two times the number of hours worked per patient

9  day by registered nurses and licensed vocational nurses (except directors of nursing in facilities

10  of 60 or larger capacity)." Cal. Health & Safety Code § 1276.5(b)(1).

11  In October 2010, the California Welfare and Institutions Code was amended to add

12  section 14126.022. *See* S.B. 853, 2010 Cal. Stat. Ch. 717, at 5. Section 14126.022 requires the

13  California Department of Public Health ("CDPH"), beginning in the 2010-2011 fiscal year, to

14  impose administrative penalties on skilled nursing facilities that fail "to meet the nursing hours

15  per patient per day requirements pursuant to Section 1276.5 of the Health and Safety Code."

16  Cal. Welf. & Inst. Code § 14126.022(f)(2)(A).

17  On January 31, 2011, CDPH provided skilled nursing facilities with the guidelines it

18  will use "during state audits for compliance with the 3.2 nursing hour per patient day

19  ("NHPPD") staffing requirements." Rossmoor, LLC's RJN, Ex. 5, at 2. In the guidelines,

20  CDPH noted that the 3.2 NHPPD staffing requirement "does not assure that any given patient

21  receives 3.2 hours of nursing care; it is the total number of nursing hours performed by direct

22  caregivers per patient day divided by the average patient census." *Id.*

23  Plaintiffs' claims are also premised on California Health and Safety Code section 1599.1

24  ("Section 1599.1"), which provides that "each patient admitted to [a SNF] has the following

25  rights ... . The facility shall employ an adequate number of qualified personnel to carry out all

26  of the functions of the facility." Cal. Health & Saf. Code § 1599.1(a).

27  Based on Defendants' alleged failure to comply with the 3.2 NHPPD staffing

28  requirements and their alleged failure to provide sufficient staffing as required by Section

1599.1, in addition to alleged misrepresentations and non-disclosures regarding the nurse staffing levels, Plaintiffs bring the following claims: (1) violation of California Health and Safety Code § 1430(b) ("Section 1430(b)"), (2) violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. ("UCL"), and (3) violation of California's Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*. ("CLRA").

The Court shall address specific additional facts in the remainder of this Order.

## ANALYSIS

**A.     Applicable Legal Standards for Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a

4

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).

Where a plaintiff alleges fraud, however, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires the plaintiff to state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the charged misconduct. *See Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994). However, Rule 9(b) particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement of the claim. Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106 ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.") (internal quotation marks and citations omitted).

**B.    Defendants' Motion to Dismiss.**

Defendants argue that Plaintiffs failed to allege facts sufficient to invoke the alter ego doctrine and that, as a result, Plaintiffs' claims against them should be dismissed. "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Under California law, a corporate identity may be disregarded "where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation.... Under the alter ego doctrine, then, when the corporate form is used to penetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation...." *Id*. (citations omitted). As explained by the court in *Sonora*

5

*Diamond*, "[t]he alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Id*. The alter ego doctrine applies equally to limited liability companies. *People v. Pacific Landmark, LLC,* 129 Cal. App. 4th 1203, 1212 (2005).

To invoke the alter ego doctrine, Plaintiffs must allege: (1) that there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an inequitable result will follow. *See Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002); *see also Sonora Diamond*, 83 Cal. App. 4th at 538 ("In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."). "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971). Conclusory allegations of alter ego status are insufficient. *See Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983).

In *Sonora Diamond*, there was no evidence of any wrongdoing by either entity or of any injustice flowing from the recognition of the company's separate corporate identity. The court explained that "[t]he alter ego doctrine ... affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Sonora Diamond*, 83 Cal. App. 4th at 539. One company's financial advances to another did not prove the requisite misconduct or injustice because there was no evidence that such advances were made with a fraudulent or deceptive intent. Due to the absence of this "essential element," the court held that the alter ego doctrine could not be invoked. *Id*. at 539.

Plaintiffs contend that they have alleged facts sufficient to demonstrate a unity of interest between all of the Facilities, the parent Kindred entities (Kindred, Inc., KHOI, California Nursing Centers, and Kindred West (collectively referred to as "Kindred" or the "parent Kindred entities")), and Hillhaven-MSC Partnership ("Hillhaven"), Rossmoor, LLC, and Smith Ranch Care Center LLC ("Smith Ranch LLC").

If all of the allegations plead regarding all of the parent Kindred entities and the Facilities are considered together, the Court finds that Plaintiffs have sufficiently alleged "unity of interest and ownership" as between Kindred and the Facilities. However, Plaintiffs have not alleged facts sufficient to show this required element as between the four parent Kindred entities or as between the thirteen Facilities. Nor have Plaintiffs alleged facts to show how Hillhaven, Rossmoor LLC, or Smith Ranch LLC fit into this corporate structure and that they should be held liable for the acts of the other defendants or have the other defendants be held liable for their acts.[3]

In support of the second element, Plaintiffs allege that "Kindred deliberately set up empty shells and agents so that it could deceive the public and the residents as to who was actually responsible for the decisions made at each of the Facilities, while also siphoning funds out of the Facilities." (FAC, ¶ 38.) Plaintiffs' further allege that Kindred's conduct would "promote injustice and make it inquitable for Kindred Inc., Kindred West, California Nursing Centers, and KHOI to escape liability for obligations incurred as much as for their benefit as the Facilities." (*Id.*, ¶ 36.) These allegations are sufficient to allege an injustice based on the parent Kindred entities' attempt to avoid liability, but it is not clear whether Plaintiffs also

---

[3] Plaintiffs argue that they have alleged that Hillhaven and Smith Ranch LLC "have been wholly-owned and managed by Kindred." (Opp. at 2.) However, their complaint merely states that Hillhaven is "a general partnership with Defendant Kindred Inc." and that Hillhaven "owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred." (FAC, ¶ 13.) With respect to Smith Ranch LLC, Plaintiffs allege that Smith Ranch LLC "owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred." (*Id.*, ¶ 15.) Plaintiffs further allege that both Hillhaven and Smith Ranch LLC have their principal place of business at the same address as the parent Kindred entities. (*Id.*, ¶¶ 13, 15.) Such allegations are insufficient to satisfy the first prong of the alter ego test. Moreover, even if Plaintiffs had actually alleged that Hillhaven and Smith Ranch LLC have been wholly-owned and managed by Kindred, such allegations, standing alone, would also not be sufficient.

7

contend that Kindred misused the corporate form in order to siphon funds from the Facilities. Plaintiffs have not alleged what injustice would result if the Facilities, other than Rossmoor, were not held liable or if Hillhaven and Smith Ranch LLC were not held liable.[4] Accordingly, the Court finds that Plaintiffs have not alleged sufficient facts to invoke the alter ego doctrine.[5] However, the Court will provide Plaintiffs leave to amend to plead additional facts in support of their alter ego theory. To the extent Plaintiffs seek leave to conduct discovery in order to amend their complaint, they should move for such leave, clearly setting forth the particular facts they hope to obtain.

**C.     Rossmoor, LLC's Motion to Dismiss.**

Rossmoor, LLC argues that the Court should abstain from hearing all of Plaintiffs' claims or, in the alternative, stay their case pursuant to California's primary jurisdiction doctrine. If the Court does not abstain or stay this action, Rossmoor, LLC moves to dismiss Plaintiffs' claims for failure to state a claim.

---

[4] Without arguing that Delaware law should apply, Defendants contend that Plaintiffs' allegations are also insufficient under Delaware law. "Generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204, 215 (2005) (quoting *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001)); *see also Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992). Defendants have failed to make the necessary showing that Delaware law should apply. Moreover, under California's governmental interest test, before a court may apply the law of a foreign jurisdiction, the court must determine that the laws of California and of the other state are materially different. *Washington Mutual Bank*, 24 Cal. 4th at 919-20. Here, it does not appear as though the laws of Delaware and California are materially different on the issue of alter ego. Therefore, the Court will apply California law.

[5] In a footnote, Plaintiffs argue that they have also alleged sufficient facts to support liability based on an agency theory and on a conspiracy theory. (Opp. at 7 n.6.) Plaintiffs' allegations in support of these theories are as follows:
> On information and belief, at all times herein mentioned, defendants, and each of them, was the agent, partner, joint venturer, representative, and/or employee of the remaining defendants, and was acting within the course and scope of such agency, partnership, joint venture, and/or employment. Furthermore, in engaging in the conduct described below, defendants were all acting with the express or implied knowledge, consent, authorization, approval, and/or ratification of their co-defendants.

(FAC, ¶ 40.) Such allegations are purely conclusory and, therefore, insufficient. *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (courts are not bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegation).

8

### 1. Abstention.

Plaintiffs' claim under the UCL is premised on the alleged failure to maintain adequate nursing staff necessary to meet the 3.2 NHPPD requirement set forth in Section 1276.5(a) and the alleged failure to employ an adequate number of qualified nursing personnel as required by Section 1599.1. Rossmoor, LLC argues that California's abstention doctrine requires the Court to abstain from adjudicating this claim. "[B]ecause the remedies available under the UCL, namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them." *Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 795 (2001); *see also Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1297 (2007). Abstention under this doctrine may be appropriate if: (1) resolving the claim requires "determining complex economic policy, which is best handled by the legislature or an administrative agency;" (2) "granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress;" or (3) "federal enforcement of the subject law would be more orderly, more effectual, less burdensome to the affected interests." *Alvarado*, 153 Cal. App. 4th at 1298 (citations and internal quotation marks omitted).

Rossmoor, LLC relies on *Alvarado* for the proposition that abstention is required. However, *Alvarado* does not mandate abstention. The court in *Alvarado* made clear that the issue before it was whether "the trial court abused its discretion by abstaining from adjudicating the alleged controversy," not whether it would be an abuse of discretion not to abstain. *Id.*, 153 Cal. App. 4th at 1297. In fact, Alvarado leaves open the possibility that district attorneys can bring claims against SNFs for alleged violations of section 1276.5(a). *Id.* at 1297 n. 3. As the court in *Wehlage v. EmpRes Healthcare, Inc.*, 2011 WL 2066625, *7 (N.D. Cal. May 25, 2011) noted, the *Alvarado* court's treatment of this issue suggests that abstention is not mandatory because such actions would raise the same concerns regarding manageability posed by Alvarado's suit.

Despite the fact that abstention is not mandatory, the Court finds that it is warranted to the extent Plaintiffs' UCL claim is premised on Section 1276.5. As the *Alvarado* court held

9

"[j]udicial abstention is appropriate when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." *Alvarado*, 153 Cal. App. 4th at 1298. As the Court explains below, Section 1276.5(a) directs the CDPH to establish minimum nursing hours at SNFs. Based on the language and structure of the statute, the Court reads the provision at issue in Section 1276.5(a) as establishing the floor of the minimum number of nursing hours that the CDPH must set. Therefore, by enforcing Section 1276.5(a) through a claim under the UCL, the Court would be interfering with the functions of an administrative agency. Accordingly, the Court is exercising its discretion to decline to hear Plaintiffs' UCL claim to the extent it is premised on Section 1276.5(a).

However, to the extent Plaintiffs' UCL claim is based on a violation of Section 1599.1, the Court finds that abstention is not warranted. Rossmoor, LLC did not argue, let alone demonstrate, that the Court should abstain from hearing Plaintiffs' UCL claim to the extent it is premised on a violation of Section 1599.1. Accordingly, the Court will only abstain and dismiss Plaintiffs' UCL claim to the extent it is premised on Section 1276.5(a).

Additionally, Rossmoor, LLC argues that this abstention doctrine may be used to refrain from adjudicating legal claims as well, such as Plaintiffs' claim under Section 1430(b), but it fails to provide any authority in support of this proposition. As noted above, courts have discretion to abstain from hearing UCL claims because it remedies are equitable in nature. *See Desert Healthcare*, 94 Cal. App. 4th at 795; *Alvarado*, 153 Cal. App. 4th at 1297. Accordingly, the Court declines to abstain from hearing Plaintiffs' Section 1430(b) claim and denies Rossmoor, LLC's motion to dismiss on this ground.[6]

### 2. Primary Jurisdiction Doctrine.

Rossmoor, LLC also moves, in the alternative, to stay this action pursuant to the primary jurisdiction doctrine. Under this doctrine, courts may exercise discretion to stay an action

---

[6] Because, as discussed below, the Court is dismissing Plaintiffs' CLRA claim as not yet sufficiently plead, the Court need not address whether abstaining from this claim would be permissible or warranted.

10

pending "referral" of the issues to an administrative body.[7] *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000); *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 386-390 (1992). This doctrine is applicable "when a claim is originally cognizable in the courts, but is also subject to a regulatory scheme that is enforced by an administrative body of special competence." *Chabner*, 225 F.3d at 1051. "'[N]o rigid formula exists for applying the primary jurisdiction doctrine.'" *Id*. (quoting *Farmers Ins.*, 2 Cal. 4th at 391). A court may consider: "1) whether application will enhance court decision-making and efficiency by allowing the court to take advantage of administrative expertise; and 2) whether application will help assure uniform application of regulatory laws." *Chabner*, 225 F.3d at 1051.

Rossmoor, LLC summarily argues that considerations of judicial economy and concerns for uniformity in application of complex regulations mitigate in favor of awaiting action by the CDPH. With respect to the remaining portion of Plaintiffs' UCL claim and Plaintiffs' Section 1430(b) claim, the Court finds that Rossmoor, LLC fails to show that a stay under the primary jurisdiction doctrine is necessary. It has not demonstrated that Plaintiffs' claims would threaten the uniform application of California's regulatory laws or require CDPH's expertise. Accordingly, the Court denies Rossmoor LLC's alternative motion to stay this action.

### 3. Plaintiffs' Claim Under California Health and Safety Code Section 1430(b).

Section 1430(b) provides, in pertinent part:

> A current or former resident or patient of a skilled nursing facility ... may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations, or any other right provided for by federal or state law or regulation. ...

Cal. Health & Safety Code § 1430(b).

Section 72527 of Title 22 of the California Code of Regulations specifies that patients shall have the rights set forth in Section 1599.1. *See* 22 C.C.R. § 72527(a)(24). Section 1599.1

---

[7] Although courts use the word "referral' to explain the primary jurisdiction doctrine, this word "is perhaps not the most accurate term to describe this process, as most statutes do not authorize courts to *require* an agency to issue a ruling. ... Rather, the court merely stays or dismisses proceedings to allow the plaintiff to pursue administrative remedies." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 n. 9 (9th Cir. 2008) (internal citation omitted) (emphasis in original).

11

provides that each patient admitted shall have certain rights, the first of which is that "[t]he facility shall employ an adequate number of qualified personnel to carry out all of the functions of the facility." Cal. Health and Safety Code § 1599.1(a). Plaintiffs allege that Rossmoor, LLC violated Section 1430(b) by failing to maintain adequate nursing staff necessary to meet the 3.2 NHPPD requirement set forth in Section 1276.5(a) and failing to employ an adequate number of qualified nursing personnel as required by Section 1599.1. (FAC, ¶ 78.)

Rossmoor, LLC moves to dismiss Plaintiffs' Section 1430(b) claim to the extent it is premised on a violation of Section 1276.5 on the grounds that Section 1276.5 does not create an individual right. To the extent Plaintiffs' Section 1430(b) claim is premised on a violation of Section 1599.1, Rossmoor, LLC moves to dismiss it on the grounds that Section 1599.1 does not provide a private right to a minimum number of nursing hours.

### i. Plaintiffs' Section 1430(b) Claim Premised on Section 1276.5.

Rossmoor, LLC argues that Section 1276.5 does not create an individual right enforceable by Section 1430(b). There is a dearth of authority addressing which state laws or regulations create rights enforceable under Section 1430(b). *Lu v. Hawaiian Gardens*, 50 Cal. 4th 592 (2010) and *Moradi–Shalal v. Fireman's Fund Insurance Companies,* 46 Cal. 3d 287 (1988), cited to by Rossmoor, LLC, are not entirely on point. Both cases address whether certain state statutes give rise to private causes of action. *See Lu*, 50 Cal. 4th at 596; *Moradi–Shalal*, 46 Cal. 3d at 305. Here, Plaintiffs assert a claim under Section 1430(b) to enforce a right they claim exists under Section 1276.5(a). They do not bring a claim directly under Section 1276.5(a). Federal cases interpreting claims under 42 U.S.C. § 1983 ("Section 1983") are instructive on this point. Like Section 1430(b), Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); s*ee also California Ass'n of Health Facilities v. Dept. of Health Servs.*, 16 Cal. 4th 284, 301 (1997) ("a private suit for a violation of the patients' bill of rights bears more than a passing resemblance to a private suit for the violation of civil rights under [Section 1983]").

In the absence of any authority directly addressing which state laws or regulations create rights enforceable under Section 1430(b), the Court will consider the authority addressing the application of Section 1983. "A court's role in discerning whether personal rights exist in the § 1983 context should ... not differ from its role in discerning whether personal rights exist in the implied right of action context." *Gonzaga*, 536 U.S. at 285. The inquiries into "whether a private right of action can be implied from a particular statute" and whether a federal statute confers an right enforceable under Section 1983 share the common question of whether the legislature "intended to confer individual rights upon a class of beneficiaries." *Id*.

In determining whether a statute confers an enforceable right, courts must consider whether: (1) "Congress ... intended that the provision in question benefit the plaintiff;" (2) the plaintiff has "demonstrate[d] that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence;" and (3) "the statute ... unambiguously impose[s] a binding obligation on the States," such that "the provision giving rise to the asserted right ... [is] couched in mandatory, rather than precatory terms." *Blessing v. Freestone,* 520 U.S. 329, 340-41 (1997). In *Gonzaga*, the Supreme Court clarified that with respect to the first factor, "it is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the [Section 1983]." *Id*., 536 U.S. at 283 (emphasis in original). Under *Gonzaga,* evidence of the legislature's intent can be found in a statute's language as well as in its overarching structure. *Id.* at 286 (holding that "where the text and structure of the statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit").

Upon examination of the text and structure of Section 1276.5(a), the Court finds that it does not confer an enforceable right upon nursing home residents. The provision at issue provides:

> The department shall adopt regulations setting forth the minimum number of equivalent nursing hours per patient required in skilled nursing and intermediate care facilities, subject to the specific requirements of Section 14110.7 of the Welfare and Institutions Code. However, notwithstanding Section 14110.7 or any other provision of law, commencing January 1, 2000, the minimum number of actual nursing hours per patient required in a skilled nursing facility shall be 3.2 hours, except as provided in Section 1276.9.

13

1  Cal. Health & Safety Code § 1276.5(a). The first sentence of this section directs the CDPH to
2  adopt regulations regarding the minimum number of nursing hours. Read in context, the second
3  sentence informs the CDPH as to the floor of that minimum number in the regulation that the
4  CDPH shall adopt. Moreover, the Court notes that this statutory provision is located in the
5  article entitled "Regulations," which lends further support to the finding that this provision
6  directs the CDPH to establish regulations regarding the minimum number of nursing hours. *See*
7  *Alvarado*, 153 Cal. App. 4th at 1304 ("Section 1276.5, subdivision (a) is a regulatory statute ....
8  We conclude this based upon the wording of Section 1276.5, subdivision (a), and its
9  surrounding statutory framework."). Accordingly, the Court finds that Section 1276.5 does not
10 confer a right upon nursing home residents which is enforceable through Section 1430(b).
11 Therefore, the Court grants Rossmoor, LLC's motion to dismiss Plaintiffs' Section 1430(b)
12 claim to the extent it is premised on Section 1276.5(a).[8]

### ii. Plaintiffs' Section 1430(b) Claim Premised on Section 1599.1.

14 Rossmoor, LLC also moves to dismiss Plaintiffs' Section 1430(b) claim to the extent is
15 premised on a violation of Section 1599.1(a). Rossmoor, LLC argues that Section 1599.1 does
16 not provide a private right to a minimum number of nursing hours. Section 1599.1(a) provides
17 that: "The facility shall employ an adequate number of qualified personnel to carry out all of the
18 functions of the facility." Cal. Health & Safety Code § 1599.1(a). Neither party provides any
19 authority regarding the definition of "adequate number of qualified personnel." However,
20 common sense dictates that "qualified personnel" to carry out all of the functions of a *skilled*
21 *nursing facility* includes nurses. Therefore, the Court denies Rossmoor, LLC's motion to
22 dismiss Plaintiffs' Section 1430(b) claim to the extent is premised on a violation of Section
23 1599.1(a)

---

[8] However, the Court denies Rossmoor, LLC's request, contained within a footnote, to strike Plaintiffs' allegations regarding Section 1276.5(a). The Court finds that such allegations are not immaterial. Despite the fact that Plaintiffs cannot bring a claim to directly enforce Section 1276.5(a), Plaintiffs have alleged claims regarding Rossmoor, LLC's failure to provide an adequate number of qualified personnel as required by Section 1599.1. Section 1276.5(a) may inform what the definition is of "adequate" qualified personnel under Section 1599.1 with respect to nurses.

14

### 4. Plaintiffs' CLRA Claim.

The CLRA provides, in part, that specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Cal. Civ. Code § 1770(a). The CLRA also provides that it "shall be liberally construed and applied to promote its underlying purposes, which are due to protect consumers against unfair and deceptive practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

As used in the CLRA,

> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

*Id.* § 1671(b).

Rossmoor, LLC contends that Plaintiffs' CLRA claim fails a matter of law because the CLRA does not encompass services provided by a SNF. However, the CLRA defines "services" to mean "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Id. § 1761(b). The Court in *Wehlage* held that health services, provided by SNFs, fall within this definition. *Wehlage*, 2011 WL 2066625, *10. This Court agrees. Therefore, the Court denies Rossmoor, LLC's motion on this ground.

However, Rossmoor, LLC also moves to dismiss Plaintiffs' CLRA claim on the grounds that Plaintiffs have not plead this claim with the required specificity. Because this claim sounds in fraud, it is subject to the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA"). Plaintiffs' allegations "constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *See Vess*, 317 F.3d at 1106. Plaintiffs fail to identify the basis of their CLRA claim with sufficient specificity. They fail to allege the specific statements made, when or where Plaintiffs' viewed

15

such statements, or what was false about the statements. Accordingly, the Court dismisses Plaintiffs' CLRA claim, but will provide Plaintiffs leave to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and GRANTS IN PART and DENIES IN PART Rossmoor, LLC's motion to dismiss as follows. The Court DENIES Rossmoor, LLC's motion to dismiss with respect to Plaintiffs' UCL and Section 1430(b) claims to the extent they are premised on violations of Section 1599.1. The Court GRANTS Rossmoor, LLC's motion and dismisses Plaintiffs' UCL and Section 1430(b) claims to the extent they are premised on violations of Section 1276.5 and Plaintiffs' CLRA claim. The Court is providing Plaintiffs leave to amend their alter ego allegations and their CLRA claim. Plaintiffs shall file their amended complaint, if any, within twenty days of the date of this Order. If Plaintiffs do not amend their complaint, Rossmoor, LLC and Defendants shall file an answer within twenty days. If Plaintiffs file an amended complaint in accordance with this Order, Rossmoor, LLC and Defendants shall either file an answer or move to dismiss within twenty days of service of the amended complaint.

**IT IS SO ORDERED.**

Dated: June 15, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE