1   Robert J. Nelson (State Bar No. 132797)
    Lexi J. Hazam (State Bar No. 224457)
2   Andrew S. Kingsdale (State Bar No. 255669)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
4   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
5
    Michael D. Thamer (State Bar No. 101440)
6   LAW OFFICES OF MICHAEL D. THAMER
    Old Callahan School House
7   12444 South Highway 3
    Post Office Box 1568
8   Callahan, CA 96014-1568
    Telephone: (530) 467-5307
9   Facsimile: (530) 467-5437

10  Kathryn A. Stebner (State Bar No. 121088)
    Sarah Colby (State Bar No. 194475)
11  STEBNER & ASSOCIATES
    870 Market Street, Suite 1212
12  San Francisco, CA 94102-2907
    Telephone: (415) 362-9800
13  Facsimile: (415) 362-9801

14  *Attorneys for Plaintiffs*
    [Additional Counsel Appear on Signature Page]
15
                    UNITED STATES DISTRICT COURT
16
                   NORTHERN DISTRICT OF CALIFORNIA
17
                       SAN FRANCISCO DIVISION
18

19  HAZEL WALSH, et al,                        No. 3:11-CV-00050-JSW

20              Plaintiffs,                     **SECOND AMENDED COMPLAINT FOR:**

21       v.                                     1.   VIOLATION OF HEALTH & SAFETY
                                                CODE SECTION 1430(b)
22  KINDRED HEALTHCARE, INC.;
    KINDRED HEALTHCARE                          2.   UNLAWFUL, UNFAIR AND DECEPTIVE
23  OPERATING, INC.; CALIFORNIA                 BUSINESS PRACTICES (Bus. & Prof. Code §
    NURSING CENTERS, LLC; KINDRED               17200 *et seq.*)
24  NURSING CENTERS WEST, LLC;
    HILLHAVEN-MSC PARTNERSHIP;                  3.   VIOLATION OF THE CONSUMERS
25  ALTA VISTA HEALTHCARE &                     LEGAL REMEDIES ACT (Civ. Code 1750 *et seq.*)
    WELLNESS CENTRE (A/K/A ALTA
26  VISTA HEALTHCARE); BAY VIEW                 **CLASS ACTION**
    NURSING AND REHABILITATION
27  CENTER; CANYONWOOD NURSING                  **DEMAND FOR JURY TRIAL**
    AND REHAB CENTER; CARE CENTER
28  OF ROSSMOOR, LLC; CARE CENTER
    OF ROSSMOOR (F/K/A GUARDIAN OF

1  ROSSMOOR); FIFTH AVENUE
   HEALTH CARE CENTER; GOLDEN
2  GATE HEALTHCARE CENTER;
   HACIENDA CARE CENTER;
3  NINETEENTH AVENUE
   HEALTHCARE CENTER; KINDRED
4  HEALTHCARE CENTER OF ORANGE;
   SANTA CRUZ HEALTHCARE
5  CENTER; SMITH RANCH CARE
   CENTER, LLC; SMITH RANCH CARE
6  CENTER(F/K/A GUARDIAN AT SMITH
   RANCH CARE CENTER); VALLEY
7  GARDENS HEALTHCARE &
   REHABILITATION CENTER;
8  VICTORIAN HEALTHCARE CENTER
   (F/K/A HILLHAVEN VICTORIAN); and
9  DOES 1 through 100, inclusive,

10                   Defendants.

11

12         Plaintiffs Arlene Bettencourt, Harry Harrison, Julie Barton, Romaine Crvarich, Jerry

13  Dore, Dora Hernandez, Anne Knieriemen, Linda Mahaffey, Phyllis Menzie, and James Morris

14  ("Named Plaintiffs" or "Plaintiffs"), on behalf of themselves and a class of similarly situated

15  persons, and based on information and belief and the investigation of counsel, except for

16  information based on personal knowledge, hereby allege as follows:

17                          **<u>NATURE OF ACTION</u>**

18         1.      Plaintiffs bring this class action lawsuit under California Health and Safety Code

19  section 1430(b), Business & Professions Code sections 17200 *et seq.*, and the Consumers Legal

20  Remedies Act, Civil Code sections 1750 *et seq.* ("CLRA") to redress the pervasive and

21  intentional failure to provide sufficient direct nursing care staffing for elderly and disabled

22  residents at skilled nursing facilities owned, leased, licensed, operated, administered, managed,

23  directed, and/or controlled by defendants within the State of California.

24         2.      Understaffing is one of the primary causes of inadequate care and often unsafe

25  conditions in skilled nursing facilities.  Numerous studies have shown a direct correlation

26  between inadequate staffing and serious care problems including, but not limited to, a greater

27  likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.

28

3.      In response to such studies linking inadequate staffing and serious care problems, all skilled nursing facilities in California since January 1, 2000 have been required to provide at least 3.2 hours of direct nursing hours per patient day ("NHPPD"), pursuant to Health & Safety Code section 1276.5.  The 3.2 NHPPD requirement under Section 1276.5 represents the minimum staffing required for patients at skilled nursing facilities.  Depending on patient needs and other factors, higher levels of direct nursing hours may be warranted.  Significantly, after extensive research into the staffing levels required to meet patient needs, the federal government has increased the minimum recommended level for skilled nursing staffing to 4.1 NHPPD.

4.      As alleged in more detail below, defendants' California skilled nursing facilities have failed to meet the 3.2 NHPPD minimum requirements on numerous days during the Class Period (November 23, 2006 to present).  Not surprisingly, many of these facilities have a relatively high number of reported complaints, deficiencies, and citations arising from inadequate care of their elderly and disabled residents, as reflected in records maintained by the California Department of Health Services ("DHS").

5.      Defendants have misrepresented to the consuming public—in particular, the elderly and disabled residents and their family members—that defendants operate their nursing facilities in compliance with applicable laws, including laws such as Health & Safety Code section 1276.5.  They have failed to disclose that, in fact, their facilities do not provide sufficient nursing staff to comply with minimum staffing requirements.  Defendants' representations and omissions are deceptive, misleading, and made with the intent to induce elderly and disabled citizens to become residents, and remain residents, at defendants' facilities under a false pretense, namely, that defendants will provide the direct nursing staffing required by law.  Defendants' misleading and deceptive conduct is particularly egregious given that the targeted persons are among the most vulnerable members of our society.

**PARTIES**

6.      Plaintiff Julie Barton is a resident of Tiburon, California. She is the daughter and successor-in-interest to the Estate of Aranka Duboczy.  During the Class Period, from July 2005 to April 2008, Aranka Duboczy was a resident at Fifth Avenue Healthcare, a skilled nursing care

facility located in San Rafael, California. Aranka Duboczy was at all relevant times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).

7.      Plaintiff Arlene Bettencourt, represented by her guardian ad litem and daughter Lisa Edwards, is a resident of Antioch, California, and is an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f). During the Class Period, from April to May 2008, Arlene Bettencourt was a resident at Care Center of Rossmoor, f/k/a Guardian of Rossmoor, a skilled nursing care facility located in Walnut Creek, California.

8.      Plaintiff Kathleen Daley is a resident of Oakland, California. She is the daughter and successor-in-interest to the Estate of Romaine Crvarich. During the Class Period, in November 2010 and then again in March 2011, Romaine Crvarich was a resident at Bay View Nursing and Rehabilitation Center, a skilled nursing care facility located in Alameda, California. Romaine Crvarich was at all relevant times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).

9.      Plaintiff Jerry Dore is a resident of Pleasanton, California. He is the husband and successor-in-interest to the Estate of Mary Dore.  During the Class Period, from July 2008 to December 2009, Mary Dore was a resident at Hacienda Care Center, a skilled nursing care facility located in Livermore, California. Mary Dore was at all relevant times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).

10.      Plaintiff Harry Harrison, represented by his guardian ad litem and daughter Roxanne Harrison, is a resident of Pittsburg, California, and is an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).  During the Class Period, from February to December 2008, Harry Harrison was a resident at Care Center of Rossmoor, f/k/a Guardian of Rossmoor, a skilled nursing care facility located in Walnut Creek, California.

1        11.     Plaintiff Dora Hernandez is a resident of Orange, California.  She is the daughter

2   and successor-in-interest to the Estate of Guadalupe Garcia. During the Class Period, from 2007

3   to 2010, Guadalupe Garcia was a resident at Kindred Healthcare Center of Orange, a skilled

4   nursing care facility located in Orange, California. Guadalupe Garcia was at all relevant times an

5   "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as

6   defined under Cal. Civ. Code § 1761(f).

7        12.     Plaintiff Anne Knieriemen, represented by her guardian ad litem and daughter

8   Rochelle Campbell, is a resident of Stockton, California, and is an "elder" as defined under

9   Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code §

10  1761(f).  During the Class Period, for six months in early 2010, Anne Knieriemen was a resident

11  at Valley Gardens Healthcare and Rehabilitation Center, a skilled nursing care facility located in

12  Stockton, California.

13       13.     Plaintiff Linda Mahaffey is a resident of Redding, California. She is the

14  granddaughter and personal representative of the Estate of Alice Martin. During the Class Period,

15  from July 2005 to August 2011, Alice Martin was a resident at Canyonwood Nursing and Rehab

16  Center, a skilled nursing care facility located in Redding, California. Alice Martin was at all

17  relevant times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior

18  citizen" as defined under Cal. Civ. Code § 1761(f).

19       14.     Plaintiff Phyllis Menzie is a resident of Santa Cruz, California. She is the wife and

20  successor-in-interest of Timothy Blanchley. During the Class Period, from September 2007 to

21  September 2008, Timothy Blanchley was a resident at Santa Cruz Healthcare Center, a skilled

22  nursing care facility located in Santa Cruz, California. Timothy Blanchley was at all relevant

23  times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen"

24  as defined under Cal. Civ. Code § 1761(f).

25       15.     Plaintiff James Morris is an "elder" as defined under Welfare & Institutions Code

26  § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).  During the Class

27  Period, from June 2006 to August 2010, James Morris was a resident at Alta Vista Healthcare &

28

Wellness Centre a/k/a Alta Vista Healthcare, a skilled nursing care facility located in Riverside, California.

16.    Defendant Kindred Healthcare, Inc. ("Kindred Inc.") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant Kindred Inc. regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.  Defendant Kindred Healthcare, Inc., is the sole parent of defendant Kindred Healthcare Operating, Inc. ("KHOI").

17.    Defendant Kindred Healthcare Operating, Inc.  ("KHOI") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant KHOI regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.  Defendant KHOI is the sole equity member of defendant Kindred Nursing Center West, LLC. ("Kindred West").

18.    Defendant Kindred Nursing Centers West, LLC ("Kindred West") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant Kindred West regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.  Kindred West is the sole equity member of defendant California Nursing Center, LLC.  Defendant Kindred West is also doing business as, and is the designated licensee for, defendants:  Alta Vista Healthcare; Canyonwood Nursing and Rehabilitation Center; Fifth Avenue Healthcare Center; Golden Gate Healthcare

Center; Kindred Healthcare Center at Orange; Santa Cruz Healthcare Center; Valley Gardens Healthcare & Rehabilitation Center; Victorian Healthcare Center; and Bay View Center. Defendant Kindred West is also a partner in Hillhaven-MSC Partnership, licensee for 19th Avenue Healthcare Center, together with another undisclosed Kindred entity.

19. Defendant California Nursing Centers, LLC ("California Nursing Centers") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the Class Period defendant California Nursing Centers regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California. Defendant California Nursing Center, LLC is the sole equity member of defendants Care Center of Rossmoor, LLC, Riverside Healthcare & Wellness Center, LLC, Orange Healthcare & Wellness Center, LLC, and Smith Ranch Care Center, LLC.

20. Defendants Kindred Inc., KHOI, Kindred West, and California Nursing Centers collectively are referred to as "Kindred."

21. Defendant Hillhaven-MSC Partnership ("Hillhaven") is on information and belief a general partnership with Defendant Kindred Inc. formed and existing under the laws of the State of California, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the Class Period defendant Hillhaven regularly conducted business in the State of California, and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred, including defendant Nineteenth Avenue Healthcare Center.

22. Defendant Care Center of Rossmoor LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the Class Period defendant Care Center of Rossmoor LLC regularly conducted business in the State

1  of California, and—either directly or through its wholly-owned subsidiaries and/or affiliated

2  companies—owned, leased, licensed, operated, administered, managed, directed, and/or

3  controlled skilled nursing facilities in California operated by Kindred, including defendant

4  Rossmoor.

5          23.     Defendant Smith Ranch Care Center, LLC is a limited liability company organized

6  and existing under the laws of the State of Delaware, with its principal place of business located

7  at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during

8  the Class Period Smith Ranch Care Center, LLC regularly conducted business in the State of

9  California, and—either directly or through its wholly-owned subsidiaries and/or affiliated

10 companies—owned, leased, licensed, operated, administered, managed, directed, and/or

11 controlled skilled nursing facilities in California operated by Kindred, including defendant Smith

12 Ranch.

13         24.     Defendant Alta Vista Healthcare & Wellness Centre a/k/a Alta Vista Healthcare

14 ("Alta Vista") during the Class Period up to September 30, 2009, was a skilled nursing care

15 facility located in Riverside, California and operating there under a license granted to Kindred

16 West by the State of California Department of Public Health.  On information and belief, during

17 the Class Period up to September 30, 2009 defendant Alta Vista was leased, licensed, operated,

18 administered, managed, directed, and/or controlled by, or otherwise affiliated with Kindred.

19         25.     Defendant Bay View Nursing and Rehabilitation Center ("Bay View") is a skilled

20 nursing care facility located in Alameda, California and operating there under a license granted to

21 Kindred West by the State of California Department of Public Health.  On information and belief,

22 during the Class Period defendant Bay View was leased, licensed, operated, administered,

23 managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

24         26.     Defendant Canyonwood Nursing and Rehab Center ("Canyonwood") is a skilled

25 nursing care facility located in Redding, California and operating there under a license granted to

26 Kindred West by the State of California Department of Public Health.  On information and belief,

27 during the Class Period defendant Canyonwood was leased, licensed, operated, administered,

28 managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

27.     Defendant Fifth Avenue Health Care Center ("Fifth Avenue") is a skilled nursing care facility located in San Rafael, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Fifth Avenue was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

28.     Defendant Golden Gate Healthcare Center ("Golden Gate") is a skilled nursing care facility located in San Francisco, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Golden Gate was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

29.     Defendant Hacienda Care Center ("Hacienda") is a skilled nursing care facility located in Livermore, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Hacienda was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

30.     Defendant Nineteenth Avenue Healthcare Center ("Nineteenth Avenue") is a skilled nursing care facility located in San Francisco, California and operating there under a license granted to Hillhaven by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Nineteenth Avenue was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

31.     Defendant Kindred Healthcare Center of Orange ("Orange"), during the Class Period until September 30, 2009,  was a skilled nursing care facility located in Orange, California and operating there under a license granted to Kindred West by the State of California Department of Public Health. On information and belief, during the Class Period up to September 30, 2009 defendant Orange was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

1          32.     Defendant Care Center of Rossmoor f/k/a Guardian of Rossmoor ("Rossmoor") is

2   a skilled nursing care facility located in Walnut Creek, California and operating there under a

3   license granted to Care Center of Rossmoor LLC by the State of California Department of Public

4   Health. On information and belief, during the Class Period defendant Rossmoor was leased,

5   licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated

6   with, Kindred.

7          33.     Defendant Santa Cruz Healthcare Center ("Santa Cruz") is a skilled nursing care

8   facility located in Santa Cruz, California and operating there under a license granted to Kindred

9   West by the State of California Department of Public Health.  On information and belief, during

10  the Class Period defendant Santa Cruz was owned, leased, licensed, operated, administered,

11  managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

12         34.     Defendant Smith Ranch Care Center f/k/a Guardian at Smith Ranch Care Center

13  ("Smith Ranch") is a skilled nursing care facility located in San Rafael, California, and operating

14  there under a license granted to Smith Ranch Care Center LLC by the State of California

15  Department of Public Health. On information and belief, during the Class Period defendant Smith

16  Ranch was owned, leased, licensed, operated, administered, managed, directed, and/or controlled

17  by, and/or otherwise affiliated with, Kindred.

18         35.     Defendant Valley Gardens Healthcare & Rehabilitation Center ("Valley Gardens")

19  is a skilled nursing care facility located in Stockton, California and operating there under a license

20  granted to Kindred West by the State of California Department of Public Health.  On information

21  and belief, during the Class Period defendant Valley Gardens was leased, licensed, operated,

22  administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

23         36.     Defendant Victorian Healthcare Center f/k/a Hillhaven Victorian ("Victorian") is a

24  skilled nursing care facility located in San Francisco, California and operating there under a

25  license granted to Kindred West by the State of California Department of Public Health.  On

26  information and belief, during the Class Period defendant Victorian was owned, leased, licensed,

27  operated, administered, managed, directed, and/or controlled by, and/or otherwise affiliated with,

28  Kindred.

37.     Each of the entities referenced in paragraphs 24 through 36 above is a "skilled nursing facility" as defined in Health & Safety Code section 1250.  For purposes of this Complaint, each such entity is referred to as a "Facility" and, collectively, the "Facilities."

38.     At all times herein mentioned, defendants have all regularly conducted business throughout the State of California, including, but not limited to, the ownership, leasing, licensing, administration, operation, management, and/or supervision, and organization of the Facilities.

39.     In response to frustration regarding identifying the entities responsible for nursing homes, the federal government recently enacted the Nursing Home Transparency Act (42 U.S.C. Sect 1320a-3) to help untangle the organizational structure of nursing home chains. The information required to be disclosed under the Act will not be available to the public until March of 2013.  *See also* New York Times, September 23, 2007, "More Profit and Less Nursing at Many Nursing Homes" (describing how for-profit nursing home corporations are dividing themselves into many separate shell companies in order to avoid being held accountable to both the public regulatory system and residents). www.nytimes.com/2007/09/23/business/23nursing.html.

40.     The Facilities named here have no corporate headquarters, governing bodies, or traditional management hierarchy of their own.  Instead, Kindred Inc. manages, controls, and operates the Facilities.  Kindred Inc. oversees clinical issues and quality concerns of the Facilities with management consisting of physicians, chief medical officers, medical directors, senior vice presidents of clinical and nursing operations, and regional and district teams.

41.     All the Facilities are organized under Kindred Inc.'s Nursing Center Division (formerly referred to as the Healthcare Division), which is managed by Kindred's president and chief financial officer.  The Nursing Center Division, like the other Kindred Inc. divisions, is broken down into three geographic regions, each of which is headed by an operational senior vice president who reports directly to the division president.  The three regions are the East Region, Central Region, and West Region (also referred to as the Pacific region).  The Regions, in turn, are broken into "Districts."  The Districts, in turn, contain "Centers," the term Kindred uses to refer to its nursing Facilities.

42.     The Nursing Center Division has a number of overall strategies applicable to all the Facilities, including to increase average occupancy levels; to seek out and obtain higher acuity patients because of the higher revenue these patients generate; to establish patient admission and census goals; and to reduce the use of contract labor.

43.     The Nursing Center Division president is employed by KHOI, and his salary is guaranteed by Kindred Inc.

44.     The Nursing Center Division assumes responsibility for utilization and business development of the Facilities, as well as developing and implementing long term strategy and day-to-day tactical execution of operational initiatives at the Facilities.

45.     Kindred Inc. provides the Facilities with shared (centralized) processes, including centralized management, centralized information systems, state licensing and certification maintenance, federal and state reimbursement expertise, Medicare and Medicaid certification, legal, finance, purchasing, accounting, risk management, clinical, human resources, training, information technology, compliance, purchasing, and other functions.  While the Facilities have lower level managers on site, the senior management and operational decisions at each are conducted by Kindred Inc. in accordance with a common business model.  The centralization of these services is intended to promote the standardization of certain processes.

46.     Kindred Inc. refers to the Facilities as "sites of service."  In filings with the SEC, Kindred Inc. describes how it monitors and oversees the Facilities.  For example, Kindred Inc.:

> Monitor[s] and enhance[s] the quality of care and customer service at our nursing and rehabilitation centers through the use of performance improvement committees as well as family satisfaction surveys.  Our performance improvement committees oversee resident healthcare needs and resident and staff safety.  Physician medical directors serve on these committees and advise on healthcare policies and practices.  We regularly conduct surveys of residents and their families, and these surveys are reviewed by our performance improvement committees at each center to promote quality care and customer service.

Kindred Healthcare, Inc., Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, for the fiscal year ended Dec. 31, 2009 ("Kindred 2009 Form 10-K") at 13.

47.     There is a sufficient unity of interest and ownership between Kindred Inc., Kindred West, California Nursing Centers, KHOI and the Facilities, and each of them, such that the acts of one are for the benefit of all and can be imputed to the acts of the others.  Without limitation, the unity of interest and relationship between these defendants is evidenced by:  (a) Kindred's key decisions or approval of such decisions concerning each Facility's day-to-day operations, such as staffing levels, employee hiring and firing, budgets and related issues, which decisions and directives, on information and belief, were made at the direction of and/or the benefit of Kindred; (b) communications by Kindred with the Department of Health Services with respect to licensing and certification issues affecting the Facilities, which communications, on information and belief, were undertaken at the direction of and/or for the benefit of Kindred; and (c) overlapping officers, directors and employees between the various entities.  Actions taken by these defendants were undertaken within the course and scope of their agency and employment, with the knowledge, consent, authorization, approval, and/or ratification of their co-defendants.

48.     Kindred conducts, manages, and controls the material compliance functions for the Facilities, including those associated with compliance with the legal and regulatory issues challenged in this lawsuit, namely the failure of each of the Facilities to comply with laws and regulations mandating adequate nurse staffing.  Additionally, each of the Facilities delegated such compliance functions to Kindred to conduct on their behalf. Among other things, with respect to the Facilities, Kindred:  (1) oversees all compliance program operations; (2) conducts and oversees regular and targeted training on compliance programs, policies and procedures, as well as federal and state laws and regulations affecting the skilled nursing, home health, and hospice industries; (3) leads and coordinates the efforts of all compliance personnel; (4) develops and implements systems to assist clients in detecting, preventing and reporting potential fraud, waste, and abuse in business operations; (5) creates, reviews, revises, and updates, at a minimum annually, core elements of the compliance program, including but not limited to compliance-related policies and procedures; (6) develops and executes a compliance work plan that is based on industry and government activities, results of internal and external audits and surveys, trended hotline data and other identified areas of prioritized compliance risk; (7) oversees the compliance

hotline and maintains systems to respond to calls in a timely manner; (8) tracks data related to compliance issues; (9) initiates, directs, and participates in investigations related to compliance concerns and issues, and works with management to bring such issues to resolution; (10) works collaboratively with each of the Facilities; (11) provides reports of relevant compliance program activities to the Kindred Board of Directors on at least a quarterly basis; (12) develops, implements, and evaluates a system of enterprise-wide compliance communication to all employees; (13) identifies, monitors, and responds to potential areas of compliance vulnerability, including minimum nursing hour requirements; (14) conducts formal compliance risk assessments that drive the development of an annual compliance work plan; (15) oversees the development, and monitors implementation, of corrective action plans in response to internal or external regulatory audit/survey findings; and (16) manages all other aspects of the Facilities' compliance efforts.  The failure of the aforementioned compliance functions caused Plaintiffs and the Class loss and injury, as described more fully below.

49.    The Facilities pay the cost of Kindred's services by paying Kindred a percentage of their net profits.  The percentage of net profit is set by the Region, not by the Facility.  Those costs, in turn, are reimbursed to the licensees (Kindred West, *et al.*) by Medicare and Medi-Cal as part of "Home Office" costs. The Facilities thus both used the parents' (Kindred's) personnel and equipment to perform their functions and paid the parent for those services.

50.    Each of the Facilities is wholly owned, leased, operated, managed, and/or controlled by Kindred, and Kindred fails to recognize the uniqueness and independence of the Facilities, even when Kindred does not own the Facility.  At all times relevant hereto there was a unity of interest and ownership between Kindred and the Facilities such that the individual distinctions between them have ceased to exist, and the facts as alleged herein are such that an adherence to the fiction of the separate existence of Kindred from that of the Facilities would, under the particular circumstances alleged herein, sanction a fraud, promote injustice, and frustrate a meritorious claim  On information and belief, Kindred deliberately set up empty shells and agents so that it could deceive the public and the residents as to who was actually responsible for the decisions made at the Facilities, while also siphoning funds out of the Facilities, thus

1   allowing any single Facility to avoid paying a judgment against it. Kindred is the alter-ego of

2   each of the Facilities and any corporate veil should be pierced.

3       51.    Kindred and the Facilities are part of a single enterprise formed for a common

4   purpose with a unity of interest. The viability of each of the Facilities is intertwined with their

5   dependence on Kindred. As described further within, consistent with this unity of interest and

6   interdependence, the senior management and control of each of the Facilities is delegated to

7   and/or otherwise conducted by Kindred. Kindred actively participates in and manipulates the

8   business activities of the Facilities, including the conduct challenged in this complaint. The

9   control and manipulation of the Facilities by Kindred is so pervasive that each of them is but an

10  agent, instrumentality, conduit and/or alter-ego of Kindred in the prosecution of a single venture,

11  namely, the provision of nursing home services to California consumers, including members of

12  the Class. There is such unity of interest, ownership and management that the separateness of the

13  defendant corporations have in effect ceased to exist. An adherence to the fiction of a separate

14  existence of the multiple corporations or entities would, under the circumstances here present,

15  promote injustice and make it inequitable for Kindred Inc., Kindred West, California Nursing

16  Centers, and KHOI to escape liability for obligations incurred as much for their benefit as the

17  Facilities. The Facilities were merely used to effect the scheme of the parent entities.

18      52.    Plaintiffs allege on information and belief the following facts demonstrating

19  defendants' unity of interest and that adherence to the fiction of their separate existence would

20  sanction a fraud and/or promote injustice:

21          a.    Kindred Inc. provides letters to the California Department of Health on

22  behalf of its subsidiaries, including the Facilities named herein, as evidence that the subsidiaries

23  have sufficient resources to operate the Facilities for a period of at least 45 days, based upon

24  multiple Facilities having access to the same multimillion dollar line of credit at the same bank.

25  The credit line is in the name of Kindred Healthcare, Inc. and KHOI, and all of the Facilities are

26  guarantors on the credit line. Thus, if any one Facility were to default, the other Facilities would

27  be required to pay off loans made on the credit line to the defaulting Facility. The credit line, in

28  turn, is used to jointly meet the state and federal licensing financial responsibility requirements of

1   the Facilities.  In the credit line all the Kindred entities jointly promise that they will comply with

2   all laws and regulations. This shows commingling of funds and that Kindred Inc. exercises

3   budgetary control over its subsidiaries.

4          b.     Kindred Inc. indicates in its SEC filings that it manages labor costs by

5   adjusting nurse staffing, showing Kindred Inc.'s oversight of employment matters at the Facility-

6   level (where nursing care is provided) and centralized budgetary control. Kindred Healthcare,

7   Inc., 10-K Annual Report for the fiscal year ended Dec.  31, 2007 at 37, 59; and for the fiscal year

8   ended Dec. 31, 2008 at 6, 14.

9          c.     Kindred Inc. employs a "cluster market" organization strategy,

10  intentionally grouping Facilities together geographically, to coordinate operations of the

11  Facilities.  "These cluster markets present opportunities for our nursing and rehabilitation centers

12  and hospitals to share centralized business office operations and collaborate on their sales and

13  marketing and managed care strategies."  Kindred Healthcare, Inc., 10-K Annual Report for the

14  fiscal year ended Dec. 31, 2010 at 8-9, 15; Kindred Healthcare, Inc., 10-K Annual Report for the

15  fiscal year ended Dec. 31, 2007 at 16-17.  For example, when a staff member at one Facility does

16  not show up for work on a scheduled work day, that Facility will attempt to find a substitute from

17  the staff of another Facility that falls within the same "cluster" of Facilities.

18         d.     According to documents submitted by defendants to the California

19  Department of Public Health, the same persons serve as the Vice Presidents, Senior Vice

20  Presidents, Executive Vice Presidents, and Presidents at both Kindred Inc. and KHOI, at the same

21  address.

22         e.     The  Facilities freely use the trademarks of Kindred with no consideration

23  or royalty fee. All defendants use the Kindred logo, and their written materials describe Kindred

24  as if it were a single entity.

25         f.     The liability policy for all of the Facilities is in the name of Kindred, Inc.,

26  not in the name of the Facilities.  The policy is issued by Cornerstone Insurance Company, a

27  Cayman Island subsidiary of Kindred, Inc.  The Facilities set aside insurance reserves.  These

28  reserves are not refunded to the Facilities, but rather are used by Kindred, Inc., to pay down debt.

1   This shows commingling of funds, and that Kindred has deliberately structured its liability

2   policies such that the Facilities may be unable to pay judgments against them, thus frustrating

3   meritorious claims.

4          g.      All senior personnel at each Facility have access to the Kindred website,

5   Knect. Knect provides access to various departments and operations, including:  Global; Kindred

6   Support Center; Nursing Center Division; Hospital Division; Rehab Division; Subacute Units;

7   Human Resources and Payroll; and Reset Domain Password.  That site provides different levels

8   of access depending how far up the chain of command the Kindred employee is.  Every aspect of

9   each Facility is subject to uniform policies and procedures which are all available on the Knect

10   web site.  There are at least eight separate procedure manuals controlling every aspect of how the

11   Facility is run (referred to internally as the "Great Eight").  A Facility is not supposed to deviate

12   from these policies and procedures.  A Facility does not have the ability to change any of those

13   policies and procedures without the permission and consent of the Nursing Home Division.

14          h.      Employees of Facilities are hired by KHOI, trained by KHOI and paid

15   through KHOI.  Facility employees are offered opportunities to move up the ladder within the

16   Kindred Nursing Home Division. If they are transferred between Facilities, they maintain their

17   seniority and benefits. They belong to one employee benefit plan run by KHOI. If they work for

18   more than one Facility in a "Cluster," they are paid overtime.

19          i.      Kindred Inc.'s Nursing Center Division prepares a daily census summary

20   for the Facilities that indicates whether they have varied from the budget.

21          j.      Kindred Inc. Facilities do not negotiate or execute their own master leases

22   but do have obligations under them, reflecting the lack of an arms-length transaction. All of the

23   Facilities are subject to master lease agreements which are all signed by Kindred, Inc. and KHOI,

24   not by the Facilities. The master leases cross-collateralize lease payments among Facilities, such

25   that if a particular Facility cannot pay the rent, other Facilities or Kindred would cover the debt.

26   There is no ability to terminate the lease of any individual Facility under the master lease

27   agreements.  If Kindred elects to renew the master leases, all, and not less than all, of the

28   Facilities in a renewal bundle must be renewed.  If any of the Facilities loses its required

1    healthcare license, it would be considered an event of default by all the Facilities. Indeed, even a

2    reduction in the number of licensed beds in excess of 10% by any one Facility would be

3    considered a default by all the Facilities under the master leases. Defendants thus have agreed to

4    be liable for each other's debts under the leases.

5             k.      KHOI's Payroll Department is responsible for issuing itemized wage

6    statements to the staff at each Facility.  KHOI also approves wage or salary adjustments for the

7    staff.  Staff questions or disputes about wages are directed to KHOI.

8             l.      On August 6, 2010, Kindred Inc., KHOI, and Kindred Nursing Centers

9    East, LLC stipulated in another case that the court and jury must consider these entities as "a

10   single entity."  *Owens v. Kindred Healthcare, Inc.*, No. 2007-417 (Mass. Super. Ct.).  The

11   Kindred parents and licensees should not be permitted to acknowledge that they are a single

12   enterprise before the court when convenient while seeking to obscure this status in order to avoid

13   judgment in other cases.

14       53.     Enjoining the Facilities from understaffing without also enjoining Kindred would

15   be ineffective and promote injustice because Kindred controls, influences, and is jointly

16   responsible for understaffing at the Facilities.

17       54.     On information and belief, at all times herein mentioned, defendants, and each of

18   them, was the agent, partner, joint venturer, representative, and/or employee of the remaining

19   defendants, and was acting within the course and scope of such agency, partnership, joint venture,

20   and/or employment.  Furthermore, in engaging in the conduct described below, defendants were

21   all acting with the express or implied knowledge, consent, authorization, approval, and/or

22   ratification of their co-defendants.

23       55.     Defendants constitute a joint venture because, as alleged in paragraphs 40 through

24   52, they combined their property, skill, and knowledge to carry out a single business undertaking

25   and agreed to share the control, profits, and losses. In understaffing the Facilities and

26   misrepresenting their staffing and/or failing to disclose understaffing, Defendants were acting

27   within the scope of this agreement.

28

1    56.    The Facilities are Kindred's agents because the nursing services performed by the

2    Facilities are sufficiently important to Kindred that, if the Facilities did not perform these

3    services, then Kindred's own officials would undertake to perform them.  As explained in

4    Kindred Inc's 2010 Annual Report, "Kindred Healthcare, Inc. is a healthcare services company

5    that through its subsidiaries operates hospitals, nursing and rehabilitation centers, assisted living

6    facilities and a contract rehabilitation services business across the United States."  Kindred

7    Healthcare, Inc., 10-K Annual Report for the fiscal year ended Dec. 31, 2010 at 3.

8                                  **JURISDICTION AND VENUE**

9    57.    This Court has jurisdiction over all causes of action asserted herein.  Defendants

10   are subject to the personal jurisdiction of this Court because each defendant has sufficient

11   minimum contacts in California, or otherwise intentionally avails itself of the California market

12   through participation in skilled nursing facilities located in California, derivation of substantial

13   revenues from California, and other activities, so as to render the exercise of jurisdiction over it

14   by the California courts consistent with traditional notions of fair play and substantial justice.

15   58.    This court has subject matter jurisdiction pursuant to the Class Action Fairness

16   Act, 28 U.S.C. § 1446.

17   59.    Venue is proper in this District under 28 U.S.C. § 1391(a), based on the facts,

18   without limitation, that:  this Court is a court of competent jurisdiction; defendants were subject

19   to personal jurisdiction in the District at the time this action commenced based on conducting

20   substantial business in this District, including without limitation, the ownership, administration,

21   management, and/or operation of the Golden Gate, Nineteenth Avenue, and Victorian Facilities; a

22   substantial part of the events or omission giving rise to the Plaintiffs' claims arose in this District;

23   Plaintiffs reside in this District; a portion of defendants' liability arose in this District; and certain

24   acts upon which this action is based occurred in part in this District.

25                                  **GENERAL ALLEGATIONS**

26   60.    Defendants were and are in the business of providing long-term care and are

27   subject to the requirements of federal law, and California statutory and regulatory law, governing

28   the operation of skilled nursing facilities.  At all relevant times, Defendants owned, leased,

1    licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing

2    facilities in California.

3        61.    Kindred Inc. classifies itself as the "largest publicly held operator of nursing and

4    rehabilitation centers in the United States."  Kindred 2009 Form 10-K at 13.

5        62.    The General Accountability Office has found that most poorly performing nursing

6    homes in the U.S.  are owned by for-profit chains.  GAO, *CMS's Specific Focus Facility*

7    *Methodology Should Better Target the Poorly Performing Facilities Which Tend To Be Chain*

8    *Affiliated and For-Profit*, GAO-09-689 (2009).  Many studies have shown that for-profit nursing

9    homes have poorer quality, operate with lower costs, and have lower staff-patient ratios than

10   nonprofit facilities.  *See, e.g.*, V.R. Commondore et al., *Quality of Care on For-Profit and Not-*

11   *for-Profit Nursing Homes:  Systemic Review and Meta-Analysis*, 339 Brit. Med. J. 2732 (2009).

12   Other studies have found that poor nursing home quality is directly related to inadequate staffing

13   levels.  *See, e.g.*, U.S. Centers for Medicare and Medicaid Services, *Report to Congress:*

14   *Appropriateness of Minimum Nurse Staffing Ratios in Nursing Home*s (2001).

15       63.    Kindred Inc. has a long history of compliance issues.  Kindred Inc.'s corporate

16   predecessor, Vencor, Inc., and Ventas, Inc., a related real estate investment trust, faced a $1.3

17   billion fraud claim from the United States government alleging that Vencor knowingly submitted

18   false claims to Medicare, Medicaid, and Tricare, the military's health care program.  In 2001, this

19   suit and related civil claims settled for $219 million.  After reorganization following Vencor's

20   Chapter 11 bankruptcy in 1999, from 2001 to 2008, Kindred Inc. entered into a corporate

21   compliance agreement (CIA) with the U.S. Office of the Inspector General (OIG) because of poor

22   quality of care.  In 2009, Kindred Healthcare agreed to pay $1.3 million to settle allegations in a

23   qui tam complaint that Kindred billed Medicaid for a higher number of drugs than were actually

24   administered.

25       64.    In 1999, in response to growing concern over the low levels of direct patient

26   staffing and quality of care in nursing homes, the California Legislature amended Health & Safety

27   Code section 1276.5 to increase the minimum nursing staff requirement to 3.2 hours of direct

28   patient care per day, effective January 2000.

65.     Section 1276.5, as amended, states in pertinent part:

> [C]ommencing January 1, 2000, the minimum number of actual nursing hours per patient required in a skilled nursing facility shall be 3.2 hours, except as provided in Section 1276.9.
>
> For purposes of this section, "nursing hours" means the number of hours of work performed per patient day by aids, nursing assistants, or orderlies plus two times the number of hours worked per patient day by registered nurses and licensed vocational nurses (except directors of nursing in facilities of 60 or larger capacity) ... except that nursing hours for skilled nursing facilities mean the actual hours of work, without doubling the hours performed per patient day by registered nurses and licensed vocational nurses.

Health & Safety Code § 1276.5 (a) and (b)(1). The California skilled nursing facilities that are at issue in this action are not exempt under Health & Safety Code section 1276.9.

66.     Generally, only the hours of certified nurses assistants, licensed vocational nurses, and registered nurses are considered to determine whether staffing ratios at skilled nursing facilities are in compliance with the requirement of Section 1276.5. The 3.2 NHPPD requirement is calculated on a facility-wide basis over a 24-hour period.

67.     Consistent with Section 1276.5, Health & Safety Code section 1559.1 establishes a "Patient's Bill of Rights" for residents in skilled nursing facilities that requires, among other things, that the skilled nursing facilities "employ an adequate number of qualified personnel to carry out all functions of the facility." An essential function of a skilled nursing facility is the provision of nursing services.

68.     At all relevant times, defendants have been required to staff the Facilities with sufficient levels of qualified personnel so as to comply with the 3.2 NHPPD requirement of Section 1276.5 and the requirements of Section 1599.1.

69.     Defendants portray and promote their facilities as meeting or exceeding all statutory and regulatory requirements, including minimum staffing requirements. In their standard Resident Rights and in postings at their facilities, defendants uniformly and systematically claim to adhere to "the resident rights afforded under State law, [which] may be obtained from the [Kindred] business office," including the Patient's Bill of Rights, as set forth in

1    Section 72527 of the California Administrative Code, which in part requires defendants to

2    provide an "adequate number of qualified personnel."

3        70.    Kindred's standard Code of Conduct provided to new residents states in pertinent

4    part:  "Kindred strives to sustain the highest quality of services."  The Code of Conduct further

5    states that Kindred's "[o]fficers, employees and contractors are expected to adhere to practices

6    that promote these measures," including a "commitment to excellence" requiring Kindred "to be

7    responsive to patient, resident and family concerns" and "maintain patient/residents' rights and

8    dignity at all times while under our care."  Kindred's yearly Quality and Social Responsibility

9    Reports likewise tout Kindred's purportedly high quality standards.

10       71.    In addition, defendants have also promised the State of California that they meet

11   all state and federal requirements regarding the operation, management, administration, and/or

12   ownership of a skilled nursing facility.  In particular, as part of the initial licensing and annual

13   renewal process for each Facility, defendants promise to comply with the Health and Safety Code

14   and applicable regulations, which include minimum staffing requirements. The California

15   Department of Public Health lacks the resources, however, to monitor daily staffing levels at the

16   Facilities. At best, it samples only a few days per year.

17       72.    Defendants' representations track their duty under California law to provide

18   sufficient nursing staff and related services. Unfortunately, the actual nurse staffing provided falls

19   well short of defendants' representations and their legal duty.  Defendants have systematically

20   and continuously failed to comply with the 3.2 hour NHPPD requirement under Section 1276.5

21   on 20% or more days during the Class Period.

22       73.    Despite their failure to adequately staff their skilled nursing facilities in California

23   and provide the quality of care they claimed to provide, defendants wrongly received in the

24   aggregate millions of dollars in payments from residents and/or their family members.  These

25   monies were solicited and collected under the false and misleading pretense that defendants

26   complied with California staffing laws and would remain in compliance.

27       74.    Plaintiffs resided at one or more Facilities on days during the Class Period when

28   direct nursing staff levels were below the minimum levels required under California law.

75.      Defendants did not disclose to Plaintiffs that they did not intend to comply with the 3.2 hour NHPPD minimum staffing requirements of Section 1276.5 or employ an adequate number of qualified nursing personnel to carry out all of the functions of their facilities in compliance with Section 1599.1.  Plaintiffs reasonably expected that staffing would comply with the legal requirements and paid money to defendants from their own funds to remain at the facility where they resided.  However, defendants failed to provide the nursing staffing levels that Plaintiffs reasonably expected to receive.  As such, Plaintiffs lost money and was injured in fact as a result of defendants' failure to comply with the legal minimum staffing requirements.  Plaintiffs were also deprived of their rights under Sections 1276.5 and 1599.1 to reside in a skilled nursing facility that provided sufficient skilling nursing personnel to comply with California law.

76.      During their stay at the Facilities, Plaintiffs were subjected to indignities and other harms that directly resulted from inadequate nurse staffing levels at the facility, including without limitation: inappropriate chemical and physical restraints; no response or long response times to her call light; failure to provide showers; lack of assistance with grooming and bathing; lack of assistance with eating; lack of assistance with dressing, including being left without clothing in the hallway; falls; infrequent and inadequate turning and repositioning; inadequate attention to toileting needs; no response or long response times to her call light; lack of assistance with grooming and bathing; lack of assistance with eating, resulting in empty or clogged feeding tubes; lack of assistance with dressing; failure to provide fluids as needed; and an inability to find staff for extended periods of time.

## CLASS ACTION ALLEGATIONS

77.      This action is brought on behalf of the Named Plaintiffs identified above and all similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  The class is defined as:

a.      **Facility Resident Class**.  All persons who, from November 23, 2006 through the present (the "Class Period"), resided at a Facility on at least one day during which the Facility did not provide at least 3.2 hours of direct nursing care per patient day.  The claims

1    alleged in the First Cause of Action under Health & Safety Code section 1430(b) are asserted on

2    behalf of the Facility Resident Class.

3                    i.      **Private Pay Subclass**.  All persons who are members of the

4    Facility Resident Class and who made payments to the defendants, or any of them, through their

5    own funds during the Class Period.  In addition to claims under Health & Safety Code section

6    1430(b), the claims alleged in the Second Cause of Action (Business & Professions Code section

7    17200 *et seq.*), and Third Cause of Action (Civil Code section 1770 *et seq.*) are asserted on behalf

8    of the Facility Resident – Private Pay Subclass.

9            b.      Excluded from the above-referenced class and subclass are:  (i) persons

10   who resided at the Alta Vista and Orange Facilities after they were sold on September 30, 2009;

11   (ii) the defendants, any entity in which the defendants have a controlling interest, the officers,

12   directors, and employees of any defendant, and the legal representatives, heirs, successors, and

13   assigns of defendants; (iii) any judge assigned to hear this case (or any spouse or family member

14   of any assigned judge); (iv) any juror selected to hear this case, (v) claims for personal injury and

15   wrongful death; and (vi) any and all legal representatives of the parties and their employees.

16   78.      This action seeks to enjoin defendants from understaffing, failing to disclose their

17   understaffing, and making misleading promises about staffing.  In addition, this action seeks

18   recovery for economic damages or restitution arising from defendants' understaffing, such as

19   recovery of statutory damages and/or monies paid by Plaintiffs and the class as a result of

20   defendants' failure to disclose and misleading promises.  This action does not seek recovery for

21   personal injuries or wrongful death that may have been caused by inadequate staff at defendants'

22   facilities.

23   79.      **Numerosity of the Class.**  Members of the class are so numerous that their

24   individual joinder herein is impracticable.  The precise number of members of the class and their

25   addresses are presently unknown to Plaintiffs.  The precise number of persons in the class and

26   their identities and addresses may be ascertained from defendants' records.  If deemed necessary

27   by the Court, members of the class may be notified of the pendency of this action by mail,

28   supplemented by published notice.

80.     **Common Questions of Fact and Law.**  Common questions of law and fact exist as to all members of the class.  These common legal and factual questions include, without limitation:

a.      whether all or some of the Facilities failed to comply with the 3.2 hour NHPPD minimum staffing requirements of Health & Safety Code section 1276.5 during the Class Period;

b.      whether defendants failed to employ an adequate number of qualified nursing personnel to carry out all of the functions of their Facilities in violation of Health & Safety Code section 1599.1;

c.      whether defendants' understaffing their Facilities violates any right(s) of residents as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Administrative Code;

d.      whether defendants' conduct violates Health & Safety Code section 1430(b);

e.      whether defendants' conduct violates Business & Professions Code section 17200 *et seq.*

f.      whether defendants' conduct violates the Consumer Legal Remedies Act, Civ. Code § 1770 *et seq.*; and

g.      whether defendants engaged in a pattern and practice of unfair and deceptive conduct in connection with their management, administration and operation of the Facilities.

81.     **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the Facility Resident Class.  On information and belief, Plaintiffs and Facility Resident Class Members resided at one or more of the Facilities during the Class Period on days when that Facility failed to (a) meet the 3.2 hour NHPPD minimum staffing requirements of Health & Safety Code section 1276.5; and/or (b) failed to employ an adequate number of qualified nursing personnel to carry out all of the functions of the Facility in violation of Health & Safety Code section 1599.1.

82.     In addition, the Named Plaintiffs (and/or their deceased relatives) made payments to one or more of the defendants for skilled nursing services rendered at a Facility through private pay funds during the Class Period.  The named plaintiffs (and/or their decedents) for many of the facilities, including, without limitation, Bay View, Canyonwood, 5th Avenue, Hacienda, and Valley Gardens, paid private funds to the defendants. All named plaintiffs have sustained actual damages and injury in fact.

83.     **Adequacy.**  The Named Plaintiffs will fairly and adequately represent the class and subclass on whose behalf this action is prosecuted.  Their interests do not conflict with the interests of the Class.   Also, they have retained competent counsel who have experience in class action litigation and will prosecute this action vigorously.

84.     **Defendants' Actions Apply Generally to the Class.**  The above-referenced class may be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

85.     **Predominance of Common Questions of Law and Fact.**  The above-referenced class may be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to Class members, such as those listed above, predominate over the questions affecting only individual members of the Class.

86.     **Superiority of Class Action.**  A class action is superior to other available means for the fair and efficient adjudication of the claims asserted herein.  The statutory damages, restitution and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims.  Given the amount of the individual Class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein.  Thus, few, if any, Class members have any interest in individually controlling the prosecution of separate actions based on the claims in this action.

87.     Upon information and belief, no other litigation by a class member concerning the controversy in this case is proceeding.

88.     It is desirable to concentrate actions based on Plaintiffs' claims in this forum. Even if the members of the class themselves could afford individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties and the court system given the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

89.     There are few, if any, likely difficulties in managing this action as a class action.

**FIRST CAUSE OF ACTION FOR VIOLATION OF HEALTH & SAFETY CODE SECTION 1430(b) AGAINST ALL DEFENDANTS**

90.     Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

91.     Health & Safety Code section 1430(b) provides that "a current or former resident or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations [which incorporates Health & Safety Code section 1599.1], or any other right provided for by federal or state law or regulation."

92.     Section 1430(b) provides for a remedy of statutory damages "up to $500" per violation, together with a right to injunctive relief, attorneys' fees and costs.  Health & Safety Code § 1430(b).  The remedies in Section 1430(b) are cumulative to any other remedies provided by law.  *Id.* § 1430(c).  Given that the violation involves elderly and/or disabled residents, the statutory damage award is subject to trebling under Civil Code section 3345.

93.     Defendants have violated and continue to violate Section 1430(b) by, among other things, failing to provide an adequate number of qualified personnel to carry out all functions at the Facilities in violation of Health & Safety Code section 1599.1(a).  Specifically, defendants have failed to employ enough qualified nursing personnel to carry out the critical function of the Facilities, which is the provision of skilled nursing services.  Defendants' violation of section 1599.1(a) is evidenced by, among other things: a) the Facilities have failed to comply with the 3.2

1   hour NHPPD requirement of Health & Safety Code section 1276.5 on numerous days during the

2   Class Period; and/or (b) the Facilities have failed to provide an adequate number of qualified

3   nursing personnel in light of the aggregate patient acuity levels at the Facilities.

4        94.    As a result of defendants' conduct, Plaintiffs and class members have suffered

5   injury and are entitled to statutory damages in an amount to be determined at trial, as well as

6   injunctive relief, attorneys' fees and costs.

7        95.    For purposes of California Health & Safety Code section 1430(b), on information

8   and belief, the California Department of Public Health ("DPH") lists defendant Kindred West as

9   the licensee for defendants Alta Vista, Bay View, Canyonwood, Fifth Avenue, Golden Gate,

10   Hacienda, Orange, Santa Cruz, Valley Gardens, and Victorian; defendant Hillhaven as the

11   licensee for defendant Nineteenth Avenue; defendant Care Center of Rossmoor LLC as the

12   licensee for defendant Rossmoor; and defendant Smith Ranch Care Center LLC as the licensee

13   for defendant Smith Ranch.

14   **SECOND CAUSE OF ACTION FOR UNLAWFUL, UNFAIR AND DECEPTIVE**
15   **BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

16        96.    Plaintiffs refer to, and incorporate herein by this reference, all preceding

17   paragraphs.

18        97.    Defendants, and each of them, have engaged in unlawful and unfair business acts

19   and practices in violation of Business and Professions Code section 17200 *et seq.*

20        98.    In particular, defendants, and each of them, have engaged in unlawful business

21   acts and practices in violation of Business and Professions Code section 17200 *et seq.* by

22   violating numerous laws, statutes and regulations including, without limitation:

23            a.    Failing to employ an adequate number of nursing qualified personnel

24   violation of Health & Safety Code section 1599.1(a);

25            b.    Systematically and uniformly failing to disclose, concealing and/or

26   misrepresenting the true level of nurse staffing provided at their California skilled nursing

27   facilities in violation of Business & Professions Code section 17500, *et seq.*

28

1    99.    By virtue of the conduct alleged herein, defendants, and each of them, have also

2    engaged in fraudulent business practices in connection with the representations, promises,

3    omissions, and other statements made concerning the level of nurse staffing offered to residents

4    admitted to their California skilled nursing facilities.

5    100.    By virtue of the conduct alleged herein, defendants, and each of them, have also

6    engaged in deceptive and misleading advertising through representations, promises, omissions,

7    and other statements made concerning the level of nurse staffing offered to residents admitted to

8    their California skilled nursing facilities.

9    101.    Members of the general public (including without limitation persons admitted to

10    and/or residing in the Facilities during the Class Period, and their family members and/or

11    representatives) have been and are likely to be deceived by the statements, representations,

12    omissions, and other conduct by defendants as alleged herein.

13    102.    The acts and practices of defendants, and each of them, also constitute unfair

14    business acts and practices within the meaning of Business & Professions Code section 17200, *et*

15    *seq.*, in that the conduct alleged herein is immoral, unscrupulous and contrary to public policy,

16    and the detriment and gravity of that conduct outweighs any benefits attributable to such conduct.

17    Further, defendants' conduct threatens actual and incipient violations of numerous laws and

18    regulations intended to protect elderly and/or disabled residents, and in addition, defendants'

19    conduct violates the policy or spirit of these laws and otherwise results in a significant harm or

20    threat of harm to elderly and/or disabled residents.

21    103.    Defendants' conduct presents a continuing threat of harm to the public in that,

22    among other things, defendants continue to mislead elderly and/or disabled persons (and their

23    family members and/or representatives) into agreeing to be admitted to their skilled nursing

24    facilities based on the false and misleading representations and failure to disclose the true facts

25    concerning inadequate staffing and understaffing at the Facilities.

26    104.    As a direct and proximate result of the defendants' unlawful business practices,

27    Plaintiffs and members of the Class have been injured in fact, lost money and sustained

28    substantial economic harm as alleged herein.  Likewise, as a direct and proximate result of the

1    defendants' unlawful business practices, members of the general public (including Class

2    members) have been harmed and continue to be harmed by defendants' conduct.

3        105.    Plaintiffs seek an injunction that requires that defendants immediately cease acts of

4    unfair and fraudulent business acts or practices as alleged herein, and to enjoin defendants from

5    continuing to engage in any such acts or practices in the future.  Plaintiffs also seek restitution,

6    attorneys' fees, and all other remedies permitted by law.

7        106.    Many of the named plaintiffs including, without limitation, the representatives for

8    the Bay View, Canyonwood, Fifth Avenue, Hacienda, and Valley Gardens Facilities, paid money

9    from their own funds to the defendants based on the reasonable expectation that the Facilities

10   would be staffed in compliance with applicable laws. The true facts are that the Facilities

11   regularly failed to comply with the minimum and adequate nurse staffing requirements under

12   California law.  As a result, named plaintiffs lost money and sustained injury in fact as a result of

13   defendants' conduct.  As a direct and proximate result of defendants' unfair, unlawful and

14   deceptive business practices, named plaintiffs, Class Members and members of the general public

15   have been harmed and continue to be harmed by defendants' conduct.

16       107.    Plaintiffs seek an injunction that requires that defendants immediately cease acts of

17   unfair and fraudulent business acts or practices as alleged herein, and to enjoin defendants from

18   continuing to engage in any such acts or practices in the future.  In addition, at present, the named

19   plaintiffs seek restitution on behalf of Private Pay Subclass Members from the following

20   facilities: Bay View, Canyonwood, Fifth Avenue, Hacienda, and Valley Gardens.  Plaintiffs also

21   seek attorneys' fees, and all other remedies permitted by law.

22   **THIRD CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMER**
     **LEGAL REMEDIES ACT AGAINST ALL DEFENDANTS**

23

24       108.    Plaintiffs refer to, and incorporate herein by this reference, all preceding

25   paragraphs.

26       109.    The named plaintiffs are "senior citizens" and/or "disabled persons" as defined by

27   Civ. Code § 1761(f) and (g), and "consumers" as defined in for purposes of Civ. Code § 1761(d).

28

1  Defendants are "persons" as defined by Civil Code section 1761(c).  The provision of skilled

2  nursing services constitutes a "transaction" covered by the CLRA.

3       110.    Each of the Defendants has violated and continues to violate the Consumers Legal

4  Remedies Act, Civil Code §§ 1750 *et seq.* ("CLRA"), including, without limitation, sections

5  1770(a)(5) and 1770(a)(7), by their failure to disclose, and active concealment of, the material

6  facts.  Defendants' conduct constitutes unfair and deceptive acts or practices in violation of

7  section 1770(a) of the CLRA.  Specifically, the following defendants failed to disclose and

8  actively concealed the following material facts from the following named plaintiffs:

9       a.    The Fifth Avenue Healthcare Facility represented to plaintiff Aranka

10 Duboczy and her family members that it was a "skilled nursing facility," but failed to disclose and

11 actively concealed  that the Fifth Avenue Healthcare Facility failed to comply with California's

12 adequate nurse staffing requirements as alleged herein.

13      b.    The Rossmoor Facility represented to plaintiff Arlene Bettencourt and her

14 family members that it was a "skilled nursing facility," but failed to disclose and actively

15 concealed that the Rossmoor Facility failed to comply with California's adequate nurse staffing

16 requirements as alleged herein.

17      c.    The Bay View Facility represented to plaintiff Romaine Crvarich and her

18 family members that it was a "skilled nursing facility," but failed to disclose and actively

19 concealed that the Bay View Facility failed to comply with California's adequate nurse staffing

20 requirements as alleged herein.

21      d.    The Hacienda Facility represented to plaintiff  Mary Dore and her family

22 members that it was a "skilled nursing facility," but failed to disclose and actively concealed that

23 the Hacienda Facility failed to comply with California's adequate nurse staffing requirements as

24 alleged herein.

25      e.    The  Rossmoor Facility represented to plaintiff  Harry Harrison and his

26 family members that it was a "skilled nursing facility," but failed to disclose and actively

27 concealed that the Rossmoor Facility failed to comply with California's adequate nurse staffing

28 requirements as alleged herein.

1          f.      The Valley Gardens Facility represented to plaintiff  Anne Knieriemen and

2 her family members that it was a "skilled nursing facility," but failed to disclose and actively

3 concealed that the Valley Gardens Facility failed to comply with California's adequate nurse

4 staffing requirements as alleged herein.

5          g.      The Kindred Healthcare Center of Orange Facility represented to plaintiff

6 Guadalupe Garcia and her family members that it was a "skilled nursing facility," but failed to

7 disclose and actively concealed that the Kindred Healthcare Center of Orange Facility failed to

8 comply with California's adequate nurse staffing requirements as alleged herein.

9          h.      The Canyonwood Facility represented to plaintiff Alice Martin and her

10 family members that it was a "skilled nursing facility," but failed to disclose and actively

11 concealed that the Canyonwood Facility failed to comply with California's adequate nurse

12 staffing requirements as alleged herein.

13          i.      The Santa Cruz Facility represented to plaintiff Timothy Blanchley and his

14 family members that it was a "skilled nursing facility," but failed to disclose and actively

15 concealed that the Santa Cruz Facility failed to comply with California's adequate nurse staffing

16 requirements as alleged herein.

17          j.      The Alta Vista Facility represented to plaintiff James Morris and his family

18 members that it was a "skilled nursing facility," but failed to disclose and actively concealed that

19 the Alta Vista Facility failed to comply with California's adequate nurse staffing requirements as

20 alleged herein.

21      111.    Each of the Defendants owed a duty to disclose the true facts regarding staffing

22 levels at the Facilities because, among other things:  (a) defendants had exclusive knowledge of

23 material facts not known to the named plaintiffs and the class at the time of the subject

24 transactions; (b) defendants actively concealed material facts from the named plaintiffs and the

25 proposed class; and (c) each defendant represented that it was a "skilled nursing facility" to

26 named plaintiffs and the consuming public.

27      112.    Without limitation, each of the Defendants had superior knowledge of the

28 California requirements for minimum and adequate qualified nurse staffing at skilled nursing

1  facilities, and the actual staffing levels at their facilities.  Defendants had daily access to the

2  staffing, scheduling, payroll, and resident census  and other information necessary to determining

3  whether the Facilities were complying with the adequate, qualified staffing requirement under

4  section 1599.1.  Defendants made daily calculations with respect to nurse staffing levels at the

5  Facilities which showed numerous days during the Class Period on which the Facilities did not

6  even meet the bare minimum staffing requirements.  Further, on information and belief,

7  defendants were repeatedly advised by Facility personnel of understaffed conditions. The named

8  plaintiffs did not know of these or other material facts concerning the understaffed conditions at

9  the Facilities.

10         113.   Through deficiency notices and other reports issued by the California Department

11  of Public Health ("DPH"), and previously, by the Department of Health Services), many (if not

12  all) Defendants had direct notice of staffing violations at the Facilities.  While some DPH reports

13  are publicly available, in practice, the public's access to such reports is limited at best.  Without

14  question, defendants had better access to, and/or were in a superior position to know, the results

15  of DHS audits, DHS inspections, and numerous deficiencies or citations issued by the State of

16  California concerning staffing conditions at the Facilities.

17         114.   In addition, each of the Defendants actively concealed or suppressed the true facts

18  concerning nurse staffing levels at the Facilities by, among other things: (a) failing to disclose and

19  concealing from the residents and prospective residents that the Facilities regularly fell below the

20  bare minimum staffing requirement; (b) failing to disclose and concealing understaffed conditions

21  in cost reimbursement requests, licensure requests, responses to DPH deficiency notices and other

22  communications made to California regulators; (c) failing to comply with the nurse staffing

23  posting requirements under state and federal law by misleadingly posting projected (as opposed to

24  actual) staffing, or in some instances, failing to post any nurse staffing information.

25         115.   Without limitation, actions taken by Defendants with respect to the Canyonwood

26  Facility illustrate Defendants' efforts to conceal understaffed conditions from residents, family

27  members and regulators.  For example, the staff at Canyonwood were specifically instructed to

28  not mention the word "understaffed" (or even hint about understaffing) to residents or their

families, even though staff knew the facility was understaffed at the time.  Further, staffing levels at Canyonwood were inflated during DPH inspections by adding hours supposedly worked by management personnel, despite the fact that in their normal duties, management personnel did not provide direct nursing care to residents.  On information and belief, Kindred Inc. and KHOI directed and/or approved the above-referenced actions taken at the Canyonwood Facility and directed and/or approved similar conduct at the other Facilities.

116.    All named plaintiffs incurred costs and expenses in connection with their stays at the Facilities, including transaction and lost opportunity costs incurred as a result agreeing to enter the Facilities.  In addition, many of the named plaintiffs including, without limitation, the representatives for the Bay View, Canyonwood, Fifth Avenue, Hacienda, and Valley Gardens Facilities, paid money from their own funds to the Defendants based on the reasonable expectation that the Facilities would be staffed in compliance with applicable laws.

117.    Despite receipt of written notice and an opportunity to cure the violations alleged herein pursuant to Civil Code section 1782(a), defendants have failed to provide any remedy or appropriate relief for their CLRA violations within the statutory 30-day time period.  As such, the named plaintiffs and class members in the private pay subclass are entitled to compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, attorneys' fees and costs, and any other remedies available under the CLRA.  At present, the named plaintiffs seek CLRA damages on behalf of on behalf of Private Pay Subclass Members from the following facilities: Bay View, Canyonwood, Fifth Avenue, Hacienda, and Valley Gardens.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    For a Court order certifying that the action may be maintained as a class action;

2.    For a Court order requiring that defendants immediately cease acts that constitute unlawful, unfair, and fraudulent business practices, and violations of the CLRA as alleged herein, and to enjoin defendants from continuing to engage in any such acts or practices in the future;

3.    For injunctive relief prohibiting defendants' violations of the Health & Safety Code § 1430(b) in the future;

1        4.      For restitution and any other monetary relief permitted by law;

2        5.      For statutory damages in an amount to be proven at trial, including $500.00 in

3 statutory damages for each understaffed Facility day in violation of each Class Members' rights

4 pursuant to Health & Safety Code § 1430(b);

5        6.      For punitive damages;

6        7.      For treble damages pursuant to Civil Code section 3345;

7        8.      For enhanced CLRA damages of up to $5000 pursuant to Civil Code section

8 1780(b);

9        9.      For pre-judgment interest, according to law;

10      10.      For attorneys' fees and costs; and

11      11.      For such other and further relief as the Court may deem just and proper.

12 Dated: November 23, 2011          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Robert J. Nelson

13 Lexi J. Hazam
Andrew S. Kingsdale

14 275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

15

16                       By:      */s/ Lexi J. Hazam*
                               Lexi J. Hazam

17

18          Christopher J. Healey (State Bar No. 105798)
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

19 600 West Broadway, Suite 2600
San Diego, CA 92101

20          Michael D. Thamer (State Bar No. 101440)
LAW OFFICES OF MICHAEL D. THAMER

21 Old Callahan School House
12444 South Highway 3

22 Post Office Box 1568
Callahan, CA 96014-5307

23

24          W. Timothy Needham (State Bar No. 96542)
Michael J. Crowley (State Bar No. 102343)

25 JANSSEN, MALLOY, NEEDHAM, MORRISON,
REINHOLTSEN & CROWLEY, LLP

26 730 Fifth Street
Eureka, CA 95501

27

28

1                Kathryn A. Stebner (State Bar No. 121088)
Sarah Colby (State Bar No. 194475)

2                STEBNER & ASSOCIATES
870 Market Street, Suite 1212

3                San Francisco, CA 94102-2907

4                Robert S. Arns (State Bar No. 65071)
Steven R. Weinmann (State Bar No. 190956)

5                THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor

6                San Francisco, CA  94105

7                *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiffs demand a trial by jury on all issues stated.

3     Dated: November 23, 2011          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                        Robert J. Nelson
4                                       Lexi J. Hazam
                                        Andrew S. Kingsdale
5                                       275 Battery Street, 29th Floor
                                        San Francisco, CA  94111-3339
6

7                                       By:  _____/s/ Lexi J. Hazam_____
                                                    Lexi J. Hazam
8
                                        Christopher J. Healey (State Bar No. 105798)
9                                       LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                                        600 West Broadway, Suite 2600
10                                      San Diego, CA 92101

11                                      Michael D. Thamer (State Bar No. 101440)
                                        LAW OFFICES OF MICHAEL D. THAMER
12                                      Old Callahan School House
                                        12444 South Highway 3
13                                      Post Office Box 1568
                                        Callahan, CA 96014-5307
14
                                        W. Timothy Needham (State Bar No. 96542)
15                                      Michael J. Crowley (State Bar No. 102343)
                                        JANSSEN, MALLOY, NEEDHAM, MORRISON,
16                                      REINHOLTSEN & CROWLEY, LLP
                                        730 Fifth Street
17                                      Eureka, CA 95501

18                                      Kathryn A. Stebner (State Bar No. 121088)
                                        Sarah Colby (State Bar No. 194475)
19                                      STEBNER & ASSOCIATES
                                        870 Market Street, Suite 1212
20                                      San Francisco, CA 94102-2907

21                                      Robert S. Arns (State Bar No. 65071)
                                        Steven R. Weinmann (State Bar No. 190956)
22                                      THE ARNS LAW FIRM
                                        515 Folsom Street, 3rd Floor
23                                      San Francisco, CA  94105

24                                      *Attorneys for Plaintiffs*

25

26

27

28