1   Robert J. Nelson (State Bar No.  132797)
    Lexi J. Hazam (State Bar No.  224457)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:  (415) 956-1008

5   Michael D. Thamer (State Bar No.  101440)
    LAW OFFICES OF MICHAEL D. THAMER
6   Old Callahan School House
    12444 South Highway 3
7   Post Office Box 1568
    Callahan, CA 96014-1568
8   Telephone:  (530) 467-5307
    Facsimile:  (530) 467-5437
9
    Kathryn A. Stebner (State Bar No. 121088)
10  Sarah Colby (State Bar No. 194475)
    STEBNER & ASSOCIATES
11  870 Market Street, Suite 1212
    San Francisco, CA 94102-2907
12  Telephone:  (415) 362-9800
    Facsimile:  (415) 362-9801

13
    *Attorneys for Plaintiffs*
14  [Additional Counsel Appear on Signature Page]

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18
    HAZEL WALSH, et al,                        No. 3:11-CV-00050-JSW
19
                    Plaintiffs,               **PLAINTIFFS' NOTICE OF MOTION AND
20                                             MOTION FOR PRELIMINARY
           v.                                  APPROVAL OF CLASS SETTLEMENT;
21                                             MEMORANDUM OF POINTS AND
    KINDRED HEALTHCARE, INC.;                  AUTHORITIES IN SUPPORT THEREOF**
22  KINDRED HEALTHCARE
    OPERATING, INC.; CALIFORNIA              Date:       August 23, 2013
23  NURSING CENTERS, LLC; KINDRED           Time:       9:00 am
    NURSING CENTERS WEST, LLC;              Judge:      Jeffrey S. White
24  HILLHAVEN-MSC PARTNERSHIP;              Courtroom:  11
    ALTA VISTA HEALTHCARE &
25  WELLNESS CENTRE (A/K/A ALTA
    VISTA HEALTHCARE); BAY VIEW
26  NURSING AND REHABILITATION
    CENTER; CANYONWOOD NURSING
27  AND REHAB CENTER; CARE CENTER
    OF ROSSMOOR, LLC; CARE CENTER
28  OF ROSSMOOR  (F/K/A GUARDIAN OF
    ROSSMOOR); FIFTH AVENUE

1  HEALTH CARE CENTER; GOLDEN
   GATE HEALTHCARE CENTER;
2  HACIENDA CARE CENTER;
   NINETEENTH AVENUE
3  HEALTHCARE CENTER; KINDRED
   HEALTHCARE CENTER OF ORANGE;
4  SANTA CRUZ HEALTHCARE
   CENTER; SMITH RANCH CARE
5  CENTER, LLC; SMITH RANCH CARE
   CENTER(F/K/A GUARDIAN AT SMITH
6  RANCH CARE CENTER); VALLEY
   GARDENS HEALTHCARE &
7  REHABILITATION CENTER;
   VICTORIAN HEALTHCARE CENTER
8  (F/K/A HILLHAVEN VICTORIAN); and
   DOES 1 through 100, inclusive,

9
                    Defendants.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on August 23, 2013, at 9:00 am, in the Courtroom of the Honorable Jeffrey S. White, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order preliminarily approving a proposed Settlement Agreement ("Settlement") entered into between the parties, and for other related relief.

By this unopposed Motion, Plaintiffs respectfully move the Court for an Order:

1.      Preliminarily approving the Settlement in this action pursuant to Federal Rule of Civil Procedure 23(e);[1]

2.      Granting leave to permit the filing of a Fourth Amended Complaint;[2]

3.      Preliminarily certifying a Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3);

4.      Appointing the attorneys listed in the signature block as Class Counsel;

5.      Appointing Plaintiffs as Settlement Class Representatives;

6.      Approving the parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to this program;

7.      Approving the Claim Form and Probate Code Declaration; and

8.      Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Stipulated Order for Injunction, and the accompanying Declarations of Robert J. Nelson, Christopher J. Healey, Michael D. Thamer, Kathryn A. Stebner, W. Timothy Needham and Robert S. Arns, documents attached to those Declarations, any papers filed in

---

[1] A copy of the executed Settlement Agreement is attached as Exhibit 1 to this Motion. A copy of the Stipulated Injunction is attached as Exhibit A to the Settlement Agreement.

[2] The proposed Fourth Amended Complaint is attached as Exhibit 2 to this Motion.

1   reply, the argument of counsel, and all papers and records on file in this matter.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.      Plaintiffs Allege Defendants Violated California Statutes by Understaffing Their Skilled Nursing Facilities. ................................................ 3

    B.      The Parties Litigated Several Rounds of Motions to Dismiss. ............... 3

    C.      The Parties Entered Into Settlement Negotiations and Reached an Agreement. ............................................................................................ 6

III.    THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS BY REQUIRING DEFENDANTS TO PROVIDE ADEQUATE STAFFING ........... 6

    A.      The Settlement Includes Cash Payments for Class Members, Namely Facilities Residents or their Successors-in-Interest. ............................... 6

    B.      The Settlement Includes an Injunction Under Which Defendants Agree to Provide Legally Sufficient Skilled Nursing Services. ................................ 7

    C.      Defendants Will Pay for the Cost of Monitoring Compliance with the Stipulated Injunction and Administering the Class Settlement. ............... 8

    D.      The Settlement Authorizes Plaintiffs to File a Fourth Amended Complaint .......... 8

    E.      The Settlement Provides for Notice to Class Members of the Terms of the Settlement and Their Ability to Object. ................................................. 9

IV.     THE SETTLEMENT SATISFIES THE LEGAL STANDARDS FOR OBTAINING PRELIMINARY APPROVAL ........................................................ 9

    A.      Preliminary Approval Is Appropriate. ....................................................... 10

        1.      The Settlement Is the Product of Arms-Length Negotiations and Follows Substantial Litigation and Investigation. ........................ 11

        2.      The Settlement Is Fair Given the Nature of the Claims, the Size of the Settlement Fund, the Value of the Injunction, and the Litigation Risks. ........................................................................... 13

            a.      The Size of the Settlement Fund and Cash Payment for Class Members is Reasonable. ....................................... 13

            b.      The Injunction Is an Outstanding Result for the Class. ............... 13

            c.      The Litigation Risks Support Preliminary Approval. ................... 15

        3.      The Recommendation of Experienced Counsel and an Experienced Mediator Strongly Favor Approval. ........................................... 16

V.      PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ................................................................................................... 16

VI.     THE NOTICE SHOULD BE APPROVED ........................................................ 19

VII.    A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED ........................ 21

VIII.   CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvarado v. Selma Convalescent Hospital,*
153 Cal. App. 4th 1292 (2007) ................................................................... 14

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) .................................................................................... 15

*Boyd v. Bechtel Corp.,*
485 F.Supp. 610 (N.D. Cal. 1979) ............................................................. 14

*Byrd v. Civil Serv. Comm'n,*
459 U.S. 1217 (1983) .................................................................................... 9

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ...................................................................... 9

*Continental Assur. Co. v. Macleod-Stedman, Inc.,*
694 F. Supp. 449 (N.D. Ill. 1988) .............................................................. 13

*Cullen v. Whitman Med. Corp.,*
197 F.R.D. 136 (E.D. Pa. 2000) ................................................................. 13

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .................................................................................... 18

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) ............................................................. 11, 14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .................................................................... 15

*In re HP Laser Printer Litigation,*
2011 U.S. Dist. LEXIS 98759 (C.D. Cal. Aug. 31, 2011) ......................... 13

*In re Mercury Interactive Corporation Securities Litigation,*
618 F.3d 988 (9th Cir. 2010) ........................................................................ 8

*In re Tableware Antitrust Litig.,*
484 F.Supp.2d 1078 (N.D. Cal. 2007) ....................................................... 10

*Jaffe v. Morgan Stanley & Co.,*
2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 8, 2008) ........................... 17

*Linney v. Cellular Alaska Partnership,*
151 F.3d 1234 (9th Cir. 1998) .................................................................... 13

*Linney v. Cellular Alaska Partnership,*
1997 WL 450064 (N.D. Cal. Jul. 18 1997) ................................................ 14

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ...................................................................... 10

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ........................................................................ 18

*Van Bronkhorst v. Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976) ...................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ................................................................................ 15

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Young v. Polo Retail, LLC,*
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ........................................................ 10

**STATUTES**

Class Action Fairness Act of 2005 (CAFA),
  28 U.S.C. § 1332(d)(1)(B) ........................................................................................ 3
  28 U.S.C. § 1332(d)(2) .............................................................................................. 3
  28 U.S.C. § 1453 ........................................................................................................ 3

Cal. Bus. & Prof. Code
  § 17200 ....................................................................................................................... 2

Cal. Civ. Code
  § 1750, *et seq.* ...................................................................................................... 2, 8
  § 1770(a)(5) .............................................................................................................. 16
  § 1770(a)(7) .............................................................................................................. 16
  § 1780(e) ..................................................................................................................... 8

Cal. Code. Civ. P.
  § 1021.5 ....................................................................................................................... 8

California Health & Safety Code
  section 1276.5 .................................................................................................... passim
  section 1430(b) ................................................................................................... passim
  section 1599.1 .............................................................................................. 2, 3, 7, 16

**RULES**

Fed. R. Civ. P.
  12(b)(2) ........................................................................................................................ 3
  12(b)(6) ................................................................................................................ 3, 4, 5
  23 ......................................................................................................................... 9, 15
  23(a) .......................................................................................................................... 17
  23(a)(1) ..................................................................................................................... 15
  23(a)(2) ..................................................................................................................... 15
  23(a)(3) ..................................................................................................................... 16
  23(a)(4) ..................................................................................................................... 16
  23(b)(2) ............................................................................................................... 16, 17
  23(b)(3) ............................................................................................................... 16, 18
  23(c)(2)(A) ................................................................................................................ 18
  23(e) .......................................................................................................................... 10

**TREATISES**

4 *Newberg on Class Actions*, (4th ed. 2002)
  § 11.22 *et seq.* ........................................................................................................ 9
  § 11.25 ....................................................................................................................... 10
  § 11.41 ....................................................................................................................... 11

*Manual for Complex Litigation, Fourth* (4th ed. 2002)
  § 21.62 ....................................................................................................................... 10
  §§ 21.63 *et seq.* ...................................................................................................... 9
  § 21.632 ..................................................................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**REGULATIONS**

22 California Code of Regulations
§ 72309 ........................................................................................................... 7
§ 72327 ........................................................................................................... 8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3        Plaintiffs respectfully request that the Court enter an Order preliminarily approving the

4    proposed Settlement Agreement that would resolve this case.  This Settlement Agreement,

5    attached hereto as Exhibit 1, follows several arms-length settlement negotiations facilitated by a

6    neutral mediator.  The Settlement Agreement is the result of considerable efforts by both sides,

7    represents a significant achievement for the Class of skilled nursing home patients at issue, and is

8    well within the range of reasonableness.  Accordingly, preliminary approval is appropriate and

9    should be granted.

10        This case involves allegations of Defendants' pervasive and intentional failure to provide

11    legally sufficient qualified nurse staffing at certain skilled nursing facilities.  All such nursing

12    facilities in California are required to provide at least 3.2 hours of direct nursing hours per patient

13    day in accordance with California Health and Safety Code section 1276.5.  This statutory 3.2 hour

14    requirement represents the minimum aggregate staffing that all patients at skilled nursing

15    facilities must receive.  Plaintiffs allege that Defendants' facilities, in violation of law, failed to

16    meet this requirement.

17        Plaintiffs brought suit to force Defendants to comply with this California statute and to

18    seek damages for inadequate staffing that was contrary to the representations made by the nursing

19    facilities to the residents and their families.  The Agreement provides cash payments to the class

20    members—the residents of the Defendants' facilities or their successors in interest.  Defendants

21    have agreed to pay up to $8.25 million in accordance with the provisions of the proposed

22    Agreement.  In addition, the stipulated Injunction incorporated into the Settlement requires

23    Defendants to ensure proper staffing in their skilled nursing facilities for at least two years.

24    Defendants agree to employ an adequate number of qualified nursing personnel to provide skilled

25    nursing services at their facilities.  This injunction has bite:  a third party monitor will oversee

26    Defendants' compliance, and the Court retains jurisdiction during the injunction to order

27    appropriate remedies in the event of non-compliance.

28        For the reasons set forth below, the Settlement is within the range of reasonableness and

1  should be preliminarily approved.

2  ## II.   FACTUAL AND PROCEDURAL BACKGROUND

3       Plaintiffs, current and former residents of Defendants' skilled nursing facilities (the

4  "Facilities"), have brought suit for injunctive relief and damages based on injuries from

5  Defendants' understaffing at the Facilities, and their failure to disclose those conditions.[3]  The

6  understaffing claims arise under California's Health and Safety Code section 1430(b), which

7  provides a cause of action for violations of the right to adequate nurse staffing under Health and

8  Safety Code section 1599.1(a), and the right to reside in a facility that provides at least 3.2

9  nursing hours per patient day ("NHPPD"), as mandated by Health and Safety Code section

10  1276.5.  Plaintiffs also asserted failure-to-disclose claims under the Consumers Legal Remedies

11  Act, Civil Code section 1750, *et seq.* ("CLRA"), and Business and Professions Code section

12  17200, *et seq.* ("UCL").

13

14  [3] The "Facilities Defendants" are:  Kindred Transitional Care and Rehabilitation-Fifth Avenue
15  f/k/a Fifth Avenue Health Care Center; Kindred Nursing Centers West, LLC, d/b/a Kindred
Transitional Care and Rehabilitation – Village Square, Kindred Nursing Centers West, LLC, d/b/a
16  Kindred Nursing and Rehabilitation – Golden Gate; Kindred Nursing Centers West, LLC, d/b/a
Kindred Transitional Care and Rehabilitation – Tunnell Center, Kindred Nursing Centers West,
17  LLC, d/b/a Kindred Nursing and Healthcare – Victorian, Kindred Nursing Centers West, LLC,
d/b/a Kindred Nursing and Transitional Care – Santa Cruz, Kindred Nursing Centers West, LLC,
18  d/b/a Kindred Transitional Care and Rehabilitation – Lawton, Kindred Nursing Centers West,
LLC, d/b/a Kindred Nursing and Healthcare – Livermore, Kindred Nursing Centers West, LLC,
19  d/b/a Kindred Transitional Care and Rehabilitation – Canyonwood, Kindred Nursing Centers
West, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Valley Gardens, Kindred
20  Nursing Centers West, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Bay View,
Bayberry Care Center LLC d/b/a Kindred Nursing and Healthcare – Bayberry, Medical Hill
21  Rehab Center, LLC, d/b/a Kindred Nursing and Rehabilitation – Medical Hill, Ygnacio Valley
Care Center, LLC, d/b/a Kindred Nursing and Rehabilitation – Ygnacio Valley, Hillhaven – MSC
22  Partnership d/b/a Kindred Nursing and Rehabilitation Nineteenth Avenue, Pacific Coast Care
Center, LLC d/b/a Kindred Nursing and Transitional Care – Pacific Coast, Greenbrae Care
23  Center, LLC, d/b/a Kindred Transitional Care and Rehabilitation Larkspur, Smith Ranch Care
Center, LLC, d/b/a Kindred Transitional Care and Rehabilitation Smith Ranch, Care center of
24  Rossmoor, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Walnut Creek, Foothill
Nursing Company Partnership d.b.a Kindred Transitional Care and Rehabilitation – Foothill,
25  Siena Care Center, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Siena.  Settlement
Agreement at 3.  The Settlement Agreement also covers all persons who resided in Kindred
26  Healthcare Center of Orange and Alta Vista Healthcare & Wellness Centre, which were sold prior
to the end of the Class Period.
27  In addition to suing these facilities, Plaintiffs have named parent entity Defendants Kindred
Health Care, Inc., Kindred Healthcare Operating, Inc., and California Nursing Centers, LLC, and
28  Subsidary Licensee Defendants Hillhaven-MSC Partnership and Smith Ranch L.L.C.

-2-

A.    **Plaintiffs Allege Defendants Violated California Statutes by Understaffing Their Skilled Nursing Facilities.**

As Plaintiffs allege, the 3.2 hour NHPPD requirement under section 1276.5 represents the minimum staffing required for patients at skilled nursing facilities.  Fourth Amended Complaint, ¶ 3.  Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities.  Scientific studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems— including, but not limited to, a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.  Fourth Amended Complaint, ¶ 2.

Plaintiffs allege that Defendants failed to satisfy the 3.2 hour NHPPD minimum requirements, failed to provide adequate numbers of qualified nursing staff given aggregate patient acuity levels at the Facilities, and failed to employ sufficient numbers of registered nurses on numerous days during the Class Period.  Certain of Defendants' Facilities have a high number of reported complaints, deficiencies, and citations resulting from inadequate care of their elderly and dependent adult residents, as reflected in records maintained by the California Department of Health Services.  Fourth Amended Complaint, ¶ 4.  These and other facts support liability under Health and Safety Code section 1430(b) for predicate violations of Health and Safety Code sections 1276.5 and 1599.1.

B.    **The Parties Litigated Several Rounds of Motions to Dismiss.**

Plaintiff Hazel Walsh originally filed this class action in California state court on November 23, 2010, seeking injunctive relief and damages.  On December 22, 2010, Defendant Kindred Healthcare Operating, Inc. noticed removal to this Court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), and 28 U.S.C. § 1453 ("CAFA").  Dkt. No. 1.  Plaintiffs did not and do not contest the removal.  This Court has subject-matter jurisdiction under CAFA, because: (a) this is a putative class action within the meaning of 28 U.S.C. § 1332(d)(1)(B); (b) members of the proposed Class are citizens of California, whereas KHOI was organized under the law of the State of Delaware, with its principal place of business in the State of Kentucky; and (c) the alleged amount in controversy exceeds $5,000,000.

The lawsuit has involved four rounds of motions to dismiss and four amended complaints. On February 25, 2011, Defendants filed the first of several motions to dismiss directed at the original complaint. Dkt. Nos. 21, 23, 25, 26. Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and, as to Kindred Healthcare, Inc., pursuant to Rule 12(b)(2). Shortly thereafter, on March 18, 2011, Plaintiffs filed their First Amended Complaint. Dkt. No. 28. The First Amended Complaint substituted two new class representatives, Lisa Edwards as guardian ad litem of Arlene Bettencourt, and Roxanne Harrison as guardian ad litem of Harry Harrison, in place of Walsh, but otherwise made no substantive changes to the original claims.

On April 15, 2011, Defendants again filed multiple motions to dismiss, asserting that: (1) the Court should abstain from hearing the matter on the basis of equitable abstention; (2) Plaintiffs did not have standing as to the Facilities where they did not reside; (3) Plaintiffs had not sufficiently alleged an alter ego relationship among Defendants under California or Delaware law; and (4) Plaintiffs had not alleged their CLRA claims with requisite specificity, and the provision of institutional health care is not a consumer good or service under the CLRA. Dkt. Nos. 39, 41 and 42.[4]

On June 15, 2011, the Court granted Defendants' motion to dismiss and granted in part and denied in part Rossmoor, LLC's motion to dismiss. Dkt. No. 58. The Court denied Rossmoor, LLC's motion to dismiss with respect to Plaintiffs' UCL and Section 1430(b) claims to the extent they were premised on violations of Section 1599.1. However, the Court granted Rossmoor, LLC's motion and dismissed Plaintiffs' CLRA claim and their UCL and Section 1430(b) claims to the extent both were premised on violations of Section 1276.5. Importantly, the Court noted that violations of Section 1276.5 may evidence whether a given facility has failed to "employ an adequate number of qualified personnel," as required under Section 1599.1. June 15, 2011 Order at 14 n.8. The Court held that Plaintiffs had adequately alleged vertical alter ego relationships between the Facility Defendants and the Parent Kindred Defendants. However, the Court found that Plaintiffs had not adequately alleged horizontal alter ego relationships

---

[4] Though in the first round of motions to dismiss Kindred Healthcare, Inc. made a special appearance to assert a lack of personal jurisdiction, the parties agreed to stay resolution of the issue pending the Court's decision regarding the other motions pursuant to Rule 12(b)(6).

between the Facilities or with regards to Hillhaven-MSC Partnership and Smith Ranch L.L.C, the Subsidiary Licensees.  The Court then granted Plaintiffs leave to amend their alter ego allegations and their CLRA claim.

Plaintiffs subsequently moved for limited, expedited discovery.  Dkt. Nos. 59.  The Court granted the motion and, after a period of discovery, Plaintiffs filed their Second Amended Complaint on November 23, 2011.  Dkt. Nos. 69 and 74.  On December 21, 2011, Care Center of Rossmoor, L.L.C., f.k.a. Guardian of Rossmoor, moved to dismiss Plaintiffs' CLRA claim in the amended complaint.  Dkt. No. 80.  On March 26, 2012, the Court granted Rossmoor, LLC's motion, finding that Plaintiffs failed to plead sufficient facts to state a claim based on a failure to disclose material facts under the CLRA.  Dkt. No. 92.  The Court granted Plaintiffs leave to amend to cure this defect, noting that Plaintiffs had asserted in briefing, but had not alleged, that nurse understaffing increases the risk of physical and other harm for elderly and frail residents in nursing homes.

On April 13, 2012, Plaintiffs filed their Third Amended Complaint.  Dkt. No. 94. Defendants moved to dismiss the CLRA claim pursuant to Rule 12(b)(6).  The Court denied Defendants' motion to dismiss the CLRA claim.  Dkt. No. 105.  On August 20, 2012, Defendants Kindred Healthcare Operating, Inc.; Kindred Nursing Centers West, L.L.C.; California Nursing Centers, L.L.C.; Hillhaven-MSC Partnership; Care Center of Rossmoor, L.L.C., f.k.a. Guardian of Rossmoor; Smith Ranch Care Center, L.L.C. filed their answer to the Third Amended Complaint.  Dkt. No. 106.  On September 24, 2012, the Court approved the parties' stipulation for a 90-day stay of the action to permit the parties to attend mediation.  Dkt. No. 116.  In the months that followed, the parties engaged in extensive negotiations and reached a settlement that was subject to Plaintiffs' additional confirmatory discovery.  Dkt. No. 125.  Because the confirmatory discovery revealed facts consistent with Defendants' representations, Plaintiffs have proceeded to file the instant motion for preliminary approval of the proposed settlement and request leave from the Court to file a Fourth Amended Complaint for purposes of the settlement.

C.     **The Parties Entered Into Settlement Negotiations and Reached an Agreement.**

The parties engaged in three in-person mediation sessions before the Honorable William Cahill (Ret.), on December 7, 2012, December 13, 2012 and January 10, 2013. Declaration of Robert J. Nelson in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Nelson Decl."), ¶ 4. The negotiations were hard-fought and at arms' length. *Id.* The parties ultimately reached an agreement in principle, and continued their negotiations over several months to ensure agreement on all outstanding issues. *Id.*

III.    **THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS BY REQUIRING DEFENDANTS TO PROVIDE PAYMENTS AND ADEQUATE STAFFING**

At the time of this filing, the Settlement Agreement has not been executed by all parties to it. The parties anticipate that the Agreement will be fully executed by the end of June 2013, well in advance of the hearing on the motion for preliminary approval. A summary of the Settlement Agreement's material terms is provided below.

A.     **The Settlement Includes Cash Payments for Class Members, Namely Facilities Residents or their Successors-in-Interest**

The Settlement Agreement provides that Defendants shall fund cash payments to eligible Settlement Class Members. Defendants agree to pay up to $8.25 million (the Maximum Settlement Class Payment). Settlement Agreement ¶ 6.2.1. The "Per Class Member Payment" is the payment made to each Settlement Class Member in the amount calculated by multiplying the number of days that the class member resided in any Defendant Facility times the Subject Day Percentage (8 percent) times $20, the agreed-upon Subject Day Amount. Settlement Agreement ¶ 6.2.3. For illustration purposes, if a Settlement Class Member (or his/her predecessor) resided in a listed Defendant Facility for 100 days, the payment owed to that Settlement Class Member would be $160 (100 days times 8% times $20). Settlement Agreement ¶ 6.2.3.

A successor or personal representative of a resident of the Defendant Facilities may submit a claim form, provided that it materially complies with the requirements of the California Probate Code. Settlement Agreement ¶ 6.2.4.

**B.**   **The Settlement Includes an Injunction Under Which Defendants Agree to Provide Legally Sufficient Skilled Nursing Services.**

The proposed Settlement includes a stipulated Injunction that substantially resolves a core issue in this lawsuit:  Defendants' systematic violation of the California law requiring them to provide 3.2 hours of skilled nursing services per patient day in their skilled nursing Facilities.  Settlement Agreement at ¶ 6.  The stipulated Injunction is attached as Exhibit A to the Settlement Agreement (Exhibit 1 hereto).

The Injunction provides that "[at] all times, each of the Defendant Facilities shall comply with Health and Safety Code section 1276.5 by providing a minimum of 3.2 actual nursing hours per patient day."  Stipulated Injunction, ¶ 1.  Importantly, Defendants have also agreed to budget to staff each Defendant Facility at an even higher level, not less than 3.4 NHPPD.  Stipulated Injunction, ¶ 3.  Further, "[a]t all times, the Defendant Facilities shall comply with Health and Safety Code section 1599.1(a) by employing an adequate number of qualified personnel to carry out all of their respective facility's functions."  Stipulated Injunction, ¶ 2.  Finally, Defendant Facilities are required to employ an adequate number of qualified nursing personnel to provide skilled nursing services (as that term is defined in 22 California Code of Regulations section 72309) at the Defendant Facilities. *Id.*

Defendants agree to track their compliance and submit regular reports to a Court-appointed monitor empowered to "undertake all . . . necessary actions to monitor Defendant Facilities' compliance with the terms of this Injunction.  All fees and costs of the Monitor shall be paid by the Defendants up to a maximum of $100,000 in total; any fees and/or costs exceeding that amount shall be borne solely by Plaintiffs' counsel, provided that there will be no cap on monitor expenses in the event Defendants violate the injunction."  Stipulated Injunction, ¶ 6, ¶¶ 8-9; *see also* Settlement Agreement ¶ 6.1.2.

The Stipulated Injunction will remain in effect for two years after entry of an Order finally approving the Settlement.  Settlement Agreement at ¶ 6.1.1; Stipulated Injunction, ¶ 14.  The Stipulated Injunction makes clear that if the Defendants violate its terms, "Plaintiffs may seek a Court order extending the Injunction duration, in addition to any other available remedy."

1    Stipulated Injunction, ¶ 14.

2          **C.      Defendants Will Pay for the Cost of Administering the Class Settlement,
                      Service Awards and Attorneys' Fees and Costs**

3

4          Under the Settlement, Defendants shall pay all Settlement Administration costs up to

5    $200,000, except for any supplemental form of notice requested by Plaintiffs or ordered by the

6    Court.  Settlement Agreement ¶ 7.7.  In addition, Settling Defendants agree to pay $3,500 service

7    awards to each of the ten named Plaintiffs.  Settlement Agreement ¶ 8.2.  With respect to

8    attorneys' fees and litigation expenses advanced in this case, Defendants shall pay fees and

9    expenses in the amount awarded by the Court.[5]  Settlement Agreement, ¶ 8.1.

10         **D.      The Settlement Authorizes Plaintiffs to File a Fourth Amended Complaint**

11         Paragraph 21 of the Settlement Agreement provides that Plaintiffs shall file a Fourth

12   Amended Complaint adding those Defendant Facilities not named in prior Complaints, and

13   including allegations that Defendants violated 22 California Code of Regulations 72327.  In their

14   Third Amended Complaint, Plaintiffs had identified thirteen Kindred facilities in which violations

15   of the 3.2 NHPPD minimum staffing requirement occurred.  The Settlement Agreement includes

16   an additional ten facilities that were not previously named as Defendants.  Healey Decl., ¶ 13.  As

17   with the facilities Plaintiffs originally sued, Plaintiffs obtained and analyzed staffing data

18   contained in OSHPD cost reports for these additional facilities to estimate violation rates.  *Id*.

19   The rates of violation for the 3.2 NHPPD minimum staffing requirement estimated from the

20   OSHPD cost reports for the additional facilities were significantly lower than the projected

21   minimum staffing violation rates for the facilities Plaintiffs originally sued.  *Id*.  In addition,

22   Plaintiffs obtained and reviewed daily staffing data for nine of the ten facilities.  *Id*.  That review

23   showed that the overall estimated minimum staffing violation rates at the new facilities was

24

25   [5] Class Counsel is entitled to attorneys' fees pursuant to Fed. R. Civ. P. 23(h), as well as
     California's mandatory fee-shifting statute for private attorney general actions, including actions
     under Health and Safety Code § 1430(b) and the Consumer Legal Remedies Act.  *See* Cal. Code.

26   Civ. P. § 1021.5; Cal. Health & Safety Code § 1430(b); Cal. Civ. Code § 1780(e).  Class Counsel
     will submit lodestar reports in support of their fee application, which will be filed prior to the

27   final fairness hearing with sufficient notice to Settlement Class members to comply with *In re
     Mercury Interactive Corporation Securities Litigation*, 618 F.3d 988, 994-95 (9th Cir. 2010).  *See*

28   *also* Fed. R. Civ. P. 23(h).

3.65% of the days during the Class Period, which is less than the overall minimum staffing violation rate of 6.3% that Plaintiffs calculated based on a review of the daily staffing data for the originally-named facilities.  *Id.*  The estimated 3.65% violation rate is also below the violation rate of 8% agreed to in the Settlement Agreement, which covers the alleged minimum staffing violations and other violations asserted in the lawsuit.  *Id.*  The estimated violation rates of the ten additional facilities were taken into account by the Parties in negotiating the compensation to be paid to the Settlement Class.  *Id.*

The Settlement Class size is estimated at 54,000 current and former resident Class Members.  *Id.*

**E.    The Settlement Provides for Notice to Class Members of the Terms of the Settlement and Their Ability to Object.**

The Settlement provides for dissemination of Notice to every Class member by U.S. mail and through the announcement of the Settlement in a statewide publication.  Settlement Agreement, §§ 2.2 and 2.3.  Under the agreement, Class Notice must be mailed and published within 30 days after entry of an Order preliminarily approving the Settlement.  Settlement Agreement, §§ 2.2 and 2.3.  The Notice summarizes the Settlement terms, and informs Class members of their right to object and to request exclusion from the Settlement Agreement.  Exh. 3.  Notice costs will be paid out of the Settlement Fund.  Settlement Agreement, § 2.5.  The Settling Defendants shall pay all Settlement Administration Costs up to $200,000, except for any additional form of notice requested by Plaintiffs or ordered by the Court.  Settlement Agreement, § 7.7.

Along, with the Settlement Notice, Class members will receive a Claim Form and a Probate Form to collect their allocation of the Settlement Fund.  Exhs. 4 and 5.  Class members will have until five months from the date of Class Notice to submit their Claim Form, and, if required, the Probate Form.  Settlement Agreement, § 7.3.

**IV.    THE SETTLEMENT SATISFIES THE LEGAL STANDARDS FOR OBTAINING PRELIMINARY APPROVAL**

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for approval of class action settlements:

(1)     Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2)     Dissemination of notice of the proposed settlement to the affected class members.

(3)     A formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004), §§ 21.63, *et seq.* ("*Manual 4th*").  This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class Actions*, § 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

With this motion, Plaintiffs respectfully request that the Court take the first step in the settlement approval process by granting preliminary approval to the proposed Settlement.

### A.     <u>Preliminary Approval Is Appropriate.</u>

The law favors the compromise and settlement of class-action suits.  *See, e.g.*, *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits . . ."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027; *see also* Fed. R. Civ. P. 23(e).

1    At the preliminary approval stage, the Court need only find that the proposed settlement is

2  within the "range of reasonableness" such that dissemination of notice to the class, and the

3  scheduling of a fairness hearing, are worthwhile and appropriate.  4 *Newberg* § 11.25; *see also In*

4  *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *Young v. Polo*

5  *Retail, LLC*, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  The *Manual 4th* characterizes

6  the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement

7  made by the court on the basis of written submissions and informal presentation from the settling

8  parties.  *Manual 4th* § 21.632.  The criteria for evaluating a proposed settlement are summarized

9  as follows:

10   Fairness calls for a comparative analysis of the treatment of the
     class members vis-à-vis each other and vis-à-vis similar individuals
11   with similar claims who are not in the class.  Reasonableness
     depends on an analysis of the class allegations and claims and the
12   responsiveness of the settlement to those claims.  Adequacy of the
     settlement involves a comparison of the relief granted to what class
13   members might have obtained without using the class action
     process.

14

15  *Manual 4th* § 21.62.

16    While consideration of these requirements for *final* approval is unnecessary at this stage,

17  all of the relevant factors weigh in favor of the Settlement proposed here.  *See Manual 4th*

18  §§ 21.632, 21.633; *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80.  The

19  Settlement readily satisfies the standard for preliminary approval because:  (a) it is the product of

20  serious, arms-length negotiations between the parties, reached after substantial and hard-fought

21  litigation and thorough investigation by Plaintiffs; (b) it provides substantial relief to the

22  Settlement Class in the form of monetary relief and a stipulated injunction, and is fair, reasonable,

23  and adequate given the alleged harm, the value of the injunction, and the parties' respective

24  litigation risks; (c) it was negotiated by, and is recommended by, experienced Class Counsel, and

25  was reached with the help of a well-respected mediator.

26    **1.    The Settlement Is the Product of Arms-Length Negotiations and**
         **Follows Substantial Litigation and Investigation.**

27

28    Where, as here, a settlement is the product of arms-length negotiations conducted by

1   capable and experienced counsel, the court begins its analysis with a presumption that the

2   settlement is fair and reasonable.  *See* 4 *Newberg* § 11.41; *Ellis v. Naval Air Rework Facility*, 87

3   F.R.D. 15, 18 (N.D. Cal. 1980).  The parties here engaged in three full days of mediation before

4   an experienced jurist, Judge William Cahill (Ret.).  Those negotiations, while at times

5   contentious, ultimately resulted in an agreement in principle on the key terms of the proposed

6   Settlement.  Nelson Decl., ¶ 4.  For the past six months, the parties have been working to

7   negotiate and finalize the Settlement terms.  *Id*.  The parties were represented throughout these

8   negotiations by counsel experienced in the prosecution, defense, and settlement of complex class

9   actions, and were guided by the Court's prior rulings in this case.

10          Moreover, the Settlement is informed by Plaintiffs' thorough investigation and comes

11   after hard-fought litigation.  Prior to filing their initial complaint, and continuing throughout the

12   litigation, Plaintiffs closely investigated the staffing practices at issue, by, among other things,

13   obtaining and analyzing Defendants' reports to the California Office of Statewide Health

14   Planning and Development; obtaining, reviewing and summarizing all of the California

15   Department of Public Health licensing and certification files for each named facility; obtaining

16   the workers' compensation files of Defendants' former employees; obtaining and reviewing

17   documents and deposition transcripts of prior Kindred corporate personnel from cases involving

18   Kindred that were not subject to protective order, and obtaining and reviewing Kindred SEC

19   filings.  Needham Decl., ¶ 4.  Further, as the Court is aware, the pleadings were heavily contested

20   though four rounds of motions to dismiss, and those motions raised complex issues of law and

21   fact.

22          Class Counsel—who include the same attorneys who won a landmark jury $677 million

23   verdict against another skilled nursing home company—were well-equipped to evaluate the

24   Settlement and conclude that it is in the best interests of the Class.  Nelson Decl., ¶¶ 3, 5-8;

25   Thamer Decl., ¶¶ 2-6; Healey Decl., ¶¶ 5-10, 18; Stebner Decl., ¶¶ 3-7; Needham Decl., ¶¶ 1-4.

26

27

28

2.  **The Settlement Is Fair Given the Nature of the Claims, the Size of the Settlement Fund, the Value of the Injunction, and the Litigation Risks.**

a.  **The Size of the Settlement Fund and Cash Payment for Class Members Is Reasonable.**

Defendants have agreed to make a substantial sum of up to $8.25 million available to the Class.  The "Per Class Member Payment" is reasonably determined through a formula that is based on the number of days that the class member resided in any Defendant Facility, as well as the Subject Day Percentage of 8 percent.  For purposes of settlement, the parties have agreed that 8 percent reflects the percentage of time that the Defendant facilities were out of compliance with the statutory requirements for nurse staffing levels.  Thus, the allocation of the Net Settlement Fund is based on the estimated period of time that class members were directly affected by the nurse staffing shortfalls.

Twenty dollars, the agreed-upon Subject Day Amount is reasonable in that it compares favorably with pre-trial settlements reached in other nurse understaffing cases.  Healey Decl., ¶ 16.  For example, in the Thekkek settlement approved in December 2011, the Subject Day Amount (after adjustment) was approximately $20.  *Id.*  The Subject Day Amount in the Golden Living settlement preliminarily approved in May, 2013 was $20.  *Id.*  The Subject Day Amount for resident class members in the Ensign settlement approved in March, 2013 was $10.  *Id.*  In the Skilled Healthcare settlement, the Per Day Amount (after adjustment) was approximately $50, but that case was settled after 4.5 years of litigation and a six month jury trial.  *Id.*

In addition to direct cash payments to class members, Defendants have agreed to pay all reasonable costs and expenses for a third-party monitor to ensure future compliance with the 3.2 hour NHPPD requirement under section 1276.5, up to a maximum of $100,000.  If it is determined that any of the facilities have failed to meet this standard, the cap for monitoring expenses will no longer apply.

b.  **The Injunction Is an Outstanding Result for the Class.**

The proposed Settlement provides important injunctive relief that will benefit Class members and other patients in the future.  As the Ninth Circuit has held, the value of a class settlement may include the non-monetary benefits it secures.  *Linney v. Cellular Alaska*

1   *Partnership*, 151 F.3d 1234, 1240 (9th Cir. 1998) (stressing that "the value of the injunctive relief

2   ($20.9 million to $34.2 million) far outweighs the value of the settlement fund."); *see also Cullen*

3   *v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (the value of the class settlement

4   approved included the full amount of debt forgiveness provided to the class); *Continental Assur.*

5   *Co. v. Macleod-Stedman, Inc.*, 694 F. Supp. 449, 468 (N.D. Ill. 1988) (finding a settlement

6   provided fair value based in part on the corporate restructuring it secured).

7        In *In re HP Laser Printer Litigation*, 2011 U.S. Dist. LEXIS 98759 (C.D. Cal. Aug. 31,

8   2011), the court finally approved a class action settlement of consumer claims against Hewlett-

9   Packard, which agreed to stop selling the defective printer cartridges at issue in that action.  The

10  court's finding that the settlement was "fundamentally fair, adequate, and reasonable" was based

11  in part on its observation that class counsel "views this settlement as providing 'virtually all of the

12  injunctive relief sought . . . that directly address[es] the gravamen of the complaints.'"  *Id.* at *11.

13       Similarly, the injunction here accomplishes much of what Plaintiffs sought to achieve with

14  this litigation.  As noted above, this injunction not only mandates that Defendants immediately

15  comply with the law by adequately staffing their Facilities, it requires them to document their

16  compliance and submit to ongoing review by an independent monitor.  In a key concession,

17  Defendants have agreed to budget to staff each Defendant Facility at not less than 3.4 NHPPD.

18  The standards imposed by the injunction, as well as the compulsory monitoring and oversight

19  provisions, will insure that residents of the Facilities enjoy a level of care they would not

20  otherwise receive.  Thamer Decl., ¶ 9.  Should Defendants fail to comply, the Court retains

21  jurisdiction and the ability to order remedial sanctions.

22       Thus, the injunction is designed to achieve a real world impact in elevating the quality of

23  care that nursing home residents receive at the Defendant facilities.  *See* Thamer Decl., ¶¶ 6-9.

24  California skilled nursing facility residents, due to their infirmities and mental impairments, are

25  dependent and vulnerable and often the victims of neglect and abuse.  Thamer Decl., ¶ 8.  Their

26  infirmities and impairments often render them incapable of asking for help and protection.  *Id.*

27  Research has shown that higher nurse staffing hours per resident have been positively and

28  significantly associated with overall quality of care in skilled nursing facilities, and serve to

1    protect this vulnerable class.  *Id.*  There are countless of examples of the manner in which resident

2    hygiene and health suffers dramatically as a result of low staffing.  *Id.*  Though it is difficult to

3    put a price tag on an injunction that will dramatically improve the quality of life for thousands of

4    elderly and vulnerable nursing home residents, a review of OSHPD cost reports for the Defendant

5    Facilities and other information reviewed by Class Counsel indicate that the Injunction affords

6    substantial economic value to the Settlement Class.  *See* Thamer Decl., ¶¶ 8-9.  The Injunction,

7    along with the substantial Settlement Fund, are clear evidence that the proposed Settlement is fair

8    and reasonable.

9                    **c.      The Litigation Risks Support Preliminary Approval.**

10           The potential risks attending further litigation support preliminary approval.  Plaintiffs

11   face significant challenges proving their alter ego theory and risk losing as Defendants in the case

12   the parent entities which are best positioned to pay damages to the class.

13           In addition, both liability and damages are hotly disputed; Plaintiffs would face a host of

14   difficult merits challenges were this case to proceed to trial.  Among other arguments, Defendants

15   have claimed that (a) evidence of annualized staffing data does not prove violations of the daily

16   staffing requirements; (b) if permitted to count the hours of all persons who provided nursing care

17   (*e.g.*, including those who are not registered nurses or licensed caregivers), the Facilities were

18   adequately staffed; (c) Health and Safety Code section 1276.5, upon which Plaintiffs rely, does

19   not expressly confer a right upon residents that they may enforce under section 1430(b) or other

20   statutes; (d) given that Plaintiffs have not alleged actual damages resulting from understaffing and

21   have disclaimed recovery for physical injuries, there is a substantial question as to what amount

22   (if any) should be awarded as damages at trial; and (e) injunctive relief is precluded on abstention

23   grounds under one case, *Alvarado v. Selma Convalescent Hospital*, 153 Cal. App. 4th 1292, 1298

24   (2007).

25           Proceeding to trial could add years to the resolution of this case in view of the legal and

26   factual issues raised and the likelihood of appeals, including with respect to issues already

27   decided by this Court, such as abstention.  Considered against the risks of continued litigation,

28   and the advanced age of many of the plaintiff class members, the totality of relief under the

1    proposed Settlement is more than adequate and well within the range of reasonableness.

2              **3.    The Recommendation of Experienced Counsel and an Experienced Mediator Strongly Favors Approval.**

3

4              The judgment of competent counsel regarding the proposed Settlement should also be

5    given significant weight in evaluating whether preliminary approval is warranted.  *See Linney v.*

6    *Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. July 18 1997); *Ellis v. Naval Air*

7    *Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

8    622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a

9    presumption of reasonableness.").

10             Class Counsel here have extensive experience litigating and settling consumer class

11   actions and other complex matters.  Nelson Decl., ¶¶ 5-8; Thamer Decl., ¶¶ 2-6; Stebner Decl.,

12   ¶¶ 2-7; Healey Decl., ¶¶ 4-10; Needham Decl., ¶¶ 1-4; Arns Decl., ¶¶ 2-7.  They have intensively

13   investigated the factual and legal issues raised in this action, and that investigation informed the

14   Settlement negotiations.  Needham Decl., ¶ 4; Nelson Decl., ¶ 3.  The fact that qualified and well-

15   informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily

16   in favor of approval.  Nelson Decl., ¶ 9; Thamer Decl., ¶ 6; Healey Decl., ¶ 18; Needham Decl.,

17   ¶ 5; Stebner Decl., ¶ 8; Arns Decl. ¶ 1.

18   **V.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

19

20             Provisional certification of a settlement class is a necessary component of preliminary

21   approval.  The Court need not consider the manageability of a potential trial because the

22   Settlement, if approved, would obviate the need for a trial.  *See Amchem Products, Inc. v.*

23   *Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1021-23.  A court may certify a class if a

24   plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have

25   been met, and that at least one of the requirements of Rule 23(b) has been met.  *See* Fed. R. Civ.

26   P. 23.

27             The proposed Settlement Class satisfies the requirements under Rule 23(a) for the

28   following reasons.  First, under Rule 23(a)(1), the members of the Class are so numerous that

1   joinder of all members is impractical.  Plaintiffs are informed and believe that the Settlement

2   comprises over fifty thousand current and former residents at Defendants' Facilities.  Healey

3   Decl., ¶ 17.  Further, the Class is composed of easily ascertainable sets of persons who resided at

4   one or more Facilities during the Class Period.

5          Second, this litigation satisfies Rule 23(a)(2) as it features common class-wide issues that,

6   absent the Settlement, would drive the resolution of the claims.  *See Wal-Mart Stores, Inc. v.*

7   *Dukes*, 131 S. Ct. 2541, 2551 (2011).  Several disputed issues are common to Plaintiffs and the

8   Class: whether Defendants violated and continue to violate Section 1430(b) by failing to comply

9   with the 3.2 hour NHPPD requirement of Health and Safety Code section 1276.5; whether

10  Defendants violated and continue to violate Section 1430(b) by failing to provide an adequate

11  number of qualified nursing personnel to carry out all functions at the Facilities, in violation of

12  Health and Safety Code section 1599.1; whether Defendants have violated and continue to violate

13  the CLRA, including, without limitation, Civil Code sections 1770(a)(5) and 1770(a)(7), by

14  failing to disclose, and actively concealing, material facts regarding qualifications and staffing

15  conditions; whether Defendants have violated and continue to violate the UCL in that their

16  conduct is immoral, unscrupulous and contrary to public policy, and the detriment and gravity of

17  that conduct outweighs any benefits attributable to it; and whether Plaintiffs and the Class are

18  entitled to injunctive relief to ensure that Defendants' Facilities satisfy the minimum adequate

19  staffing requirements.

20         Third, the claims of the representative Plaintiffs are typical of the claims of the Settlement

21  Class of which a representative Plaintiff is a member.  Fed. R. Civ. Proc. 23(a)(3).  The facts

22  surrounding Defendants' misconduct are common to Plaintiffs and the Class, and represent a

23  common thread of misconduct that caused similar injuries to all Class members.

24         Fourth, the named Plaintiffs will adequately and fairly serve as Class representatives as

25  required under Rule 23(a)(4).  Because their claims are typical of those of the Class members,

26  Plaintiffs have the same interests in the outcome of this case as the other Class members.  The

27  representative Plaintiffs—like all Class members—resided at (or are the successors-in-interest to

28  someone who resided at) one or more of the Facilities during the relevant time period.  Class

1   Counsel are likewise adequate based on their prosecution of this case until now and their

2   experience litigating large, complex class actions of this nature, including class actions involving

3   understaffing at skilled nursing homes.  Nelson Decl., ¶¶ 3, 5-8; Thamer Decl., ¶¶ 2-6; Stebner

4   Decl., ¶¶ 2-8; Healey Decl., ¶¶ 4-10; Needham Decl., ¶¶ 1-4; Arns Decl., ¶¶ 2-7.

5        Because this proposed Settlement achieves injunctive relief and relief in the form of cash

6   payments for the Settlement Class, Plaintiffs request certification of the corresponding Class

7   pursuant to Rule 23(b)(2) or (b)(3).

8        Class certification is warranted under Rule 23(b)(2) if the defendant "has acted or refused

9   to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate

10  respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The proposed Settlement Class

11  consists of all persons who resided at one of the Defendant Facilities from November 23, 2006

12  through the date of class certification.[6]  Each of the requirements of Rule 23(b)(2) is satisfied,

13  making certification appropriate.  The Class is entitled to injunctive relief under Health and

14  Safety Code section 1430(b) as a result of the inadequate levels of qualified nursing staff at

15  Defendants' skilled nursing Facilities.  By engaging in pervasive understaffing, Defendants have

16  acted and refused to act on grounds that apply generally to the proposed Settlement Class of

17  residents at those Facilities, such that "final injunctive relief . . . is appropriate respecting the class

18  as a whole."  Fed. R. Civ. P. 23(b)(2).  Therefore, the Class should be preliminarily certified for

19  Settlement purposes.  *See, e.g.*, *Jaffe v. Morgan Stanley & Co.*, 2008 U.S. Dist. LEXIS 12208

20  (N.D. Cal. Feb. 8, 2008) ("The parties have agreed upon extensive injunctive relief which

21  reasonable plaintiffs would have brought suit to obtain.  Moreover, because Plaintiffs complain

22  primarily of ongoing . . . practices, declaratory and injunctive relief would be necessary and

23  appropriate were Plaintiffs to succeed.  Accordingly, the Court hereby CERTIFIES the

24  injunctive-relief class under Rules 23(a) and 23(b)(2).").

25       With respect to certification under Rule 23(b)(3), certification of the proposed Settlement

26  Class is warranted because questions of law and fact common to the class members predominate

---

[6]  The Settlement Class Period is from November 23, 2006 through April 15, 2013, though for persons who resided at the Alta Vista and Orange facilities it ends on September 30, 2009, when those facilities were sold.

27

28

over any questions affecting individual members. Foremost, the central legal questions in this action are common to all members of the Settlement Class in that they concern the liability of the parent entities and the duties of the Defendant facilities with respect to their statutory and regulatory obligations. The answers to these questions do not differ with respect to each individual member of the Settlement Class. Likewise, common factual questions predominate because the daily staffing levels at each Defendant Facility do not differ for each individual class member. A class action is the superior method available to fairly and efficiently adjudicate the numerous common issues identified above.

Therefore, certification of the Settlement Class pursuant to Rule 23(b)(3) is also warranted.

## VI.    **THE NOTICE SHOULD BE APPROVED**

The proposed form of Notice and the Notice program fully comply with due process and Fed. R. Civ. P. 23. Rule 23(c)(2)(A) authorizes the Court to "direct appropriate notice" to a class certified under Rule 23(b)(2) and (3). Every notice of a class action settlement should include a general description of the proposed settlement. *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The proposed Notice here includes all the necessary and appropriate information. *See* Exh. 3. The Notice accurately and succinctly informs the Class members of the salient terms of the Settlement and their right to object to it and opt out of it. The Notice also describes the hearing before this Court on final approval of the Settlement, and the Application for Attorneys' Fees and Expenses. In addition, the Notice provides a website for the class action settlement, where Class members can access relevant materials, and clearly states the key deadlines that apply to Class members and the settlement approval process overall. The Notice is more than sufficient to apprise the Class members of the Settlement terms and their rights.

Furthermore, notice sent to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). Accordingly, the settling parties in this case have proposed that the Notice be sent by first class mail to all Class members who can be identified from Defendants' records. Settlement

1   Agreement, § 2.  A summary notice will also be published via a one-time paid advertisement in

2   *USA Today* in California.

3        Along with the mailed Notice, Class members will receive a Claim Form and a Probate

4   Form that will allow them to request their allocation of the Settlement Fund, attached as Exhibits

5   4 and 5 hereto.  The Claim and Probate Forms contain clear language and are not unduly

6   burdensome for Class members to complete.  The Probate Form is required where an individual

7   who resided at a Defendant Facility during the Class Period is deceased, requiring the submission

8   of the Claim Form by a successor-in-interest or personal representative.  The information required

9   in the Probate Form is consistent California Probate Code section 13100, which provides that in

10  certain circumstances the personal property of a decedent that does not exceed $150,000,

11  including a debt owed, may be collected by a successor without awaiting probate of the will.

12       Finally, the parties' plan for Class Notice is imminently reasonable because Class

13  members will be given sufficient time to understand the proposed Settlement and take the

14  necessary action to carry out their wishes with respect to it.  The Settlement Administrator will

15  mail and publish the Class Notice within 30 days after the Court grants preliminary approval of

16  the settlement.  In turn, Class Members will have 45 days after the date of Class Notice to submit

17  notification of their objection to the Settlement or their request to be excluded.  Class Counsel

18  will submit their Application for Attorneys' Fees and Expenses no later than two weeks prior to

19  the deadline for Class members to submit their request for exclusion from or objection to the

20  Settlement Agreement.  This schedule allows Class members a reasonable opportunity to consider

21  the merits of the Settlement Agreement and fee application and decide whether to consent to the

22  propose settlement.  *See In re Mercury Interactive Corporation Securities Litigation*, 618 F.3d at

23  994-95.

24       In addition, Class members who choose to accept the Settlement Agreement may submit

25  their Claim Form and, if necessary, the Probate Form, at any time on or before five months after

26  the Class Notice date.  The amount of time to submit the Claim Form is appropriate given that

27  Class members include largely elderly and vulnerable individuals, as well as their successors-in-

28  interest, thus necessitating the collection of further information and documents to complete the

1   Probate Form.  The five-month period for the submission of claim forms is designed to enable a

2   significant number of Class members to collect their allocation of the Settlement Fund.

3          The Court should approve the Notice and Claim Form, as well as the parties' plan to

4   notify the Settlement Class.

5   **VII.**   **A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED**

6          The last step in the approval process is a Fairness Hearing at which this Court may hear all

7   evidence and argument necessary to determine whether to grant final approval to the Settlement.

8   Plaintiffs respectfully request that the Court set the following schedule for further Settlement-

9   related proceedings:

| | |
|---|---|
| Deadline for Settlement Administrator to Mail Class Notice and Claim Form | 30 days after the Court grants preliminary approval of the Settlement. |
| Deadline for Settlement Administrator to publish summary Class Notice | 30 days after the Court grants preliminary approval of the Settlement. |
| Deadline for Class Counsel to move for final approval of the settlement and to file their fee application. | 14 days before the deadline for Class members to submit their objection or request to be excluded from the Class Settlement. |
| Deadline for Class members to submit objections to the proposed Settlement and/or to Class Counsel's fee application. | 45 days after Class Notice. |
| Deadline for Class members to submit their request to be excluded from the Settlement. | 45 days after Class Notice. |
| Final Fairness Hearing/Hearing on Counsel's fee application. | November 29, 2013 or the earliest available date that is at least 100 days from the submission of the Motion for Preliminary Approval. |

| Deadline for submission of the claim and, if required, probate forms. | Five months from the date of Class Notice. |
|---|---|

This schedule anticipates a preliminary approval hearing taking place on August 23, 2013. If the motion for preliminary approval is ruled upon prior to then, the date of the Final Fairness Hearing could also be advanced.

The schedule for the settlement process overall satisfies the requirements set forth in *In re Mercury Interactive Corporation Securities Litigation*, 618 F.3d at 994-95, in that Class members are provided notice and access to Class Counsel's pleading in connection with the motion for final approval of the settlement and approval of attorneys' fees and costs, as well as an adequate amount of time to review such information before the deadline for submission of requests for exclusion or objections.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) granting preliminary approval to the Settlement; (2) granting leave to permit the filing of a Fourth Amended Complaint; (3) certifying for settlement purposes the proposed Settlement Class; (4) appointing counsel listed below as Class Counsel; (5) appointing Plaintiffs as Settlement Class Representatives; (6) approving the parties' proposed forms of Notice and Notice program, and directing that Notice be disseminated pursuant to the program; (7) approving the parties' proposed Claim and Probate Forms; and (8) setting a Fairness Hearing and other dates in connection with the final approval of the Settlement.

Dated: June 12, 2013

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Robert J. Nelson (State Bar No. 132797)
Lexi J. Hazam (State Bar No. 224457)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

By: _____ */s/ Lexi J. Hazam* _____
              Lexi J. Hazam

1    Christopher J. Healey (State Bar No. 105798)
     MCKENNA LONG & ALDRIDGE LLP
2    600 West Broadway, Suite 2600
     San Diego, CA 92101
3    Telephone: (619) 699-2491
     Facsimile (619) 645-5328
4
     Michael D. Thamer (State Bar No. 101440)
5    LAW OFFICES OF MICHAEL D. THAMER
     Old Callahan School House
6    12444 South Highway 3
     Post Office Box 1568
7    Callahan, CA 96014-5307
     Telephone: (530) 467-5307
8    Facsimile: (530) 467-5437

9    W. Timothy Needham (State Bar No. 96542)
     Michael J. Crowley (State Bar No. 102343)
10   JANSSEN, MALLOY, NEEDHAM, MORRISON,
     REINHOLTSEN & CROWLEY, LLP
11   730 Fifth Street
     Eureka, CA 95501
12   Telephone: (707) 445-2071
     Facsimile: (707) 445-8305
13
     Kathryn A. Stebner (State Bar No. 121088)
14   Sarah Colby (State Bar No. 194475)
     STEBNER & ASSOCIATES
15   870 Market Street, Suite 1212
     San Francisco, CA 94102-2907
16   Telephone: (415) 362-9800
     Facsimile: (415) 362-9801
17
     Robert S. Arns (State Bar No. 65071)
18   Steven R. Weinmann (State Bar No. 190956)
     THE ARNS LAW FIRM
19   515 Folsom Street, 3rd Floor
     San Francisco, CA  94105
20   Telephone: (415) 495-7800
     Facsimile: (415) 495-7888
21

22   *Attorneys for Plaintiffs*

23

24

25

26

27

28