1   Robert J. Nelson (State Bar No.  132797)
    Lexi J. Hazam (State Bar No.  224457)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:  (415) 956-1008

5   Michael D. Thamer (State Bar No.  101440)
    LAW OFFICES OF MICHAEL D. THAMER
6   Old Callahan School House
    12444 South Highway 3
7   Post Office Box 1568
    Callahan, CA 96014-1568
8   Telephone:  (530) 467-5307
    Facsimile:  (530) 467-5437

9
    Kathryn A. Stebner (State Bar No. 121088)
10  Sarah Colby (State Bar No. 194475)
    STEBNER & ASSOCIATES
11  870 Market Street, Suite 1212
    San Francisco, CA 94102-2907
12  Telephone:  (415) 362-9800
    Facsimile:  (415) 362-9801

13
    *Attorneys for Plaintiffs*
14  [Additional Counsel Appear on Signature Page]

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18
    HAZEL WALSH, et al,                          No. 3:11-CV-00050-JSW
19
                     Plaintiffs,                 **PLAINTIFFS' NOTICE OF MOTION AND**
20                                               **MOTION FOR FINAL APPROVAL OF**
              v.                                 **CLASS SETTLEMENT; MEMORANDUM**
21                                               **OF POINTS AND AUTHORITIES IN**
    KINDRED HEALTHCARE, INC.;                    **SUPPORT THEREOF**
22  KINDRED HEALTHCARE
    OPERATING, INC.; CALIFORNIA                  Date:      December 6, 2013
23  NURSING CENTERS, LLC; KINDRED                Time:      9:00 am
    NURSING CENTERS WEST, LLC;                   Judge:     Jeffrey S. White
24  HILLHAVEN-MSC PARTNERSHIP;                   Courtroom: 11
    ALTA VISTA HEALTHCARE &
25  WELLNESS CENTRE (A/K/A ALTA
    VISTA HEALTHCARE); BAY VIEW
26  NURSING AND REHABILITATION
    CENTER; CANYONWOOD NURSING
27  AND REHAB CENTER; CARE CENTER
    OF ROSSMOOR, LLC; CARE CENTER
28  OF ROSSMOOR  (F/K/A GUARDIAN OF
    ROSSMOOR); FIFTH AVENUE

1   HEALTH CARE CENTER; GOLDEN
    GATE HEALTHCARE CENTER;
2   HACIENDA CARE CENTER;
    NINETEENTH AVENUE
3   HEALTHCARE CENTER; KINDRED
    HEALTHCARE CENTER OF ORANGE;
4   SANTA CRUZ HEALTHCARE
    CENTER; SMITH RANCH CARE
5   CENTER, LLC; SMITH RANCH CARE
    CENTER(F/K/A GUARDIAN AT SMITH
6   RANCH CARE CENTER); VALLEY
    GARDENS HEALTHCARE &
7   REHABILITATION CENTER;
    VICTORIAN HEALTHCARE CENTER
8   (F/K/A HILLHAVEN VICTORIAN); and
    DOES 1 through 100, inclusive,
9
                    Defendants.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3      PLEASE TAKE NOTICE that on December 6, 2012, at 9:00 a.m., in the Courtroom of the

4 Honorable Jeffrey S. White, United States District Judge for the Northern District of California,

5 located at 450 Golden Gate Avenue, San Francisco, Oakland, CA 94102, Plaintiffs, on behalf of

6 themselves and all others similarly situated, will and hereby do move the Court, pursuant to

7 Federal Rule of Civil Procedure 23(e), for entry of an Order finally approving a proposed

8 Settlement Agreement ("Settlement or SA") entered into between the Parties, and for other

9 related relief.

10      By this unopposed motion, Plaintiffs respectfully move the Court for an Order finally

11 approving the Settlement in this action, attached hereto as Exhibit 1 to this Motion, pursuant to

12 Federal Rule of Civil Procedure 23(e).  A proposed form of Order is submitted herewith.

13      This Motion is based on the accompanying Memorandum of Points and Authorities; the

14 Settlement; the Stipulated Order for Injunction, attached as Exhibit A to the Settlement; the

15 Declaration of Patrick Kennedy and Declaration of Robert J. Nelson In Support of Plaintiffs'

16 Motion for Final Approval of the Class, as well as the Declarations of Robert J. Nelson, Kathryn

17 A. Stebner, Michael D. Thamer, W. Timothy Needham, Robert S. Arns, and Christopher J.

18 Healey submitted in support of Plaintiffs' Motion for Preliminary Approval of the Class

19 Settlement—attached as Exhibits 6 through 12 to Docket Entry 128—as well as documents

20 attached to those Declarations, any papers filed in reply, the argument of counsel, and all papers

21 and records on file in this matter.

22

23

24

25

26

27

28

-i-

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

    A.   Plaintiffs Allege Defendants Violated California Statutes by Understaffing Their Skilled Nursing Facilities. ............................................................. 3

    B.   The Parties Litigated Several Rounds of Motions to Dismiss and the Court Granted These Motions In Part. ...................................................... 3

    C.   The Parties Negotiated this Settlement at Arms' Length ......................... 6

III.   THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS BY REQUIRING DEFENDANTS TO PROVIDE PAYMENTS AND ADEQUATE STAFFING ................................................................................. 6

    A.   The Settlement Includes an Injunction Under Which Defendants Agree to Provide Legally Sufficient Skilled Nursing Services. .......................... 7

    B.   The Settlement Includes Cash Payments for Class Members, Including Residents of the Facilities or their Successors-in-Interest ..................... 8

    C.   Defendants Will Pay for the Cost of Administering the Class Settlement, Service Awards, and Attorneys' Fees and Costs ..................................... 9

    D.   The Settlement Authorizes Plaintiffs to File a Fourth Amended Complaint .......... 9

IV.    THE COURT-APPROVED NOTICE WAS DISSEMINATED AND NO CLASS MEMBER OBJECTED ........................................................................ 10

    A.   The Class Members Were Notified of the Terms of the Settlement and Their Ability to Object. .......................................................................... 10

    B.   There Have Been No Objections Filed To Date. ................................... 11

V.     THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT ....... 11

    A.   The Settlement Is Fair, Reasonable, and Adequate............................... 11

        1.   The Settlement Is the Product of Arms-Length Negotiations Between the Parties After a Thorough Investigation by Plaintiffs. .......... 12

        2.   The Settlement Is Fair Given the Nature of the Claims, the Value of the Injunction, Defendants' Finances and the Litigation Risks. .............. 13

            a.   The Size of the Settlement Fund and Cash Payment for Class Members Is Reasonable.................................................... 13

            b.   The Injunction Is an Outstanding Result for the Class. ............... 14

            c.   The Litigation Risks Favor Final Approval. ............................... 16

        3.   The Recommendation of Experienced Counsel Strongly Favor Approval.......................................................................................... 18

        4.   The Response From the Class Supports Approval.................................. 18

VI.    CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvarado v. Selma Convalescent Hospital,*
153 Cal. App. 4th 1292 (2007) ........................................................................... 17

*Boyd v. Bechtel Corp.,*
485 F.Supp. 610 (N.D. Cal. 1979) ..................................................................... 17

*Byrd v. Civil Serv. Comm'n,*
459 U.S. 1217 (1983) ......................................................................................... 11

*Churchill Village, L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004).......................................................................... 11, 17

*Continental Assur. Co. v. Macleod-Stedman, Inc.,*
694 F. Supp. 449 (N.D. Ill. 1988) ...................................................................... 14

*Cullen v. Whitman Med. Corp.,*
197 F.R.D. 136 (E.D. Pa. 2000).......................................................................... 14

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980)....................................................................... 12, 17

*Grunin v. International House of Pancakes,*
513 F.2d 114 (8th Cir. 1975), *cert. denied,* 423 U.S. 864 (1975) ......................... 11

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).......................................................................... 11, 12

*In re Mercury Interactive Corporation Securities Litigation,*
618 F.3d 988 (9th Cir. 2010)................................................................................ 9

*Linney v. Cellular Alaska Partnership,*
151 F.3d 1234 (9th Cir. 1998)............................................................................. 14

*Linney v. Cellular Alaska Partnership,*
1997 WL 450064 (N.D. Cal. Jul. 18 1997) ......................................................... 17

*Marshall v. Holiday Magic, Inc.,*
550 F.2d 1173 (9th Cir. 1977)............................................................................. 18

*Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 17

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982).............................................................................. 11

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003).............................................................................. 11

*Van Bronkhorst v. Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976).............................................................................. 11

*Wehlage v. Evergreen,*
No. 4:10-cv-05839 (N.D. Cal. October 4, 2012) ................................................ 15

## STATUTES

CAFA,
28 U.S.C. § 1332(d)(1)(B) ................................................................................. 4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

CAFA,
    28 U.S.C. § 1332(d)(2)............................................................................... 4

CAFA,
    28 U.S.C. § 1453 ....................................................................................... 4

Cal. Bus. & Prof. Code
    § 17200 ...................................................................................................... 3

Cal. Civ. Code
    § 1750, *et seq.* ........................................................................................ 3, 9

Cal. Civ. Code
    § 1780(e) ................................................................................................... 9

Cal. Code. Civ. P.
    § 1021.5 ..................................................................................................... 9

Cal. Health & Safety Code
    § 1276.5 .......................................................................................... 1, 3, 5, 16

California Health & Safety Code
    section 1599.1 ..................................................................................... 3, 5, 7

California's Health & Safety Code
    section 1430(b)................................................................................ 2, 3, 9, 16

**RULES**

Fed. R. Civ. P.
    12(b)(2) ..................................................................................................... 4

Fed. R. Civ. P.
    12(b)(6) ................................................................................................. 4, 5

Fed. R. Civ. P.
    Rule 23 ................................................................................................... 10

Fed. R. Civ. P.
    Rule 23(h) ................................................................................................ 9

**OTHER AUTHORITIES**

4 H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002)
    § 11:41.................................................................................................... 12

Federal Judicial Center,
    *Manual for Complex Litigation* (4th ed. 2004), §§ 21.63, *et seq.*........................... 11

**REGULATIONS**

22 California Code of Regulations
    § 72309.................................................................................................... 7

22 California Code of Regulations
    § 72327.................................................................................................... 9

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3       Plaintiffs respectfully request that the Court grant final approval to the Settlement

4   Agreement.[1]  The Court preliminarily approved this Settlement and approved the Parties'

5   proposed Notice Plan on August 23, 2013,  *See* Dkt. No. 132.  Subsequently, the Parties timely

6   effectuated the Court-approved Notice Plan, providing individualized notice by U.S. Mail to the

7   Class members, in addition to publication notice.  The deadline for objections to the Settlement is

8   November 22, 2013.  As of the filing of this Memorandum, no Class Member has objected to the

9   Settlement.[2]

10      This case involves allegations of Defendants' pervasive and intentional failure to provide

11  adequate qualified nurse staffing in their skilled nursing facilities.  All skilled nursing facilities in

12  California are required to provide at least 3.2 hours of direct nursing hours per patient day in

13  accordance with California Health and Safety Code section 1276.5.  This statutory 3.2 hour

14  requirement represents the minimum aggregate staffing that all skilled nursing facilities must

15  provide.  Plaintiffs alleged that Defendants' facilities, in violation of law, failed to meet this

16  requirement.

17      As Plaintiffs have explained previously, this lawsuit was brought to force Defendants to

18  comply with this California statute and to seek damages for inadequate staffing that was contrary

19  to the representations made by the nursing facilities to the residents and their families.  The

20  Agreement has two components.  First, the stipulated Injunction incorporated into the Settlement

21  requires Defendants to ensure proper staffing in their skilled nursing facilities for at least the next

22  two years.  The Injunction further obligates Defendants to budget to provide qualified nurse

23  staffing in excess of the statutory minimum at their California facilities.  This Injunction has a

24  strong accountability provision: a third party monitor will oversee Defendants' compliance, and

25  the Court retains jurisdiction during the Injunction to order appropriate remedies in the event of

26  ---

[1] The executed Settlement Agreement and the Stipulated Order for Injunction are attached as Exhibit 1 to the Memorandum.

27  [2] Following the November 22, 2013 deadline and before the Final Approval hearing, Plaintiffs will inform the Court of the final number of objections received, and will respond as appropriate.

28

1    non-compliance.

2           The second component of the Settlement involves monetary compensation to Class

3    members based on the number of days they were at the facility.  Defendants have agreed to pay

4    up to $8.25 million in accordance with the formula for payment described in the proposed

5    Agreement.  These two components,  injunctive relief to ensure adequate nurse staff going

6    forward, as well as financial compensation to residents who suffered from understaffing,

7    constitute settlement relief that is fair, reasonable and adequate.

8           For the reasons set forth below, Plaintiffs respectfully request that the Court grant final

9    approval to the Settlement.

10   **II.     FACTUAL AND PROCEDURAL BACKGROUND**

11          Plaintiffs, current and former residents of Defendants' skilled nursing facilities in

12   California (the "Facilities"), have brought suit for injunctive relief and damages based on

13   Defendants' understaffing at their Facilities, and their failure to disclose this understaffing.[3]

---

14   [3] The "Facilities Defendants" are:  Kindred Transitional Care and Rehabilitation-Fifth Avenue
     f/k/a Fifth Avenue Health Care Center; Kindred Nursing Centers West, LLC, d/b/a Kindred

15   Transitional Care and Rehabilitation – Village Square, Kindred Nursing Centers West, LLC, d/b/a
     Kindred Nursing and Rehabilitation – Golden Gate; Kindred Nursing Centers West, LLC, d/b/a

16   Kindred Transitional Care and Rehabilitation – Tunnell Center, Kindred Nursing Centers West,
     LLC, d/b/a Kindred Nursing and Healthcare – Victorian, Kindred Nursing Centers West, LLC,

17   d/b/a Kindred Nursing and Transitional Care – Santa Cruz, Kindred Nursing Centers West, LLC,
     d/b/a Kindred Transitional Care and Rehabilitation – Lawton, Kindred Nursing Centers West,

18   LLC, d/b/a Kindred Nursing and Healthcare – Livermore, Kindred Nursing Centers West, LLC,
     d/b/a Kindred Transitional Care and Rehabilitation – Canyonwood, Kindred Nursing Centers

19   West, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Valley Gardens, Kindred
     Nursing Centers West, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Bay View,

20   Bayberry Care Center LLC d/b/a Kindred Nursing and Healthcare – Bayberry, Medical Hill
     Rehab Center, LLC, d/b/a Kindred Nursing and Rehabilitation – Medical Hill, Ygnacio Valley

21   Care Center, LLC, d/b/a Kindred Nursing and Rehabilitation – Ygnacio Valley, Hillhaven – MSC
     Partnership d/b/a Kindred Nursing and Rehabilitation Nineteenth Avenue, Pacific Coast Care

22   Center, LLC d/b/a Kindred Nursing and Transitional Care – Pacific Coast, Greenbrae Care
     Center, LLC, d/b/a Kindred Transitional Care and Rehabilitation Larkspur, Smith Ranch Care

23   Center, LLC, d/b/a Kindred Transitional Care and Rehabilitation Smith Ranch, Care center of
     Rossmoor, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Walnut Creek, Foothill

24   Nursing Company Partnership d.b.a. Kindred Transitional Care and Rehabilitation – Foothill,
     Siena Care Center, LLC, d/b/a Kindred Transitional Care and Rehabilitation – Siena.  Settlement

25   Agreement at 3.  The Settlement Agreement also covers all persons who resided in Kindred
     Healthcare Center of Orange and Alta Vista Healthcare & Wellness Centre, which were sold prior

26   to the end of the Class Period, during the portion of the Class Period prior to their sale.

     In addition to suing these facilities, Plaintiffs have named parent entity Defendants Kindred
27   Health Care, Inc., Kindred Healthcare Operating, Inc., and California Nursing Centers, LLC, and
     Subsidiary Licensee Defendants Hillhaven-MSC Partnership and Smith Ranch LLC.

28

Plaintiffs brought their understaffing claims under California's Health and Safety Code section 1430(b), which provides a cause of action for violations of the right to adequate nurse staffing under Health and Safety Code section 1599.1(a), and Health and Safety Code section 1276.5, which mandates that a facility must provide at least 3.2 nursing hours per patient day ("NHPPD").  Plaintiffs also asserted failure to disclose claims under the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.* ("CLRA"), and Business and Professions Code section 17200, *et seq.* ("UCL").

A.    **Plaintiffs Allege Defendants Violated California Statutes by Understaffing Their Skilled Nursing Facilities.**

As Plaintiffs allege, the 3.2 hour NHPPD requirement under section 1276.5 represents the minimum staffing required for patients at skilled nursing facilities.  Fourth Amended Compl., ¶ 3. Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities.  Scientific studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems—including, but not limited to, a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.  Fourth Amended Compl., ¶ 2.

Plaintiffs allege that Defendants failed to satisfy the 3.2 hour NHPPD minimum requirements, failed to provide adequate numbers of qualified nursing staff given aggregate patient acuity levels at the Facilities, and failed to employ sufficient numbers of registered nurses on numerous days during the Class Period.  Certain of Defendants' Facilities have a high number of reported complaints, deficiencies, and citations resulting from inadequate care of their elderly and dependent adult residents, as reflected in records maintained by the California Department of Health Services.  Fourth Amended Compl., ¶ 4.  These and other facts support liability under Health and Safety Code section 1430(b) for predicate violations of Health and Safety Code sections 1276.5 and 1599.1.

B.    **The Parties Litigated Several Rounds of Motions to Dismiss and the Court Granted These Motions In Part.**

Plaintiff Hazel Walsh originally filed this class action in California state court on

1  November 23, 2010, seeking injunctive relief and damages.  On December 22, 2010, Defendant

2  Kindred Healthcare Operating, Inc.("KHOI") then removed this case to federal court under the

3  Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), and 28 U.S.C. § 1453 ("CAFA").

4  Dkt. No. 1.  Plaintiffs did not and do not contest the removal.  This Court has subject-matter

5  jurisdiction under CAFA because: (a) this is a putative class action within the meaning of 28

6  U.S.C. § 1332(d)(1)(B); (b) members of the proposed Class are citizens of California, whereas

7  KHOI was organized under the law of the State of Delaware, with its principal place of business

8  in the State of Kentucky; and (c) the alleged amount in controversy exceeds $5,000,000.

9       The lawsuit has involved four rounds of motions to dismiss and four amended complaints.

10  On February 25, 2011, Defendants filed the first of several motions to dismiss directed at the

11  original complaint.  Dkt. Nos. 21, 23, 25, 26.  Defendants moved to dismiss pursuant to Federal

12  Rule of Civil Procedure 12(b)(6), and, as to Kindred Healthcare, Inc., pursuant to Rule 12(b)(2).

13  Shortly thereafter, on March 18, 2011, Plaintiffs filed their First Amended Complaint.  Dkt.

14  No. 28.  The First Amended Complaint substituted two new class representatives, Lisa Edwards

15  as guardian ad litem of Arlene Bettencourt, and Roxanne Harrison as guardian ad litem of Harry

16  Harrison, in place of Walsh, but otherwise made no substantive changes to the original claims.

17       On April 15, 2011, Defendant Care Center of Rossmoor, LLC, ("Rossmoor") the facility

18  where Plaintiffs resided, joined by the remaining Defendants, argued that Plaintiffs did not have a

19  private right of action to sue for violations of the NHPPD requirement under section 1276.5 and

20  that the Court should abstain from hearing the matter on the basis of equitable abstention.  Dkt

21  Nos. 39 and 41.  Separate from Rossmoor, the remaining Defendants filed an additional motion to

22  dismiss, arguing that (1) Plaintiffs did not have standing as to the Facilities where they did not

23  reside; (2) Plaintiffs had not sufficiently alleged an alter ego relationship among Defendants

24  under California or Delaware law; and (3) Plaintiffs had not alleged their CLRA claims with

25  requisite specificity, and the provision of institutional health care is not a consumer good or

26

27

28

1    service under the CLRA.  Dkt. No. 42.[4]

2           On June 15, 2011, the Court granted Defendants' motion to dismiss and granted in part

3    and denied in part Rossmoor's motion to dismiss.  Dkt. No. 58.  With respect to Defendants'

4    motion to dismiss, the Court held that Plaintiffs had adequately alleged vertical alter ego

5    relationships between the Facility Defendants and the Parent Kindred Defendants.  However, the

6    Court found that Plaintiffs had not adequately alleged horizontal alter ego relationships between

7    the Facilities or with regards to Hillhaven-MSC Partnership and Smith Ranch LLC, the

8    Subsidiary Licensees.  The Court granted Plaintiffs leave to amend their alter ego allegations.

9           With respect to Rossmoor's motion to dismiss, Docket No. 39, the Court granted the

10   motion to the extent Plaintiffs' UCL claim was premised on section 1276.5.  The Court sustained

11   Plaintiffs' UCL and Section 1430(b) claims to the extent they were premised on violations of

12   Section 1599.1.  The Court further dismissed Plaintiffs' CLRA claim and their UCL and section

13   1430(b) claims to the extent both were premised on violations of Section 1276.5.  The Court

14   noted that violations of Section 1276.5 may evidence whether a given facility has failed to

15   "employ an adequate number of qualified personnel," as required under Section 1599.1.  June 15,

16   2011 Order at 14 n.8, Dkt. 58.  The Court then granted Plaintiffs leave to amend their CLRA

17   claim as well.

18          Plaintiffs subsequently moved for limited, expedited discovery on the issue of alter ego

19   liability.  Dkt. Nos. 59.  The Court granted the motion and Plaintiffs filed their Second Amended

20   Complaint on November 23, 2011.  Dkt. Nos. 69 and 74.  On December 21, 2011, Rossmoor

21   moved to dismiss Plaintiffs' CLRA claim in the Amended Complaint.  Dkt. No. 80.  On March

22   26, 2012, the Court granted Rossmoor's motion, finding that Plaintiffs failed to plead sufficient

23   facts to state a claim based on Defendants' failure to disclose material facts under the CLRA.

24   Dkt. No. 92.  The Court granted Plaintiffs leave to amend to cure this defect, noting that Plaintiffs

25   had asserted in briefing, but had not alleged, that nurse understaffing increases the risk of physical

26   _____

27   [4] Although in the first round of motions to dismiss Kindred Healthcare, Inc. made a special
     appearance to assert a lack of personal jurisdiction, the Parties agreed to stay resolution of the
     issue pending the Court's decision regarding the other motions pursuant to Rule 12(b)(6).

28

1    and other harm for elderly and frail residents in nursing homes.

2           On April 13, 2012, Plaintiffs filed their Third Amended Complaint.  Dkt. No. 94.

3    Defendants moved to dismiss the CLRA claim pursuant to Rule 12(b)(6).  The Court denied

4    Defendants' motion to dismiss.  Dkt. No. 105.  On August 20, 2012, Defendants Kindred

5    Healthcare Operating, Inc.; Kindred Nursing Centers West, LLC; California Nursing Centers,

6    LLC; Rossmoor; Hillhaven-MSC Partnership; Smith Ranch Care Center, LLC filed their answer

7    to the Third Amended Complaint.  Dkt. No. 106.  On September 24, 2012, the Court approved the

8    Parties' stipulation for a 90-day stay of the action to permit the Parties to attend mediation.

9    Dkt. No. 116.  In the months that followed, the Parties engaged in extensive settlement

10   negotiations and finally reached a settlement that was subject to Plaintiffs' additional

11   confirmatory discovery.  Dkt. No. 125.

12          **C.      The Parties Negotiated This Settlement at Arms' Length**

13          The Parties engaged in three in-person mediation sessions before the Honorable William

14   Cahill (Ret.), at JAMS, on December 7, 2012, December 13, 2012 and January 10, 2013.

15   Declaration of Robert J. Nelson in Support of Plaintiffs' Motion for Preliminary Approval of

16   Class Settlement ("Nelson Decl. ISO Mot. For Prelim. Approval"), ¶ 4.  The negotiations were

17   highly contested and at arms' length.  *Id*.  The Parties ultimately reached an agreement in

18   principle, and continued their negotiations for several months thereafter to ensure agreement on

19   all outstanding issues.  *Id.*

20          The confirmatory discovery ultimately revealed facts consistent with Defendants'

21   representations.  Plaintiffs then moved for preliminary approval of the proposed Settlement and

22   also requested leave from the Court to file a Fourth Amended Complaint for purposes of the

23   Settlement.  The Court granted those motions on August 23, 2013, Dkt. No. 132.

24   **III.   THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS BY REQUIRING**
     **DEFENDANTS TO PROVIDE PAYMENTS AND ADEQUATE STAFFING**
25
            The Settlement Agreement has been fully executed.  Dkt. No. 131 at 1; Dkt. No. 131-1,
26
     Executed Settlement Agreement.  A summary of the Settlement Agreement's material terms is
27
     provided below.
28

**A.    The Settlement Includes an Injunction Under Which Defendants Agree to Provide Adequate Skilled Nursing Services.**

The proposed Settlement includes a stipulated Injunction that substantially resolves the core issue in this lawsuit:  Defendants' alleged systematic violation of the California law requiring them to provide 3.2 hours of skilled nursing services per patient day in their skilled nursing Facilities.  Settlement Agreement at ¶ 6.  The stipulated Injunction is attached as Exhibit A to the Settlement Agreement (Exhibit 1 hereto).

The Injunction provides that "[at] all times, each of the Defendant Facilities shall comply with Health and Safety Code section 1276.5 by providing a minimum of 3.2 actual nursing hours per patient day."  Stipulated Injunction, ¶ 1.  Importantly, Defendants have also agreed to budget to staff each Defendant Facility at an even higher level, not less than 3.4 NHPPD.  Stipulated Injunction, ¶ 3.  Further, "[a]t all times, the Defendant Facilities shall comply with Health and Safety Code section 1599.1(a) by employing an adequate number of qualified personnel to carry out all of their respective facility's functions."  Stipulated Injunction, ¶ 2.  Finally, Defendant Facilities are required to employ an adequate number of qualified nursing personnel to provide skilled nursing services (as that term is defined in 22 California Code of Regulations section 72309) at the Defendant Facilities. *Id.*

Defendants agree to track their compliance and submit regular reports to a Court-appointed monitor empowered to "undertake all . . . necessary actions to monitor Defendant Facilities' compliance with the terms of this Injunction.  All fees and costs of the Monitor shall be paid by the Defendants up to a maximum of $100,000 in total; any fees and/or costs exceeding that amount shall be borne solely by Settlement Class Counsel, provided that there will be no cap on monitor expenses in the event Defendants violate the injunction."  Stipulated Injunction, ¶ 6, ¶¶ 8-9; *see also* Settlement Agreement ¶ 6.1.2.

The stipulated Injunction will remain in effect for two years after entry of an Order finally approving the Settlement.  Settlement Agreement at ¶ 6.1.1; Stipulated Injunction, ¶ 14.  The Stipulated Injunction makes clear that if Defendants violate its terms, "Plaintiffs may seek a Court order extending the Injunction duration, in addition to any other available remedy."  Stipulated

1    Injunction, ¶ 14.

2        **B.**     **The Settlement Includes Cash Payments for Class Members, Including Residents of the Facilities or Their Successors-in-Interest**

3

4        The Settlement Agreement also provides that Defendants shall fund cash payments to

5    eligible Settlement Class members.  Defendants agree to pay up to $8.25 million (the Maximum

6    Settlement Class Payment).  Settlement Agreement ¶ 6.2.1.  The "Per Class Member Payment" is

7    the payment made to each Settlement Class Member in the amount calculated by multiplying the

8    number of days that the class member resided in any Defendant Facility times the Subject Day

9    Percentage (8 percent) times $20, the agreed-upon Subject Day Amount.  Settlement Agreement

10   ¶ 6.2.3.  For illustration purposes, if a Settlement Class Member (or his/her predecessor) resided

11   in a Defendant Facility for 100 days, the payment owed to that Settlement Class Member would

12   be $160 (100 days times 8% times $20).  Settlement Agreement ¶ 6.2.3.

13       A successor or personal representative of a resident of the Defendant Facilities may

14   submit a claim form, provided that it materially complies with the requirements of the California

15   Probate Code.  Settlement Agreement ¶ 6.2.4.

16       This formula reflects Settlement Class Counsel's evaluation of certain data showing that

17   inadequate staffing occurred on fewer than 8 percent of the days in question at the subject

18   Facilities.  The $20 per day violation is based on the settlements in several other similar cases and

19   is a number that was the result of arm's length negotiation.  Declaration of Christopher J. Healey

20   in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Healey

21   Decl. ISO Mot. for Prelim. Approval), Docket No. 128-11, ¶ 16.  For example, in the *Thekkek*

22   settlement approved in December 2011, the Subject Day Amount (after adjustment) was

23   approximately $20.  *Id.*  The Subject Day Amount in the Golden Living settlement preliminarily

24   approved in May, 2013 was $20.  *Id.*  The Subject Day Amount for resident class members in the

25   Ensign settlement approved in March, 2013 was $10.  *Id.*  In the *Skilled Healthcare* settlement,

26   the Per Day Amount (after adjustment) was approximately $50, but that case was settled after 4.5

27   years of litigation and a seven month jury trial, with a verdict in the amount of $677 million.  *Id.*

28

1

2

**C.**      **Defendants Will Pay for the Cost of Administering the Class Settlement, Service Awards, and Attorneys' Fees and Costs**

3

4

5

6

7

8

Under the Settlement, Defendants shall pay all Settlement Administration costs up to $200,000, except for any supplemental form of notice requested by Settlement Class Counsel or ordered by the Court.  Settlement Agreement ¶ 7.7.  In addition, Settling Defendants agree to pay $3,500 service awards to each of the ten named Plaintiffs.  Settlement Agreement ¶ 8.2.  With respect to attorneys' fees and litigation expenses advanced in this case, Defendants shall pay fees and expenses in the amount awarded by the Court.[5]  Settlement Agreement, ¶ 8.1.

9

**D.**      **The Settlement Authorizes Plaintiffs to File a Fourth Amended Complaint**

10

11

12

13

14

15

16

17

18

19

20

21

Paragraph 21 of the Settlement Agreement provides that Plaintiffs shall file a Fourth Amended Complaint adding those Defendant Facilities not named in prior Complaints, and including allegations that Defendants violated 22 California Code of Regulations 72327.  In their Third Amended Complaint, Plaintiffs had identified 13 Kindred Facilities in which violations of the 3.2 NHPPD minimum staffing requirement occurred.  The Settlement Agreement includes an additional ten Facilities that were not previously named as Defendants.  Healey Decl. ISO Mot. for Prelim. Approval, ¶ 13.  As with the Facilities Plaintiffs originally sued, Plaintiffs obtained and analyzed staffing data contained in OSHPD cost reports for these additional Facilities to estimate violation rates.  *Id*.  The rates of violation of the 3.2 NHPPD minimum staffing requirement estimated from the OSHPD cost reports for the additional Facilities were significantly lower than the projected minimum staffing violation rates for the Facilities Plaintiffs originally sued.  *Id*.

22

In addition, Plaintiffs obtained and reviewed daily staffing data for nine of the ten

23

24

25

26

27

28

[5] Class Counsel is entitled to attorneys' fees pursuant to Fed. R. Civ. P. 23(h), as well as California's mandatory fee-shifting statute for private attorney general actions, including actions under Health and Safety Code § 1430(b) and the Consumer Legal Remedies Act.  *See* Cal. Code. Civ. P. § 1021.5; Cal. Health & Safety Code § 1430(b); Cal. Civ. Code § 1780(e).  Class Counsel filed their application for fees and expenses and for service awards concurrently with this motion for final approval of the Class Settlement.  Class Counsel have submitted lodestar reports in support of their fee application, and the application has been filed with sufficient notice to Settlement Class members to comply with *In re Mercury Interactive Corporation Securities Litigation*, 618 F.3d 988, 994-95 (9th Cir. 2010).  *See also* Fed. R. Civ. P. 23(h).

Facilities. *Id*. That review showed that the overall estimated minimum staffing violation rates at the new Facilities was 3.65% of the days during the Class Period, which is less than the overall minimum staffing violation rate of 6.3% that Plaintiffs calculated based on a review of the daily staffing data for the originally-named Facilities. *Id*. The estimated 3.65% violation rate is also below the violation rate of 8% agreed to in the Settlement Agreement, which covers the alleged minimum staffing violations and other violations asserted in the lawsuit. *Id*. The estimated violation rates of the ten additional Facilities were taken into account by the Parties in negotiating the compensation to be paid to the Settlement Class. *Id*.

The Settlement Class size is estimated at 64,000 current and former resident Class members. *Id*.

## IV.   THE COURT-APPROVED NOTICE WAS DISSEMINATED AND NO CLASS MEMBER OBJECTED

The Notice Plan approved by the Court in its Preliminary Approval Order (Dkt. No. 132) has now been implemented by the Parties and the Claims Administrator, Gilardi & Co.

### A.   The Class Members Were Notified of the Terms of the Settlement and Their Ability to Object.

Pursuant to the Preliminary Approval Order and sections 2.2 and 2.3 of the Settlement Agreement, the Court-approved Notice was sent to all 64,505[6] Class members by U.S. mail on September 23, 2013. *See* Declaration of Markham Sherwood in Support of Motion for Final Approval (hereinafter "Sherwood Decl."), ¶ 4. The mailed Notice summarized the Settlement terms and informed Class members of their right to object or request exclusion from the settlement by November 22, 2012. *See* Exhibit A to Sherwood Decl. A substantially similar Notice was also published in *USA Today* on August 23, 2013. *See* Exhibit B to Sherwood Decl.

Along with the Settlement Notice, Class members received a Claim Form and a Probate Form to collect their allocation of the Settlement Fund. Sherwood Decl. at ¶ 4. The mailed and published Notices informed Class members that they have until February 20, 2013 to submit their

---

[6] Of that number, 50,547 were identified as current or former residents and 13,958 were identified as guarantors.

1   Claim Form, and, if required, the Probate Form.  Sherwood Decl. at ¶ 9, Exhs. A & B; Settlement

2   Agreement, § 7.3.

3   **B.      There Have Been No Objections Filed To Date.**

4   Neither Class Counsel nor the Claims Administrator has yet to receive any objections to

5   the Settlement.  *See* Sherwood Decl., ¶ 11.

6   **V.      THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT**

7   Rule 23 contemplates a three-step procedure for approval of class action settlements:

8   (1) certification of a settlement class and preliminary approval of the proposed settlement after

9   submission to the court of a written motion for preliminary approval, (2) dissemination of notice

10  of the proposed settlement to the affected class members, and (3) a formal fairness hearing, or

11  final settlement approval hearing, and consideration for final approval.  *See Manual for Complex*

12  *Litigation*, Fourth, §§ 21.63, *et seq.*

13  In granting preliminary approval to the Settlement and requiring notice to be disseminated

14  to the Class, the Court has taken the first two steps in the process.  Dkt. No. 132.  By this motion,

15  Plaintiffs respectfully request that the Court take the third and final step in the settlement approval

16  process, by granting final approval to the proposed Settlement Agreement.

17  **A.      The Settlement Is Fair, Reasonable, and Adequate.**

18  Courts consider a number of factors in evaluating class action settlements, recognizing

19  that "'it is the settlement taken as a whole, rather than the individual component parts, that must

20  be examined for overall fairness.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)

21  (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Among the factors

22  considered are the strength of the plaintiff's case; the risk, expense, complexity, and likely

23  duration of further litigation; the risk of maintaining class action status through trial; the amount

24  offered in settlement; the extent of discovery completed and the stage of the proceedings; the

25  experience and considered views of counsel; the defendant's ability to pay; and the reaction of the

26  class to the proposed settlement.  *See Staton*, 327 F.3d at 959; *see also Grunin v. International*

27  *House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975).

28  The law favors the compromise and settlement of class action suits.  *See, e.g., Byrd v.*

1   *Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566,

2   576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

3   There is an "overriding public interest in settling and quieting litigation . . . particularly . . . in

4   class action suits . . . ." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  As

5   such, the Court should give "proper deference to the private consensual decision of the

6   parties . . . .  [T]he court's intrusion upon what is otherwise a private consensual agreement

7   negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

8   reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

9   between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and

10  adequate to all concerned."  *Hanlon*, 150 F.3d at 1027.

11      The Settlement here readily satisfies the standard for final approval, because it is the

12  product of serious, arms-length negotiations between the Parties, reached after considerable

13  motion practice and thorough investigation by Plaintiffs, and because the Settlement provides

14  substantial relief to the Settlement Class.  Additionally, the Settlement was negotiated by, and is

15  recommended by, experienced Class Counsel, and was reached with the help of an experienced

16  and well-respected jurist.

17      **1.   The Settlement Is the Product of Arms-Length Negotiations Between
        the Parties After a Thorough Investigation by Plaintiffs.**

18

19      When a settlement has resulted from arms-length negotiations conducted by capable and

20  experienced counsel, a court begins its analysis with a presumption that the settlement is fair and

21  reasonable.  *See* 4 H. Newberg & A. Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002);

22  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  In granting preliminary

23  approval here, this Court found that "the Settlement was reached in the absence of collusion, is

24  the product of informed, good-faith, arms-length negotiations between the parties and their

25  capable and experienced counsel, and was reached with the assistance of a well-qualified and

26  experienced jurist . . ."  Preliminary Approval Order, Dkt. No. 132, ¶ 2; Decl. of Robert J. Nelson,

27  ¶ 4 (Dkt. No. 128-6).

28      Class Counsel, who include several of the same attorneys who won a landmark jury

1 verdict against another skilled nursing home company based on similar allegations of nursing

2 understaffing, are well-equipped to evaluate the Settlement and conclude that it is in the best

3 interests of the Class. *See* Declarations In Support of Plaintiffs' Motion for Preliminary

4 Approval: Stebner Decl. ¶¶ 2–8 (Dkt. No. 128–7); Nelson Decl., ¶¶ 5-9 (Dkt. No. 128-6); Thamer

5 Dec. ¶¶ 2-9 (Dkt. 128-8); Needham Decl., ¶¶ 1–5 (Dkt. 128–9); Arns Decl. ¶¶ 2-7 (Dkt. 128-10);

6 Healey Decl., ¶¶ 2-18 (Dkt. 128-11)). Those counsel have won numerous awards and honors,

7 including Trial Lawyer of the Year honors as a result of their successful trial and subsequent

8 efforts to settle that case. Thamer Decl. ¶ 2.

9     The Settlement was informed not only by Class Counsel's experience, but also by their

10 thorough investigation of the facts and litigation of the claims. Prior to filing their initial

11 complaint, and continuing throughout the litigation, Plaintiffs investigated the staffing practices at

12 issue by obtaining and analyzing Defendants' reports to the California Office of Statewide Health

13 Planning and Development; obtaining, reviewing and summarizing all of the California

14 Department of Public Health licensing and certification files for each named Facility; obtaining

15 the workers' compensation files of Defendants' former employees; and tracking down and

16 interviewing such former employees and other potential witnesses. Declaration of W. Timothy

17 Needham, ¶ 4 (Dkt. 128-9). Significantly, too, the pleadings were contested though four rounds

18 of motions to dismiss, and those motions raised complex issues of law and fact.

19          **2.    The Settlement Is Fair Given the Nature of the Claims, the Value of the Injunction, and the Litigation Risks.**

20

21          **a.    The Size of the Settlement Fund and Cash Payment for Class Members Is Reasonable.**

22     Defendants have agreed to make a substantial sum of up to $8.25 million available to the

23 Class. The "Per Class Member Payment" is determined through a formula that is based on the

24 number of days that the class member resided in any Defendant Facility, as well as the Subject

25 Day Percentage of 8 percent. For purposes of settlement, the Parties have agreed that 8 percent

26 reflects the percentage of time that the Defendant Facilities were out of compliance with the

27 statutory requirements for nurse staffing levels. That figure is higher than what Class Counsel

28 determined to be the 6.3% violation rate based on a review of daily staffing data for the originally

1    named Facilities. The allocation formula is appropriately based on the estimated period of time

2    that Class members were directly affected by the nurse staffing shortfalls.

3         As described above, in Part III.B., the agreed-upon Subject Day Amount, $20, is

4    reasonable in that it compares favorably with pre-trial settlements reached in other nurse

5    understaffing cases.  Healey Decl., ¶ 16.

6         In addition to these direct cash payments to class members, Defendants have agreed to pay

7    all reasonable costs and expenses for a third-party monitor to ensure future compliance with the

8    3.2 hour NHPPD requirement under section 1276.5, up to a maximum of $100,000.  If it is

9    determined that any of the Facilities have failed to meet this standard, the cap for monitoring

10   expenses will no longer apply.

11              **b.**      **The Injunction Is an Outstanding Result for the Class.**

12         In addition to this monetary relief, the proposed Settlement provides important injunctive

13   relief that will benefit Class members and other residents in the future.  As the Ninth Circuit has

14   held, the value of a class settlement may include the non-monetary benefits it secures.  *Linney v.*

15   *Cellular Alaska Partnership*, 151 F.3d 1234, 1240 (9th Cir. 1998) (stressing that "the value of the

16   injunctive relief ($20.9 million to $34.2 million) far outweighs the value of the settlement fund");

17   *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (value of class

18   settlement approved included the full amount of debt forgiveness provided to the class);

19   *Continental Assur. Co. v. Macleod-Stedman, Inc.*, 694 F. Supp. 449, 468 (N.D. Ill. 1988) (finding

20   a settlement provided fair value based in part on the corporate restructuring it secured).

21         The Injunction here, which became effective on July 1, 2013, accomplishes much of what

22   Plaintiffs sought to achieve with this litigation.  Settlement Agreement ¶ 6.1.1.  As noted above,

23   this Injunction not only mandates that Defendants immediately comply with the law by

24   adequately staffing their Facilities at levels higher than the statutory minimum; it also requires

25   them to document their compliance and submit to ongoing review by an independent monitor.  In

26   a key concession, Defendants have agreed to budget to staff each Defendant Facility at not less

27   than 3.4 NHPPD.  The standards imposed by the Injunction, as well as the compulsory

28   monitoring and oversight provisions, will insure that residents of the Facilities enjoy a level of

1    care they would not have otherwise received.  Declaration of Michael Thamer in Support of

2    Plaintiffs' Motion for Preliminary Approval, Dkt. 128-8, ¶ 9.  Should Defendants fail to comply,

3    the Court retains jurisdiction and the ability to order remedial sanctions.

4           Thus, the Injunction is designed to achieve a real world impact in elevating the quality of

5    care that nursing home residents receive at the Defendant Facilities.  *See id.*, ¶¶ 6-9.  Due to their

6    infirmities and mental impairments, skilled nursing facility residents are dependent and

7    vulnerable and often the victims of neglect and abuse.  *Id.*, ¶ 8.  Their infirmities and impairments

8    often render them incapable of asking for help and protection.  *Id.*  Research has shown that

9    higher nurse staffing hours per resident have been positively and significantly associated with

10   overall quality of care in skilled nursing facilities, and serve to protect this vulnerable class.  *Id.*

11   There are countless of examples of the manner in which resident hygiene and health suffers

12   dramatically as a result of low staffing.  *Id.*

13          As the Court found, the Injunction "carries a substantial value" and the "injunction will

14   create tangible, meaningful improvements in the quality of care for elderly and vulnerable

15   residents of the Defendant Facilities"  Preliminary Approval Order (Dkt. No. 132), ¶ 5.  Indeed,

16   in *Wehlage v. Evergreen*, Case No. 4:10-cv-05839 (N.D. Cal. October 4, 2012), Dkt No. 127, a

17   nursing home understaffing class action, Chief Judge Wilken approved a class settlement which,

18   unlike this settlement, offered only injunctive relief.  *Evergreen* involved an injunction similar to

19   that made available in connection with the Settlement Agreement in this case.  Both injunctions

20   require reporting as to the same aspects of nurse staffing.  The Injunction in this case, however,

21   imposes an additional requirement the injunction in *Evergreen* did not.  Defendants must budget

22   to provide 3.4 NHPPD, a staffing level above what is required under state law.

23          The injunctive relief here may also be assessed in terms of dollar value.  It is

24   conservatively valued at between $6.09 million and $20.68 million for current and prospective

25   class members.  *See* Declaration of Patrick Kennedy, ¶¶ 13, 19.  According to Dr. Kennedy, an

26   economist, the amount paid by residents at a Kindred facility averages $266.91 per day.  This

27   amount represents the economic harm to a resident on a day when the number of skilled nursing

28   hours was inadequate.  During the Injunction period, this amount would be approximately

1  $33,525,231 ($266.91 X 125,605 days).  However, Dr. Kennedy reduced the economic harm

2  described above by 38.3 percent to reflect a deduction for the value of room, board, and activities

3  otherwise received.  After the deduction, the net value of the economic benefit received by the

4  residents is approximately $164.65 per day.  Multiplied by the total number of at-issue resident

5  days, the total economic harm avoided by the Injunction is $20,680,863.  Kennedy Decl., ¶¶ 9-13.

6  An additional adjustment may be made to the value of the Injunction to account for the

7  number of Settlement Class member in residence at Defendant Facilities ("Current Residents").

8  The average length of stay for residents is shorter than the Injunction Period.  The assumed

9  violation rate of 8 percent times the estimated patient days yields 125,605 days in which skilled

10  nursing care provided by Defendants allegedly would not have met the State of California

11  requirements during the Injunction period, but for the Injunction.  Taking into account the

12  estimated monthly rate of departure, Dr. Kennedy calculates that there would be 462,418 Current

13  Resident days at Defendant Facilities.  Applying the 8 percent estimated violation rate results in

14  36,993 days in violation of the Injunction.  This figure is approximately 29.5 percent of the

15  125,605 violations for all residents.  Kennedy Decl., ¶¶ 14-16.

16  Thus, for current residents, the total economic value received from the Injunction is based

17  on the 36,993 days that resident Class members would have received sub-standard skilled nursing

18  during the Injunction period.  As noted above, the residents' economic harm related to sub-

19  standard nursing services is $164.65, accounting for a deduction of expenses for room and board.

20  This adjusted amount times the 36,993 days that resident Class members would have received

21  sub-standard skilled nursing during the Injunction period equals $6,090,897.  Kennedy Decl.,

22  ¶¶ 17-19.

23  Either figure clearly illustrates the substantial value that the injunctive relief provides to

24  Class members.

25        **c.**     **The Litigation Risks Favor Final Approval.**

26  The potential risks attending further litigation also support final approval.  As explained

27  previously, Plaintiffs face significant challenges proving their alter ego theory and risk losing as

28  Defendants in the case the parent entities best-positioned to pay damages to the class.

- 16 -

In addition, both liability and damages are hotly disputed; Plaintiffs would face a host of difficult merits challenges were this case to proceed to trial.  Among other arguments, Defendants have claimed that (a) evidence of annualized staffing data does not prove violations of the daily staffing requirements; (b) if permitted to count the hours of all persons who provided nursing care (*e.g.*, including those who are not registered nurses or licensed caregivers), their Facilities were adequately staffed; (c) Health and Safety Code section 1276.5, upon which Plaintiffs rely, does not expressly confer a right upon residents that they may enforce under section 1430(b) or other statutes; (d) each understaffed day does not represent a separate "violation" for purposes of section 1430(b) based on the Second District Court of Appeals ruling in *Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 216 Cal.App.4th 1349;[7] (e) given that Plaintiffs have not alleged actual damages resulting from understaffing and have disclaimed recovery for physical injuries, there is a substantial question as to what amount (if any) should be awarded as damages at trial; and (f) injunctive relief is precluded on abstention grounds under *Alvarado v. Selma Convalescent Hospital*, 153 Cal. App. 4th 1292, 1298 (2007).[8]  Declaration of Robert J. Nelson In Support of Plaintiffs' Motion for Final Approval of the Class Settlement and Class Counsel's Application for Attorneys' Fees ("Nelson. Decl."), ¶ 16.

Proceeding to trial could add years to the resolution of this case in view of the legal and factual issues raised and the likelihood of appeals, including with respect to issues already decided by this Court, such as abstention.  Continued litigation decidedly is not in the best interests of this very elderly class.  Considered against the risks of continued litigation, and the advanced age of many of the Class members, the totality of relief under the proposed Settlement

---

[7] On July 9, 2013, the *Nevarrez* court granted rehearing on the 1430(b) remedy issue (thus vacating the prior opinion) and an updated decision is expected soon. While Plaintiffs disagree with the "one award capped at $500" interpretation, the possibility that the section 1430(b) remedy might be narrowly construed is an important settlement consideration.

[8] With respect to the risk presented by the doctrine of abstention, the seminal decision, *Shuts v. Covenant Holdco LLC* 208 Cal.App.4th 609 (2012), distinguished *Alvarado* and upheld the private right of action to assert understaffing claims against skilled nursing facilities. In support of that holding, *Shuts* cites the federal *Walsh* and *Wehlage* abstention decisions issued, respectively, by this Court and Judge Wilken. *Id.* at 619-20.  All three cases were prosecuted by attorneys who are Class Counsel in this action.

1    is more than adequate and well within the range of reasonableness.

2              **3.    The Recommendation of Experienced Counsel Strongly Favor**
                       **Approval.**
3

4          The judgment of competent counsel regarding a class settlement carries significant

5    weight.  *See Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. July 18,

6    1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v. Bechtel*

7    *Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel

8    should be given a presumption of reasonableness.").  Counsel for both Parties endorse this

9    Settlement as fair, adequate, and reasonable.  *See, e.g.*, Declarations In Support of Plaintiffs'

10   Motion for Preliminary Approval: Nelson Decl., ¶ 9 (Dkt. No. 128–6); Thamer Decl., ¶ 6 (Dkt.

11   No. 128–12); Healey Decl., ¶ 18 (Dkt. No. 128–11); Needham Decl., ¶ 5 (Dkt. 128–9); Stebner

12   Decl., ¶ 8 (Dkt. No. 128–7).

13             **4.    The Response from the Class Supports Approval.**

14         The response of the class is another factor in weighing the final approval of a class

15   settlement.  When a significant majority of class members have not objected to a class settlement,

16   courts have interpreted that response as evidence that the settlement merits final approval.  *See*

17   *Churchill Village, L.L.C. v. General Elec Co.*, 361 F.3d 566, 577 (9th Cir. 2004); *see, e.g.*,

18   *National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is

19   established that the absence of a large number of objections to a proposed class action settlement

20   raises a strong presumption that the terms of a proposed class settlement action are favorable to

21   the class members."); *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977)

22   ("The small number of class members indicating their disapproval of the settlement, here only

23   one percent, also indicates its acceptability.").

24         Class members still have time to object and opt out of the Settlement Class, so any

25   conclusion regarding the response of Class members to the Notice is premature.  Thus far,

26   however, Settlement Class Counsel are not aware of any objections.  *See* Sherwood Decl., ¶ 11.

27   To date, there have only been approximately 100 requests to opt out of the Class.  *Id.* at ¶ 10.

28   This is a very small fraction of the Class, less than 1 percent.  These facts also weigh strongly in

1  favor of approval.

2  **VI.**     <u>**CONCLUSION**</u>

3       For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order

4  granting Final Approval to the proposed Settlement.

5  Dated: November 1, 2013         Respectfully submitted,

6                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

7
                       By:   */s/ Robert J. Nelson*
8                              Robert J. Nelson

9                       Robert J. Nelson (State Bar No. 132797)
                       Lexi Hazam (State Bar No. 224457)
10                       Jordan Elias (State Bar No. 228731)
                       275 Battery Street, 29th Floor
11                       San Francisco, CA  94111-3339
                       Telephone:  (415) 956-1000
12                       Facsimile:  (415) 956-1008

13                       Michael D. Thamer (State Bar No. 101440)
                       LAW OFFICES OF MICHAEL D. THAMER
14                       Old Callahan School House
                       12444 South Highway 3
15                       Post Office Box 1568
                       Callahan, CA 96014-1568
16                       Telephone:  (530) 467-5307
                       Facsimile:  (530) 467-5437
17
                       Kathryn A. Stebner (State Bar No. 121088)
18                       Sarah Colby (State Bar No. 194475)
                       STEBNER & ASSOCIATES
19                       870 Market Street, Suite 1212
                       San Francisco, CA 94102-2907
20                       Telephone:  (415) 362-9800
                       Facsimile:  (415) 362-9801
21
                       Christopher J. Healey (State Bar No. 105798)
22                       MCKENNA, LONG & ALDRIDGE, LLP
                       600 West Broadway, Suite 2600
23                       San Diego, CA 92101

24                       W. Timothy Needham (State Bar No. 96542)
                       Michael J. Crowley (State Bar No. 102343)
25                       JANSSEN, MALLOY, NEEDHAM, MORRISON,
                       REINHOLTSEN & CROWLEY, LLP
26                       730 Fifth Street
                       Eureka, CA 95501

27

28

NOTICE OF MOTION & MOTION. FOR FINAL APPROVAL OF
CLASS SETTLEMENT; MPA IN SUPPORT THEREOF
NO. 3:11-CV-00050-JSW

Robert S. Arns (State Bar No. 65071)
Steven R. Weinmann (State Bar No. 190956)
THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
San Francisco, CA 94105

*Attorneys for Plaintiffs*

**ATTESTATION**: The filer attests that concurrence in the filing of this document has been obtained from all signatories.