1  Robert J. Nelson (State Bar No.  132797)
   Lexi J. Hazam (State Bar No.  224457)
2  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
3  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
4  Facsimile:  (415) 956-1008

5  Michael D. Thamer (State Bar No.  101440)
   LAW OFFICES OF MICHAEL D.  THAMER
6  Old Callahan School House
   12444 South Highway 3
7  Post Office Box 1568
   Callahan, CA 96014-1568
8  Telephone:  (530) 467-5307
   Facsimile:  (530) 467-5437
9
   Kathryn A. Stebner (State Bar No. 121088)
10 Sarah Colby (State Bar No. 194475)
   STEBNER & ASSOCIATES
11 870 Market Street, Suite 1212
   San Francisco, CA 94102-2907
12 Telephone:  (415) 362-9800
   Facsimile:  (415) 362-9801
13
   *Attorneys for Plaintiffs*
14 [Additional Counsel Appear on Signature Page]

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18 HAZEL WALSH, et al,                    No. 3:11-CV-00050-JSW

19              Plaintiffs,              **FOURTH AMENDED
                                         COMPLAINT FOR:**
20       v.
                                         1.    VIOLATION OF HEALTH & SAFETY
21 KINDRED HEALTHCARE, INC.;             CODE SECTION 1430(b)
   KINDRED HEALTHCARE
22 OPERATING, INC.; CALIFORNIA           2.    UNLAWFUL, UNFAIR AND DECEPTIVE
   NURSING CENTERS, LLC; KINDRED         BUSINESS PRACTICES (Bus. & Prof. Code
23 NURSING CENTERS WEST, LLC;            § 17200 *et seq.*)
   HILLHAVEN-MSC PARTNERSHIP;
24 ALTA VISTA HEALTHCARE &               3.    VIOLATION OF THE CONSUMERS
   WELLNESS CENTRE (A/K/A ALTA           LEGAL REMEDIES ACT (Civ. Code 1750 *et seq.*)
25 VISTA HEALTHCARE); BAY VIEW
   NURSING AND REHABILITATION            **CLASS ACTION**
26 CENTER; CANYONWOOD NURSING
   AND REHAB CENTER; CARE CENTER         **DEMAND FOR JURY TRIAL**
27 OF ROSSMOOR, LLC; CARE CENTER
   OF ROSSMOOR  (F/K/A GUARDIAN OF
28 ROSSMOOR); FIFTH AVENUE

1   HEALTH CARE CENTER; GOLDEN
    GATE HEALTHCARE CENTER;
2   HACIENDA CARE CENTER;
    NINETEENTH AVENUE
3   HEALTHCARE CENTER; KINDRED
    HEALTHCARE CENTER OF ORANGE;
4   SANTA CRUZ HEALTHCARE
    CENTER; SMITH RANCH CARE
5   CENTER, LLC; SMITH RANCH CARE
    CENTER(F/K/A GUARDIAN AT SMITH
6   RANCH CARE CENTER); VALLEY
    GARDENS HEALTHCARE &
7   REHABILITATION CENTER;
    VICTORIAN HEALTHCARE CENTER
8   (F/K/A HILLHAVEN VICTORIAN); and
    DOES 1 through 100, inclusive,
9
                    Defendants.
10

11      Plaintiffs Lisa Edwards, Roxanne Harrison, Julie Barton, Romaine Crvarich, Jerry Dore,

12   Dora Hernandez, Anne Knieriemen, Linda Mahaffey, Beverly Bakken, and James Morris

13   ("Named Plaintiffs" or "Plaintiffs"), on behalf of themselves and a class of similarly situated

14   persons, and based on information and belief and the investigation of counsel, except for

15   information based on personal knowledge, hereby allege as follows:

16                          **NATURE OF ACTION**

17      1.      Plaintiffs bring this class action lawsuit under California Health and Safety Code

18   section 1430(b), Business & Professions Code sections 17200 *et seq.*, and the Consumers Legal

19   Remedies Act, Civil Code sections 1750 *et seq.* ("CLRA") to redress the pervasive and

20   intentional failure to provide sufficient direct nursing care staffing for elderly and disabled

21   residents at skilled nursing facilities owned, leased, licensed, operated, administered, managed,

22   directed, and/or controlled by defendants within the State of California.

23      2.      Understaffing is one of the primary causes of inadequate care and often unsafe

24   conditions in skilled nursing facilities.  Numerous studies have shown a direct correlation

25   between inadequate staffing and serious care problems including, but not limited to, a greater

26   likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.

27      3.      In response to such studies linking inadequate staffing and serious care problems,

28   all skilled nursing facilities in California since January 1, 2000 have been required to provide at

1   least 3.2 hours of direct nursing hours per patient day ("NHPPD"), pursuant to Health & Safety

2   Code section 1276.5.  The 3.2 NHPPD requirement under Section 1276.5 represents the minimum

3   staffing required for patients at skilled nursing facilities.  Depending on patient needs and other

4   factors, higher levels of direct nursing hours may be warranted.  Significantly, after extensive

5   research into the staffing levels required to meet patient needs, the federal government has

6   increased the minimum recommended level for skilled nursing staffing to 4.1 NHPPD.

7        4.     As alleged in more detail below, defendants' California skilled nursing facilities

8   have failed to meet the 3.2 NHPPD minimum requirements on numerous days during the Class

9   Period (November 23, 2006 to present).  Not surprisingly, many of these facilities have a

10   relatively high number of reported complaints, deficiencies, and citations arising from inadequate

11   care of their elderly and disabled residents, as reflected in records maintained by the California

12   Department of Health Services ("DHS").

13        5.     Defendants have misrepresented to the consuming public—in particular, the

14   elderly and disabled residents and their family members—that defendants operate their nursing

15   facilities in compliance with applicable laws, including laws such as Health & Safety Code

16   section 1276.5.  They have failed to disclose that, in fact, their facilities do not provide sufficient

17   nursing staff to comply with minimum staffing requirements.  Defendants' representations and

18   omissions are deceptive, misleading, and made with the intent to induce elderly and disabled

19   citizens to become residents, and remain residents, at defendants' facilities under a false pretense,

20   namely, that defendants will provide the direct nursing staffing required by law.  Defendants'

21   misleading and deceptive conduct is particularly egregious given that the targeted persons are

22   among the most vulnerable members of our society.

23                   **PARTIES**

24        6.     Plaintiff Beverly Bakken is a resident of Santa Cruz, California. She is the

25   daughter and successor-in-interest of Gordon Bakken. During the Class Period, from September

26   15, 2010 until his death on January 20, 2011, Gordon Bakken was a resident at Santa Cruz

27   Healthcare Center, a skilled nursing care facility located in Santa Cruz, California. Gordon

28

1  Bakken was at all relevant times an "elder" as defined under Welfare & Institutions Code

2  § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).

3        7.     Plaintiff Julie Barton is a resident of Tiburon, California. She is the daughter and

4  successor-in-interest to the Estate of Aranka Duboczy.  During the Class Period, from July 2005

5  to April 2008, Aranka Duboczy was a resident at Fifth Avenue Healthcare, a skilled nursing care

6  facility located in San Rafael, California. Aranka Duboczy was at all relevant times an "elder" as

7  defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under

8  Cal. Civ. Code § 1761(f).

9        8.     Plaintiff Lisa Edwards is a resident of Antioch, California. She is the daughter and

10  successor-in-interest of Arlene Bettencourt.  During the Class Period, from April to May 2008,

11  Arlene Bettencourt was a resident at Care Center of Rossmoor, f/k/a Guardian of Rossmoor, a

12  skilled nursing care facility located in Walnut Creek, California. Bettencourt was at all relevant

13  times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen"

14  as defined under Cal. Civ. Code § 1761(f).

15        9.     Plaintiff Kathleen Daley is a resident of Oakland, California. She is the daughter

16  and successor-in-interest to the Estate of Romaine Crvarich. During the Class Period, in

17  November 2010 and then again in March 2011, Romaine Crvarich was a resident at Bay View

18  Nursing and Rehabilitation Center, a skilled nursing care facility located in Alameda, California.

19  Romaine Crvarich was at all relevant times an "elder" as defined under Welfare & Institutions

20  Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).

21       10.    Plaintiff Jerry Dore is a resident of Pleasanton, California. He is the husband and

22  successor-in-interest to the Estate of Mary Dore.  During the Class Period, from July 2008 to

23  December 2009, Mary Dore was a resident at Hacienda Care Center, a skilled nursing care

24  facility located in Livermore, California. Mary Dore was at all relevant times an "elder" as

25  defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under

26  Cal. Civ. Code § 1761(f).

27       11.    Plaintiff Roxanne Harrison is a resident of Pittsburgh, California. She is the

28  daughter and successor-in-interest of Harry Harrison. During the Class Period, from February to

1    December 2008, Harry Harrison was a resident at Care Center of Rossmoor, f/k/a Guardian of

2    Rossmoor, a skilled nursing care facility located in Walnut Creek, California. Harry Harrison was

3    at all relevant times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a

4    "senior citizen" as defined under Cal. Civ. Code § 1761(f).

5            12.    Plaintiff Dora Hernandez is a resident of Orange, California.  She is the daughter

6    and successor-in-interest to the Estate of Guadalupe Garcia. During the Class Period, from 2007

7    to 2010, Guadalupe Garcia was a resident at Kindred Healthcare Center of Orange, a skilled

8    nursing care facility located in Orange, California. Guadalupe Garcia was at all relevant times an

9    "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior citizen" as

10   defined under Cal. Civ. Code § 1761(f).

11           13.    Plaintiff Anne Knieriemen, represented by her guardian ad litem and daughter

12   Rochelle Campbell, is a resident of Stockton, California, and is an "elder" as defined under

13   Welfare & Institutions Code § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code

14   § 1761(f).  During the Class Period, for six months in early 2010, Anne Knieriemen was a

15   resident at Valley Gardens Healthcare and Rehabilitation Center, a skilled nursing care facility

16   located in Stockton, California.

17           14.    Plaintiff Linda Mahaffey is a resident of Redding, California. She is the

18   granddaughter and personal representative of the Estate of Alice Martin. During the Class Period,

19   from July 2005 to August 2011, Alice Martin was a resident at Canyonwood Nursing and Rehab

20   Center, a skilled nursing care facility located in Redding, California. Alice Martin was at all

21   relevant times an "elder" as defined under Welfare & Institutions Code § 15610.27 and a "senior

22   citizen" as defined under Cal. Civ. Code § 1761(f).

23           15.    Plaintiff James Morris is an "elder" as defined under Welfare & Institutions Code

24   § 15610.27 and a "senior citizen" as defined under Cal. Civ. Code § 1761(f).  During the Class

25   Period, from June 2006 to August 2010, James Morris was a resident at Alta Vista Healthcare &

26   Wellness Centre a/k/a Alta Vista Healthcare, a skilled nursing care facility located in Riverside,

27   California.

28

16.   Defendant Kindred Healthcare, Inc. ("Kindred Inc.") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant Kindred Inc. regularly conducted business in the State of California and— either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.  Defendant Kindred Healthcare, Inc., is the sole parent of defendant Kindred Healthcare Operating, Inc. ("KHOI").

17.   Defendant Kindred Healthcare Operating, Inc.  ("KHOI") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant KHOI regularly conducted business in the State of California and— either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.  Defendant KHOI is the sole equity member of defendant Kindred Nursing Center West, LLC. ("Kindred West").

18.   Defendant Kindred Nursing Centers West, LLC ("Kindred West") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the Class Period defendant Kindred West regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California.  Kindred West is the sole equity member of defendant California Nursing Center, LLC.  Defendant Kindred West is also doing business as, and is the designated licensee for, defendants:  Alta Vista Healthcare; Canyonwood Nursing and Rehabilitation Center; Fifth Avenue Healthcare Center; Golden Gate Healthcare Center; Kindred Healthcare Center at Orange; Santa Cruz Healthcare Center; Valley Gardens Healthcare & Rehabilitation Center; Victorian Healthcare Center; and Bay View Center.

1  Defendant Kindred West is also a partner in Hillhaven-MSC Partnership, licensee for 19th

2  Avenue Healthcare Center, together with another undisclosed Kindred entity.

3         19.     Defendant California Nursing Centers, LLC ("California Nursing Centers") is a

4  corporation formed and existing under the laws of the State of Delaware, with its principal place

5  of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information

6  and belief, during the Class Period defendant California Nursing Centers regularly conducted

7  business in the State of California and—either directly or through its wholly-owned subsidiaries

8  and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed,

9  and/or controlled numerous skilled nursing facilities in California.  Defendant California Nursing

10  Center, LLC is the sole equity member of defendants:  Care Center of Rossmoor, LLC; Riverside

11  Healthcare & Wellness Center, LLC; Orange Healthcare & Wellness Center, LLC; and Smith

12  Ranch Care Center, LLC.

13         20.     Defendants Kindred Inc., KHOI, Kindred West, and California Nursing Centers

14  collectively are referred to as "Kindred."

15         21.     Defendant Hillhaven-MSC Partnership ("Hillhaven") is on information and belief

16  a general partnership with Defendant Kindred Inc. formed and existing under the laws of the State

17  of California, with its principal place of business located at 680 South Fourth Street Louisville,

18  Kentucky 40202-2407.  On information and belief, during the Class Period defendant Hillhaven

19  regularly conducted business in the State of California, and—either directly or through its wholly-

20  owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered,

21  managed, directed, and/or controlled skilled nursing facilities in California operated by Kindred,

22  including defendant Nineteenth Avenue Healthcare Center.

23         22.     Defendant Care Center of Rossmoor LLC is a limited liability company organized

24  and existing under the laws of the State of Delaware, with a principal place of business at 680

25  South Fourth Street Louisville, Kentucky 40202-2407.  On information and belief, during the

26  Class Period defendant Care Center of Rossmoor LLC regularly conducted business in the State

27  of California, and—either directly or through its wholly-owned subsidiaries and/or affiliated

28  companies—owned, leased, licensed, operated, administered, managed, directed, and/or

1    controlled skilled nursing facilities in California operated by Kindred, including defendant

2    Rossmoor.

3           23.     Defendant Smith Ranch Care Center, LLC ("Smith Ranch") is a limited liability

4    company organized and existing under the laws of the State of Delaware, with its principal place

5    of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407.  On information

6    and belief, during the Class Period Smith Ranch Care Center, LLC regularly conducted business

7    in the State of California, and—either directly or through its wholly-owned subsidiaries and/or

8    affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or

9    controlled skilled nursing facilities in California operated by Kindred, including defendant Smith

10   Ranch.

11          24.     Defendant Alta Vista Healthcare & Wellness Centre a/k/a Alta Vista Healthcare

12   ("Alta Vista") during the Class Period up to September 30, 2009, was a skilled nursing care

13   facility located in Riverside, California and operating there under a license granted to Kindred

14   West by the State of California Department of Public Health.  On information and belief, during

15   the Class Period up to September 30, 2009 defendant Alta Vista was leased, licensed, operated,

16   administered, managed, directed, and/or controlled by, or otherwise affiliated with Kindred.

17          25.     Defendant Bay View Nursing and Rehabilitation Center ("Bay View") is a skilled

18   nursing care facility located in Alameda, California and operating there under a license granted to

19   Kindred West by the State of California Department of Public Health.  On information and belief,

20   during the Class Period defendant Bay View was leased, licensed, operated, administered,

21   managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

22          26.     Defendant Canyonwood Nursing and Rehab Center ("Canyonwood") is a skilled

23   nursing care facility located in Redding, California and operating there under a license granted to

24   Kindred West by the State of California Department of Public Health.  On information and belief,

25   during the Class Period defendant Canyonwood was leased, licensed, operated, administered,

26   managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

27          27.     Defendant Fifth Avenue Health Care Center ("Fifth Avenue") is a skilled nursing

28   care facility located in San Rafael, California and operating there under a license granted to

1    Kindred West by the State of California Department of Public Health.  On information and belief,

2    during the Class Period defendant Fifth Avenue was leased, licensed, operated, administered,

3    managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

4         28.    Defendant Golden Gate Healthcare Center ("Golden Gate") is a skilled nursing

5    care facility located in San Francisco, California and operating there under a license granted to

6    Kindred West by the State of California Department of Public Health.  On information and belief,

7    during the Class Period defendant Golden Gate was owned, leased, licensed, operated,

8    administered, managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

9         29.    Defendant Hacienda Care Center ("Hacienda") is a skilled nursing care facility

10   located in Livermore, California and operating there under a license granted to Kindred West by

11   the State of California Department of Public Health.  On information and belief, during the Class

12   Period defendant Hacienda was owned, leased, licensed, operated, administered, managed,

13   directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

14        30.    Defendant Nineteenth Avenue Healthcare Center ("Nineteenth Avenue") is a

15   skilled nursing care facility located in San Francisco, California and operating there under a

16   license granted to Hillhaven by the State of California Department of Public Health.  On

17   information and belief, during the Class Period defendant Nineteenth Avenue was owned, leased,

18   licensed, operated, administered, managed, directed, and/or controlled by, and/or otherwise

19   affiliated with, Kindred.

20        31.    Defendant Kindred Healthcare Center of Orange ("Orange"), during the Class

21   Period until September 30, 2009, was a skilled nursing care facility located in Orange, California

22   and operating there under a license granted to Kindred West by the State of California

23   Department of Public Health. On information and belief, during the Class Period up to September

24   30, 2009 defendant Orange was leased, licensed, operated, administered, managed, directed,

25   and/or controlled by, or otherwise affiliated with, Kindred.

26        32.    Defendant Care Center of Rossmoor f/k/a Guardian of Rossmoor ("Rossmoor") is

27   a skilled nursing care facility located in Walnut Creek, California and operating there under a

28   license granted to Care Center of Rossmoor LLC by the State of California Department of Public

1  Health. On information and belief, during the Class Period defendant Rossmoor was leased,

2  licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated

3  with, Kindred.

4       33.    Defendant Santa Cruz Healthcare Center ("Santa Cruz") is a skilled nursing care

5  facility located in Santa Cruz, California and operating there under a license granted to Kindred

6  West by the State of California Department of Public Health.  On information and belief, during

7  the Class Period defendant Santa Cruz was owned, leased, licensed, operated, administered,

8  managed, directed, and/or controlled by, and/or otherwise affiliated with, Kindred.

9       34.    Defendant Smith Ranch Care Center f/k/a Guardian at Smith Ranch Care Center

10  ("Smith Ranch") is a skilled nursing care facility located in San Rafael, California, and operating

11  there under a license granted to Smith Ranch Care Center LLC by the State of California

12  Department of Public Health. On information and belief, during the Class Period defendant Smith

13  Ranch was owned, leased, licensed, operated, administered, managed, directed, and/or controlled

14  by, and/or otherwise affiliated with, Kindred.

15       35.    Defendant Valley Gardens Healthcare & Rehabilitation Center ("Valley Gardens")

16  is a skilled nursing care facility located in Stockton, California and operating there under a license

17  granted to Kindred West by the State of California Department of Public Health.  On information

18  and belief, during the Class Period defendant Valley Gardens was leased, licensed, operated,

19  administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

20       36.    Defendant Victorian Healthcare Center f/k/a Hillhaven Victorian ("Victorian") is a

21  skilled nursing care facility located in San Francisco, California and operating there under a

22  license granted to Kindred West by the State of California Department of Public Health.  On

23  information and belief, during the Class Period defendant Victorian was owned, leased, licensed,

24  operated, administered, managed, directed, and/or controlled by, and/or otherwise affiliated with,

25  Kindred.

26       37.    Defendant Kindred Nursing and Healthcare–Bayberry ("Bayberry") from

27  November 23, 2006 through and including April 15, 2013, is a skilled nursing care facility

28  located in Concord, California and operating there under a license granted to Kindred West by the

1    State of California Department of Public Health.  On information and belief, during the Class

2    Period defendant Bayberry was leased, licensed, operated, administered, managed, directed,

3    and/or controlled by, or otherwise affiliated with, Kindred.

4          38.    Defendant Kindred Nursing and Healthcare–Livermore ("Livermore") is a skilled

5    nursing care facility located in Livermore, California and operating there under a license granted

6    to Kindred West by the State of California Department of Public Health.  On information and

7    belief, during the Class Period defendant Livermore was leased, licensed, operated, administered,

8    managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

9          39.    Defendant Kindred Nursing and Rehabilitation–Medical Hill ("Medical Hill") is a

10   skilled nursing care facility located in Oakland, California and operating there under a license

11   granted to Kindred West by the State of California Department of Public Health.  On information

12   and belief, during the Class Period defendant Medical Hill was leased, licensed, operated,

13   administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

14         40.    Defendant Kindred Nursing and Rehabilitation–Ygnacio Valley ("Ygnacio

15   Valley") is a skilled nursing care facility located in Walnut Creek, California and operating

16   there under a license granted to Kindred West by the State of California Department of Public

17   Health.  On information and belief, during the Class Period defendant Ygnacio Valley was leased,

18   licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated

19   with, Kindred.

20         41.    Defendant Kindred Nursing and Transitional Care-South Marin f/k/a Kindred

21   Transitional Care and Rehabilitation – Larkspur ("Larkspur") is a skilled nursing care facility

22   located in Greenbrae, California and operating there under a license granted to Kindred West by

23   the State of California Department of Public Health.  On information and belief, during the Class

24   Period defendant Larkspur was leased, licensed, operated, administered, managed, directed,

25   and/or controlled by, or otherwise affiliated with, Kindred.

26         42.    Defendant Kindred Nursing and Transitional–Pacific Coast ("Pacific Coast") is a

27   skilled nursing care facility located in Salinas, California and operating there under a license

28   granted to Kindred West by the State of California Department of Public Health.  On information

and belief, during the Class Period defendant Pacific Coast was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

43.     Defendant Kindred Transitional Care and Rehabilitation – Village Square ("Village Square") is a skilled nursing care facility located in San Marcos, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Village Square was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

44.     Defendant Kindred Transitional Care and Rehabilitation–Foothill ("Foothill") is a skilled nursing care facility located in Glendora, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Foothill was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

45.     Defendant Kindred Transitional Care and Rehabilitation–Lawton ("Lawton") is a skilled nursing care facility located in San Francisco, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Lawton was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

46.     Defendant Kindred Transitional Care and Rehabilitation–Siena ("Siena") is a skilled nursing care facility located in Auburn, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Siena was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

47.     Kindred Transitional Care and Rehabilitation–Tunnell ("Tunnell") is a skilled nursing care facility located in San Francisco, California and operating there under a license granted to Kindred West by the State of California Department of Public Health.  On information and belief, during the Class Period defendant Tunnell was leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Kindred.

48.     Each of the entities referenced in paragraphs 24 through 47 above is a "skilled nursing facility" as defined in Health & Safety Code section 1250.  For purposes of this Complaint, each such entity is referred to as a "Facility" and, collectively, the "Facilities."

49.     At all times herein mentioned, defendants have all regularly conducted business throughout the State of California, including, but not limited to, the ownership, leasing, licensing, administration, operation, management, and/or supervision, and organization of the Facilities.

50.     In response to frustration regarding identifying the entities responsible for nursing homes, the federal government recently enacted the Nursing Home Transparency Act (42 U.S.C. Sect 1320a-3) to help untangle the organizational structure of nursing home chains. The information required to be disclosed under the Act will not be available to the public until March of 2013.  *See also* New York Times, September 23, 2007, "More Profit and Less Nursing at Many Nursing Homes" (describing how for-profit nursing home corporations are dividing themselves into many separate shell companies in order to avoid being held accountable to both the public regulatory system and residents). www.nytimes.com/2007/09/23/business/23nursing.html.

51.     The Facilities named here have no corporate headquarters, governing bodies, or traditional management hierarchy of their own.  Instead, Kindred Inc. manages, controls, and operates the Facilities.  Kindred Inc. oversees clinical issues and quality concerns of the Facilities with management consisting of physicians, chief medical officers, medical directors, senior vice presidents of clinical and nursing operations, and regional and district teams.

52.     All the Facilities reside in Kindred Inc.'s Nursing Center Division (formerly referred to as the Healthcare Division), which is managed by Kindred's president and chief financial officer. The Nursing Center Division, like the other Kindred Inc. divisions, is broken down into three geographic Regions, each of which is headed by an operational senior vice president who reports directly to the division president. The three regions are the East Region; Central Region; and West Region (also referred to as the Pacific region).  The Regions, in turn, are broken into "Districts."  The Districts, in turn, contain "Centers," the term Kindred uses to refer to its nursing Facilities.

53.     The Nursing Center Division has a number of overall strategies applicable to all the Facilities, including to increase average occupancy levels; to seek out and obtain higher acuity patients because of the higher revenue these patients generate; to establish patient admission and census goals; and to reduce the use of contract labor.

54.     The Nursing Center Division president is employed by KHOI, and his salary is guaranteed by Kindred Inc.

55.     The Nursing Center Division assumes responsibility for utilization and business development of the Facilities, as well as developing and implementing long term strategy and day-to-day tactical execution of operational initiatives at the Facilities.

56.     Kindred Inc. provides the Facilities with shared (centralized) processes, including centralized management, centralized information systems, state licensing and certification maintenance, federal and state reimbursement expertise, Medicare and Medicaid certification, legal, finance, purchasing, accounting, risk management, clinical, human resources, training, information technology, compliance, purchasing, and other functions.  While the Facilities have lower level managers on site, the senior management and operational decisions at each are conducted by Kindred Inc. in accordance with a common business model.  The centralization of these services is intended to promote the standardization of certain processes.

57.     Kindred Inc. refers to the Facilities as "sites of service."  In filings with the SEC, Kindred Inc. describes how it monitors and oversees the Facilities.  For example, Kindred Inc.:

> Monitor[s] and enhance[s] the quality of care and customer service at our nursing and rehabilitation centers through the use of performance improvement committees as well as family satisfaction surveys.  Our performance improvement committees oversee resident healthcare needs and resident and staff safety.  Physician medical directors serve on these committees and advise on healthcare policies and practices.  We regularly conduct surveys of residents and their families, and these surveys are reviewed by our performance improvement committees at each center to promote quality care and customer service.

Kindred Healthcare, Inc., Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, for the fiscal year ended Dec.  31, 2009 ("Kindred 2009 Form 10-K") at 13.

58.     There is a sufficient unity of interest and ownership between Kindred Inc., Kindred West, California Nursing Centers, KHOI and the Facilities, and each of them, such that the acts of one are for the benefit of all and can be imputed to the acts of the others.  Without limitation, the unity of interest and relationship between these defendants is evidenced by:  (a) Kindred's key decisions or approval of such decisions concerning each Facility's day-to-day operations, such as staffing levels, employee hiring and firing, budgets and related issues, which decisions and directives, on information and belief, were made at the direction of and/or the benefit of Kindred; (b) communications by Kindred with the Department of Health Services with respect to licensing and certification issues affecting the Facilities, which communications, on information and belief, were undertaken at the direction of and/or for the benefit of Kindred; and (c) overlapping officers, directors and employees between the various entities.  Actions taken by these defendants were undertaken within the course and scope of their agency and employment, with the knowledge, consent, authorization, approval, and/or ratification of their co-defendants.

59.     Kindred conducts, manages, and controls the material compliance functions for the Facilities, including those associated with compliance with the legal and regulatory issues challenged in this lawsuit, namely the failure of each of the Facilities to comply with laws and regulations mandating adequate nurse staffing.  Additionally, each of the Facilities delegated such compliance functions to Kindred to conduct on their behalf. Among other things, with respect to the Facilities, Kindred:  (1) oversees all compliance program operations; (2) conducts and oversees regular and targeted training on compliance programs, policies and procedures, as well as federal and state laws and regulations affecting the skilled nursing, home health, and hospice industries; (3) leads and coordinates the efforts of all compliance personnel; (4) develops and implements systems to assist clients in detecting, preventing and reporting potential fraud, waste, and abuse in business operations; (5) creates, reviews, revises, and updates, at a minimum annually, core elements of the compliance program, including but not limited to compliance-related policies and procedures; (6) develops and executes a compliance work plan that is based on industry and government activities, results of internal and external audits and surveys, trended hotline data and other identified areas of prioritized compliance risk; (7) oversees the compliance

1   hotline and maintains systems to respond to calls in a timely manner; (8) tracks data related to

2   compliance issues; (9) initiates, directs, and participates in investigations related to compliance

3   concerns and issues, and works with management to bring such issues to resolution; (10) works

4   collaboratively with each of the Facilities; (11) provides reports of relevant compliance program

5   activities to the Kindred Board of Directors on at least a quarterly basis; (12) develops,

6   implements, and evaluates a system of enterprise-wide compliance communication to all

7   employees; (13) identifies, monitors, and responds to potential areas of compliance vulnerability,

8   including minimum nursing hour requirements; (14) conducts formal compliance risk

9   assessments that drive the development of an annual compliance work plan; (15) oversees the

10   development, and monitors implementation, of corrective action plans in response to internal or

11   external regulatory audit/survey findings; and (16) manages all other aspects of the Facilities'

12   compliance efforts.  The failure of the aforementioned compliance functions caused Plaintiffs and

13   the Class loss and injury, as described more fully below.

14          60.     The Facilities pay the cost of Kindred's services by paying Kindred a percentage

15   of their net profits.  The percentage of net profit is set by the Region, not by the Facility.  Those

16   costs, in turn, are reimbursed to the licensees (Kindred West, *et al.*) by Medicare and Medi-Cal as

17   part of "Home Office" costs. The Facilities thus both used the parents' (Kindred's) personnel and

18   equipment to perform their functions and paid the parent for those services.

19          61.     Each of the Facilities is wholly owned, leased, operated, managed, and/or

20   controlled by Kindred, and Kindred fails to recognize the uniqueness and independence of the

21   Facilities, even when Kindred does not own the Facility.  At all times relevant hereto there was

22   such a unity of interest and ownership between Kindred and the Facilities that the individual

23   distinctions between them ceased to exist, and the facts as alleged herein are such that an

24   adherence to the fiction of the separate existence of Kindred from that of the Facilities would,

25   under the particular circumstances alleged herein, sanction a fraud, promote injustice, and

26   frustrate a meritorious claim  On information and belief, Kindred deliberately set up empty shells

27   and agents so that it could deceive the public and the residents as to who was actually responsible

28   for the decisions made at the Facilities, while also siphoning funds out of the Facilities, allowing

1   any single Facility to avoid paying a judgment against it.  Kindred is the alter-ego of each of the

2   Facilities and any corporate veil should be pierced.

3   62.   Kindred and the Facilities are part of a single enterprise formed for a common

4   purpose with a unity of interest.  The viability of each of the Facilities is intertwined with their

5   dependence on Kindred.  As described further within, consistent with this unity of interest and

6   interdependence, the senior management and control of each of the Facilities is delegated to

7   and/or otherwise conducted by Kindred.  Kindred actively participates in and manipulates the

8   business activities of the Facilities, including the conduct challenged in this complaint.  The

9   control and manipulation of the Facilities by Kindred is so pervasive that each of them is but an

10   agent, instrumentality, conduit and/or alter-ego of Kindred in the prosecution of a single venture,

11   namely, the provision of nursing home services to California consumers, including members of

12   the Class.  There is such unity of interest, ownership and management that the separateness of the

13   defendant corporations have in effect ceased and an adherence to the fiction of a separate

14   existence of the multiple corporations or entities would, under the circumstances here present,

15   promote injustice and make it inequitable for Kindred Inc., Kindred West, California Nursing

16   Centers, and KHOI to escape liability for obligations incurred as much for their benefit as the

17   Facilities. The Facilities were merely used to effect the scheme of the parent entities.

18   63.   Plaintiffs allege on information and belief the following facts demonstrating

19   defendants' unity of interest and that adherence to the fiction of their separate existence would

20   sanction a fraud and/or promote injustice:

21   a.   Kindred Inc. provides letters to the California Department of Health on

22   behalf of its subsidiaries, including the Facilities named herein, as evidence that the subsidiaries

23   have sufficient resources to operate the Facilities for a period of at least 45 days, based upon

24   multiple Facilities having access to the same multimillion dollar line of credit at the same bank.

25   The credit line is in the name of Kindred Healthcare, Inc. and KHOI, and all of the Facilities are

26   guarantors on the credit line.  Thus, if any one Facility were to default, the other Facilities would

27   be required to pay off loans made on the credit line to the defaulting Facility.  The credit line, in

28   turn, is used to jointly meet the state and federal licensing financial responsibility requirements of

the Facilities.  In the credit line all the Kindred entities jointly promise that they will comply with

all laws and regulations. This shows commingling of funds and that Kindred Inc. exercises

budgetary control over its subsidiaries.

b.       Kindred Inc. indicates in its SEC filings that it manages labor costs by

adjusting nurse staffing, showing Kindred Inc.'s oversight of employment matters at the Facility-

level (where nursing care is provided) and centralized budgetary control. Kindred Healthcare,

Inc., 10-K Annual Report for the fiscal year ended Dec.  31, 2007 at 37, 59; and for the fiscal year

ended Dec. 31, 2008 at 6, 14.

c.       Kindred Inc. employs a "cluster market" organization strategy,

intentionally grouping Facilities together geographically, to coordinate operations of the

Facilities.  "These cluster markets present opportunities for our nursing and rehabilitation centers

and hospitals to share centralized business office operations and collaborate on their sales and

marketing and managed care strategies."  Kindred Healthcare, Inc., 10-K Annual Report for the

fiscal year ended Dec. 31, 2010 at 8-9, 15; Kindred Healthcare, Inc., 10-K Annual Report for the

fiscal year ended Dec. 31, 2007 at 16-17.  For example, when a staff member at one Facility does

not show up for work on a scheduled work day, that Facility will attempt to find a substitute from

the staff of another Facility that falls within the same "cluster" of Facilities.

d.       According to documents submitted by defendants to the California

Department of Public Health, the same persons serve as the Vice Presidents, Senior Vice

Presidents, Executive Vice Presidents, and Presidents at both Kindred Inc. and KHOI, at the same

address.

e.       The Facilities freely use the trademarks of Kindred with no consideration

or royalty fee. All defendants use the Kindred logo, and their written materials describe Kindred

as if it were a single entity.

f.       The liability policy for all of the Facilities is in the name of Kindred, Inc.,

not in the name of the Facilities.  The policy is issued by Cornerstone Insurance Company, a

Cayman Island subsidiary of Kindred, Inc.  The Facilities set aside insurance reserves.  These

reserves are not refunded to the Facilities, but rather are used by Kindred, Inc., to pay down debt.

1   This shows commingling of funds, and that Kindred has deliberately structured its liability

2   policies such that the Facilities may be unable to pay judgments against them, thus frustrating

3   meritorious claims.

4          g.      All senior personnel at each Facility have access to the Kindred website,

5   Knect. Knect provides access to various departments and operations, including:  Global; Kindred

6   Support Center; Nursing Center Division; Hospital Division; Rehab Division; Subacute Units;

7   Human Resources and Payroll; and Reset Domain Password.  That site provides different levels

8   of access depending how far up the chain of command the Kindred employee is.  Every aspect of

9   each Facility is subject to uniform policies and procedures which are all available on the Knect

10  web site.  There are at least eight separate procedure manuals controlling every aspect of how the

11  Facility is run (referred to internally as the "Great Eight").  A Facility is not supposed to deviate

12  from these policies and procedures.  A Facility does not have the ability to change any of those

13  policies and procedures without the permission and consent of the Nursing Home Division.

14         h.      Employees of Facilities are hired by KHOI, trained by KHOI and paid

15  through KHOI.  Facility employees are offered opportunities to move up the ladder within the

16  Kindred Nursing Home Division. If they are transferred between Facilities, they maintain their

17  seniority and benefits. They belong to one employee benefit plan run by KHOI. If they work for

18  more than one Facility in a "Cluster," they are paid overtime.

19         i.      Kindred Inc.'s Nursing Center Division prepares a daily census summary

20  for the Facilities that indicates whether they have varied from the budget.

21         j.      Kindred Inc. Facilities do not negotiate or execute their own master leases

22  but do have obligations under them, reflecting the lack of an arms-length transaction. All of the

23  Facilities are subject to master lease agreements which are all signed by Kindred, Inc. and KHOI,

24  not by the Facilities. The master leases cross-collateralize lease payments among Facilities, such

25  that if a particular Facility cannot pay the rent, other Facilities or Kindred would cover the debt.

26  There is no ability to terminate the lease of any individual Facility under the master lease

27  agreements.  If Kindred elects to renew the master leases, all, and not less than all, of the

28  Facilities in a renewal bundle must be renewed.  If any of the Facilities loses its required

1    healthcare license, it would be considered an event of default by all the Facilities. Indeed, even a

2    reduction in the number of licensed beds in excess of 10% by any one Facility would be

3    considered a default by all the Facilities under the master leases. Defendants thus have agreed to

4    be liable for each other's debts under the leases.

5           k.      KHOI's Payroll Department is responsible for issuing itemized wage

6    statements to the staff at each Facility.  KHOI also approves wage or salary adjustments for the

7    staff.  Staff questions or disputes about wages are directed to KHOI.

8           l.      On August 6, 2010, Kindred Inc., KHOI, and Kindred Nursing Centers

9    East, LLC stipulated in another case that the court and jury must consider these entities as "a

10   single entity." *Owens v. Kindred Healthcare, Inc.*, No. 2007-417 (Mass. Super. Ct.).  The

11   Kindred parents and licensees should not be permitted to acknowledge that they are a single

12   enterprise before the court when convenient while seeking to obscure this status in order to avoid

13   judgment in other cases.

14   64.    Enjoining the Facilities from understaffing without also enjoining Kindred would

15   be ineffective and promote injustice because Kindred controls, influences and is jointly

16   responsible for understaffing at the Facilities.

17   65.    On information and belief, at all times herein mentioned, defendants, and each of

18   them, was the agent, partner, joint venturer, representative, and/or employee of the remaining

19   defendants, and was acting within the course and scope of such agency, partnership, joint venture,

20   and/or employment.  Furthermore, in engaging in the conduct described below, defendants were

21   all acting with the express or implied knowledge, consent, authorization, approval, and/or

22   ratification of their co-defendants.

23   66.    Defendants constitute a joint venture because, as alleged in paragraphs 43 through

24   53, they combined their property, skill, and knowledge to carry out a single business undertaking

25   and agreed to share the control, profits, and losses. In understaffing the Facilities and

26   misrepresenting their staffing and/or failing to disclose understaffing, Defendants were acting

27   within the scope of this agreement.

28

67.     The Facilities are Kindred's agents because the nursing services performed by the Facilities are sufficiently important to Kindred that, if the Facilities did not perform these services, then Kindred's own officials would undertake to perform them.  As explained in Kindred Inc's 2010 Annual Report, "Kindred Healthcare, Inc. is a healthcare services company that through its subsidiaries operates hospitals, nursing and rehabilitation centers, assisted living facilities and a contract rehabilitation services business across the United States."  Kindred Healthcare, Inc., 10-K Annual Report for the fiscal year ended Dec. 31, 2010 at 3.

## JURISDICTION AND VENUE

68.     This Court has jurisdiction over all causes of action asserted herein.  Defendants are subject to the personal jurisdiction of this Court because each defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market through participation in skilled nursing facilities located in California, derivation of substantial revenues from California, and other activities, so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

69.     This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1446.

70.     Venue is proper in this District under 28 U.S.C. § 1391(a), based on the facts, without limitation, that:  this Court is a court of competent jurisdiction; defendants were subject to personal jurisdiction in the District at the time this action commenced based on conducting substantial business in this District, including without limitation, the ownership, administration, management, and/or operation of the Golden Gate, Nineteenth Avenue, and Victorian Facilities; a substantial part of the events or omission giving rise to the Plaintiffs' claims arose in this District; Plaintiffs reside in this District; a portion of defendants' liability arose in this District; and certain acts upon which this action is based occurred in part in this District.

## GENERAL ALLEGATIONS

71.     Defendants were and are in the business of providing long-term care and are subject to the requirements of federal law, and California statutory and regulatory law, governing the operation of skilled nursing facilities.  At all relevant times, Defendants owned, leased,

1   licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing

2   facilities in California.

3        72.    Kindred Inc. classifies itself as the "largest publicly held operator of nursing and

4   rehabilitation centers in the United States."  Kindred 2009 Form 10-K at 13.

5        73.    The General Accountability Office has found that most poorly performing nursing

6   homes in the U.S.  are owned by for-profit chains.  GAO, *CMS's Specific Focus Facility*

7   *Methodology Should Better Target the Poorly Performing Facilities Which Tend To Be Chain*

8   *Affiliated and For-Profit*, GAO-09-689 (2009).  Many studies have shown that for-profit nursing

9   homes have poorer quality, operate with lower costs, and have lower staff-patient ratios than

10  nonprofit facilities.  *See, e.g.*, V.R. Commondore et al., *Quality of Care on For-Profit and Not-*

11  *for-Profit Nursing Homes:  Systemic Review and Meta-Analysis*, 339 Brit. Med. J. 2732 (2009).

12  Other studies have found that poor nursing home quality is directly related to inadequate staffing

13  levels.  *See, e.g.*, U.S. Centers for Medicare and Medicaid Services, *Report to Congress:*

14  *Appropriateness of Minimum Nurse Staffing Ratios in Nursing Home*s (2001).

15       74.    Kindred Inc. has a long history of compliance issues.  Kindred Inc.'s corporate

16  predecessor, Vencor, Inc., and Ventas, Inc., a related real estate investment trust, faced a $1.3

17  billion fraud claim from the United States government alleging that Vencor knowingly submitted

18  false claims to Medicare, Medicaid, and Tricare, the military's health care program.  In 2001, this

19  suit and related civil claims settled for $219 million.  After reorganization following Vencor's

20  Chapter 11 bankruptcy in 1999, from 2001 to 2008, Kindred Inc. entered into a corporate

21  compliance agreement (CIA) with the U.S. Office of the Inspector General (OIG) because of poor

22  quality of care.  In 2009, Kindred Healthcare agreed to pay $1.3 million to settle allegations in a

23  qui tam complaint that Kindred billed Medicaid for a higher number of drugs than were actually

24  administered.

25       75.    In 1999, in response to growing concern over the low levels of direct patient

26  staffing and quality of care in nursing homes, the California Legislature amended Health & Safety

27  Code section 1276.5 to increase the minimum nursing staff requirement to 3.2 hours of direct

28  patient care per day, effective January 2000.

1    76.    Section 1276.5, as amended, states in pertinent part:

2        [C]ommencing January 1, 2000, the minimum number of actual
         nursing hours per patient required in a skilled nursing facility shall
3        be 3.2 hours, except as provided in Section 1276.9.

4        For purposes of this section, "nursing hours" means the number of
         hours of work performed per patient day by aids, nursing assistants,
5        or orderlies plus two times the number of hours worked per patient
         day by registered nurses and licensed vocational nurses (except
6        directors of nursing in facilities of 60 or larger capacity) ... except
         that nursing hours for skilled nursing facilities mean the actual
7        hours of work, without doubling the hours performed per patient
         day by registered nurses and licensed vocational nurses.

8

9    Health & Safety Code § 1276.5 (a) and (b)(1).  The California skilled nursing facilities that are at

10   issue in this action are not exempt under Health & Safety Code section 1276.9.

11   77.    Generally, only the hours of certified nurses assistants, licensed vocational nurses,

12   and registered nurses are considered to determine whether staffing ratios at skilled nursing

13   facilities are in compliance with the requirement of Section 1276.5.  The 3.2 NHPPD requirement

14   is calculated on a facility-wide basis over a 24-hour period.

15   78.    Consistent with Section 1276.5, Health & Safety Code section 1559.1 establishes a

16   "Patient's Bill of Rights" for residents in skilled nursing facilities that requires, among other

17   things, that the skilled nursing facilities "employ an adequate number of qualified personnel to

18   carry out all functions of the facility."  An essential function of a skilled nursing facility is the

19   provision of nursing services.

20   79.    The California Code of Regulations requires that the Director of Nursing in skilled

21   nursing facilities "shall be a registered nurse and shall be employed eight hours a day, on the day

22   shift five days a week." 22 CCR § 72327.

23   80.    At all relevant times, defendants have been required to staff the Facilities with

24   sufficient levels of qualified personnel so as to comply with the 3.2 NHPPD requirement of

25   Section 1276.5, the requirements of Section 1599.1, and the Director of Nursing staffing

26   requirements of 22 CCR 72327.

27   81.    Defendants portray and promote their facilities as meeting or exceeding all

28   statutory and regulatory requirements, including minimum staffing requirements.  In their

1   standard Resident Rights and in postings at their facilities, defendants uniformly and

2   systematically claim to adhere to "the resident rights afforded under State law, [which] may be

3   obtained from the [Kindred] business office," including the Patient's Bill of Rights, as set forth in

4   Section 72527 of the California Administrative Code, which in part requires defendants to

5   provide an "adequate number of qualified personnel."

6        82.    Kindred's standard Code of Conduct provided to new residents states in pertinent

7   part: "Kindred strives to sustain the highest quality of services." The Code of Conduct further

8   states that Kindred's "[o]fficers, employees and contractors are expected to adhere to practices

9   that promote these measures," including a "commitment to excellence" requiring Kindred "to be

10  responsive to patient, resident and family concerns" and "maintain patient/residents' rights and

11  dignity at all times while under our care." Kindred's yearly Quality and Social Responsibility

12  Reports likewise tout Kindred's purportedly high quality standards.

13       83.    In addition, defendants have also promised the State of California that they meet

14  all state and federal requirements regarding the operation, management, administration, and/or

15  ownership of a skilled nursing facility. In particular, as part of the initial licensing and annual

16  renewal process for each Facility, defendants promise to comply with the Health and Safety Code

17  and applicable regulations, which include minimum staffing requirements. The California

18  Department of Public Health lacks the resources, however, to monitor daily staffing levels at the

19  Facilities. At best, it samples only a few days per year.

20       84.    Defendants' representations track their duty under California law to provide

21  sufficient nursing staff and related services. Unfortunately, the actual nurse staffing provided falls

22  well short of defendants' representations and their legal duty. Defendants have systematically

23  and continuously failed to comply with the 3.2 hour NHPPD requirement under Section 1276.5

24  and with the Director of Nursing staffing requirements under 22 CCR § 72327 during the Class

25  Period.

26       85.    Despite their failure to adequately staff their skilled nursing facilities in California

27  and provide the quality of care they claimed to provide, defendants wrongly received in the

28  aggregate millions of dollars in payments from residents and/or their family members. These

1    monies were solicited and collected under the false and misleading pretense that defendants

2    complied with California staffing laws and would remain in compliance.

3         86.    Plaintiffs resided at one or more Facilities on days during the Class Period when

4    direct nursing staff levels were below the minimum levels required under California law.

5         87.    Defendants did not disclose to Plaintiffs that they did not intend to comply with

6    the 3.2 hour NHPPD minimum staffing requirements of Section 1276.5 or the Director of Nursing

7    staffing requirements of 22 CCR 72327, or to employ an adequate number of qualified nursing

8    personnel to carry out all of the functions of their facilities in compliance with Section 1599.1.

9    Plaintiffs reasonably expected that staffing would comply with the legal requirements and paid

10   money to defendants from their own funds to remain at the facility where they resided.  However,

11   defendants failed to provide the nursing staffing levels that Plaintiffs reasonably expected to

12   receive.  As such, Plaintiffs lost money and was injured in fact as a result of defendants' failure to

13   comply with the legal minimum staffing requirements.  Plaintiffs were also deprived of their

14   rights under Sections 1276.5, 1599.1, and 22 CCR § 72327 to reside in a skilled nursing facility

15   that provided sufficient skilling nursing personnel to comply with California law.

16        88.    During their stays at the Facilities, each of the named plaintiffs (or their deceased

17   relatives) suffered one or more of the following indignities and other harms that directly resulted

18   from failure to maintain minimum and adequate qualified nurse staffing at their respective

19   facilities, including without limitation:  no response or long response times to call lights; lack of

20   assistance with grooming and bathing; inadequate attention to toileting needs, resulting in

21   residents' sitting in undergarments and bedclothes soaked in urine or feces; rough and painful

22   handling by staff; lack of assistance with eating; failure to provide fluids as needed, resulting in

23   dehydration and frequent urinary tract infections; falls; pressure sores; failure to administer

24   medications or improper administration of medications; loss of personal items and medical

25   devices; failure to provide pain control; over-sedation; and lack of proper hygiene and infection

26   control measures.

27        89.    Numerous specific instances of the safety risks associated with understaffing were

28   documented by the DPH at the Facilities during the Class Period.  A small sampling of these

1   deficiencies includes repeated falls by residents at Orange, even after the resident was assessed to

2   be at a high risk for falls; a resident falling several times within the same week, and ultimately

3   cracking a rib, at Alta Vista; a resident being the victim of sexual abuse at Alta Vista; residents

4   being verbally abused by staff for using their call lights at Alta Vista; failure to isolate patients

5   with contagious infections at Bay View; failure to ensure call lights were operational at Bay

6   View; failure to identify a change in a resident's condition resulting in an emergency

7   ophthalmology appointment at Bay View; failure to prevent physical abuse at Bay View; reported

8   falls by residents at Bay View; failure to prevent physical abuse at Canoyonwood; reports of

9   decubitus ulcers (or pressure sores) at Canyonwood; and a failure to monitor resident eating and

10  dehydration difficulties, resulting in a 37 pound weight loss in 29 days and an emergency hospital

11  visit at Canyonwood, to name a few.

12              **CLASS ACTION ALLEGATIONS**

13          90.     This action is brought on behalf of the Named Plaintiffs identified above and all

14  similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and

15  23(b)(3).  The class is defined as

16          a.      **Kindred Class**.  All persons who resided at one of Kindred's California

17  Facilities from November 23, 2006 through April 15, 2013 (the "Class Period").  The claims

18  alleged in the First Cause of Action under Health & Safety Code section 1430(b) are asserted on

19  behalf of the Facility Resident Class.

20          b.      **Facility Subclasses.**  The claims alleged in the First and Cause of Action

21  under Healty & Safety Code section 1430(b) are asserted on behalf of each Facility Subclass

22  against the Facility in which the relevant named plaintiffs and class members resided.

23              i.      **Fifth Avenue Class.**  All persons who resided at Fifth Avenue

24  Healthcare from November 23, 2006 through April 15, 2013.  Plaintiff Julie Barton, as the

25  successor-in-interest to the Estate of Aranka Duboczy, represents this subclass.

26              ii.     **Rossmoor Class.**  All persons who resided at Care Center of

27  Rossmoor, f/k/a Guardian of Rossmoor, from November 23, 2006 through April 15, 2013.

28

1    Plaintiffs Lisa Edwards, daughter and successor-in-interest to Arlene Bettencourt, and Roxanne

2    Harrison, daughter and successor-in-interest to Harry Harrison, represent this subclass.

3                    iii.    **Bay View Class.**  All persons who resided at Bay View Nursing

4    and Rehabilitation Center from November 23, 2006 through April 15, 2013.  Plaintiff Kathleen

5    Daley, as the successor-in-interest to the Estate of Romaine Crvarich, represents this subclass.

6                    iv.    **Hacienda Class.**  All persons who resided at Hacienda Care Center

7    from November 23, 2006 through April 15, 2013.  Plaintiff Jerry Dore, as the successor-in-

8    interest to the Estate of Mary Dore, represents this subclass.

9                    v.    **Kindred Orange Class.**  All persons who resided at Kindred

10   Healthcare Center of Orange from November 23, 2006 through September 30, 2009.  Plaintiff

11   Dora Hernandez, as the successor-in-interest to the Estate of Guadalupe Garcia, represents this

12   subclass.

13                   vi.    **Valley Gardens Class.**  All persons who resided at Valley Gardens

14   Healthcare and Rehabilitation Center from November 23, 2006 through April 15, 2013.  Plaintiff

15   Anne Knieriemen, through her guardian ad litem and daughter Rochelle Campbell, represents this

16   subclass.

17                   vii.    **Canyonwood Class.**  All persons who resided at Canyonwood

18   Nursing and Rehab Center from November 23, 2006 through April 15, 2013.  Plaintiff Linda

19   Mahaffey, as the personal representative of the estate of Alice Martin, represents this subclass.

20                   viii.    **Santa Cruz Class.**  All persons who resided at Santa Cruz

21   Healthcare Center from November 23, 2006 through April 15, 2013.  Plaintiff Beverly Bakken, as

22   the successor-in-interest of Gordon Bakken, represents this subclass.

23                   ix.    **Alta Vista Class.**  All persons who resided at Alta Vista Healthcare

24   & Wellness Center a/k/a Alta Vista Healthcare from November 23, 2006 through September 30,

25   2009.  Plaintiff James Morris represents this subclass.

26                   x.    **Smith Ranch Class**.  All persons who resided at Smith Ranch Care

27   Center f/k/a Guardian at Smith Ranch Care Center from November 23, 2006 through April 15,

28   2013.

1        xi.  **Bayberry Class**.  All persons who resided at Bayberry from

2  November 23, 2006 through and including April 15, 2013, through April 15, 2013.

3        xii.  **Livermore Class.**  All persons who resided at Livermore from

4  November 23, 2006 through April 15, 2013.

5        xiii.  **Medical Hill Class**.  All persons who resided at Medical Hill from

6  November 23, 2006 through April 15, 2013.

7        xiv.  **Ygnacio Valley Class**.   All persons who resided at Ygnacio

8  Valley from November 23, 2006 through April 15, 2013.

9        xv.  **Larkspur Class.**  All persons who resided at Larkspur from

10  November 23, 2006 through April 15, 2013.

11        xvi.  **Pacific Coast Class**.  All persons who resided at Livermore from

12  November 23, 2006 through April 15, 2013.

13        xvii.  **Village Square Class**.  All persons who resided at Village Square

14  from November 23, 2006 through April 15, 2013.

15        xviii.  **Foothill Class**.  All persons who resided at Foothill from

16  November 23, 2006 through April 15, 2013.

17        xix.  **Golden Gate Class**.  All persons who resided at Golden Gate f/k/a

18  Golden Gate Healthcare Center from November 23, 2006 through April 15, 2013.

19        xx.  **Lawton Class**.  All persons who resided at Lawton from

20  November 23, 2006 through April 15, 2013.

21        xxi.  **Nineteenth Avenue Class**.  All persons who resided at Nineteenth

22  Avenue f/k/a Nineteenth Avenue Healthcare Center from November 23, 2006 through April 15,

23  2013.

24        xxii.  **Siena Class**.  All persons who resided at Siena from November 23,

25  2006 through April 15, 2013.

26        xxiii.  **Tunnell Class**.  All persons who resided at Tunnell from

27  November 23, 2006 through April 15, 2013.

28

1              xxiv.   **Victorian Class**.  All persons who resided at Victorian f/k/a

2  Victorian Healthcare Center from November 23, 2006 through April 15, 2013.

3            c.   **Private Pay Subclasses**.  Within each of the above-referenced Facility

4  Subclasses, a Private Pay Subclass is asserted on behalf of all Facility residents who made

5  payments to defendants, or any of them, through their own funds during the Class Period.  In

6  addition to claims under Health & Safety Code section 1430(b), the Private Pay Subclasses assert

7  the claims alleged in the Second Cause of Action (Bus. & Prof. Code section 17200 et seq.) and

8  the Third Cause of Action (Civil Code section 1770 et seq.) against the relevant Facilities.

9        91.    Excluded from the above-referenced class and subclass are:  (i) persons who

10  resided at the Alta Vista and Orange Facilities after they were sold on September 30, 2009;

11  (ii) the defendants, any entity in which the defendants have a controlling interest, the officers,

12  directors, and employees of any defendant, and the legal representatives, heirs, successors, and

13  assigns of defendants; (iii) any judge assigned to hear this case (or any spouse or family member

14  of any assigned judge); (iv) any juror selected to hear this case, (v) claims for personal injury and

15  wrongful death; and (vi) any and all legal representatives of the parties and their employees.

16        92.    This action is brought as a class action and may properly be so maintained

17  pursuant to Rule 23 of the Federal Rules of Civil Procedure and applicable case law.  In addition

18  to injunctive relief, this action seeks recovery for economic damages arising from defendants'

19  understaffing, such as recovery of statutory damages and/or moneys paid by named plaintiffs and

20  the class as a result of defendants' failure to disclose and concealment of the fact that the

21  Facilities did not and would not comply with nurse staffing requirements, including Health &

22  Safety Code section 1276.5, Health & Safety Code section 1599.1, and 22 CCR § 72327.  This

23  action does not seek recovery for personal injuries that may have been caused by inadequate

24  staffing at defendants' facilities.

25        93.   **Numerosity of the Class.**  Members of the class are so numerous that their

26  individual joinder herein is impracticable.  The precise number of members of the class and their

27  addresses are presently unknown to Plaintiffs.  The precise number of persons in the class and

28  their identities and addresses may be ascertained from defendants' records.  If deemed necessary

1    by the Court, members of the class may be notified of the pendency of this action by mail,

2    supplemented by published notice.

3         94.    **Common Questions of Fact and Law.**  Common questions of law and fact exist

4    as to all members of the class.  These common legal and factual questions include, without

5    limitation:

6              a.    whether all or some of the Facilities failed to comply with the 3.2 hour

7    NHPPD minimum staffing requirements of Health & Safety Code section 1276.5 during the Class

8    Period;

9              b.    whether defendants failed to employ an adequate number of qualified

10   nursing personnel to carry out all of the functions of their Facilities in violation of Health &

11   Safety Code section 1599.1;

12             c.    whether defendants' understaffing their Facilities violates any right(s) of

13   residents as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California

14   Administrative Code;

15             d.    whether defendants' conduct violates Health & Safety Code

16   section 1430(b);

17             e.    whether defendants' conduct violates Business & Professions Code

18   section 17200 *et seq.*

19             f.    whether defendants' conduct violates the Consumer Legal Remedies Act,

20   Civ. Code § 1770 *et seq.*;

21             g.    whether defendants engaged in a pattern and practice of unfair and

22   deceptive conduct in connection with their management, administration and operation of the

23   Facilities; and

24             h.    whether defendants' conduct violates 22 CCR § 72327.

25         95.    **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the

26   Facility Resident Class.  On information and belief, Plaintiffs and Facility Resident Class

27   Members resided at one or more of the Facilities during the Class Period on days when that

28   Facility failed to (a) meet the 3.2 hour NHPPD minimum staffing requirements of Health &

1    Safety Code section 1276.5; (b) failed to employ an adequate number of qualified nursing

2    personnel to carry out all of the functions of the Facility in violation of Health & Safety Code

3    section 1599.1; and/or (c) failed to meet the Director of Nursing staffing requirements of 22 CCR

4    § 72327.

5          96.     In addition, the Named Plaintiffs made payments to one or more of the defendants

6    for skilled nursing services rendered at a Facility through private pay funds during the Class

7    Period. The named plaintiffs (and/or their decedents) for many of the facilities, including, without

8    limitation, Bay View, Canyonwood, 5th Avenue, Hacienda, Santa Cruz, and Valley Gardens, paid

9    private funds to the defendants. All named plaintiffs have sustained actual damages and injury in

10   fact.

11         97.     **Adequacy.**  The Named Plaintiffs will fairly and adequately represent the class

12   and subclass on whose behalf this action is prosecuted.  Their interests do not conflict with the

13   interests of the Class.   Also, they have retained competent counsel who have experience in class

14   action litigation and will prosecute this action vigorously.

15         98.     **Defendants' Actions Apply Generally to the Class.**  The above-referenced class

16   may be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted

17   or refused to act on grounds generally applicable to the Class, thereby making appropriate final

18   and injunctive relief with respect to the Class.

19         99.     **Predominance of Common Questions of Law and Fact.**  The above-referenced

20   class may be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law

21   and fact common to Class members, such as those listed above, predominate over the questions

22   affecting only individual members of the Class.

23         100.    **Superiority of Class Action.**  A class action is superior to other available means

24   for the fair and efficient adjudication of the claims asserted herein.  The statutory damages,

25   restitution and other potential recovery for each individual member of the Class are modest,

26   relative to the substantial burden and expense of individual prosecution of these claims.  Given

27   the amount of the individual Class members' claims, few, if any, class members could afford to

28   seek legal redress individually for the wrongs complained of herein.  Thus, few, if any, Class

1  members have any interest in individually controlling the prosecution of separate actions based on

2  the claims in this action.

3  101.   Upon information and belief, no other litigation by a class member concerning the

4  controversy in this case is proceeding.

5  102.   It is desirable to concentrate actions based on Plaintiffs' claims in this forum.

6  Even if the members of the class themselves could afford individual litigation, the court system

7  could not.  Individualized litigation increases the delay and expense to all parties and the court

8  system given the complex legal and factual issues of the case.  By contrast, the class action device

9  presents far fewer management difficulties, and provides the benefits of single adjudication,

10  economy of scale, and comprehensive supervision by a single court.

11  103.   There are few, if any, likely difficulties in managing this action as a class action.

12  **FIRST CAUSE OF ACTION FOR VIOLATION OF HEALTH & SAFETY CODE
   SECTION 1430(b) AGAINST ALL DEFENDANTS**

13

14  104.   Plaintiffs refer to, and incorporate herein by this reference, all preceding

15  paragraphs.

16  105.   Health & Safety Code section 1430(b) provides that "a current or former resident

17  or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 . . . may bring

18  a civil action against the licensee of a facility who violates any rights of the resident or patient as

19  set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Code of

20  Regulations [which incorporates Health & Safety Code section 1599.1], or any other right

21  provided for by federal or state law or regulation."

22  106.   Section 1430(b) provides for a remedy of statutory damages "up to $500" per

23  violation, together with a right to injunctive relief, attorneys' fees and costs.  Health & Safety

24  Code § 1430(b).  The remedies in Section 1430(b) are cumulative to any other remedies provided

25  by law.  *Id.* § 1430(c).  Given that the violation involves elderly and/or disabled residents, the

26  statutory damage award is subject to trebling under Civil Code section 3345.

27  107.   Defendants have violated and continue to violate Section 1430(b) by, among other

28  things, failing to provide an adequate number of qualified personnel to carry out all functions at

the Facilities in violation of Health & Safety Code section 1599.1(a).  Specifically, defendants

have failed to employ enough qualified nursing personnel to carry out the critical function of the

Facilities, which is the provision of skilled nursing services.  Defendants' violation of section

1599.1(a) is evidenced by, among other things: a) the Facilities have failed to comply with the 3.2

hour NHPPD requirement of Health & Safety Code section 1276.5 on numerous days during the

Class Period; (b) the Facilities have failed to provide an adequate number of qualified nursing

personnel in light of the aggregate patient acuity levels at the Facilities; and/or (c) the Facilities

have failed to comply with the Director of Nursing staffing requirements under 22 CCR § 72327.

108.    As a result of defendants' conduct, Plaintiffs and class members have suffered

injury and are entitled to statutory damages in an amount to be determined at trial, as well as

injunctive relief, attorneys' fees and costs.

109.    For purposes of California Health & Safety Code section 1430(b), on information

and belief, the California Department of Public Health ("DPH") lists defendant Kindred West as

the licensee for defendants Alta Vista, Bay View, Canyonwood, Fifth Avenue, Golden Gate,

Hacienda, Orange, Santa Cruz, Valley Gardens, and Victorian; defendant Hillhaven as the

licensee for defendant Nineteenth Avenue; defendant Care Center of Rossmoor LLC as the

licensee for defendant Rossmoor; and defendant Smith Ranch Care Center LLC as the licensee

for defendant Smith Ranch.

### SECOND CAUSE OF ACTION FOR UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES AGAINST ALL DEFENDANTS

110.    Plaintiffs refer to, and incorporate herein by this reference, all preceding

paragraphs.

111.    Defendants, and each of them, have engaged in unlawful and unfair business acts

and practices in violation of Business and Professions Code section 17200 *et seq.*

112.    In particular, defendants, and each of them, have engaged in unlawful business

acts and practices in violation of Business and Professions Code section 17200 *et seq.* by

violating numerous laws, statutes and regulations including, without limitation:

1          a.      Failing to employ an adequate number of nursing qualified personnel

2    violation of Health & Safety Code section 1599.1(a);

3          b.      Systematically and uniformly failing to disclose, concealing and/or

4    misrepresenting the true level of nurse staffing provided at their California skilled nursing

5    facilities in violation of Business & Professions Code section 17500, *et seq.*

6         113.    By virtue of the conduct alleged herein, defendants, and each of them, have also

7    engaged in fraudulent business practices in connection with the representations, promises,

8    omissions, and other statements made concerning the level of nurse staffing offered to residents

9    admitted to their California skilled nursing facilities.

10         114.    By virtue of the conduct alleged herein, defendants, and each of them, have also

11    engaged in deceptive and misleading advertising through representations, promises, omissions,

12    and other statements made concerning the level of nurse staffing offered to residents admitted to

13    their California skilled nursing facilities.

14         115.    Members of the general public (including without limitation persons admitted to

15    and/or residing in the Facilities during the Class Period, and their family members and/or

16    representatives) have been and are likely to be deceived by the statements, representations,

17    omissions, and other conduct by defendants as alleged herein.

18         116.    The acts and practices of defendants, and each of them, also constitute unfair

19    business acts and practices within the meaning of Business & Professions Code section 17200, *et*

20    *seq.*, in that the conduct alleged herein is immoral, unscrupulous and contrary to public policy,

21    and the detriment and gravity of that conduct outweighs any benefits attributable to such conduct.

22    Further, defendants' conduct threatens actual and incipient violations of numerous laws and

23    regulations intended to protect elderly and/or disabled residents, and in addition, defendants'

24    conduct violates the policy or spirit of these laws and otherwise results in a significant harm or

25    threat of harm to elderly and/or disabled residents.

26         117.    Defendants' conduct presents a continuing threat of harm to the public in that,

27    among other things, defendants continue to mislead elderly and/or disabled persons (and their

28    family members and/or representatives) into agreeing to be admitted to their skilled nursing

1    facilities based on the false and misleading representations and failure to disclose the true facts

2    concerning inadequate staffing and understaffing at the Facilities.

3          118.    As a direct and proximate result of the defendants' unlawful business practices,

4    Plaintiffs and members of the Class have been injured in fact, lost money and sustained

5    substantial economic harm as alleged herein.  Likewise, as a direct and proximate result of the

6    defendants' unlawful business practices, members of the general public (including Class

7    members) have been harmed and continue to be harmed by defendants' conduct.

8          119.    Plaintiffs seek an injunction that requires that defendants immediately cease acts of

9    unfair and fraudulent business acts or practices as alleged herein, and to enjoin defendants from

10   continuing to engage in any such acts or practices in the future.  Plaintiffs also seek restitution,

11   attorneys' fees, and all other remedies permitted by law.

12         120.    Many of the named plaintiffs, including, without limitation, the representatives for

13   the Bay View, Canyonwood, Fifth Avenue, Hacienda, Santa Cruz, and Valley Gardens Facilities,

14   paid money from their own funds to the defendants based on the reasonable expectation that the

15   Facilities would be staffed in compliance with applicable laws. The true facts are that the

16   Facilities regularly failed to comply with the minimum and adequate nurse staffing requirements

17   under California law.   As a result, named plaintiffs lost money and sustained injury in fact as a

18   result of defendants' conduct.   As a direct and proximate result of the defendants' unfair,

19   unlawful and deceptive business practices, named plaintiffs, Class Members and members of the

20   general public have been harmed and continue to be harmed by defendants' conduct.

21         121.    Plaintiffs seek an injunction that requires that defendants immediately cease acts of

22   unfair and fraudulent business acts or practices as alleged herein, and to enjoin defendants from

23   continuing to engage in any such acts or practices in the future.  In addition, at present, the named

24   plaintiffs seek restitution on behalf of Private Pay Subclass Members from the following

25   facilities: Bay View, Canyonwood, Fifth Avenue, Hacienda, Santa Cruz, and Valley Gardens.

26   Plaintiffs also seek attorneys' fees and all other remedies permitted by law.

27

28

**THIRD CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMER
LEGAL REMEDIES ACT AGAINST ALL DEFENDANTS**

122.   Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

123.   The named plaintiffs are "senior citizens" and/or "disabled persons" as defined by Civ. Code § 1761(f) and (g), and "consumers" as defined in for purposes of Civ. Code § 1761(d). Defendants are "persons" as defined by Civil Code section 1761(c).  The provision of skilled nursing services constitutes a "transaction" covered by the CLRA.

124.   Each of the Defendants has violated and continues to violate the Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq.* ("CLRA"), including, without limitation, sections 1770(a)(5) and 1770(a)(7), by their failure to disclose, and active concealment of, the material facts.  Defendants' conduct constitutes unfair and deceptive acts or practices in violation of section 1770(a) of the CLRA.  Specifically, the following defendants failed to disclose and actively concealed the following  material facts from the following named plaintiffs:

a.   The Fifth Avenue Healthcare Facility represented to plaintiff Aranka Duboczy and her family members that it was a "skilled nursing facility," but failed to disclose and actively concealed that the Fifth Avenue Healthcare Facility failed to comply with California's adequate nurse staffing requirements as alleged herein.

b.   The Rossmoor Facility represented to Arlene Bettencourt and her family members that it was a "skilled nursing facility," but failed to disclose and actively concealed that the Rossmoor Facility failed to comply with California's adequate nurse staffing requirements as alleged herein.

c.   The Bay View Facility represented to plaintiff Romaine Crvarich and her family members that it was a "skilled nursing facility," but failed to disclose and actively concealed that the Bay View Facility failed to comply with California's adequate nurse staffing requirements as alleged herein.

d.   The Hacienda Facility represented to plaintiff Mary Dore and her family members that it was a "skilled nursing facility," but failed to disclose and actively concealed that

1   the Hacienda Facility failed to comply with California's adequate nurse staffing requirements as

2   alleged herein.

3          e.     The Rossmoor Facility represented to Harry Harrison and his family

4   members that it was a "skilled nursing facility," but failed to disclose and actively concealed that

5   the Rossmoor Facility failed to comply with California's adequate nurse staffing requirements as

6   alleged herein.

7          f.     The Valley Gardens Facility represented to plaintiff Anne Knieriemen and

8   her family members that it was a "skilled nursing facility," but failed to disclose and actively

9   concealed that the Valley Gardens Facility failed to comply with California's adequate nurse

10   staffing requirements as alleged herein.

11          g.     The Kindred Healthcare Center of Orange Facility represented to plaintiff

12   Guadalupe Garcia and her family members that it was a "skilled nursing facility," but failed to

13   disclose and actively concealed that the Kindred Healthcare Center of Orange Facility failed to

14   comply with California's adequate nurse staffing requirements as alleged herein.

15          h.     The Canyonwood Facility represented to plaintiff Alice Martin and her

16   family members that it was a "skilled nursing facility," but failed to disclose and actively

17   concealed that the Canyonwood Facility failed to comply with California's adequate nurse

18   staffing requirements as alleged herein.

19          i.     The Santa Cruz Facility represented to plaintiff Gordon Bakken and his

20   family members that it was a "skilled nursing facility," but failed to disclose and actively

21   concealed that the Santa Cruz Facility failed to comply with California's adequate nurse staffing

22   requirements as alleged herein.

23          j.     The Alta Vista Facility represented to plaintiff James Morris and his family

24   members that it was a "skilled nursing facility," but failed to disclose and actively concealed that

25   the Alta Vista Facility failed to comply with California's adequate nurse staffing requirements as

26   alleged herein.

27         125.    Each of the Defendants owed a duty to disclose the true facts regarding staffing

28   levels at the Facilities because, among other things:  (a) defendants had exclusive knowledge of

1   material facts not known to the named plaintiffs and the class at the time of the subject

2   transactions; (b) defendants actively concealed material facts from the named plaintiffs and the

3   proposed class; and (c)  each defendant represented that it was a "skilled nursing facility" to

4   named plaintiffs and the consuming public.

5          126.    Without limitation, each of the Defendants had superior knowledge of the

6   California requirements for minimum and adequate qualified nurse staffing at skilled nursing

7   facilities, and the actual staffing levels at their facilities.  Defendants had daily access to the

8   staffing, scheduling, payroll, and resident census and other information necessary to determining

9   whether the Facilities were complying with the adequate, qualified staffing requirement under

10   section 1599.1.  Defendants made daily calculations with respect to nurse staffing levels at the

11   Facilities which showed numerous days during the Class Period on which the Facilities did not

12   even meet the bare minimum staffing requirements.  Further, on information and belief,

13   defendants were repeatedly advised by Facility personnel of understaffed conditions. The named

14   plaintiffs did not know of these or other material facts concerning the understaffed conditions at

15   the Facilities.

16          127.    Through deficiency notices and other reports issued by the California Department

17   of Public Health ("DPH"), and previously, by the Department of Health Services, many (if not

18   all) Defendants had direct notice of staffing violations at the Facilities.  While some DPH reports

19   are publicly available, in practice, the public's access to such reports is limited at best. Without

20   question, defendants had better access to, and/or were in a superior position to know, the results

21   of DHS audits, DHS inspections, and numerous deficiencies or citations issued by the State of

22   California concerning staffing conditions at the Facilities.

23          128.    In addition, defendants actively concealed or suppressed the true facts concerning

24   nurse staffing levels at the Facilities.  Without limitation, defendants:  (a) repeatedly concealed

25   from and/or failed to disclose to California regulators that the Facilities did not comply with

26   applicable nurse staffing requirements in connection with requests to obtain cost reimbursement

27   and/or maintain licensure status for the Facilities; (b) repeatedly concealed from and/or failed to

28   disclose to the consuming public (including the named plaintiffs) that the Facilities were

1   understaffed and did not comply with the Patient's Bill of Rights (which includes the right to

2   adequate, qualified staffing);(c) intentionally failed to disclose to residents or prospective

3   residents that the Facilities regularly fell below the bare minimum staffing requirements, despite

4   actual knowledge of such violations; (d) responded to DPH deficiency notices by promising to

5   improve staffing, but failed to do so; (e) failed to comply with the nurse staffing posting

6   requirements under state and federal law by posting projected (as opposed to actual) staffing, or

7   simply failed to post any nurse staffing information; and (f) responded to resident complaints with

8   misleading assertions that staffing concerns were either isolated incidents and/or would be

9   addressed.

10        129.   In addition, defendants actively concealed or suppressed the true facts concerning

11  nurse staffing levels at the Facilities.  Without limitation, defendants:  (a) repeatedly represented

12  to the California regulators that they were complying with applicable nurse staffing requirements

13  to obtain cost reimbursement and/or maintain licensure status for the Facilities, even though such

14  representations were false; (b) representing to the consuming public (including the named

15  plaintiffs) that the Facilities would comply with the Patient's Bill of Rights (which includes the

16  right to adequate, qualified staffing), despite defendants' knowledge that the Facilities were

17  understaffed; (c) intentionally failing to disclose to residents or prospective residents that the

18  Facilities regularly fell below the bare minimum staffing requirements, despite actual knowledge

19  of such violations; (d) responding to DPH deficiency notices by promising to improve staffing,

20  but failing to do so; (e) failing to comply with the nurse staffing posting requirements under state

21  and federal law by posting projected (as opposed to actual) staffing, or simply failing to post any

22  nurse staffing information; and (f) responding to resident complaints with misleading assertions

23  that staffing concerns were either isolated incidents and/or would be addressed.

24        130.   Without limitation, actions taken by Defendants with respect to the Canyonwood

25  Facility illustrate Defendants' efforts to conceal understaffed conditions from residents, family

26  members and regulators.  For example, the staff at Canyonwood were specifically instructed to

27  not mention the word "understaffed" (or even hint about understaffing) to residents or their

28  families, even though staff knew the facility was understaffed at the time.  Further, staffing levels

1  at Canyonwood were inflated during DPH inspections by adding hours supposedly worked by

2  management personnel, despite the fact that in their normal duties, management personnel did not

3  provide direct nursing care to residents.  On information and belief, Kindred Inc. and KHOI

4  directed and/or approved the above-referenced actions taken at the Canyonwood Facility and has

5  directed and/or approved similar conduct at the other Facilities.

6        131.    The facts concealed and/or not disclosed by defendants are material.  The named

7  plaintiffs, class members and reasonable consumers would have considered the failure to meet the

8  minimum and adequate nursing staffing requirements to be important (if not critical) in deciding

9  whether to enter into the subject transactions and reside in defendant's Facilities.  The named

10 plaintiffs and class members reasonably expected that the defendants' Facilities, as licensed

11 skilled nursing facilities, would meet or exceed these minimum and adequate staffing

12 requirements.  Had the true facts concerning the understaffed conditions at the Facilities been

13 disclosed, the named plaintiffs and class members would not have agreed to reside at the

14 Facilities.

15       132.    The named plaintiffs and class members could not reasonably have been expected

16 to learn or discover the non-disclosed facts concerning defendants' pervasive and ongoing

17 understaffing violations.  Defendants knew that their persistent and extensive staffing violations

18 were not reasonably likely to be discovered. Defendants intentionally concealed, suppressed

19 and/or failed to disclose the true facts with the intent to defraud the named plaintiffs and class

20 members.  Defendants also knew that the failure to meet the minimum and adequate qualified

21 nurse staffing posed a health and safety risk to the named plaintiffs and class members.

22       133.    As a direct and proximate result of the defendants' conduct, the named plaintiffs

23 and the class members have suffered actual damages, and have been harmed and continue to be

24 harmed by defendants' conduct.  In addition, many of the named plaintiffs including, without

25 limitation, the representatives for the Bay View, Canyonwood, Fifth Avenue, Hacienda, Santa

26 Cruz, and Valley Gardens Facilities, paid money to defendants, or otherwise incurred costs and

27 expenses, for nursing services that failed to meet reasonable expectations.  Defendants' conduct

28 presents a continuing threat of harm to the public in that, among other things, defendants continue

1   to fail to disclose and/or conceal the fact that the Facilities do not provide the minimum and

2   adequate, qualified staffing required under California law.  Despite knowledge that the Facilities

3   regularly fall below the bare minimum nurse staffing requirements, defendants continue to induce

4   elderly and vulnerable citizens to enter their Facilities.

5           134.   As reflected in paragraphs 77 and 78 above, which are expressly incorporated here

6   by reference, defendants' failure to disclose, concealment and other conduct alleged herein

7   directly impacts the health, safety and well-being of the named plaintiffs and other class

8   members.

9           135.   Despite receipt of written notice and an opportunity to cure the violations alleged

10   herein pursuant to Civil Code section 1782(a), defendants have failed to provide any remedy or

11   appropriate relief for their CLRA violations within the statutory 30-day time period.  As such, the

12   named plaintiffs and class members in the private pay subclass are entitled to compensatory,

13   monetary and punitive damages, in addition to equitable and injunctive relief, attorneys' fees and

14   costs, and any other remedies available under the CLRA.   At present, the named plaintiffs seek

15   CLRA damages on behalf of on behalf of Private Pay Subclass Members from the following

16   facilities: Bay View, Canyonwood, Fifth Avenue, Hacienda, Santa Cruz, and Valley Gardens.

17   **PRAYER**

18           WHEREFORE, Plaintiffs pray for judgment as follows:

19           1.   For a Court order certifying that the action may be maintained as a class action;

20           2.   For a Court order requiring that defendants immediately cease acts that constitute

21   unlawful, unfair, and fraudulent business practices, and violations of the CLRA as alleged herein,

22   and to enjoin defendants from continuing to engage in any such acts or practices in the future;

23           3.   For injunctive relief prohibiting defendants' violations of the Health & Safety

24   Code § 1430(b) in the future;

25           4.   For restitution and any other monetary relief permitted by law;

26           136.   For statutory damages in an amount to be proven at trial, including $500.00 in

27   statutory damages for each understaffed Facility day in violation of each Class Members' rights

28   pursuant to Health & Safety Code § 1430(b);

1       137.   For punitive damages;

2       138.   For treble damages pursuant to Civil Code section 3345;

3       139.   For enhanced CLRA damages of up to $5000 pursuant to Civil Code section

4  1780(b);

5       140.   For pre-judgment interest, according to law;

6       141.   For attorneys' fees and costs; and

7       142.   For such other and further relief as the Court may deem just and proper.

Dated: June 11, 2013       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Robert J. Nelson
Lexi J. Hazam
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

By:    _____*/s/ Lexi J. Hazam*_____
             Lexi J. Hazam

Christopher J. Healey (State Bar No. 105798)
MCKENNA LONG & ALDRIDGE LLP
600 West Broadway, Suite 2600
San Diego, CA 92101

Michael D. Thamer (State Bar No. 101440)
LAW OFFICES OF MICHAEL D. THAMER
Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, CA 96014-5307

1

W. Timothy Needham (State Bar No. 96542)
Michael J. Crowley (State Bar No. 102343)

2

JANSSEN, MALLOY, NEEDHAM, MORRISON,
REINHOLTSEN & CROWLEY, LLP

3

730 Fifth Street
Eureka, CA 95501

4

5

Kathryn A. Stebner (State Bar No. 121088)
Sarah Colby (State Bar No. 194475)

6

STEBNER & ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA 94102-2907

7

8

Robert S. Arns (State Bar No. 65071)
Steven R. Weinmann (State Bar No. 190956)

9

THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
San Francisco, CA  94105

10

Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 42 -

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a trial by jury on all issues stated.

3

Dated: June 11, 2013                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

4                                            Robert J. Nelson
                                             Lexi J. Hazam

5                                            275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339

6

7                                            By:  _____ */s/ Lexi J. Hazam* _____
                                                         Lexi J. Hazam

8

9                                            Christopher J. Healey (State Bar No. 105798)
                                             MCKENNA LONG & ALDRIDGE LLP

10                                           600 West Broadway, Suite 2600
                                             San Diego, CA 92101

11                                           Michael D. Thamer (State Bar No. 101440)
                                             LAW OFFICES OF MICHAEL D. THAMER

12                                           Old Callahan School House
                                             12444 South Highway 3

13                                           Post Office Box 1568
                                             Callahan, CA 96014-5307

14                                           Telephone: (619) 699-2491
                                             Facsimile (619) 645-5328

15

16                                           W. Timothy Needham (State Bar No. 96542)
                                             Michael J. Crowley (State Bar No. 102343)

17                                           JANSSEN, MALLOY, NEEDHAM, MORRISON,
                                             REINHOLTSEN & CROWLEY, LLP

18                                           730 Fifth Street
                                             Eureka, CA 95501

19                                           Kathryn A. Stebner (State Bar No. 121088)
                                             Sarah Colby (State Bar No. 194475)

20                                           STEBNER & ASSOCIATES
                                             870 Market Street, Suite 1212

21                                           San Francisco, CA 94102-2907

22                                           Robert S. Arns (State Bar No. 65071)
                                             Steven R. Weinmann (State Bar No. 190956)

23                                           THE ARNS LAW FIRM
                                             515 Folsom Street, 3rd Floor

24                                           San Francisco, CA  94105

25                                           Attorneys for Plaintiffs

26

27

28