IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAZEL WALSH, et al., | No. C 11-00050 JSW |
| Plaintiffs, | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| KINDRED HEALTHCARE, et al., | **(Docket No. 133, 142.)** |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court for consideration of the motion for final approval of class settlement. (Docket No. 133.) The Court has considered the parties' papers, the supplemental declarations submitted, relevant legal authority, and the record in this case. The Court also held a final fairness hearing on December 6, 2013. Class Counsel and Defendants' counsel appeared. In addition, a putative Class Member, a Ms. Elonja Moore, appeared and spoke to the Court.

On December 3, 2013, Plaintiffs filed an administrative motion seeking to file a response to letters received from Ms. Maureen Keating, who objected to the settlement, and to a letter received from Mr. Carl Shelton. The Court granted that motion on the record at the hearing, and it has considered the response.[1] For the reasons set forth in the remainder of this Order, the Court HEREBY GRANTS the motion. The Court shall address the motion for attorneys' fees by way of a separate order.

///

---

[1] Accordingly, the Clerk may terminate docket no. 142.

**BACKGROUND**

This case arises from Plaintiffs' allegations that Defendants failed to comply with California statutory requirements for staffing at skilled nursing facilities and failed to disclose the understaffing. Based on those allegations, Plaintiffs brought claims pursuant to California Health and Safety Code section 1430(b), California Business and Professions Code sections 17000, *et seq.*, and California Civil Code sections 1750, *et seq.* (*See, e.g.,* Docket No. 150, Fourth Amended Complaint ¶¶ 4-5, 80-85.)

After several rounds of motion practice, settlement discussions, some discovery, and mediation sessions before the Honorable William Cahill (Ret.), the parties reached an agreement in principle. For several months thereafter, the parties continued to negotiate the terms of the settlement, which provides for injunctive relief and monetary compensation, which is described in more detail in the remainder of this Order.[2] (*See* Docket No. 128-6, Declaration of Robert J. Nelson in Support of Motion for Preliminary Approval, ¶ 4.)

The Settlement Class consists of all persons who resided in, or who are successors-in-interest and/or legal heirs of persons who resided in, any of the Defendant Facilities[3] during the

---

[2] The procedural history is set out in detail in the Motion for Final Approval. (*See* Docket No. 133, Mot. at 3:27-6:11.)

[3] The "Defendant Facilities" include Kindred Transitional Care and Rehabilitation-Bay View f/k/a Bay View Nursing and Rehabilitation Center, Kindred Transitional Care and Rehabilitation Canyonwood f/k/a Canyonwood Nursing and Rehab Center, Kindred Transitional Care and Rehabilitation-Walnut Creek f/k/a Care Center of Rossmoor, Kindred Transitional Care and Rehabilitation-Fifth Avenue f/k/a Fifth Avenue Health Care Center, Kindred Transitional Care and Rehabilitation-Golden Gate f/k/a Golden Gate Healthcare Center, Kindred Transitional Care and Rehabilitation-Livermore f/k/a Hacienda Care Center, Kindred Transitional Care and Rehabilitation-Nineteenth Avenue f/k/a Nineteenth Avenue Healthcare Center, Kindred Transitional Care and Rehabilitation-Santa Cruz f/k/a Santa Cruz Healthcare Center, Kindred Transitional Care and Rehabilitation-Smith Ranch f/k/a Smith Ranch Care Center, Kindred Transitional Care and Rehabilitation-Valley Gardens f/k/a Valley Gardens Healthcare & Rehabilitation Center, Kindred Transitional Care and Rehabilitation-Victorian f/k/a Victorian Healthcare Center, Kindred Transitional Care and Rehabilitation – Village Square, Kindred Transitional Care and Rehabilitation–Tunnell, Kindred Transitional Care and Rehabilitation–Siena, Kindred Transitional Care and Rehabilitation–Lawton, Kindred Nursing and Transitional Care-South Marin f/k/a Kindred Transitional Care and Rehabilitation – Larkspur, Kindred Transitional Care and Rehabilitation–Foothill, Kindred Nursing and Transitional–Pacific Coast, Kindred Nursing and Rehabilitation–Ygnacio Valley, Kindred Nursing and Rehabilitation–Medical Hill, and Kindred Nursing and Healthcare–Bayberry.

1  Settlement Class Period.[4]  However, the Settlement Class does not include: (a) Defendants; any
2  entity in which Defendants have a controlling interest; the officers, directors, and employees of
3  any Defendant; and the legal representatives, heirs, successors, and assigns of Defendants; and
4  (b) the Judge to whom this case is assigned and any member of the Judge's immediate family.
5  Also excluded from the Settlement Class are all persons who properly executed and timely filed
6  during the opt-out period a request to be excluded from the Settlement Class.

7  The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

In order to determine whether the proposed settlement should be approved, the Court weighs a number of factors, including: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the ... members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  For the reasons set forth below, the Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms-length negotiations between the parties and their counsel, and was reached with the assistance of a well-qualified and experienced jurist.[5]

**A.   Objections and Persons Commenting on Settlement.**

On or about November 25, 2013, the Court received an objection to the Settlement from Maureen Keating ("Ms. Keating").  (Docket No. 140.)  Although the deadline to object was November 22, 2013, the envelope which contained the objection was not docketed.  Therefore, the Court will deem the objection to have been timely filed.

---

[4] The Settlement Class Period means November 23, 2006 through and including April 15, 2013, except as to Kindred Healthcare Center of Orange and Alta Vista Healthcare & Wellness Centre, for which the Period is November 23, 2006 through and including September 30, 2009.

[5] The Court incorporates by reference its prior findings regarding class certification for purposes of Settlement. (*See* Docket No. 132, Preliminary Approval Order, ¶ 11.)

3

Ms. Keating raises three objections to the Settlement. First, the notice was inadequate and misleading, because she could not understand the Settlement without looking at the Court docket. Second, the parties' valuation of the Settlement is not realistic. Third, the attorneys' fees requested by the parties are excessive. The Court addresses the first two objections in the remainder of this Order, and it resolves the third objection in the order on the motion for attorneys' fees.

The Court also received a letter from Mr. Carl Shelton, who stated that he "would please ask the court to consider allowing my case to be heard and dealt with separately because of personal reasons." (Docket No. 141.) Although Mr. Shelton stated his intent to appear at the hearing, he did not appear on that date. Although Mr. Shelton's letter was filed on November 25, 2013, it is dated November 21, 2013. The envelope containing the letter was not docketed, and the Court shall construe Mr. Shelton's response as timely. As Plaintiffs note, Mr. Shelton appears to be a request to opt out of the Settlement, and the Court shall construe it as such. (*See* Docket 142-1, Plaintiffs' Supplemental Memorandum in Support of Motion for Final Settlement Approval at 7:19-22.)

As noted, Ms. Moore appeared at the hearing and spoke to the Court briefly about her experiences at one of the Defendant Facilities.[6]

The Court also received a copy of a "Notice of an Actio Bona Fidei," from Ronald Dale Juray, which was sent to the Court and to the Claims Administrator, in which Mr. Juray neither objects to nor opts out of the Settlement. The Court has had a copy of this Notice filed in the record. (*See* Docket No. 141.)

**B.  Notice.**

The Court granted the motion for preliminary approval on August 23, 2013. Pursuant to that Order, the parties were required to provide notice to the Class Members by United States Mail and by way of publication. Notice to class members to alert them of their right to opt-out of the class must be "the best notice practicable under the circumstances, including individual

---

[6] At the hearing Ms. Moore neither objected to nor opted out of the Settlement.

4

notice to all members who can be identified through reasonable effort." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Thus, due Process does not entitle a class member to "actual notice." Rather, due process requires the best notice practicable, reasonably calculated under the circumstances, to apprise a class member of the pendency of the class action and to give that class member a chance to be heard. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

According to the record, by no later than September 23, 2013, Gilardi & Co., LLC, the Settlement Administrator, sent notice packets by U.S. mail to the 64,505 Class Members identified by Defendants. Gilardi also established a website where it posted relevant documents, and includes a "Frequently Asked Questions" section and a section highlighting important deadlines, and the Notice includes a reference to that website.[7] (Docket No. 136-1, Amended Declaration of Markham Sherwood ("Sherwood Decl."), ¶¶ 3-4, 6-7, Ex. A (Notice Packet); Docket No. 142-1, Ex. A, Declaration of Markham Sherwood re Mailing of Notice of Proposed Class Action Settlement and Claim Form ("Second Sherwood Decl."), ¶¶ 3-6.) Mr. Markham attests that approximately 10,327 of those packets were returned, and that Gilardi found updated addresses for 5,548 of those persons and re-mailed the packets. (*Id.*, ¶ 5.)

Ms. Keating complains that the notice was insufficient and misleading because she could not understand the Settlement without reviewing the Court docket. Rule 23 requires that notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The Court has reviewed the Notice and finds that it satisfies the requirements of Rule 23(c)(2)(B). The Court also finds that Plaintiffs have complied with the schedule for the

---

[7] The website can be found at http://www.gilardi.com/kindredhealthcare. (Last visited December 12, 2013.)

5

1  settlement process approved by the Court on August 23, 2013, and thus, have satisfied the
2  requirements set forth in *In re Mercury Interactive Corporation Securities Litigation*, 618 F.3d
3  988, 994-95 (9th Cir. 2010). Class members have been provided Notice and access to Class
4  Counsel's pleading in connection with their Motion for Final Approval of the Settlement and
5  Application for Attorneys' Fees and Costs, as well as an adequate amount of time to review
6  such information before the deadline for submission of requests for exclusion or objections.
7  The manner in which notice was provided is the best notice practicable and reasonably
8  calculated under the circumstances to apprise Class Members of the class action and to give
9  Class Members the chance to be heard. *See Silber*, 18 F.3d at 1453-54.

10  Accordingly, the Court overrules Ms. Keating's objection to the Settlement on this basis.

**C.      The Amount of Settlement and the Results Achieved.**

12  The Court finds that the Settlement confers substantial benefits upon the Settlement
13  Class. First, and most important to the Court's analysis, Defendants have agreed to a stipulated
14  Injunction that requires them, for a period of at least two years, to consistently utilize staffing
15  practices at their skilled nursing facilities which will ensure that they comply with applicable
16  California law. Specifically, at all times, each of the Defendant Facilities will be required to
17  comply with Health and Safety Code section 1276.5 by providing a minimum of 3.2 actual
18  nursing hours per patient day ("NHPPD") (herein the "3.2 NHPPD requirement"). Defendants
19  also are required to budget to staff each Defendant Facility at an even higher level of 3.4
20  NHPPD. Finally, Defendants are required to pay all reasonable costs and expenses for a third-
21  party monitor to ensure future compliance with the 3.2 hour NHPPD requirement, up to a
22  maximum of $100,000.

23  The injunction to which the parties have agreed is substantially similar to an injunction
24  approved by Chief Judge Claudia Wilken in a similar nursing home understaffing class action.
25  *See Wehlage v. Evergreen*, Case No. 10-cv-05839 (N.D. Cal. October 4, 2012), Docket
26  Nos. 128 (approving class action settlement) and 130 (approving injunction that required
27  reporting as to the same aspects of nurse staffing as the one in this case). However, the relief
28  provided by the Injunction in this case goes further than the injunction in the *Wheladge* case,

6

which did not include the 3.4 NHPPD staffing level. The injunctive relief here is conservatively valued at between $6.09 million and $20.68 million for current and prospective class members. (*See*, Docket No. 135-11, Declaration of Patrick Kennedy, ¶¶ 13, 19.) The Court finds that Dr. Kennedy's analysis is sound and further demonstrates the substantial value provided by the Injunction. The Court concludes that the injunctive relief portion of the Settlement will create tangible, meaningful improvements in the quality of care for elderly and vulnerable residents of the Defendant Facilities, and it overrules Ms. Keating's objection to the Settlement on this basis.

Plaintiffs have also secured some monetary relief for Class Members. Ms. Keating also has objected to the Settlement on the basis that the parties grossly overestimate the value of the monetary relief provided. Pursuant to the Settlement, Defendants agreed to pay up to $8.25 million, allocated according to a formula by which each Settlement Class member receives an amount calculated by multiplying the number of days that the class member resided in any Defendant Facility times the Subject Day Percentage (8 percent) times $20, the agreed-upon Subject Day Amount.[8] According to the record, Gilardi has approximately received 2,865 claim forms from the 64,505 Class Members, and the average award has been $166.92. (Markham Decl. ¶ 9; Second Markham Decl. ¶ 8.) Based on those figures, Defendants have been required to pay, on average, $478,225.80 (2,865 x $166.92).

Mr. Markham estimates that if it continues to receive claims at this rate, it will receive claims from approximately 13% of Class Members by February 22, 2014, which is the deadline by which claims must be submitted. Although Mr. Markham attests that this is an "average to high-average percentage claims filing rate," it does suggest that the amount that Defendants actually will pay to Class Members will be significantly less than the $8.25 million figure to

---

[8] The Subject Day Amount of $20 compares favorably to Subject Day Amounts in other, similar litigation, and is based on the settlements in several other similar cases and is a number that was the result of arm's length negotiation. (*See* Docket No. 128-11, Declaration of Christopher J. Healey in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ¶16.) The 8 percent Subject Day Percentage is also consistent with the rate of violations that Plaintiffs assert, and the formula reflects Settlement Class Counsel's evaluation of certain data showing that inadequate staffing occurred on fewer than 8 percent of the days in question at the subject facilities. (*Id.*, ¶ 13.)

7

which the parties agreed.  In addition, the claims rate may be impacted by the fact that if a Class Member makes a claim, the receipt of settlement funds could impact SSI payments or Medi-Cal eligibility.  (*See, e.g.,* Markham Decl., Ex. A at ECF page 15.)

Although Ms. Keating raises valid arguments regarding the monetary component of the Settlement, the Court also notes that, at the hearing, the parties provided a general explanation to the Court as to how they derived that figure.  In addition, the records supports a conclusion the monetary component of the Settlement also was the product of vigorous and contested arms mediation before Judge Cahill.  Accordingly, the Court overrules Ms. Keating's objections to the Settlement on this basis, and it finds that these factors weigh in favor of approving the Settlement.

**C.     The Strength of Plaintiffs' Case and the Risk of Further Litigation.**

The Settlement did not come early in this litigation.  The parties engaged in fairly extensive motion practice before the pleadings were finally at issue.  Although the Defendants did not convince the Court to dismiss Plaintiffs' claims in their entirety, that does not mean that Defendants would not have prevailed on summary judgment or at trial.  Similarly, although the Court permitted Plaintiffs to proceed on their claims, Plaintiffs acknowledge that there are risks associated with continuing this litigation.  (*See, e.g.,* Docket No. 135, Declaration of Robert J. Nelson in Support of Motion for Final Approval, ¶ 16.)  By way of example only, a California court recently held that the $500 maximum penalty provided for by California Health and Safety Code section 1430(b) "applies per civil action rather than per violation." *Nevarrez v. San Marino Skilled Nursing and Wellness Centre*, 221 Cal. App. 4th 102, 163 Cal. Rptr. 3d 874, 901 (2013).

After approximately three years of litigation, the Settlement Agreement removes the risk that Plaintiffs and the Class Members might not obtain any relief.  *See, e.g., Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Accordingly, these factors also weigh in favor of approving the Settlement.

///

///

8

///

**D.     The extent of discovery completed, the stage of the proceedings, and the experience and views of counsel.**

In addition to engaging in the motion practice discussed above, the parties did engage in some discovery relating to Plaintiffs alter-ego allegations, and the settlement was subject to Plaintiffs conducting further discovery to evaluate representations made by Defendants. (*See, e.g.,* Docket No. 125, Status Report.) Based on the record the Court is satisfied that the parties reached the proposed settlement at time when they had a full and fair understanding of their cases and their opponents' case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (factor weighed in favor of approving settlement where parties had conducted extensive discovery and had gone through a round of summary judgment motions); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (factor weighed in favor of approving settlement where plaintiffs had conducted significant discovery and consulted with damages and accounting experts).

Furthermore, Class Counsel are experienced in prosecuting complex litigation, including the types of claims at issue in this case, and they have attested that the settlement is beneficial to the Class Members. (*See generally* Docket Nos. 128-6, 128-7, 128-9, 128-11, 128-12, Declarations of Counsel in Support of Motion for Preliminary Approval.) The Court may consider their view in determining whether or not to approve the settlement. *See In re Mego Fin.*, 213 F.3d at 459.

Accordingly, each of these factors also weighs in favor of approving the settlement.

**E.     The Reaction of Class Members to the Proposed Settlement.**

According to counsel, there are approximately 64,505 Class Members. (Markham Decl. ¶ 4.) Approximately 145 Class Members filed timely requests to opt out. (Second Markham Decl. ¶ 9.) Ms. Keating is the only class member to have filed an objection. The Court finds that the reaction of the class to the Settlement Agreement is favorable, which also weighs in favor of approving the settlement. *See, e.g., Rodriguez*, 563 F.3d at 967.

9

1    Accordingly, for the foregoing reasons, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate, and the Court GRANTS the motion for final approval.

Pursuant to the terms of the Settlement Agreement, Defendants are hereby ENJOINED as provided for in the Stipulated Order for Injunction, which is attached as Exhibit 1 to the Settlement Agreement, which is incorporated by reference herein, and which will be filed concurrently with this Order.

The Court shall retain continuing and exclusive jurisdiction over the Class Representatives, the Settlement Class, and Defendants with respect to the Settlement Agreement and this Order, including (a) implementation of the Settlement Agreement, (b) oversight of the Settlement Monitor and of Defendants' compliance with the terms and conditions of the Stipulated Order for Injunction, and (c) jurisdiction over the Class Representatives, members of the Settlement Class, and Defendants for purposes of construing, enforcing, and administering the Settlement Agreement and this Order, including the Stipulated Order for Injunction that is fully incorporated herein.  However, the Court reserves the right to refer any disputes relating to enforcement to a randomly assigned Magistrate Judge for purposes of preparing a report and recommendation on any motion filed.

Pursuant to the Settlement, the Court enters judgment, and the Clerk is directed to close this file.

**IT IS SO ORDERED.**

Dated: December 16, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE